UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OPENEVIDENCE INC.,                          :

                Plaintiff,              :     Civil Action
    v.                                          No. 25-11802-RGS
                              :

DOXIMITY, INC., JEY BALACHANDRAN,           **JURY TRIAL DEMANDED**
and JAKE KONOSKE,                           :

               Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>DOXIMITY, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS</u>

## <u>ANSWER</u>

Defendant Doximity, Inc. ("Doximity"), by and through its undersigned counsel, hereby answers the Complaint of Plaintiff OpenEvidence Inc. ("Plaintiff") as follows:

Doximity is not responding to the headings in the Complaint; to the extent a response is required, any allegations contained in the headings are denied. The Prayer for Relief and Demand for Jury in the Complaint do not contain allegations of fact and are therefore omitted from this Answer. Unless expressly admitted, all allegations contained in the Complaint are denied. Doximity reserves the right to amend and/or supplement this Answer.

## <u>INTRODUCTION</u>

1.    To the extent the allegations in paragraph 1 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity denies the remaining allegations in paragraph 1, except admits that Doximity is a publicly traded healthcare technology company. Doximity further admits that Plaintiff has brought this action but denies any liability or wrongdoing.

2.      Doximity denies the allegations in paragraph 2, except admits that: (i) Jey Balachandran is Doximity's Chief Technology Officer; and (ii) Jake Konoske is Doximity's Director of Products.

3.      Doximity lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's characterizations regarding its own platform and therefore denies those allegations. Doximity admits that it operates a professional networking platform for healthcare professionals and offers certain clinical and workflow tools. Doximity denies all remaining allegations in paragraph 3.

4.      To the extent the allegations in paragraph 4 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity admits that it offers AI-powered clinical tools. Doximity denies all remaining allegations in paragraph 4.

5.      Doximity denies the allegations in paragraph 5.

6.      Doximity denies the allegations in paragraph 6, except admits that Jake Konoske, Doximity's Director of Products, caused the text excerpted in paragraph 6 to be submitted as a query to OpenEvidence's AI platform.

7.      Doximity denies the allegations in paragraph 7.

8.      Paragraph 8 contains Plaintiff's characterization of its claims and/or legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 8.

9.      Doximity denies the allegations in paragraph 9, except admits that Konoske and Balachandran registered to use OpenEvidence's AI platform.

10.    To the extent the allegations in paragraph 10 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity denies the remaining allegations in paragraph 10.

11.    Doximity denies the allegations in paragraph 11.

12.    Doximity denies the allegations in paragraph 12.

13.    To the extent the allegations in Paragraph 13 relate to third parties to this action, Doximity lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them. Doximity denies any remaining allegations in paragraph 13, except admits that: (i) Jeff Tangney ("Tangney") is Doximity's Chief Executive Officer; (ii) Doximity hosted its Annual Pharmaceutical Advisory Board on May 6, 2025; (iii) Tangney presented at the Annual Pharmaceutical Advisory Board; and (iv) in response to a question, a live demonstration of OpenEvidence's chatbot was shown from a physician's laptop.

14.    The allegations in paragraph 14 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 14.

15.    Doximity denies the allegations in paragraph 15, except admits that: (i) on December 20, 2024, the Wall Street Journal published an article titled "The Next Great Leap in AI Is Behind Schedule and Crazy Expensive"; and (ii) paragraph 15 contains partial quotations from that article. Doximity refers to that article for a full and accurate description of its content.

16.    The allegations in paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 16.

17.     The allegations in paragraph 17 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity admits that Plaintiff purports to bring claims under various legal theories, but denies that Plaintiff accurately states those claims and/or is entitled to any of the requested relief.

## NATURE OF THE ACTION

18.     The allegations in paragraph 18 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity admits that Plaintiff purports to bring claims under various legal theories, but denies that Plaintiff accurately states those claims and/or is entitled to any of the requested relief.

19.     Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore denies the allegations in paragraph 19.

20.     The allegations in paragraph 20 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 20.

21.     The allegations in paragraph 21 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 21.

22.     The allegations in paragraph 22 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 22.

## THE PARTIES

23.     Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies those allegations.

24.     With regard to the second sentence of paragraph 24, Doximity admits that it operates a professional network for healthcare professionals and offers AI-powered medical tools but denies any characterization thereof. Doximity admits the remaining allegations in paragraph 24.

25.     Doximity admits the allegations in paragraph 25.

26.     Doximity denies that Jake Konoske is Doximity's "Director of AI Products." Doximity admits the remaining allegations in paragraph 26.

## JURISDICTION AND VENUE

27.     Doximity admits that this Court has subject matter jurisdiction over this action.

28.     Doximity admits the allegations in paragraph 28.

29.     The allegations in paragraph 29 contain legal conclusions to which no response is required. To the extent the allegations in paragraph 29 characterize or describe OpenEvidence's Terms of Use and Privacy Policy, Doximity refers to those documents for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents. Doximity denies the remaining allegations in paragraph 29, except admits that: (i) Doximity is registered to conduct business in Massachusetts; (ii) OpenEvidence is headquartered in Massachusetts; and (3) Tangney has corresponded with Daniel Nadler on LinkedIn.

30.     Doximity denies the allegations in paragraph 30.

31.     Doximity denies the allegations in paragraph 31, except admits that: (i) venue is proper in this judicial District, and (ii) OpenEvidence is headquartered in this District.

## FACTUAL BACKGROUND

**OpenEvidence's Revolutionary AI Platform and Valuable Trade Secrets**

32.    The allegations in paragraph 32 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 32.

33.    To the extent the allegations in paragraph 33 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 and therefore denies those allegations.

34.    Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and therefore denies those allegations.

35.    To the extent the allegations in paragraph 35 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 and therefore denies those allegations.

36.    To the extent the allegations in paragraph 36 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in paragraph 36 and therefore denies those allegations.

37.    The allegations in paragraph 37 contain legal conclusions to which no response is required. To the extent a response is required, Doximity denies that Plaintiff's system prompt is proprietary, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37 and therefore denies those allegations.

38.    Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 and therefore denies those allegations.

39.    Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 and therefore denies those allegations.

40.    Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 and therefore denies those allegations.

41.    The allegations in paragraph 41 contain legal conclusions to which no response is required. To the extent a response is required, Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 and therefore denies those allegations.

42.    The allegations in paragraph 42 contain legal conclusions to which no response is required. To the extent a response is required, Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and therefore denies those allegations.

**OpenEvidence's Terms of Use and Access Restrictions**

43.    Doximity denies the allegations in paragraph 43.

44.     To the extent the allegations in paragraph 44 characterize or describe the document attached to Plaintiff's Complaint as Exhibit A, Doximity refers to that document for a full and accurate description of its content and denies any characterization or description that is inconsistent with it. Doximity denies the remaining allegations in paragraph 44, except admits that Balachandran and Konoske registered to use OpenEvidence's platform.

45.     The allegations in paragraph 45 contain legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 45, except admits that the document attached to Plaintiff's Complaint as Exhibit A contains the language excerpted in the first sentence of paragraph 45. Doximity refers to that document for a full and accurate description of its content.

46.     The allegations in paragraph 46 contain legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 46, except admits that the document attached to Plaintiff's Complaint as Exhibit A contains the language excerpted in the first sentence of paragraph 46. Doximity refers to that document for a full and accurate description of its content.

