IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

OPENEVIDENCE INC.,

Plaintiff,

v.

DOXIMITY, INC., JEY
BALACHANDRAN, JAKE KONOSKE,
PATHWAY MEDICAL, INC., LOUIS
MULLIE, JONATHAN HERSHON ST-
JEAN, HOVHANNES KARAPETYAN,
ERIC YAMGA, KHUDHUR
MOHAMMED, and VINCE ROY

Defendants.

Civil Action No. 1:25-cv-11802-RGS

## MEMORANDUM IN SUPPORT OF OPENEVIDENCE'S MOTION TO DISMISS DOXIMITY'S COUNTERCLAIMS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    A.    The Parties ................................................................................................................ 2

    B.    Doximity Misappropriated Physician Identities to Gain Unauthorized Access to the OpenEvidence Platform ......................................................................................... 2

    C.    Doximity Files Retaliatory Counterclaims ............................................................. 2

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.       DOXIMITY FAILS TO STATE A LANHAM ACT FALSE ADVERTISING CLAIM ............................ 4

    A.    The NPI Verification Claims Fail Because Doximity Identifies No Statement and Alleges No Falsity ........................................................................................................ 4

    B.    The "No Hallucinations" Claims Are Neither Actionable Nor False ..................... 5

            1.    The Alleged Statements Are Not Commercial Advertising .......................... 5

            2.    Doximity Fails to Plausibly Allege Falsity ................................................... 7

    C.    The USMLE Claim Is Neither Actionable Nor False ............................................ 7

    D.    The "Metrics" Claims Are True and/or Non-Actionable ....................................... 8

            1.    The "Loser in the AI Race" Statement .......................................................... 8

            2.    OpenEvidence's "#1 For Doctors" Advertisement ....................................... 9

    E.    The "McDonald's" Stock Performance Claim is Demonstrably True ................... 11

    F.    The "Pitch Decks" Are Not Public Advertisements ............................................. 12

    G.    The HIPAA Compliance Claims Are Legal Opinion ........................................... 12

    H.    Doximity's Attempt To Plead A Catch-All Lanham Act Claim Fails .................. 13

    I.    Doximity Fails to Plead Proximate Causation of Harm ....................................... 13

II.     DOXIMITY FAILS TO STATE A DEFAMATION CLAIM (COUNT III) ............................ 14

    A.    The Coatue Graph ................................................................................................. 14

    B.    The "#1 For Doctors" Statement .......................................................................... 15

    C.    The "McDonald's Statement" ............................................................................... 16

    D.    The Purported Pitch Decks .................................................................................. 16

    E.    Doximity Fails To Plausibly Allege Harm ........................................................... 17

III.    DOXIMITY FAILS TO STATE A CHAPTER 93A CLAIM (COUNT II) .............................. 18

CONCLUSION ...................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*4MVR, LLC v. Hill,*
 2015 WL 3884054 (D. Mass. June 24, 2015) ........................................................................18

*Abitron Austria GmbH v. Hetronic Int'l, Inc.,*
 600 U.S. 412 (2023) ................................................................................................................6

*Amrak Prods., Inc. v. Morton,*
 410 F.3d 69 (1st Cir. 2005) ...................................................................................................15

*Arantzazu Zuzene Galdos-Shapiro v. The Town of Great Barrington,*
 2025 WL 2959878 (D. Mass. Oct. 17, 2025) .........................................................................15

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................................................3

*Azurity Pharmaceuticals, Inc. v. Edge Pharma, LLC,*
 45 F.4th 479 (1st Cir. 2022) ..............................................................................................8, 12

*BBJ, Inc. v. MillerCoors, LLC,*
 2015 WL 4465410 (D. Mass. Jul. 21, 2015) ..........................................................................17

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) ....................................................................................................3, 13, 16

*Bern Unlimited, Inc. v. Burton Corp.,*
 25 F. Supp. 3d 170 (D. Mass. 2014) ......................................................................................10

*Bose Corp. v. Consumers Union of the U.S., Inc.,*
 57 F.R.D. 528 (D. Mass. 1973) ..............................................................................................17

*Boule v. Hutton,*
 328 F.3d 84 (2nd Cir. 2003) ....................................................................................................6

*Burke v. Town of Walpole,*
 2003 WL 23327539 (D. Mass. Aug. 5, 2003) .......................................................................15

*Carnelli v. Bell at Salem Station,*
 2019 WL 929624 (Mass. App. Ct. Feb. 25, 2019) .................................................................18

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,*
 284 F.3d 302 (1st Cir. 2002) ...............................................................................................4, 13

*Clemente Properties, Inc. v. Pierluisi Urrutia,*
 693 F. Supp. 3d 215 (D.P.R. 2023) ........................................................................................14

*Clorox Co. P.R. v. Proctor & Gamble Com. Co.*,
　228 F.3d 24 (1st Cir. 2000) ................................................................10

*Coach, Inc. v. Sapatis*,
　994 F. Supp. 2d 192 (D.N.H. 2014)......................................................6

*DiCroce v. McNeil Nutritionals, LLC*,
　640 F. Supp. 3d 182 (D. Mass. 2022) ..................................................10

*Duty Free Americas Inc. v. Estee Lauder Cos.*,
　797 F.3d 1248 (11th Cir. 2015) .............................................................6

*F.T.C. v. Direct Marketing Concepts, Inc.*,
　624 F.3d 1 (1st Cir. 2010)................................................................9, 11

*FAMM Steel, Inc. v. Sovereign Bank*,
　571 F.3d 93 (1st Cir. 2009).................................................................18

*Ferring Pharmaceuticals Inc. v. Braintree Laboratories, Inc.*,
　38 F. Supp. 3d 169 (D. Mass. 2014) ......................................................4