47.     The allegations in paragraph 47 contain legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 47, except admits that the document attached to Plaintiff's Complaint as Exhibit A contains the language excerpted in the first sentence of paragraph 47. Doximity refers to that document for a full and accurate description of its content.

48.     Doximity denies the allegations in paragraph 48, except admits that: (i) Doximity held Medical Advisory Board meetings in March 2025, and (ii) among other topics of discussion,

Doximity presented a live demonstration of its Doximity GPT product which was launched in February 2023, well before OpenEvidence launched.

49.    Doximity denies the allegations in paragraph 49, except admits that Tangney has corresponded with Daniel Nadler on LinkedIn. Nadler replied: "do you ever make it down to Southern California? Happy to host you for a nice lunch on the wild part of the coast…". Tangney doesn't do 'wild' lunches and never replied.

50.    Doximity denies the allegations in paragraph 50.

51.    Doximity denies the allegations in paragraph 51.

52.    Doximity denies the allegations in paragraph 52.

**Defendants' Systematic Campaign of Identity Theft and Trade Secret Misappropriation**

53.    Doximity denies the allegations in paragraph 53.

54.    To the extent the allegations in paragraph 54 characterize or describe documents or other sources, Doximity refers to those documents or sources for a full and accurate description of their content and denies any characterization or description that is inconsistent with those documents or other sources. Doximity denies the remaining allegations in paragraph 54.

55.    Doximity denies the allegations in paragraph 55.

56.    Doximity denies the allegations in paragraph 56 except admits Konoske selected neurology and gastroenterology from drop down menus when accessing the OpenEvidence platform.

57.    Doximity denies the allegations in paragraph 57.

**Defendants' Prompt Injection Attacks and Trade Secret Extraction**

58.    Doximity denies the allegations in paragraph 58.

59. Doximity denies the allegations in paragraph 59 except admits that Balachandran caused queries including the language quoted in the second sentence of paragraph 59 to be submitted to OpenEvidence's AI platform.

60. Doximity denies the allegations in paragraph 60 except admits that Konoske caused the text excerpted in paragraph 60 to be submitted as a query to OpenEvidence's AI platform.

61. Doximity denies the allegations in paragraph 61.

62. Doximity denies the allegations in paragraph 62.

63. Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 63 and therefore denies those allegations. Doximity denies the remaining allegations in paragraph 63.

64. Doximity admits that Konoske caused queries regarding "nephrotic syndrome," and Balachandran and Konoske caused queries regarding "sedation before mri," to be submitted OpenEvidence's platform, either by entering those queries or by selecting pre-written queries suggested by the OpenEvidence platform. Doximity lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of queries submitted on those topics and therefore denies those allegations. Doximity denies the remaining allegations in paragraph 64.

65. Doximity denies the allegations in paragraph 65.

66. Doximity denies the allegations in paragraph 66, except admits that Defendants did not obtain OpenEvidence's system prompt.

**Doximity's Defamatory Campaign Against OpenEvidence**

67.     Doximity lacks knowledge or information sufficient to form a belief as to the truth of OpenEvidence's statements about its own revenue and the relative size of unnamed pharmaceutical and healthcare companies and therefore denies those allegations. Doximity denies the remaining allegations in paragraph 67, except admits that: (i) Doximity hosted its Annual Pharmaceutical Advisory Board Conference on May 6, 2025; (ii) Tangney presented at the Annual Pharmaceutical Advisory Board Conference; and (iii) certain individuals employed by pharmaceutical and healthcare companies attended the Annual Pharmaceutical Advisory Board Conference.

68.     To the extent the allegations in Paragraph 68 relate to third parties to this action, Doximity lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies those allegations. Doximity denies the remaining allegations in paragraph 68, except admits that: (i) Doximity hosted its Annual Pharmaceutical Advisory Board Conference on May 6, 2025; (ii) Tangney presented at the Annual Pharmaceutical Advisory Board Conference; and (iii) in response to a question, a live demonstration of OpenEvidence's platform was shown from a physician's laptop.

69.     Paragraph 69 contains Plaintiff's characterization of its claims and/or legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 69.

70.     Doximity denies the allegations in paragraph 70.

**The Ongoing Nature of Defendants' Misconduct**

71.     Doximity denies the allegations in paragraph 71, except admits that OpenEvidence sent Doximity a letter on June 3, 2025. Doximity specifically denies that it engaged in any wrongdoing or that it possesses any stolen information.

72.     Paragraph 72 contains Plaintiff's characterization of its claims and/or legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 72.

73.     Doximity denies the allegations in paragraph 73.

**Damages to OpenEvidence**

74.     Doximity denies the allegations in paragraph 74.

75.     Doximity denies the allegations in paragraph 75.

76.     Doximity denies the allegations in paragraph 76.

77.     Doximity denies the allegations in paragraph 77.

**FIRST CAUSE OF ACTION:**
**Misappropriation Of Trade Secrets Under The DTSA, 18 U.S.C. § 1836 Et Seq.**
**(Against All Defendants)**

78.     Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

79.     Doximity denies the allegations in paragraph 79.

80.     Doximity denies the allegations in paragraph 80.

81.     Paragraph 81 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies that Plaintiff employs anti-impersonation verification systems to prevent unauthorized access through false credentials. To the extent the allegations in paragraph 81 characterize or describe OpenEvidence's Terms of Use, Doximity

refers to that document for a full and accurate description of its content and denies any characterization or description that is inconsistent with it. Doximity lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 and therefore denies those allegations.

82.    Paragraph 82 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 82.

83.    Doximity denies the allegations in paragraph 83.

84.    Doximity denies the allegations in paragraph 84.

85.    Paragraph 85 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 85.

86.    Doximity denies the allegations in paragraph 86.

**<u>SECOND CAUSE OF ACTION:</u>**
**Violation Of Computer Fraud And Abuse Act (18 U.S.C. § 1030)**
**(Against All Defendants)**

87.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

88.    Doximity denies the allegations in paragraph 88.

89.    Paragraph 89 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 89.

90.    Doximity denies the allegations in paragraph 90.

91.    Doximity denies the allegations in paragraph 91.

92.    Paragraph 92 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 92.

93.    Doximity denies the allegations in paragraph 93.

94.    Doximity denies the allegations in paragraph 94.

95.     Doximity denies the allegations in paragraph 95.

96.     Doximity denies the allegations in paragraph 96.

97.     Doximity denies the allegations in paragraph 97.

### THIRD CAUSE OF ACTION:
### Violation Of Digital Millennium Copyright Act (17 U.S.C. § 1201)
### (Against All Defendants)

98.     Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

99.     Doximity denies the allegations in paragraph 99.

100.    Paragraph 100 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies that OpenEvidence verifies National Provider Identifier credentials. Doximity lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's characterizations of its remaining purported security measures and therefore denies those allegations. Doximity denies all remaining allegations in paragraph 100.

101.    Doximity denies the allegations in paragraph 101.

102.    Doximity denies the allegations in paragraph 102.

103.    Doximity denies the allegations in paragraph 103.

### FOURTH CAUSE OF ACTION:
### Breach Of Contract
### (Against Individual Defendants)

104.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

105.    The allegations contained in paragraph 105 are not directed at Doximity. Accordingly, no response is required. To the extent a response is required, Doximity denies the allegations.

106.    The allegations contained in paragraph 106 are not directed at Doximity. Accordingly, no response is required. To the extent a response is required, Doximity denies the allegations.