*First Health Grp. Corp. v. BCE Emergis Corp.*,
　269 F.3d 800 (7th Cir. 2001) ..............................................................12

*Gattineri v. Wynn MA, LLC*,
　93 F.4th 505 (1st. Cir. 2024)...............................................................18

*Hayes v. Mirick*,
　378 F. Supp. 3d 109 (D. Mass. 2019) ..................................................17

*Hogan v. Teamsters Local 170*,
　495 F. Supp. 3d 52 (D. Mass. 2020) ....................................................14

*Imagine Medispa, LLC v. Transformations, Inc.*,
　999 F. Supp. 2d 873 (D. W.Va. 2014) ...................................................5

*Kaiser v. Kirchick*,
　662 F. Supp. 3d 76 (D. Mass. 2023) ....................................................17

*Levinsky's v. Wal-Mart Stores, Inc.*,
　127 F.3d 122 (1st Cir. 1997)...............................................................14

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
　572 U.S. 118 (2014)............................................................................13

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
　142 F.3d 26 (1st Cir. 1998).................................................................16

*McCabe v. Rattiner*,
　814 F.2d 839 (1st Cir. 1987)...............................................................14

*Mulvhill v. Spalding Sports, Worldwide, Inc.*,
 184 F. Supp. 2d 99 (D. Mass. 2002) ........................................................3, 16

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
 457 F. Supp. 3d 207 (E.D.N.Y. 2020) .............................................................7

*Park Drive Towing, Inc. v. City of Revere*,
 809 N.E.2d 1045 (2004)); .............................................................................18

*Pattison v. Town of South Hadley*,
 1993 WL 343675 (D. Mass. Aug. 30, 1993) ..................................................15

*Phantom Touring, Inc. v. Affiliated Publications*,
 953 F.2d 724 (1st Cir. 1992) ..........................................................................14

*Piccone v. Bartels*,
 785 F.3d 766 (1st Cir. 2015) .....................................................................15, 16

*Pietrantoni v. Corcept Therapeutics Inc.*,
 640 F. Supp. 3d 197 (D. Mass. 2022) .............................................................11

*RainSoft v. MacFarland*,
 350 F. Supp. 3d 49 (D.R.I. 2018) .....................................................................6

*Ravnikar v. Bogojavlensky*,
 782 N.E.2d 508 (2003)....................................................................................17

*Seelig v. Infinity Broadcasting Corp.*,
 97 Cal. App. 4th 798 (Cal. Ct. App. 2002) ....................................................14

*Shay v. Walters*,
 702 F.3d 76 (1st Cir. 2012)........................................................................15, 16

*Ultra-Temp Corp. v. Advanced Vacuum Sys. Inc.*,
 27 F. Supp. 2d 86 (D. Mass. 1998) .................................................................12

*Wang Yan v. ReWalk Robotics Ltd.*,
 330 F. Supp. 3d 555 (D. Mass. 2018) .............................................................11

## Statutes

29 U.S.C.A. § 1181 et seq.................................................................................12

HIPAA ..............................................................................................................12

Lanham Act.................................................................1, 3, 4, 5, 6, 8, 11, 12, 13, 18

## <u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(6)...............................................................................................3, 4

*OpenEvidence Creates the First AI in History to Score a Perfect 100% on the United States Medical Licensing Examination (USMLE)*, OPENEVIDENCE (Aug. 15, 2025) ..........8

Restatement (Second) of Torts § 575 cmt. b (1977)....................................................17

## INTRODUCTION

After admitting to systematically impersonating physicians, stealing their government-issued credentials, and launching cyberattacks against OpenEvidence's platform (Answer ¶¶ 6, 9, 56, 59–60, 64), Doximity responds with counterclaims attempting to recast itself as the victim. But its three counterclaims—false advertising under the Lanham Act, defamation, and Chapter 93A—are fatally deficient.

Doximity fails to identify a single actionable statement for entire categories of allegedly false advertisements. For example, regarding "False Claims About User Verification and NPI Counts," Doximity vaguely alleges that "OpenEvidence deceptively touts its credentials" by claiming to limit access to its platform to healthcare professionals ("HCP") with National Provider Identifiers ("NPI") (Counterclaim ¶ 16)—without citing any specific statement. Remarkably, while acknowledging that OpenEvidence prompts users for NPI numbers after exhausting their limited free searches, Doximity argues OpenEvidence's (unidentified) statements are false because NPI numbers "are public and available for free download." *Id.* ¶ 18. *But they are not free for anyone to use.* Doximity essentially claims false advertising because OpenEvidence says it limits access to HCPs, yet users could lie and improperly access the system—exactly what Doximity's executives admitted doing. That is like a bank robber suing for false advertising because the bank advertised its vault as "secure" but he breached it with a stolen combination. Where Doximity does identify statements, they are either demonstrably true, attributable to third parties, non-actionable opinion, or fail basic pleading requirements.

Doximity's defamation claim, based largely on the same statements, fares no better—failing the heightened pleading standards required for defamation. And because its Chapter 93A claim rests entirely on the statements alleged in its Lanham Act and defamation claims, it too must be dismissed.

Doximity's counterclaims are a transparent attempt to distract from its own admitted misconduct. Each is fatally deficient and should be dismissed with prejudice.

1

# BACKGROUND

## A.    The Parties

OpenEvidence, founded by Daniel Nadler and Zachary Ziegler, operates the world's leading AI-powered medical information platform.  Amended Complaint ("AC") ¶ 21.  Doximity is a professional network for healthcare professionals.  *Id.* ¶ 22; Counterclaim ¶ 1.  Recently, in response to the growing and lucrative AI market, Doximity ventured into AI-powered medical tools.  AC ¶ 22.