107.    The allegations contained in paragraph 107 are not directed at Doximity. Accordingly, no response is required. To the extent a response is required, Doximity denies the allegations.

108.    The allegations contained in paragraph 108 are not directed at Doximity. Accordingly, no response is required. To the extent a response is required, Doximity denies the allegations.

**FIFTH CAUSE OF ACTION:**
**Unjust Enrichment**
**(Against Doximity)**

109.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

110.    Doximity denies the allegations in paragraph 110.

111.    Doximity denies the allegations in paragraph 111.

112.    Doximity denies the allegations in paragraph 112.

113.    Doximity denies the allegations in paragraph 113.

**SIXTH CAUSE OF ACTION:**
**Trespass To Chattels**
**(Against All Defendants)**

114.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

115.    Paragraph 115 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 115.

116.    Doximity denies the allegations in paragraph 116.

117.    Doximity denies the allegations in paragraph 117.

## SEVENTH CAUSE OF ACTION:
### Unfair Competition Under Mass. G.L. Ch. 93A
### (Against Doximity)

118.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

119.    Doximity denies the allegations in paragraph 119.

120.    Doximity denies the allegations in paragraph 120.

121.    Doximity admits that OpenEvidence is headquartered in Massachusetts. Doximity lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations about the location of its operations and therefore denies those allegations. Doximity denies the remaining allegations in paragraph 121.

122.    Doximity denies the allegations in paragraph 122.

123.    Doximity denies the allegations in paragraph 123.

## EIGHTH CAUSE OF ACTION:
### Violation Of The Lanham Act (15 U.S.C. § 1125(A))
### (Against Doximity)

124.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

125.    Doximity denies the allegations in paragraph 125.

126.    Doximity admits that it hosted its Annual Pharmaceutical Advisory Board Conference on May 6, 2025, at which Tangney presented. Doximity further admits that in response to a question, a live demonstration of OpenEvidence's platform was shown from a physician's laptop. Doximity denies the remaining allegations in paragraph 126.

127.    Doximity denies the allegations in paragraph 127.

128.    Doximity denies the allegations in paragraph 128.

129.    Doximity denies the allegations in paragraph 129.

130.    Doximity denies the allegations in paragraph 130.

131.    Doximity denies the allegations in paragraph 131.

132.    Doximity denies the allegations in paragraph 132.

133.    Doximity denies the allegations in paragraph 133.

**NINTH CAUSE OF ACTION:**
**Common Law Unfair Competition**
**(Against Doximity)**

134.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

135.    Doximity denies the allegations in paragraph 135, except admits that Doximity provides healthcare professionals and pharmaceutical companies with an AI-powered medical information platform.

136.    Doximity denies the allegations in paragraph 136.

137.    Doximity denies the allegations in paragraph 137.

138.    Doximity denies the allegations in paragraph 138.

139.    Doximity denies the allegations in paragraph 139.

**TENTH CAUSE OF ACTION:**
**Defamation (Mass. G.L. Ch. 231, § 92)**
**(Against Doximity)**

140.    Doximity repeats and realleges its answers to each and every allegation above as if fully set forth herein.

141.    Doximity denies the allegations in paragraph 141.

142.    Doximity denies the allegations in paragraph 142.

143.    Doximity denies the allegations in paragraph 143.

144.    Doximity denies the allegations in paragraph 144.

145.    Paragraph 145 contains legal conclusions to which no response is required. To the extent a response is required, Doximity denies the allegations in paragraph 145.

146.    Doximity denies the allegations in paragraph 146.

147.    Doximity denies the allegations in paragraph 147.

148.    Doximity denies the allegations in paragraph 148.

149.    Doximity denies the allegations in paragraph 149.

**WHEREFORE**, Doximity respectfully requests that the Court enter judgment in its favor and against Plaintiff and grant it such other and further relief as the Court deems proper.

\* \* \* \* \* \* \* \* \* \*

## <u>AFFIRMATIVE DEFENSES</u>

Without relieving Plaintiff of its burden of proof or assuming any burden that the law would not otherwise impose, Doximity asserts the following defenses to the Complaint:

## <u>FIRST AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, *in pari delicto*, and assumption of risk.

## <u>SECOND AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any injury-in-fact or damages as a result of any alleged actions by Doximity.

## <u>THIRD AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred, in whole or in part, by its failure to mitigate its alleged damages.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because recovery would result in unjust enrichment to Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of laches, waiver, acquiescence, ratification and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of preemption.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for false advertising and defamation are barred because the alleged statements are truthful.

## EIGHTH AFFIRMATIVE DEFENSE

The imposition of treble damages would be punitive and violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the Excessive Fines Clause of the United States Constitution.

## JURY DEMAND (AS TO PLAINTIFF'S PUTATIVE CLAIMS)

Doximity demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF (AS TO PLAINTIFF'S PUTATIVE CLAIMS)

WHEREFORE, Doximity respectfully requests that this Court:

    (i)      Deny any and all relief requested by the Plaintiff;

    (ii)     Enter judgment in favor of Doximity on all of Plaintiff's claims and dismiss the complaint with prejudice;

    (iii)    Award Doximity its attorneys' fees and expenses; and

    (iv)    Award such other and further relief as the Court deems just and proper.

\* \* \* \* \* \* \* \* \*

## COUNTERCLAIMS

Counterclaim-Plaintiff Doximity, Inc. repeats, realleges and incorporates each of the averments, responses, denials and affirmative defenses set forth in its Answer to the Complaint as if fully set forth herein and further alleges against Counterclaim-Defendant OpenEvidence Inc. ("OpenEvidence") upon knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE COUNTERCLAIMS

1.      Doximity is the leading digital platform for medical professionals in the United States, with over two million registered members.

2.      OpenEvidence is a startup offering clinical decision support using artificial intelligence.

3.      To secure an unfair competitive advantage, OpenEvidence has relentlessly targeted its competitor Doximity and harassed its employees.

4.      In addition to this lawsuit, OpenEvidence has made a series of false or misleading claims and statements, including false claims about Doximity and deceptive comparisons between Doximity and OpenEvidence. OpenEvidence has disseminated those false or misleading claims through paid advertisements targeting physicians, clients and Doximity employees, pitch materials sent to clients, and direct communications with Doximity personnel.

5.      OpenEvidence's false or misleading claims and statements include:

      a.   Claiming that like Doximity, OpenEvidence limits access to its platform to healthcare professionals, including by falsely representing that

OpenEvidence verifies that users have a National Provider Identifier (NPI);

b. Making false or exaggerated claims regarding the purported accuracy of its platform's results and purported lack of any "hallucinations," including falsely asserting that OpenEvidence scored 100% on the United States Medical Licensing Examination (USMLE);

c. Promoting fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity;

d. Manipulating data and presenting deceptive statistics to make false claims about Doximity's growth, engagement, and stock performance, including as compared to OpenEvidence; and

e. Claiming that like Doximity, OpenEvidence protects patient confidentiality, despite (1) publishing sensitive information about individual patients on its publicly available website, and (2) selling physician queries to advertisers and pharmaceutical companies;

6.    OpenEvidence's false and misleading claims are part of a calculated attempt to harm Doximity in a variety of ways, including improperly misleading physicians and clients, and using fear to gain recruitment leverage in connection with its incessant solicitation of Doximity personnel.