## B.    Doximity Misappropriated Physician Identities to Gain Unauthorized Access to the OpenEvidence Platform

Doximity's CEO has publicly announced his company's intention to compete directly with OpenEvidence.  *Id.* ¶ 5.  But, Doximity's competition has included unauthorized access and use of the OpenEvidence platform.  *Id.* ¶¶ 53–70.  Because OpenEvidence restricts full platform access to HCPs with valid NPIs, Doximity executives and employees impersonated physicians by misappropriating NPIs to gain unauthorized access to OpenEvidence's platform.[1]  *Id.* ¶¶ 57–58.  There is no dispute about this—Doximity admits its misconduct in its Answer.  Answer ¶¶ 6, 9, 56.  Once they gained unauthorized access to OpenEvidence, Doximity's executives and employees began executing sophisticated prompt injection and prompt stealing attacks to attempt to extract OpenEvidence's proprietary system prompt code and other proprietary information.  AC ¶¶ 60–61, 64; Answer ¶¶ 59–60, 64.  OpenEvidence filed suit on June 20, 2025.  Dkt. 1.

## C.    Doximity Files Retaliatory Counterclaims

On September 17, 2025, Doximity filed three counterclaims alleging that OpenEvidence violated

---

[1]    Pathway Medical, Inc., another competitor, engaged in strikingly similar misconduct. Wherein, Pathway's executives created false personas, used misappropriated NPI credentials, and executed hundreds of queries through the OpenEvidence platform.  AC ¶¶ 74–84.  On February 26, 2025, OpenEvidence filed suit against Pathway and six of its employees for this misconduct.  AC ¶ 72.  In July 2025—after OpenEvidence filed suit against Pathway, and while this litigation against Doximity was pending—Doximity acquired Pathway for $63 million, purchasing all outstanding shares and making Pathway a wholly-owned subsidiary.  AC ¶¶ 85–86.  OpenEvidence filed an Amended Complaint on October 29, 2025, adding Pathway and the individual Pathway defendants to this action.

the false advertising provision of the Lanham Act, the Massachusetts unfair competition statute, and the Massachusetts defamation statute.  Counterclaim ¶¶ 92–117.  Each claim largely rests on these same categories of statements or representations: 1) claiming that OpenEvidence limits platform access to healthcare professionals and verifies NPIs; 2) statements regarding the "accuracy" of the OpenEvidence platform; 3) advertisements related to doctors' preference for OpenEvidence; 4) statements regarding Doximity's growth or performance; 5) statements regarding patient confidentiality; and 6) a vague catch-all category for "any other advertisement, marketing, or other statement that could misrepresent OpenEvidence or Doximity." *Id.* ¶ 95.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  It is insufficient for a pleading to offer mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Rather, a pleading requires more than just "naked assertion[s]" without "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Doximity's counterclaims fall short of this standard, offering little more than the "labels and conclusions" and "naked assertions" that *Iqbal* and *Twombly* expressly forbid.

"In Massachusetts, defamation claims are subject to special pleading requirements."  *Mulvhill v. Spalding Sports, Worldwide, Inc.*, 184 F. Supp. 2d 99, 103–04 (D. Mass. 2002).  "The Massachusetts Supreme Judicial Court has stated that defamation traditionally is a disfavored action, and that courts have applied a stricter standard to complaints for defamation by requiring defamation plaintiffs to plead the elements of their claims with specificity in order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Id.* "Specifically, to survive a motion to dismiss, a defamation plaintiff must plead: (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the

3

alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity

of those statements." *Id.*

**ARGUMENT**

**I.     DOXIMITY FAILS TO STATE A LANHAM ACT FALSE ADVERTISING CLAIM**

To state a false advertising claim under the Lanham Act (15 U.S.C. § 1125(A)), a plaintiff must

allege: "(1) the defendant made a false or misleading description of fact or representation of fact in a

commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in

that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the

tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading

statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the

misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its

products."[2] *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002).

**A.     The NPI Verification Claims Fail Because Doximity Identifies No Statement and Alleges No Falsity**

Doximity alleges that "OpenEvidence deceptively touts its credentials by making claims in its

advertising and marketing that it limits access to its platform to healthcare professionals that have National

Provider Identifier (NPI)."  Counterclaim ¶ 16.  This claim fails at the threshold.

*First*, Doximity never identifies what OpenEvidence actually said.  The allegation that

OpenEvidence makes "false and misleading statements . . . [by] [c]laiming that like Doximity,

OpenEvidence limits access to its platform to healthcare professionals, including by falsely representing

that OpenEvidence verifies that users have a National Provider Identifier (NPI)" (Counterclaim ¶ 95), is

not a quote and identifies no specific statement.  Without identifying *actual* statements and the specific

---

[2]   Even if the Court were to find that Doximity stated a Lanham Act claim based on certain statements, it should dismiss the claim to the extent based on other alleged statements that the Court find are not plausibly alleged to be actionable.  *See Ferring Pharmaceuticals Inc. v. Braintree Laboratories, Inc.*, 38 F. Supp. 3d 169, 186 (D. Mass. 2014)

4

forms of communication, Doximity fails to provide the specificity necessary to state a claim under the false advertising provision of the Lanham Act. *See Imagine Medispa, LLC v. Transformations, Inc*., 999 F. Supp. 2d 873, 881–82 (D. W.Va. 2014) (holding that pleading generally that a defendant "produced and caused to be aired false and misleading [] advertisements concerning their services," without any additional specifics, was "nothing but a conclusory allegation that fails").