7.    OpenEvidence's ongoing campaign of misinformation violates federal and state law and must stop.

8.      Doximity thus is compelled to bring these claims seeking equitable relief and damages for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); the Mass. Gen. L. c. 93A; and Massachusetts common law principles of defamation as codified in Mass. G.L. ch. 231, § 92.

## THE PARTIES

9.      Counterclaim-Plaintiff Doximity is a corporation organized and existing under the laws of Delaware with its principal executive offices at 500 3rd Street, Suite 510, San Francisco, California 94107.

10.      Counterclaim-Defendant OpenEvidence is a corporation organized and existing under the laws of Delaware with its principal place of business at 245 Main Street, Cambridge, Massachusetts 02142.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the Lanham Act claims pursuant to Article III of the Constitution, 28 U.S.C. § 1331, and 15 U.S.C. § 1121.

12.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

13.      This Court has personal jurisdiction over OpenEvidence because OpenEvidence has purposefully availed itself of the benefits of this judicial district by filing its Complaint here.

14.      The venue is proper in this district because the Court has personal jurisdiction over OpenEvidence and OpenEvidence filed this action in this venue.

## FACTUAL ALLEGATIONS

### A.      OpenEvidence's False Claims About User Verification & NPI Counts

15.      OpenEvidence makes a variety of false and misleading claims about its platform that are intended to deceive clients about the true size of its user base.

- 22 -

16.    For example, OpenEvidence deceptively touts its credentials by making claims in its advertising and marketing that it limits access to its platform to healthcare professionals that have a National Provider Identifier (NPI).

17.    In reality, OpenEvidence does not restrict access to its platform to physicians and other healthcare providers. Instead, OpenEvidence offers its platform for free to the general public. Any person can use OpenEvidence's platform by visiting OpenEvidence's website, https://www.openevidence.com/.

18.    After several searches, users are prompted to enter an NPI number. But OpenEvidence does not actually "verify" that an NPI number entered by a user corresponds with the name associated with that number in the freely accessible National Plan and Provider Enumeration System (NPPES) NPI Registry or otherwise take any steps to determine whether a person seeking access to its platform is or is not a registered physician. NPI names and numbers are public and available for free download at cms.hhs.gov.

19.    On information and belief, OpenEvidence does not even verify whether the 10-digit number a user enters as their NPI number is a registered NPI number at all.

20.    This allows OpenEvidence to inflate its usage numbers for advertisers, by effectively counting every free user as a licensed United States physician or NPI-holder.

21.    OpenEvidence uses its misleading representations about "NPI-verified" users to promote its platform, including by claiming that over 90% of its users are "true-identity physicians."

22.    In a clear contrast to OpenEvidence, to join the Doximity platform, physicians and other healthcare providers must complete an identity and credential verification process.

23.     Doximity verifies healthcare providers' identities and credentials in several ways, including validating each member's NPI number, conducting paid identity checks of each member's DOB, address, and license, and using challenge questions from IDology and others. Once verified, members gain access to Doximity's network, newsfeed, and workflow tools. Members of the general public who are not medical professionals do not have full access to Doximity's platform.

24.     Thus, by making false and misleading claims about NPI verification, OpenEvidence seeks to improperly inflate the credibility of its product among existing and prospective customers choosing between OpenEvidence and Doximity. OpenEvidence's claims are intended to lead those choosing between Doximity and OpenEvidence to believe that their offerings are equivalent.

25.     In fact, OpenEvidence's CEO, Daniel Nadler, admits that OpenEvidence is not even a healthcare company. In an interview with "No Priors" from September 5, 2025, Nadler stated: "So, I didn't want to build a healthcare company at all. I love Sequoia's quote that OpenEvidence is a consumer internet company masquerading as a healthcare company. I had zero interest in building a healthcare company. OpenEvidence is not a healthcare company."

**B.     OpenEvidence's False and Misleading Claims About Accuracy and "No Hallucinations"**

26.     OpenEvidence has also made false, misleading, and dangerous claims regarding the purported accuracy of its AI platform.

27.    OpenEvidence's platform does not contain or operate a large-scale neural network trained on massive datasets for natural language understanding and generation, known as a large language model (LLM). Instead, OpenEvidence strings together a system of third-party applications, including LLMs, such as OpenAI.[1]

28.    LLMs—including the ones OpenEvidence's platform relies on to write its answers—sometimes produce "hallucinations," a well-documented phenomena when AI models produce false, misleading, or fabricated information and present that information as fact.

29.    Nonetheless, as reported by Australia Doctor Group, OpenEvidence co-founder Zachary Ziegler has claimed OpenEvidence's platform "was not at risk of hallucinations."

30.    Similarly, OpenEvidence disseminated through its primary investor Sequoia the claim that "[t]here are no hallucinations; if the literature is inconclusive, OpenEvidence simply doesn't respond."[2] This claim was designed to lull doctors and patients into a false sense of security about the accuracy of OpenEvidence's answers.

31.    Those claims are false. OpenEvidence does hallucinate at times.

32.    Users have repeatedly publicized concrete examples of OpenEvidence hallucinating and providing wrong answers in practice.[3]

---

[1]    https://www.theinformation.com/articles/chatgpt-doctors-startup-considers-6-billion-valuation-investment (noting OpenEvidence "uses open-source models to search through medical journals and return useful information and citations," and "uses AI from Google, OpenAI and other providers to write its chatbot's responses").

[2]    https://www.sequoiacap.com/article/partnering-with-openevidence-a-life-saving-healthcare-revolution/.

[3]    *See, e.g.*, https://www.linkedin.com/posts/joannastrober_what-happens-when-the-ai-that-40-of-doctors-activity-7352011424497401856-b4FA?utm_source=share&utm_medium=member_desktop&rcm=ACoAABkLyE0BpmqWlSXq11KtcUQHQWe2g6bvzFs; *see also* https://www.reddit.com/r/hospitalist/comments/1je4ria/open_evidence/.

33.     Other users have reported that roughly 20% of the answers OpenEvidence's platform provides are wrong.[4]

34.     As part of its public marketing about the accuracy of its platform, on August 15, 2025, OpenEvidence claimed it had created "the First AI in History to Score a Perfect 100% on the United States Medical Licensing Examination (USMLE)."[5]

35.     OpenEvidence has promoted paid advertisements repeating that claim.

36.     That claim is false. OpenEvidence's "answers & explanations" page claims that OpenEvidence answered questions correctly, even though independent verification shows that OpenEvidence's platform generates different, incorrect answers in response to those same questions. Users have even publicly reported that when they independently put it "to a real test," OpenEvidence "flopped on 11 NEJM questions."[6]

37.     Indeed, OpenEvidence knows the claim is false. Contrary to the big font and eye-grabbing headline of "perfect 100%,"[7] OpenEvidence acknowledges that it answered a question incorrectly, but OpenEvidence disagrees with the answer and therefore credits itself with a "perfect score" according to its own subjective criteria.

---

[4]     *See* https://www.reddit.com/r/medicine/comments/1mslx0z/openevidence_not_quite_as_accurate_as_id_have/?share_id=dudv8ntLpkc9KSh4NAcGe&utm_content=1&utm_medium=ios_app&utm_name=ioscss&utm_source=share&utm_term=1

[5]     https://www.openevidence.com/announcements/openevidence-creates-the-first-ai-in-history-to-score-a-perfect-100percent-on-the-united-states-medical-licensing-examination-usmle.