*Second*, even accepting Doximity's characterization, the claim fails because Doximity admits OpenEvidence *does* require NPIs for full access[3] to its platform: "After several searches, users are prompted to enter an NPI number" (Counterclaim ¶ 18), and Doximity admits its executives misappropriated NPIs precisely *because* that was the only way to gain full access to OpenEvidence. AC ¶ 9.

That Doximity's executives successfully used *stolen* NPIs to gain access (*Id.* ¶ 18) no more proves falsity than a thief using a stolen vault combination proves a bank's security claims are false. Successfully committing fraud to circumvent security does not make the security representation false.

## B.    The "No Hallucinations" Claims Are Neither Actionable Nor False

### 1.    The Alleged Statements Are Not Commercial Advertising

Doximity identifies two statements about hallucinations: one allegedly by co-founder Zachary Ziegler ("Ziegler Statement") that OpenEvidence's platform "was not at risk of hallucinations" (Counterclaim ¶ 29), and one by Sequoia Capital ("Sequoia Capital Statement") that "[t]here are no hallucinations" (*id.* ¶ 30). Neither constitutes commercial advertising.

For the Ziegler statement, Doximity alleges only that "Australia Doctor Group reported" it (*id.* ¶ 29)—Doximity alleges no context, audience, or purpose establishing it as "commercial speech" made "with the intent of influencing potential customers" and "disseminated to the consuming public in such a

---

[3]  Like OpenEvidence, Doximity distinguishes between free limited access to its platform (for everyone), and "full access to Doximity's platform," which allegedly is restricted to "medical professionals." Counterclaims ¶ 23.

way as to constitute 'advertising' or 'promotion.'" *RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 61–62 (D.R.I. 2018) (internal citations omitted).  A third-party report of an executive's statement, without more, cannot establish commercial advertising.  *See Boule v. Hutton*, 328 F.3d 84, 91–92 (2nd Cir. 2003) (explaining that a quote in an article does not automatically qualify as commercial advertisement to be actionable under the Lanham Act, and stating that where the quote is "inextricably intertwined with the reporters' coverage" of a "matter of public concern," it is not actionable).  In *Boule*, the court held that neither the article nor the quote provided in that article could be subject to the Lanham Act because the speech was not "commercial."  *Id.*  Here, Doximity does not even cite or attach the article containing the alleged statement let alone plead sufficient facts to determine whether the alleged quote constitutes commercial advertising.  This is fatal to Doximity's claim.

Further, Doximity claims that the alleged quote appears in an article for Australia  Doctor Group, which OpenEvidence presumes is an Australian news outlet.  Section 1125(a)(1) of the Lanham Act, however, does not have extraterritorial reach.  *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023).  Therefore, this quote cannot serve as a basis for a false advertising claim under the Lanham Act.

The Sequoia Capital statement similarly fails.  Doximity conclusorily alleges OpenEvidence "disseminated [it] through its primary investor" (Counterclaim ¶ 30) but provides no facts alleging OpenEvidence controlled or authorized the statement.  The First Circuit has not recognized contributory false advertising.  *See, e.g., Coach, Inc. v. Sapatis*, 994 F. Supp. 2d 192, 201 (D.N.H. 2014) (acknowledging that the First Circuit had not addressed the concept of "contributory false advertising").  And courts hold that mere publication by a third party is insufficient without alleged facts showing coordination or control.  *See Duty Free Americas Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1201, 1279 (11th Cir. 2015) (declining to find contributory false advertising where there were "no facts" to "suggest the existence of coordinated action or encouragement, much less inducement" of the third-party).

### 2.    Doximity Fails to Plausibly Allege Falsity

Doximity's attempt to allege that the "no hallucination" statements are false consists entirely of citations to anonymous online comments (Counterclaim ¶ 32) without identifying any specific examples of OpenEvidence hallucinating.  Moreover, while Doximity alleges that OpenEvidence "strings together a system of third-party applications, including LLMs" (Counterclaim ¶ 27), and that "LLMs . . . sometimes produce 'hallucinations'" (Counterclaim ¶ 28), it never alleges that OpenEvidence's specific implementation—its system of retrieval, verification, and citation—produces hallucinations.  Doximity's generic observation about LLMs generally does not establish that OpenEvidence's particular platform, with its specific safeguards and architecture, hallucinates.

At most, Doximity points to vague and anonymous complaints about the accuracy of OpenEvidence more generally (Counterclaim ¶ 32), which falls far short of alleging that statements about hallucinations are false.  Absent concrete allegations or examples showing OpenEvidence actually hallucinated, Doximity cannot meet its burden to plausibly allege falsity. *See N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 223–24 (E.D.N.Y. 2020) (allegations containing only conclusory assertions without "additional information suggesting why it is false" fail to "raise that allegation above the speculative level").

### C.    The USMLE Claim Is Neither Actionable Nor False

Doximity's claims about OpenEvidence's 100% USMLE score (Counterclaim ¶¶ 34–38) also fail. First, the claim is based on comments by a Substack user—not a medical professional, a testing expert, or anyone with identified credentials—who allegedly asserted that OpenEvidence failed to provide correct answers to "*NEJM* questions," not *USMLE* questions.  *Id.*   ¶ 36.   Doximity cannot establish that OpenEvidence's claimed USMLE score is false by pointing to alleged incorrect answers on a different test.

Second, Doximity's allegation that OpenEvidence "acknowledges that it answered a question

incorrectly" (*id.* ¶ 37) actually confirms accuracy—the very announcement Doximity cites to support its claim explains that licensed physicians verified OpenEvidence's answer was medically correct and the official answer was wrong. *See OpenEvidence Creates the First AI in History to Score a Perfect 100% on the United States Medical Licensing Examination (USMLE)*, OPENEVIDENCE (Aug. 15, 2025) www.openevidence.com/announcements/openevidence-creates-the-first-ai-in-history-to-score-a-perfect-100percent-on-the-united-states-medical-licensing-examination-usmle ("Additionally, we found that one question, question 125 from the Step 3 exam, gives an incorrect answer. This question was reviewed by seven independent psychiatrists, who agreed with the OpenEvidence answer.").