[6]     https://sergeiai.substack.com/p/panda-vs-gibbon-md-100-accuracy-my.

[7]     *See* https://www.openevidence.com/announcements/openevidence-creates-the-first-ai-in-history-to-score-a-perfect-100percent-on-the-united-states-medical-licensing-examination-usmle.

38.     As with its claims that its platform is incapable of hallucinating, OpenEvidence's false and misleading claim that its platform received a "perfect" score on the USMLE was designed to give physicians and potential customers the false impression that the OpenEvidence platform is more accurate than it is.

### C.     OpenEvidence's Campaign of False and Misleading Statements About Doximity

39.     OpenEvidence advertises itself as "the leading medical information platform," and has sought to position itself as a direct competitor to Doximity. Rather than pursuing organic innovation, however, OpenEvidence has focused on harming its competitor Doximity.

40.     To accomplish those goals, OpenEvidence has made and continues to make materially false statements regarding Doximity and its AI product, Doximity GPT. OpenEvidence has made these statements in a wide variety of forums with the purpose of influencing Doximity's current and prospective customers, and employees.

### 1.     Public Advertisements

41.     OpenEvidence has published and paid to promote false advertisements disseminated on LinkedIn and elsewhere.

42.     Among other tactics, OpenEvidence claims to have a more successful, prolific, and reliable product than Doximity by manipulating data and presenting deceptive statistics.

43.     First, starting no later than on or around May 15, 2025, OpenEvidence promoted a LinkedIn advertisement proclaiming that "Doximity is a Loser in the AI Race." The advertisement contains a line graph purporting to display the "monthly visits to OpenEvidence" and claims that those monthly visits outnumber visits to Doximity GPT twelvefold.



44.     The text of the advertisement suggests that the "exponential growth" shown in the line graph represents the growing use of OpenEvidence "among doctors"—a credentialed group that consumers trust with respect to healthcare products—and purports to show that Doximity is a "loser" because its growth appears to be far more modest and linear.

45.     But both the post and its supposedly scientific-looking chart are deliberately misleading. The chart does not represent monthly visits to OpenEvidence "among doctors" at all; it merely depicts visits from the general user population. In fact, there is no evidence or citation anywhere in the post that the data reflects clinicians' usage in any way. As explained above, OpenEvidence does not limit the use of its website to doctors.

46.     OpenEvidence's purported statistics are deceptive in yet another way. The advertisement misrepresents the "monthly visits to . . . Doximity's AI Products." The visits represented in OpenEvidence's advertisement completely omit all visits to Doximity's app—the primary source of monthly physician visits to its AI products. Furthermore, OpenEvidence's advertisement only includes traffic to the "Doximity AI" domain.

47.     An actual comparison of traffic to doximity.com and openevidence.com from the same source (SimilarWeb) and timeframe, shows that traffic to Doximity is nearly double that of OpenEvidence.

48.     Moreover, upon information and belief, OpenEvidence made these false and misleading claims about Doximity while knowing full well that they were false. As Doximity had previously explained to the market in an earnings call, in the third quarter of fiscal 2025, its "AI tools grew the fastest . . . up 60% over the prior quarter." The chart OpenEvidence published clearly omits this fact by showing the false flat growth curve for Doximity's AI products.

49.     OpenEvidence's false comparative claims regarding visits to its platform and to Doximity are designed to mislead physicians, clients and Doximity employees into believing that Doximity's business is stagnant amid a rapidly expanding market for AI products. These false statements are intended to distort market perception and unlawfully secure a competitive advantage for OpenEvidence at Doximity's expense. The campaign of deception is material, as it is calculated to influence physicians and clients in their decisions regarding whether to use or support Doximity's services.

50.     Second, starting no later than on or around May 20, 2025, OpenEvidence advertised that OpenEvidence is "America's #1 App for Doctors" and displayed a purported ranking in the "Medical" category on the Apple App Store.

51.     OpenEvidence's advertisement falsely represents that OpenEvidence is "#1 for Doctors," while Doximity is "#5 for Doctors," suggesting that a credentialed and trusted group (doctors) has expressed a preference for OpenEvidence based on their experience, i.e., that a majority chose OpenEvidence.

52.     This claim is false. The Apple App Store lacks a "for Doctors" category; that purported metric is fictional.

53.     In much smaller font, OpenEvidence admits that this claim is false, stating: "The 'Medical' category on the Apple App Store encompasses all medical apps, including those intended for consumers and non-clinical users." But despite admitting that it knows "for Doctors" is not a legitimate third-party metric within the Apple App Store, OpenEvidence misleadingly represents that Apple App Store figures show that "Doctors"—as opposed to users generally—use OpenEvidence in greater numbers than competitor offerings.

54.     OpenEvidence's claim is also misleading because it omits the context that (1) the Apple App Store rankings do not measure the total number of downloads, and (2) the OpenEvidence app has roughly 4,500 reviews on the App store, while the Doximity app has over 183,000, which is approximately forty times more than OpenEvidence.

55.     Third, starting no later than on or around May 19, 2025, OpenEvidence promoted a false and misleading LinkedIn advertisement claiming that Doximity's stock prices have underperformed those of McDonald's Corporation for the last four years:



56.     OpenEvidence disseminated this advertisement shortly after the Doximity earnings call on May 15, 2025 and referenced the number of times the phrase "AI" was used on that call.  Accordingly, viewers would understand that OpenEvidence was referring to Doximity.

57.     OpenEvidence's claim that Doximity's stock has underperformed McDonalds over the last four years is false as Doximity had been publicly listed for less than four years at that point.

58.     Moreover, Doximity's stock trades at a premium of roughly six times its private May 2021 price, and over 150 percent higher than its June 2021 IPO price—well above McDonald's roughly 25 percent gain over the same period.

59.     OpenEvidence's misleading statements about Doximity's stock performance create the false impression that the company is struggling, when in reality Doximity is growing its business strongly and its stock is trading at one of the highest revenue multiples in the entire healthcare and technology industry.

60.     In apparent recognition of the false and defamatory nature of this advertisement, OpenEvidence took this advertisement down from their LinkedIn library shortly after OpenEvidence filed this lawsuit against Doximity.

### 2.     Client Pitch Decks

61.     OpenEvidence has not been content to merely publish false and damaging claims about Doximity on LinkedIn and other public platforms. It has also directly provided false and damaging claims to current and prospective clients, seeking to harm Doximity.

62.     For example, a July 2025 pitch deck includes a chart purporting to compare OpenEvidence to Doximity across a variety of metrics, including Newsfeed Monthly Active Users (MAUs). As shown below, OpenEvidence claims that Doximity has 300,000 Newsfeed MAUs—a claim it attributes to public IR reports:

## OpenEvidence vs Doximity vs Medscape

| Category | OpenEvidence | Doximity | Medscape |
|---|---|---|---|
| MAUs | 335,700 (up 70,000 over this time last month) | 300,000 to newsfeed (per Q4 IR report) | 1.1M (the vast majority are email opens) |

63.     The claim that Doximity has 300,000 Newsfeed MAUs is false. Doximity has never provided a Newsfeed MAU metric in public IR materials, and instead has stated that it has over 1,000,000 Newsfeed Quarterly Active Users (QAUs). OpenEvidence's claim has no basis in the attribution it provides.