Moreover, Doximity's perfunctory, in-the-alternative assertion that the statement is "misleading" (Counterclaim ¶ 38), is conclusory.  Doximity pleads no facts explaining how an accurate statement about verified test performance could be misleading. *See Azurity Pharmaceuticals, Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 498 (1st Cir. 2022) (dismissing claim where plaintiff alleged only that statements were "materially misleading and [] intended to induce health care providers" and not "how" statement was misleading).

## D.    The "Metrics" Claims Are True and/or Non-Actionable

Next, Doximity challenges statements "[p]romoting fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity." Counterclaims ¶ 95.  This category of statements does not plead a plausible claim of false advertising under the Lanham Act because the statements alleged for this category are not actionable and further Doximity has failed to plead facts to support their allegation that these statements are false or misleading.

### 1.    The "Loser in the AI Race" Statement

Doximity challenges an OpenEvidence LinkedIn post from May 15, 2025 featuring a graph created by Wall Street hedge fund Coatue titled "Doximity is a Loser in the AI Race."  Counterclaim ¶ 43. OpenEvidence reposted the graph with a caption stating it "highlights the exponential growth of

OpenEvidence among doctors." *Id.*  Doximity's falsity claim fails on its face.

*First*, while Doximity alleges the graph misleadingly shows "general user population" rather than "doctors," (*id.* ¶ 45), Doximity admits that full OpenEvidence access requires users to input their NPI (*id.* ¶ 18), which only healthcare practitioners lawfully may use —making the statement literally true.

*Second*, Doximity claims the graph is misleading because it "only includes traffic to the 'Doximity AI' domain," not Doximity's app, and a "comparison of traffic to doximity.com and openevidence.com from the same source (SimilarWeb) and timeframe, shows that traffic to Doximity is nearly double that of OpenEvidence. *Id.* ¶¶ 46-47.  It is unclear why Doximity thinks this makes the graph misleading. Coatue explicitly states that the graph reflects use of "AI Products," not overall website traffic, and including Doximity app traffic would make no sense—Doximity's website for its app describes it as a telemedicine tool, not an AI platform.  *See* https://www.doximity.com/app (last visited Nov. 7, 2025).

*Third*, calling Doximity a "loser" is quintessential non-actionable puffery—"exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *F.T.C. v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 11 (1st Cir. 2010).

## 2.    OpenEvidence's "#1 For Doctors" Advertisement

Doximity also challenges an advertisement stating "OpenEvidence is 'America's #1 App for Doctors'" and "Doximity is '#5 for Doctors,'" displaying Apple App Store Medical category rankings. Counterclaim ¶ 50.  This claim fails for multiple reasons.

*First*, Doximity fails to plausibly allege falsity.  Doximity does not dispute that the Apple App Store has a "Medical" category, nor does Doximity dispute that OpenEvidence accurately reflects OpenEvidence's and Doximity's rankings in that category.  Doximity also concedes that OpenEvidence clearly explained in the advertisement that "[t]he 'Medical' category on the Apple App Store encompasses all medical apps, including those intended for consumers and non-clinical users." *Id.* ¶ 53.  This disclosure defeats any claim of deception—OpenEvidence accurately stated its ranking in the category while

transparently explaining what the category includes. A statement cannot be false or misleading when accompanied by accurate clarification of exactly what is being measured. *DiCroce v. McNeil Nutritionals, LLC*, 640 F. Supp. 3d 182, 188 (D. Mass. 2022) ("Courts 'routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct.'") Further, as demonstrated by the statement itself (below), OpenEvidence removed from Apple's rankings any app that was intended strictly for consumers, leaving only the apps intended for doctors. That placed OpenEvidence in the #1 spot for apps in the medical category specifically designed for doctors. The alleged advertisement[4], which Doximity failed to include in its Counterclaims, is below:



*Second*, "#1 for doctors" is non-actionable puffery—"exaggerated advertising or unspecified boasting...upon which no reasonable buyer would rely." *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 182 (D. Mass. 2014); *Direct Marketing Concepts, Inc.*, 624 F.3d at 11.

---

[4]    The court may properly consider this alleged advertisement given that it is both "integral to" and "explicitly relied upon" in Doximity's Counterclaims. *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (explaining that "it is well-established that in reviewing the complaint, [the court] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'").

*Third*, Doximity's complaint that Apple's rankings do not measure downloads or reviews (Counterclaim ¶ 54)—noting Doximity has 183,000 reviews versus OpenEvidence's 4,500—is irrelevant. OpenEvidence claimed only to be #1 in Apple's rankings, not in downloads or reviews. Doximity's quarrel is with Apple's methodology, not OpenEvidence's truthful statement about its ranking.   Accepting Doximity's theory would subject every company citing any ranking to Lanham Act liability whenever someone disagreed with the ranking methodology.

### E.     The "McDonald's" Stock Performance Claim is Demonstrably True

Doximity challenges a May 19, 2025 OpenEvidence LinkedIn post stating "When your CEO drops 'AI' 24 times in a single earnings call . . . But your stock still underperforms McDonald's over the last four years."  Counterclaim ¶ 55.  Even putting aside the fact that the statement *does not mention Doximity by name*, the claim fails.