64.     Additionally, OpenEvidence claimed in a July 2025 client pitch deck that it took Doximity "11 years" to get to 300,000 users:



65.     That too is blatantly false and misleading. It appears to rely on Doximity's statement in its S-1 that it "had over 300,000 unique active providers . . . use our telehealth tools in the quarter ended March 31, 2021," but those telehealth tools did not launch until May 2020. It has not taken Doximity "11 years" to obtain 300,000 users in any core offering or product. The S-1 is clear as to what that metric refers to, yet OpenEvidence has chosen to use it in a deliberately misleading manner to make OpenEvidence appear better adopted than Doximity to clients.

**D.     OpenEvidence's Deceptive and Unlawful Campaign
Is Intended to, and Does, Harm Doximity in the Market,
Poach Its Employees, And Interfere with Its Client Relationships**

66.     OpenEvidence, including its CEO Daniel Nadler, has also incessantly solicited Doximity personnel—particularly those with deep insider access to Doximity's clients and product development strategies. Those efforts are a tacit acknowledgement that OpenEvidence

needs Doximity's secrets and expertise to compete, undermining its false and misleading public statements about Doximity.

67.    In an improper attempt at recruitment, OpenEvidence has repeatedly harassed Doximity's employees and sent them unsolicited job offers accompanied by significant sums of money. OpenEvidence has sent countless unsolicited text messages, like the following text sent to a member of Doximity's sales team, offering a million-dollar bonus just to join OpenEvidence. This employee and most others did not accept their offers.

> Ok - I know it's a bit presumptive but here's an offer that we are willing to give you today.
>
> $1M sign on bonus
> $1M OTE
> $1M Equity a year - renews every year (at the hottest tech company in healthcare right now)
>
> **My plan is to retire in 2-3 years and if you're of the same mindset, there is no better place to be than here.**  Also, it's magnitudes easier to work her not being a public company.
>
> Ok - that's it. Sorry again for the direct reach out but I hope you can see how much we want you on this team.

68.    Nadler has also directly sent many unsolicited and harassing emails to Doximity employees, in which he has repeated the false claims in the advertisements above. For example, Nadler has used OpenEvidence's false claim that "Doximity is a Loser in the AI Race" in recruitment emails targeting Doximity's employees, and included statements such as: "Now set

aside whether you think Doximity's engineers — two years behind, with zero career experience in AI — will catch up to a team of Harvard and MIT PhDs…"

69. As this correspondence demonstrates, OpenEvidence's false and misleading claims about Doximity are part of a calculated attempt by OpenEvidence to harm its competitor Doximity in a variety of ways, including using fear and hyperbole to gain recruitment leverage.

70. Mr. Nadler's many emails are often lengthy and strange. For example, Nadler sent this unsolicited letter to Doximity's General Counsel, Jennifer Chaloemtiarana, after Doximity's first female employee accepted one of his offers.

---

From: **Daniel Nadler <daniel@openevidence.com>**
Date: Sun, Aug 31, 2025 at 10:37AM
Subject: Pre-Re: Letter from Doximity - 'Koury' with a 'K'
To: Jennifer Chaloemtiarana <jchaloemtiarana@doximity.com>

To make this more efficient, how about we agree that at the start of every month, I just send you the list of the people we are taking (with correct spelling), so you can *batch* prepare the letters in advance, as well as the list of the people we are leaving behind.

My only ask in exchange for this offer of logistical efficiency is that you let us know if we overlooked anyone. If the thought occurs to you "Wait, why haven't they taken such-and-such a person yet?!" the simple answer might be that we merely overlooked them, and thus would appreciate the tip in that case.

I know right now it seems inconceivable that you would ever agree to do that, but since by now it is clear that y'all are utterly impotent to retain your own talent, it might dawn on y'all that the planetary show must indeed go on, ==**the species must indeed continue with *someone's seed***==, and perhaps we all just set differences aside and do one *clean* for the ecosphere. I have been going deep lately on the Late Eastern Han Dynasty in 2nd Century China, and the eunuchs of that era managed to achieve that level of ego-dissolution and species-level future projection (唯我無種者，護持斯族，必先奉養能「繁衍」之帝 → "*Only we, the seedless, will protect the species* ==***by prioritizing emperors who breed***==" — *Hou Hanshu [Book of the Later Han], ch. 78–79 ["Biographies of the Eunuchs"]*). As Jeffrey "The Dude" Lebowski says, "Right on, man."

Consider it.

Hugs and high-fives,

Daniel Nadler, PhD
Founder, OpenEvidence

**OpenEvidence**

---

71.     In addition, Nadler wrote the following taunting message to Doximity's General

Counsel after she stepped down from her role at Doximity:



72.     OpenEvidence's efforts to harm Doximity have even extended to interference

with its business deals. On August 7, 2025, Doximity announced its acquisition of Pathway

Medical, Inc., a Montreal-based startup specializing in medical AI and evidence-based clinical

reference. Two days later, Nadler sent an unsolicited email to the founders of Pathway (whom he

has never met), stating: "you go and sell your whole company for less cash than I just paid for

one of my apartments."

From: Daniel Nadler <daniel@openevidence.com>
Date: Saturday, August 9 2025 at 1:54 AM CEST
Subject: O Canada
To: jonathan@pathway.md, louis@pathway.md, louis.mullie@gmail.com, vince@pathway.md, Vince.Roy@pathway.md

Boys,

I have spent years trying to change the cliché that Canadians are weak negotiators, and there you go and take a once-in-a-lifetime historic opportunity to create generational wealth for yourselves and your children—when pre-product AI companies are trading at a billion dollars, and when a buyer can add a billion dollars in market cap in one trading day just by announcing a buy with the word 'AI' in it—**and you go and sell your whole company for less cash than I just paid for one of my apartments.**

73.     Additionally, OpenEvidence is using its own lawsuit against Doximity as a recruiting tool. In at least one instance, an OpenEvidence employee told a Doximity employee that this could be a "billion-dollar lawsuit for Doximity." Following this, that employee received an unsolicited offer to work there which she declined.

74.     Upon information and belief, OpenEvidence has also widely shared their lawsuit against Doximity with Doximity's clients in an attempt to disrupt Doximity's most significant client relationships.

75.     To further gain an unfair competitive advantage, Mr. Nadler has used affiliates from his prior company Kensho Technologies to create LinkedIn pages falsely masquerading as legitimate news sources. These deceptive pages promote negative and misleading advertisements about Doximity to its clients and employees. These advertisements are paid for by a company called Scalable Magic Inc., whose only known employee is a man who worked at Mr. Nadler's company Kensho Technologies for nearly 6 years.

76.    In yet another instance, OpenEvidence baselessly threatened a Doximity employee with a lawsuit against him *personally* for speaking on a topic that neither mentioned OpenEvidence nor discussed any other competitors. OpenEvidence continued with its baseless and anti-competitive threats by disseminating this letter to multiple third parties in a fruitless bid to have Doximity's speech cancelled by the organizers of an important pharmaceutical industry conference.

---

We represent OpenEvidence. It has come to our attention that you plan to give a talk on September 9, 2025, at FiercePharma, titled *How to Lose a Doctor in 10 Days: Product and UX Antipatterns  Guaranteed to Get you Ghosted*. We understand that you plan to make defamatory statements  about OpenEvidence during what you bill as your "sharp-edged" presentation. Sharp edges cut  both ways. One of my ██████████ partners will be seated in front of you during your   presentation. We are hereby putting you on notice that, should you make defamatory statements  about OpenEvidence, we are instructed to bring claims against you *personally*, for any and all such  statements, and to seek the maximum damages (including the maximum damages appropriate for  defaming a company publicly valued in the billions of dollars) and all available remedies under  the law against you *personally*.