The Court may take judicial notice of publicly-traded stock prices.  *Wang Yan v. ReWalk Robotics Ltd.*, 330 F. Supp. 3d 555, 563 n.3 (D. Mass. 2018).  From June 24, 2021 to May 19, 2025, McDonald's stock increased 37.67% ($233.33 to $321.23) while Doximity's increased 1.5% ($53.00 to $53.77).  Ex. 1–4.  Doximity's stock thus demonstrably underperformed McDonald's.  Doximity's reference to its "private May 2021 price" and its opening "IPO price" (Counterclaim ¶ 58), are irrelevant because neither of those are prices at which Doximity actually traded on the market.

Doximity further complains that OpenEvidence referenced "four years" when Doximity had been public for "less than four years."  *Id.* ¶ 57.  Again, the Court can take judicial notice of the fact that, at the time of the statement, Doximity had been public for 3 years and 11 months.  *Pietrantoni v. Corcept Therapeutics Inc.*, 640 F. Supp. 3d 197, 204–5 (D. Mass. 2022) (stating that the court may take judicial notice of facts "capable of accurate and ready determination by resort to whose accuracy cannot be reasonably questioned" including "material on government websites").  This one-month difference is immaterial and could not "influence[] the purchasing decision."  *Pegasystems*, 463 F. Supp. 3d at 161

("semantic inaccuracies" do not establish materiality).

**F.     The "Pitch Decks" Are Not Public Advertisements**

Doximity alleges OpenEvidence showed "pitch decks" with false metrics to unidentified "current and prospective clients."  Counterclaim ¶¶ 61–62.  This fails because pitch decks are not "commercial advertising" under the Lanham Act.  Commercial advertising requires "dissemina[tion] sufficiently to the relevant purchasing public."  *Ultra-Temp Corp. v. Advanced Vacuum Sys. Inc.*, 27 F. Supp. 2d 86, 95 (D. Mass. 1998).  One-on-one sales presentations do not qualify—they lack "public dissemination."  *Id.* (holding that "advertising" or "promotion" contemplates "something more in the realm of public dissemination).  Doximity fails to allege: (1) a single person who received the July 2025 pitch deck; (2) how, when, or if it was disseminated; or (3) any facts suggesting broad distribution. Without these basics, there is no commercial advertising.

**G.     The HIPAA Compliance Claims Are Legal Opinion**

Doximity alleges OpenEvidence falsely claims to "protect[] patient confidentiality" by announcing its HIPAA compliance.  Counterclaim ¶¶ 77, 95(e).  But statements about regulatory compliance are non-actionable legal opinion—absent exceptional circumstances that are absent here (*e.g.*, where the regulation is "so clear on its face that no good faith doubt concerning its interpretation would be possible").  *Azurity*, 45 F.4th at 491.

Moreover, while Doximity broadly alleges OpenEvidence's HIPAA compliance claim is "false," it identifies no specific HIPAA provision OpenEvidence allegedly violates—an equally fatal omission.[5] Beyond the HIPAA statement, Doximity points to no other statement about "patient confidentiality [or] handling of patient and physician data" (Counterclaim ¶ 95(e)), leaving no actionable claim.

---

[5]  HIPAA is a complex law comprising multiple statutes with countless interpretive nuances.  29 U.S.C.A. § 1181 et seq.

### H.      Doximity's Attempt To Plead A Catch-All Lanham Act Claim Fails

Doximity attempts to plead a catch-all Lanham Act claim for false advertising based on the sweeping allegation of "[an]y other advertisement, marketing, or other statement that misrepresents, or could be interpreted as misrepresenting, the characteristics, nature, and/or success of OpenEvidence or Doximity in any way." Counterclaim ¶ 95(f). This is the epitome of impermissible pleading—a formulaic recitation of legal elements entirely untethered to factual allegations, *Twombly*, 550 U.S. at 557 (requiring more than "naked assertions" without "further factual enhancement"). The claim must be dismissed.

### I.      Doximity Fails to Plead Proximate Causation of Harm

Doximity fails to plead the final Lanham Act element for any alleged false advertisement—that it "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere*, 284 F.3d at 310–11. Doximity's sole, conclusory allegation of "lost profits from reduced demand for Doximity GPT" (Counterclaim ¶ 99) provides no facts alleging how "economic . . . injury flow[s] directly from the deception wrought by [OpenEvidence's] advertisement." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

Multiple alleged statements—Sequoia's and Ziegler's "hallucination" statements, the USMLE statement, and the LinkedIn "McDonald's" post—do not even mention Doximity, and Doximity does not allege facts explaining how these statements resulted in "reduced demand for Doximity GPT," just one of Doximity's many products. Counterclaim ¶ 99. Doximity's assertion that the USMLE claim was "designed to give physicians . . . the false impression that the OpenEvidence platform is more accurate" (*id.* ¶ 38), is too attenuated to establish proximate cause. Doximity is thus unable to allege that "economic or reputational injury flow[s] directly from the deception wrought by [OpenEvidence's] advertisement." *Lexmark Int'l*, 572 U.S. at 133. Such "damages allegations—stating no more than that they have been harmed from the alleged violation of the statute—come nowhere close to meeting the *Iqbal* and *Twombly*

plausibility requirement." *Clemente Properties, Inc. v. Pierluisi Urrutia*, 693 F. Supp. 3d 215, 246 (D.P.R. 2023).

## II.    <u>DOXIMITY FAILS TO STATE A DEFAMATION CLAIM (COUNT III)</u>

Massachusetts defamation claims require heightened pleading. *Mulvihill,* 184 F. Supp. 2d at 103–04. To survive a motion to dismiss, a defamation plaintiff must allege: "(a) the individual or individuals who uttered the defamatory statements; (b) the approximate dates of the defamation; (c) the way the defamation was uttered, *i.e.*, orally, or by office memorandum, or by newspaper publication; (d) the third party or parties who heard or read the defamatory statement; and (e) the precise wording of at least one sentence of the defamation." *Id.* at 104. The complaint must set forth the "who, what, when, and where" of the alleged defamatory statements with sufficient particularity to "give Defendants fair notice of the factual basis for Plaintiff's defamation claim." *Hogan v. Teamsters Local 170*, 495 F. Supp. 3d 52, 61–62 (D. Mass. 2020). Doximity fails to meet that standard.