We look forward to your presentation.

---

### E.    OpenEvidence Fails to Protect Patient Confidentiality

77.    OpenEvidence also makes a variety of false and misleading claims about patient confidentiality on its own AI platform that are intended to deceive physicians and health systems and create a false equivalency between OpenEvidence's and Doximity's AI offerings.

78.    As an example, on April 25, 2025, OpenEvidence announced that "OpenEvidence is now HIPAA compliant," and claimed that "U.S. covered entities can securely input protected health information (PHI) in accordance with HIPAA's privacy and security standards."[8]

---

[8]    https://www.openevidence.com/announcements/openevidence-is-now-hipaa-compliant.

79.    Contrary to its representations, OpenEvidence fails to protect patient confidentiality or comply with the Health Insurance Portability and Accountability Act ("HIPAA").

80.    OpenEvidence's platform does not protect PHI consistent with its representations; to the contrary, far from scrubbing such information from its searches, OpenEvidence has **disclosed** patient data to third parties and, at times, the public.

81.    Indeed, OpenEvidence currently has many ***publicly available*** patient histories on its website, a significant portion of which include sensitive information. Below is one example, which reveals the full patient name, medical record number (MRN), date of birth, medical condition, and treatment.



82.    The ongoing public exposure of protected health information (PHI) has reached such a flagrant and persistent level that even archival sites like "The Wayback Machine"[9] now catalog abundant examples of these breaches—making confidential patient details permanently accessible online. For instance, one OpenEvidence public page features a clinical assessment of a

---

[9]    https://web.archive.org/web/20250611175837/https://www.openevidence.com/ask/7876b336-ddb0-4ea7-a423-05717a02883b

25-year-old man with chronic sleep issues, listing his symptoms, the results of his sleep study, and even documenting the number of "total arousals" he experienced—sensitive information that should never be publicly viewable. See link below:



83.     Upon information and belief, OpenEvidence has no General Counsel or named Privacy & Security Officer to oversee its HIPAA compliance or CEO. In contrast to OpenEvidence, Doximity has invested heavily in patient confidentiality, and both internal and external checks, completing regular annual SOC-2 audits and hundreds of privacy reviews with health systems.

84.     OpenEvidence's false and misleading claims about patient confidentiality are designed to lead individuals choosing between Doximity and OpenEvidence to believe the offerings are equivalent, when in fact they are not.

### F.    OpenEvidence Sells User Prompt and Potential Patient Data to Advertisers

85.    OpenEvidence's representations regarding its protection of patient confidentiality, handling of patient and physician data, and compliance with HIPAA, are also false and misleading because OpenEvidence sells physician-specific prompt data to advertisers and pharmaceutical companies.

86.    Indeed, OpenEvidence's pitch materials openly highlight that "pharma can target NPIs by their search data," and that "This is the first time in history when search data is available at the NPI level":



87.    Until it was recently revised, Open Evidence's Privacy Policy admitted that user data, including individual "questions/prompts," may be "sold to third parties or otherwise monetized as a commercial data feed":



88.    Selling individual user search data is a novel business model that departs from accepted industry practices and exposes physicians to legal compliance and malpractice risk. The sale of research queries potentially containing identifiable patient information creates a substantial likelihood that physician users will unknowingly violate physician-patient confidentiality. This deceptive practice will erode client trust in not just OpenEvidence's offering, but offerings from competitors including Doximity as well.

89.    Even though OpenEvidence's privacy policy discloses that it sells queries to advertisers, its Business Associate Agreement, which governs the company's treatment of PHI, does not allow it to share such information with advertisers, much less to share that information publicly on the OpenEvidence platform.[10]

90.    By engaging in these practices, OpenEvidence fails to protect patient confidentiality, and violates its obligations under HIPAA.

91.    On information and belief, OpenEvidence even offers clients and agency partners equity in the company, a practice that deepens OpenEvidence's ethical conflicts of interest, and which OpenEvidence does not publicly disclose.

---

[10]    *See* https://www.openevidence.com/policies/baa.

## CLAIMS FOR RELIEF

### COUNT I
**(False Advertising in Violation of the Lanham Act (15 U.S.C. § 1125(A))**

92.     The paragraphs above are incorporated and reasserted as if fully set forth herein.

93.     OpenEvidence's marketing and advertising of its AI platform, and marketing and advertising concerning Doximity, constitute false and misleading statements of fact in commercial advertising and promotion under the Lanham Act.

94.     OpenEvidence has made, and continues to make, false or misleading claims and statements, including false claims about Doximity and comparisons between Doximity and OpenEvidence.

95.     OpenEvidence's false and misleading statements include, *inter alia*:

    a.  Claiming that like Doximity, OpenEvidence limits access to its platform to healthcare professionals, including by falsely representing that OpenEvidence verifies that users have a National Provider Identifier (NPI);

    b.  Making false or exaggerated claims regarding the purported accuracy of its platform's results and purported lack of any "hallucinations," including falsely asserting that OpenEvidence scored 100% on the United States Medical Licensing Examination (USMLE);

    c.  Promoting fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity;

    d.   Manipulating data and presenting deceptive statistics to make false claims about Doximity's growth, engagement, and stock performance, including as compared to OpenEvidence;

    e.   Claiming that like Doximity, OpenEvidence protects patient confidentiality, despite (1) publishing sensitive information about individual patients on its publicly available website, and (2) selling physician queries to advertisers and pharmaceutical companies; and

    f.   Any other advertisement, marketing, or other statement that misrepresents, or could be interpreted as misrepresenting, the characteristics, nature, and/or success of OpenEvidence or Doximity in any way.

96.    OpenEvidence's false and misleading claims have a tendency to confuse, mislead, and deceive a substantial segment of its audience as to the real and relative success of OpenEvidence and Doximity in the medical AI industry, and the characteristics of their AI platform offerings.

97.    OpenEvidence's false and misleading statements are material because they are likely to influence the decision-making of consumers in the relevant market—which include physicians, health care professionals, and clients—in ways that harm Doximity as described above.

98.    OpenEvidence placed these false and misleading statements in interstate commerce by disseminating these representations nationwide, including through promoted social media posts.

99.    As a direct and proximate cause of these false and misleading statements, Doximity has been and will continue to be damaged. Doximity's damages include actual

damages in the form of lost profits from reduced demand for Doximity GPT; the disgorgement of any profits that OpenEvidence unfairly realized, retained, or gained as a result of its false and misleading advertising; and the costs associated with this action.

100.    Based on the foregoing, OpenEvidence has engaged in false and deceptive representations that are likely to cause confusion or deceive consumers as to the characteristics of and relative success and consumer confidence in Doximity GPT compared with OpenEvidence's competing product, in violation of 15 U.S.C. § 1125.

101.    On information and belief, OpenEvidence has engaged in this activity knowingly, willfully, and in bad faith.

102.    OpenEvidence's willful and deliberate acts make this an exceptional case under 15 U.S.C. § 1117(a), and Doximity is thus entitled to enhanced damages, injunctive relief, and an award of attorneys' fees and costs.