### A.    <u>The Coatue Graph</u>

The "Doximity is a Loser in the AI Race" statement (Counterclaim ¶ 112(a)), fails three times over. *First*, Doximity concedes, as it must, that OpenEvidence did not make the statement—Coatue did. Counterclaim ¶ 43; *supra* at 8.

*Second*, "loser" is non-actionable opinion lacking a "single, readily ascertainable meaning." *See Levinsky's v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 129–30 (1st Cir. 1997) (reversing district court's holding that "trashy" had a "readily ascertainable meaning"); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir. 1992) (rejecting defamation claim based on calling a play "fake," "phony," and a "rip-off, a fraud, a scandal, a snake-oil job"); *McCabe v. Rattiner*, 814 F.2d 839, 842–823 (1st Cir. 1987) (similar regarding "scam"); *see also Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 810-11 (Cal. Ct. App. 2002) ("Loser is a description applied to persons in many contexts that bears no potential defamatory inference").

14

*Third*, Doximity fails to plausibly allege the statement is false. *See Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) ("[D]efamation requires a false statement at its core"). "To survive a motion to dismiss, a defamation plaintiff must plead . . . the falsity of those statements." *Burke v. Town of Walpole*, 2003 WL 23327539 at *11 (D. Mass. Aug. 5, 2003) (quoting *Pattison v. Town of South Hadley,* 1993 WL 343675, at *3 (D. Mass. Aug. 30, 1993)). As shown *supra* at 8, the graph depicts AI product traffic. Thus, Doximity's assertion that the graph is false because it does not account for all traffic to Doximity products (most of which have nothing to do with AI) makes no sense. Counterclaim ¶ 46–47.

## B.    The "#1 For Doctors" Statement

This claim fails because Doximity fails to plead a defamatory meaning, or that "the statement was defamatory such that it 'could damage the plaintiff's reputation in the community.'" *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012); *see also Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005). ("This threshold question, 'whether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court.'"). As explained *supra* at 9, OpenEvidence's disclaimer stated that "[t]he 'Medical' category on the Apple App Store encompasses all medical apps, including those intended for consumers and non-clinical users." Counterclaim ¶ 53. Taking the "entire context" of the purported advertisement into account, it is not possible for the statement to be susceptible to a defamatory meaning because OpenEvidence took affirmative steps to explain any confusion. *Shay*, 702 F.3d at 81 (when evaluating whether a communication has defamatory meaning, "the court must analyze the statement in light of the totality of the circumstances, including the 'entire context of the publication.'"). Moreover, even accepting Doximity's characterization of the statement, it is aimed at promoting OpenEvidence and says nothing negative about Doximity. There is nothing defamatory about being ranked #5. Doximity fails to explain how a statement that Doximity holds the fifth position in a competitive market of medical applications harms its reputation or subjects it to ridicule or contempt. The statement does not impugn Doximity's competence, fitness, or business practices—it merely reflects relative market positioning at a

15

specific moment in time. It cannot be the case that a company's boasting of its own ranking is deemed defamatory of every other company ranked beneath it.

### C.  The "McDonald's Statement"

The stock comparison (Counterclaim ¶ 112(c)), fails for two reasons. First, it does not identify Doximity by name, thereby precluding defamation. *Arantzazu Zuzene Galdos-Shapiro v. The Town of Great Barrington,* 2025 WL 2959878, at *19 (D. Mass. Oct. 17, 2025) ("adverting to Plaintiff only once in passing and not at all by name, cannot be construed to meet this [defamatory meaning] standard"). Second, the Court can take judicial notice of the fact that the statement is true (*see supra* at 10)— Doximity's and McDonald's historical stock prices are matters of public record and increased 1.5% and 37.67%, respectively, between June 24, 2021, and May 19, 2025—and thus non-actionable. *See Piccone*, 785 F.3d at 771 ("[D]efamation requires a false statement at its core."); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 42 (1st Cir. 1998) ("[T]ruth is an absolute defense to a defamation action").

### D.  The Purported Pitch Decks

Doximity alleges OpenEvidence's pitch decks contained two defamatory statements: (1) it took Doximity "11 years" to get 300,000 users, and (2) Doximity has 300,000 MAUs and OpenEvidence falsely attributed that figure to Doximity. Counterclaim ¶112(d). Both fail Massachusetts's heightened pleading requirements.

Doximity fatally omits how the statements were "uttered" (orally, memorandum, or publication) and which "third party or parties . . . heard or read" them. *Mulvihill*, 184 F. Supp. 2d at 104. Without facts alleging the pitch decks were ever shown to anyone, Doximity cannot establish that "defendant made a statement, concerning the plaintiff, to a third party." *Shay*, 702 F.3d at 81. The naked assertion that OpenEvidence "directly provided false and damaging claims to current and prospective clients" (Counterclaim ¶ 61), is precisely the conclusory allegation that fails under *Twombly*, 550 U.S. at 557. No

16

publication, no defamation. *See Shay*, 702 F.3d at 81 (holding that the first element of defamation is that the "defendant made a statement, concerning the plaintiff, to a third party").

### E.    Doximity Fails To Plausibly Allege Harm

Doximity fails to sufficiently plead harm as to all the challenged statements. A defamation plaintiff must plausibly allege that "[t]he statement either caused the plaintiff economic loss (traditionally referred to as 'special damages' or 'special harm'), or is actionable without proof of economic loss [because it is defamation *per se*]." *Ravnikar v. Bogojavlensky,* 782 N.E.2d 508, 511 (2003). Doximity pleads neither.