## <u>COUNT II</u>
### (Violations of Mass. Gen. L. c. 93A §§ 2 and 11)

103.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

104.    At all relevant times, OpenEvidence was engaged in trade or commerce as those terms are used in Mass. G.L. c. 93A, §§ 2 and 11.

105.    While engaged in trade or commerce, OpenEvidence engaged in unfair and deceptive acts through the creation of a series of false and misleading advertisements, including, without limitation:

> a.  Claiming that like Doximity, OpenEvidence limits access to its platform to healthcare professionals, including by falsely representing that OpenEvidence verifies that users have a National Provider Identifier (NPI);

b. Making false or exaggerated claims regarding the purported accuracy of its platform's results and purported lack of any "hallucinations," including falsely asserting that OpenEvidence scored 100% on the United States Medical Licensing Examination (USMLE);

c. Promoting fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity;

d. Manipulating data and presenting deceptive statistics to make false claims about Doximity's growth, engagement, and stock performance, including as compared to OpenEvidence;

e. Claiming that like Doximity, OpenEvidence protects patient confidentiality, despite (1) publishing sensitive information about individual patients on its publicly available website, and (2) selling physician queries to advertisers and pharmaceutical companies; and

f. Any other advertisement, marketing, or other statement that misrepresents, or could be interpreted as misrepresenting, the characteristics, nature, and/or success of OpenEvidence or Doximity in any way.

106.    OpenEvidence's false and misleading claims have a tendency to confuse, mislead, and deceive a substantial segment of its audience as to the real and relative success of OpenEvidence and Doximity in the medical AI industry, and the characteristics of their AI platform offerings.

107.    OpenEvidence's false and misleading statements constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

108.    The unfair and deceptive events described above occurred primarily and substantially in Massachusetts, in which OpenEvidence does business, conducts its principal operations, and maintains its headquarters.

109.    As a result of the unfair and deceptive conduct of OpenEvidence, Doximity sustained damages including, but not limited to, damage to its reputation, damage to its relationships with existing and prospective customers, loss of customers and prospective customers, and loss of business opportunities. Doximity's damages include actual damages in the form of lost profits from reduced demand for Doximity GPT; the disgorgement of any profits that OpenEvidence unfairly realized, retained, or gained as a result of its false and misleading advertising; and the costs associated with this action.

## COUNT III
### (Defamation, Mass. G.L. Ch. 231, § 92.)

110.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

111.     Upon information and belief, OpenEvidence published false and defamatory statements about Doximity to third parties, in violation of Massachusetts common law principles of defamation as codified in Mass. G.L. ch. 231, § 92.

112.    The false and defamatory statements included, without limitation:

    a.    Using a graph comparing monthly visits to OpenEvidence by both non-clinicians and clinicians with monthly visits to the "Doximity AI" domain by clinicians only to declare Doximity a "Loser in the AI Race," while omitting visits to Doximity's app and the doximity.com domain;

    b.    Claiming that Doximity is ranked lower than OpenEvidence in a "for Doctors" category within the Apple App Store, even though no such category exists in the Apple App Store;

    c.   Claiming that Doximity's stock price "underperforms McDonald's over the last four years," when Doximity's stock has outperformed McDonald's (NYSE: MCD) over the three years it has been publicly listed;

    d.   Misrepresenting Doximity's disclosures and claiming that took Doximity "11 years" to get to 300,000 users; and

    e.   Claiming without basis that Doximity has 300,000 Monthly Active Users (MAUs) and falsely attributing that figure to Doximity.

113.    These statements are defamatory because they expose Doximity to hatred, contempt, ridicule, or obloquy, and tend to injure Doximity in its business by falsely diminishing the perceived quality of Doximity's products and success in the marketplace among investors, employees, and current and potential customers.

114.    The statements are defamatory *per se* because they charge Doximity with incompetence and unfitness in its business as a provider of medical information to healthcare professionals, falling within the category of statements that are actionable without proof of special damages under Massachusetts law.

115.    The defamatory statements were published to third parties including physicians, employees, and current and prospective customers upon which Doximity depends for revenue.

116.    The statements are false, as evidenced by the independent investigation and verification set forth above.

117.    OpenEvidence knew or should have known that the statements were false when made, as they included easily verifiable claims for which OpenEvidence possessed and even admitted to possessing facts rendering the statements false.

## **PRAYER FOR RELIEF (AS TO DOXIMITY'S COUNTERCLAIMS)**

WHEREFORE, Counterclaim-Plaintiff Doximity respectfully requests that this Court

grant the following relief:

1.     A judgment that Counterclaim-Defendant OpenEvidence has made false and

misleading statements in violation of 15 U.S.C. § 1125;

2.     A judgment that Counterclaim-Defendant OpenEvidence engaged in unfair and

deceptive acts and practices through the creation of a series of false and misleading

advertisements in violation of Mass. G.L. c. 93A, §§ 2 and 11;

3.     A judgment that Counterclaim-Defendant OpenEvidence published false and

defamatory statements about Doximity to third parties, in violation of Massachusetts common

law principles of defamation as codified in Mass. G.L. ch. 231, § 92;

4.     Enter a permanent injunction, including an order restraining OpenEvidence, and

its officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or

acting in concert with it, from further promotion and distribution of the false and misleading

advertisements and statements; requiring OpenEvidence to publish a statement explaining that its

advertisements are not accurate and withdrawing them from circulation; requiring OpenEvidence

to send notice of the withdrawal of its advertisements to all parties who received or saw its

advertisements; requiring OpenEvidence to send corrections to any parties to which it has

previously made false and misleading statements; and restraining OpenEvidence from engaging

in similar false and misleading advertising claims in the future;

5.     Order that OpenEvidence pay Doximity the damages Doximity has sustained by

reason of the conduct alleged herein;

6.     Order that OpenEvidence pay the costs and attorneys' fees of this action as

provided in 15 U.S.C. § 1117 and other applicable law;

7.    Order that OpenEvidence pay multiple damages and attorneys' fees as provided by Mass. Gen. L. c. 93A and other applicable law;

8.    Order that OpenEvidence pay pre- and post-judgment interest; and

9.    Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL (AS TO DOXIMITY'S COUNTERCLAIMS)

Doximity respectfully requests a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

Dated:  September 17, 2025                 Respectfully submitted,
        Boston, Massachusetts

                                          /s/ *James R. Carroll*
                                          James R. Carroll (BBO #554426)
                                          SKADDEN, ARPS, SLATE,
                                             MEAGHER & FLOM LLP
                                          500 Boylston Street
                                          Boston, Massachusetts 02116
                                          (617) 573-4800
                                          james.carroll@skadden.com

                                          William E. Ridgway (*pro hac vice*)
                                          Brian O'Connor (*pro hac vice*)
                                          SKADDEN, ARPS, SLATE,
                                             MEAGHER & FLOM LLP
                                          320 S. Canal Street
                                          Chicago, Illinois 60606
                                          (312) 407-0700
                                          william.ridgway@skadden.com
                                          brian.oconnor@skadden.com

                                          Bijal V. Vakil (*pro hac vice*)
                                          SKADDEN, ARPS, SLATE,
                                             MEAGHER & FLOM LLP
                                          525 University Avenue
                                          Palo Alto, California 94301
                                          (650) 470-4500
                                          bijal.vakil@skadden.com

                                          *Counsel for Defendants*
                                          *Doximity, Inc., Jey Balachandran,*
                                          *and Jake Konoske*