*First*, Doximity fails to plead special harm. *Kaiser v. Kirchick*, 662 F. Supp. 3d 76, 101 (D. Mass. 2023) (a defamation plaintiff must usually "show special harm to prevail on a claim of defamation.") Special harm is the "loss of something having economic or pecuniary value." *Id.* (quoting Restatement (Second) of Torts § 575 cmt. b (1977)). Bare, conclusory allegations that "these statements are defamatory" because "they . . . tend to injure Doximity in its business by falsely diminishing the perceived quality of Doximity's products and success in the marketplace" (Counterclaim ¶ 113) and because they caused Doximity "damage to its reputation" (Counterclaim ¶ 109) are insufficient. *See Hayes v. Mirick*, 378 F. Supp. 3d 109, 116 (D. Mass. 2019) (dismissing defamation claim where there was a bare and conclusory pleading of harm related to "injury to [] reputation," as it was not an adequate pleading of special harm/economic loss); *see also BBJ, Inc. v. MillerCoors, LLC*, 2015 WL 4465410 (D. Mass. Jul. 21, 2015) (holding that for a commercial disparagement claim, plaintiffs must "demonstrate that publication of the false statement resulted in a specific loss of sales to identified customers" and that plaintiff who simply alleged "special and general damages, including the monetary loss of many customers" failed to "allege sufficient facts to support special damage" because they did not allege any specific names of customers or facts suggesting diminution in sales following widespread dissemination of the false statement) (internal citations omitted); *see also Bose Corp. v. Consumers Union of the U.S., Inc.*, 57 F.R.D. 528, 530 (D. Mass. 1973) (finding a libel of product claim for special damages

insufficiently particularized because plaintiff failed to "allege[] the 'loss of particular customers by name', nor 'a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication.'"). Here, too, Doximity's conclusory statements, untethered to specific facts about actual economic losses, cannot satisfy the harm element of defamation and fall short of the specificity *Iqbal* and *Twombly* require.

*Second*, Doximity fails to plead defamation *per se*. Doximity alleges that OpenEvidence's purported statements are "defamatory *per se* because they charge Doximity with incompetence and unfitness in its business as a provider of medical information to healthcare professionals." Counterclaim ¶ 114. Yet none of the challenged statements alleges that Doximity "lacks a necessary characteristic of the profession," or creates "'a devastating and continuing impact' on the plaintiff's professional relationship." *Carnelli v. Bell at Salem Station*, 2019 WL 929624, at *2 (Mass. App. Ct. Feb. 25, 2019) (affirming dismissal of defamation claim based on failures to "allege any continuing impact"). Tellingly, Doximity argued in its own motion that characterizing a platform as yielding "unreliable results in certain circumstances, as expected of any AI chatbot" falls well outside the narrow categories of defamation *per se*. Dkt. 31 at 23. Yet that is precisely what Doximity's counterclaim does here—it merely alleges that OpenEvidence characterized statistics and expressed opinions about Doximity's platform that Doximity dislikes, which by Doximity's own standard falls well outside actionable defamation.

## III.    DOXIMITY FAILS TO STATE A CHAPTER 93A CLAIM (COUNT II)

Doximity's Chapter 93A claim fails for the same reasons its Lanham Act and Defamation claims fail. Under Chapter 93A if a "claim is 'derivative of' other claims which fail as a matter of law, the Chapter 93A claim 'must also fail.'" *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st. Cir. 2024) (quoting *Park Drive Towing, Inc. v. City of Revere*, 809 N.E.2d 1045, 1050–51(2004)); *see FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 108 (1st Cir. 2009) (holding that where Chapter 93A claim "is based wholly on [ ] common-law claims" and those "underlying claims fail," the Chapter 93A claim also fails).

A Chapter 93A claim is "merely derivative" when it "centers on the same alleged misconduct." *Gattineri*, 93 F.4th at 512 (quoting *4MVR, LLC v. Hill*, No. 12-cv-10674, 2015 WL 3884054, at *8 (D. Mass. June 24, 2015)). Here, the alleged misconduct under Doximity's Chapter 93A claim is factually identical to the misconduct alleged under its Lanham Act and defamation claims. *Compare* Counterclaim ¶ 105 *with* Counterclaim ¶¶ 95, 112. Doximity's 93A claim also fails because it fails to allege that the misconduct occurred primarily and substantially (or even at all) in Massachusetts. *See Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *7-*9 (D. Mass. Mar. 19, 2014) (dismissing Chapter 93A claim because the complaint "fail[ed] to articulate where defendant committed this misconduct"). Thus the Chapter 93A claim fails as well.

## CONCLUSION

For the foregoing reasons, OpenEvidence respectfully request that the Court grant OpenEvidence's Motion to Dismiss Doximity's Counterclaims, with prejudice.

Dated: November 7, 2025

Respectfully submitted,

*/s/ Stephen Broome*

Stephen Broome (admitted pro hac vice)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Stacylyn M. Doore (BBO# 678449)
Ryan P. Gorman (BBO# 707239)
Vanessa Rodriguez (BBO# 713607)
Zi Chun Wang (BBO# 709803)
stacylyndoore@quinnemanuel.com
ryangorman@quinnemanuel.com
vanessarodriguez@quinnemanuel.com
michellewang@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP

19

111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

Nathan Hamstra (*admitted pro hac vice*)
nathanhamstra@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document filed today through the Court's CM/ECF

system will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF).

<u>/s/ Stephen Broome</u>

Stephen Broome (*admitted pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000