UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OPENEVIDENCE INC., :

               Plaintiff, : Civil Action
                                     No. 25-11802-RGS

    v. : **<u>JURY TRIAL DEMANDED</u>**

DOXIMITY, INC., JEY BALACHANDRAN, :
JAKE KONOSKE, PATHWAY MEDICAL,
INC., LOUIS MULLIE, JONATHAN :
HERSHON ST-JEAN, HOVHANNES
KARAPETYAN, ERIC YAMGA, KHUDHUR :
MOHAMMED, and VINCE ROY,
                                     :

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DOXIMITY, INC. AND PATHWAY MEDICAL, INC.'S AMENDED COUNTERCLAIMS AND DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, AND PATHWAY MEDICAL, INC.'S ANSWER TO AMENDED <u>COMPLAINT AND AMENDED AFFIRMATIVE DEFENSES</u>

### DOXIMITY, INC. AND PATHWAY MEDICAL, INC.'S <u>AMENDED COUNTERCLAIMS</u>

Counterclaim-Plaintiffs Doximity, Inc. ("Doximity") and Pathway Medical, Inc.

("Pathway") allege against Counterclaim-Defendant OpenEvidence Inc. ("OpenEvidence") upon

knowledge as to themselves and their own acts and upon information and belief as to all other

matters, as follows:

### <u>NATURE OF THE COUNTERCLAIMS</u>

1.     Doximity—founded in 2010, more than a decade before OpenEvidence entered

the market—is the leading digital platform for medical professionals in the United States, with

over two million registered members. OpenEvidence is a startup offering clinical decision

support. Both companies offer medical AI platforms designed to help diagnose and treat medical

conditions. In that respect, they compete.

2.     Judging by his unsolicited correspondence to Doximity's female general counsel—which offered unwelcome "hugs" and discussed the two companies in terms of "emperors who breed," "eunuchs," human "seed," and Doximity's "impoten[ce]," *see* ¶ 98, *infra*—OpenEvidence's Founder and CEO, Daniel Nadler, thinks about this competition often.

3.     At its best, fair competition drives innovation, efficiency, and consumer choice. Unfair competition, however, misleads consumers and diverts time, energy, and money away from productive pursuits. OpenEvidence has chosen unfair competition at its worst. Rather than focus time and money on developing technology to ensure that patients receive the best medical care as quickly as possible, which is Doximity's preferred pursuit, OpenEvidence spends its resources on a smear campaign against its competitors.

4.     As one OpenEvidence employee wrote to a colleague: "***Daniel [Nadler] is dead set on making enemies and tilting at Doximity windmills***."

5.     Part and parcel of this campaign are OpenEvidence's three federal lawsuits against competitors Doximity, Pathway, and non-party Veracity Health, alleging that its competitors visited www.openevidence.com and used its free, publicly accessible chatbot for purposes of competitive intelligence. OpenEvidence launched this action with headline-grabbing claims that Doximity stole its "crown jewel" trade secrets by conversing with this chatbot. OpenEvidence then capitalized on the self-generated news coverage of these allegations by spreading it to the Defendants' actual and prospective business partners. Then, before even conducting discovery, OpenEvidence withdrew its sensational claims that its intellectual property was stolen. It had apparently achieved its goals by generating and disseminating negative press coverage. Its newly pared down pleading seeks "nominal damages" for breach of contract, among other relief.

6.     OpenEvidence's unfair competition is not only unproductive, it is unlawful. OpenEvidence has resorted to outright deceit, harassment, and defamation of Doximity and Pathway, those who work there, and even those who simply use or support their products. It knows these actions are unlawful, which is why, in many cases, OpenEvidence has utilized private investigators, "puppet" social media accounts, concealed payments, financially-interested third parties, and anonymous emails to spread falsehoods, harass Doximity's and Pathway's employees, customers, and users, and improperly influence their investors and business partners.

7.     OpenEvidence's pattern of deceit begins with the foundational claim that it uses to attract advertisers and raise millions of dollars: that it is used daily by 25-40% of the physicians in the United States. OpenEvidence lacks any reasonable basis for this claim. To this day, anyone who visits www.openevidence.com—no matter their age or occupation—is presented with a text box, a blinking cursor, and a prompt to "Ask a medical question." While users are eventually prompted to enter a physician's publicly available "NPI" number after extended back-and-forth, OpenEvidence does not actually "verify" that the user is a physician any more than asking someone to provide a bar number "verifies" that the person is a lawyer. In sum, OpenEvidence's foundational claim is fundamentally deceitful.

8.     Similarly, OpenEvidence falsely claimed that its platform is accurate and lacks "hallucinations." It has boasted that OpenEvidence scored 100% on the United States Medical Licensing Examination (USMLE). OpenEvidence knows these claims are false, yet it repeats them, while knowing its users are making "life and death decisions" with the platform.

9.     OpenEvidence has also spread false claims about Doximity and Pathway. Among other things, upon information and belief OpenEvidence has:

a.  Offered financial incentives to third parties to disseminate false and misleading claims to Doximity's potential users, customers, and partners;

b.  Harassed Doximity's users by falsely and in some cases anonymously spreading rumors about "ethical investigations" and ethical concerns if they write about Doximity in a positive sense (or about OpenEvidence in a negative sense);

c.  Created and disseminated fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity and Pathway;

d.  Manipulated data and presented deceptive statistics to support false claims about Doximity's growth, engagement, and stock performance, including as compared to OpenEvidence; and

e.  Claimed that like Doximity and Pathway, OpenEvidence protects patient confidentiality, despite (1) publishing sensitive information about individual patients on its publicly available website, and (2) selling physician queries to advertisers and pharmaceutical companies.

10.     OpenEvidence has also created "puppet" news sites and social media accounts that appear to be independent or disinterested from OpenEvidence but are actually controlled by OpenEvidence and exist only to disparage Doximity. Even worse, it has used a false name to conceal the payments it makes to boost these "puppet" and other misleading posts to Doximity's customers, users, and potential partners. These deceptive practices are designed to mislead consumers into believing that the disparagement is unbiased or independent and violate the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising.

11.     While such tactics may have been permissible in the violent feudal competition that characterized the Late Eastern Han Dynasty—the historical time period that Mr. Nadler gloated about "going deep [] on" in one of his bizarre emails to Doximity—the law has since evolved to forbid them. OpenEvidence's ongoing campaign of misinformation violates federal and state law and must stop.

12.     Doximity and Pathway thus are compelled to bring these claims seeking equitable relief and damages for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); the Mass. Gen. L. c. 93A; and Massachusetts common law principles of defamation as codified in Mass. G.L. ch. 231, § 92.

## THE PARTIES

13.     Counterclaim-Plaintiff Doximity is a corporation organized and existing under the laws of Delaware with its principal executive offices at 500 3rd Street, Suite 510, San Francisco, California 94107.

14.     Counterclaim-Plaintiff Pathway is a corporation organized and existing under the laws of Canada with its principal place of business in Montreal, Canada.

15.     Counterclaim-Defendant OpenEvidence is a corporation organized and existing under the laws of Delaware with its principal place of business at 245 Main Street, Cambridge, Massachusetts 02142.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the Lanham Act claims pursuant to Article III of the Constitution, 28 U.S.C. § 1331, and 15 U.S.C. § 1121.

17.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

18.     This Court has personal jurisdiction over OpenEvidence because OpenEvidence has purposefully availed itself of the benefits of this judicial district by filing its Complaint here.

19.     The venue is proper in this district because the Court has personal jurisdiction over OpenEvidence and OpenEvidence filed this action in this venue.

## FACTUAL ALLEGATIONS

### OpenEvidence's False Claims About User Verification & NPI Counts

20.     OpenEvidence's business is driven in large part by physician usage. As OpenEvidence CEO Daniel Nadler has stated, OpenEvidence's approach is "DTC [direct-to-consumer], which in [OpenEvidence's] case is direct-to-clinician . . . Doctors are consumers."

21.     In an attempt to increase the number of physicians that consume its product (advertisements), OpenEvidence claims to "advance[] medicine "at the speed of **trust**."

22.     Yet OpenEvidence engages in practices that call its trustworthiness into question. Among other things, OpenEvidence makes a variety of false and misleading claims about its platform that are intended to deceive clients about the true size of its physician user base.

23.     For example, OpenEvidence deceptively touts its credentials by claiming in its advertising and marketing that it limits access to its platform to healthcare professionals that have a National Provider Identifier (NPI).

24.     As shown below, those claims include that OpenEvidence is "the most widely used medical AI among **verified** U.S. physicians," and "Logged-in, **NPI-verified** U.S. clinicians use OpenEvidence in the moments that matter":

> **This year, more than 100 million Americans will be treated by a clinician using OpenEvidence.**
>
> As a product, OpenEvidence is an AI copilot for doctors that helps them make high-stakes decisions at the point of care. OpenEvidence is the most widely used medical AI among verified U.S. physicians. To date, we have supported over 100 million AI-powered clinical consultations from U.S. doctors and other frontline clinicians.
>
> ---
>
> **OpenEvidence is free and unlimited for health care professionals.**          Sign Up

> OpenEvidence is the world's leading medical information platform.
>
> **Logged-in, NPI-verified U.S. clinicians** use OpenEvidence in the moments that matter: to make high-stakes treatment decisions at the point of care.

25.     In reality, OpenEvidence does not restrict access to its platform to physicians and other healthcare providers. Instead, OpenEvidence offers its platform for free to the general public. Any person can use OpenEvidence's platform by visiting OpenEvidence's website, https://www.openevidence.com/.

26.     After several searches, users are prompted to enter an NPI number. But OpenEvidence does not actually "verify" that an NPI number entered by a user corresponds with the name associated with that number in the freely accessible National Plan and Provider Enumeration System (NPPES) NPI Registry or otherwise take any steps to determine whether a person seeking access to its platform is or is not a registered physician. NPI names and numbers are public and available for free download at cms.hhs.gov.

27.     On information and belief, OpenEvidence does not even verify whether the 10-digit number a user enters as their NPI number is a registered NPI number at all.

28.     This allows OpenEvidence to inflate its usage numbers for advertisers, by effectively counting every free user as a licensed United States physician or NPI-holder.

29.     OpenEvidence uses its misleading representations about "NPI-verified" users to promote its platform, including by claiming that over 90% of its users are "true-identity physicians."



30.     In a clear contrast to OpenEvidence, to join the Doximity and Pathway platforms, physicians and other healthcare providers must complete an identity and credential verification process.

31.     Doximity, for example, verifies healthcare providers' identities and credentials in several ways, including validating each member's NPI number, conducting paid identity checks of each member's DOB, address, and license, and using challenge questions from IDology and others. Once verified, members gain access to Doximity's network, newsfeed, and workflow tools. Members of the general public who are not medical professionals do not have full access to Doximity's platform.

32.     Thus, by making false and misleading claims about NPI verification, OpenEvidence seeks to improperly inflate the credibility of its product among existing and prospective customers choosing between OpenEvidence, Doximity, and Pathway. OpenEvidence's claims are intended to lead those choosing between Doximity, Pathway, and OpenEvidence to believe that their offerings are equivalent.

33.     In fact, OpenEvidence's CEO, Daniel Nadler, admits that OpenEvidence is not even a healthcare company. In an interview with "No Priors" from September 5, 2025, Nadler stated: "So, I didn't want to build a healthcare company at all. I love Sequoia's quote that OpenEvidence is a consumer internet company masquerading as a healthcare company. I had zero interest in building a healthcare company. OpenEvidence is not a healthcare company."

## OpenEvidence's False and Misleading Claims About Accuracy and "No Hallucinations"

34.     OpenEvidence has also made false, misleading, and dangerous claims regarding the purported accuracy of its AI platform.

35.     OpenEvidence's platform does not contain or operate a large-scale neural network trained on massive datasets for natural language understanding and generation, known as a large language model (LLM). Instead, OpenEvidence strings together a system of third-party applications, including LLMs, such as OpenAI.[1]

36.     LLMs—including the ones OpenEvidence's platform relies on to write its answers—sometimes produce "hallucinations," a well-documented phenomena when AI models produce false, misleading, or fabricated information and present that information as fact.

---

[1]     https://www.theinformation.com/articles/chatgpt-doctors-startup-considers-6-billion-valuation-investment (noting OpenEvidence "uses open-source models to search through medical journals and return useful information and citations," and "uses AI from Google, OpenAI and other providers to write its chatbot's responses").

37.     Indeed, recent research has confirmed that "AI hallucinations are mathematically inevitable, not just engineering flaws," and "large language models will always produce plausible but false outputs, even with perfect data, due to fundamental statistical and computational limits."[2]

38.     Nonetheless, as reported by Australia Doctor Group in the publication AusDoc, OpenEvidence co-founder Zachary Ziegler has claimed OpenEvidence's platform "was not at risk of hallucinations."[3]

39.     Similarly, as reported by EnvZone, OpenEvidence CEO Daniel Nadler has stated to the effect that if OpenEvidence's chatbot "doesn't know the answer, it simply says so—avoiding the risk of hallucinations or false confidence."[4]

40.     In a video promoted by one of OpenEvidence's largest investors, Nadler claimed that "these are life and death decisions that our users are making with the platform ***so it has to be perfect***."[5]

41.     OpenEvidence also disseminated through its primary investor Sequoia the claim that "[t]here are no hallucinations; if the literature is inconclusive, OpenEvidence simply doesn't respond."[6] This claim was designed to lull doctors and patients into a false sense of security about the accuracy of OpenEvidence's answers.

---

[2]     https://www.computerworld.com/article/4059383/openai-admits-ai-hallucinations-are-mathematically-inevitable-not-just-engineering-flaws.html

[3]     https://www.ausdoc.com.au/news/jama-and-nejm-back-1-5-billion-ai-that-cannot-hallucinate-to-answer-doctors-medical-questions/

[4]     https://envzone.com/how-openevidence-became-doctors-most-trusted-teammate/

[5]     https://www.youtube.com/watch?v=UaDChdL1zzE

[6]     https://www.sequoiacap.com/article/partnering-with-openevidence-a-life-saving-healthcare-revolution/.

> Like a ChatGPT for doctors, OpenEvidence automates this information hunt. The platform searches across 35 mill[...] publications—and, thanks to a new content [...]ed on *The New England Journal of Medicine.* There are no hallucinations; if the literature is inconclusive, OpenEvidence simply doesn't respond. And it communicates just like healthcare professionals do—conversationally, and complete with medical charts and graphs.

42. Those claims are false. OpenEvidence does hallucinate at times.

43. Users have repeatedly publicized concrete examples of OpenEvidence hallucinating and providing wrong answers in practice.[7] For example:



> **anon_shmo** · 3d ago
>
> Open Evidence told me to consider prostate cancer in a female with bone lesions, "though less likely."
>
> ⬆ 36 ⬇   💬 Reply   🏅 Award   ↗ Share   ⋯
>
> ⊕ 1 more reply

> **PokeTheVeil** · 3d ago
>
> Open Evidence has several times given me source and summarized their findings. The sources were generally relevant, but the summaries are often completely wrong. Study finds a negative result, AI says it's a positive.
>
> It's worse at the cutting edge of research or weird edges, where the literature is sparse. Hence my repeating that if you already know the answer, AI will be convincingly right, but when you genuinely need help, it will steer you wrong.
>
> ⬆ 311 ⬇   💬 Reply   🏅 Award   ↗ Share   ⋯

---

[7] *See, e.g.*, https://www.linkedin.com/posts/joannastrober_what-happens-when-the-ai-that-40-of-doctors-activity-7352011424497401856-b4FA?utm_source=share&utm_medium=member_desktop&rcm=ACoAABkLyE0BpmqWlSXq11KtcUQHQWe2g6bvzFs; *see also* https://www.reddit.com/r/hospitalist/comments/1je4ria/open_evidence/; https://www.reddit.com/r/medicine/comments/1oy5eto/examples_of_ai_in_medicine_getting_it_wrong/; *See* https://www.reddit.com/r/medicine/comments/1mslx0z/openevidence_not_quite_as_accurate_as_id_have/?share_id=dudv8ntLpkc9KSh4NAcGe&utm_content=1&utm_medium=ios_app&utm_name=ioscss&utm_source=share&utm_term=1

44.     In another example, a physician reported that OpenEvidence incorrectly "claims oxacillin needs dose-reduction in dialysis":



45.     Subsequent reporting by an independent source "verified this [result] immediately," noting that it was an example of "one of the most insidious failure modes in artificial intelligence," and concluding "if you aren't watching the data in real-time, it is going to hurt people."[8]

46.     Others users have documented additional instances where those answers were not only wrong, but dangerous or even life threatening:



7-and-a-switchblade · 3d ago

In its early days, I asked OpenEvidence to suggest a muscle relaxer for a pregnant woman, and its answer was rocuronium.

⊖   ⇧ 309 ⇩   ⬭ Reply   🏅 Award   ↪ Share   ⋯

---

[8]     https://nodesian.medium.com/technically-accurate-medically-fatal-a3bbbc7c27cc

47.     Users have also publicly reported that when they independently put it "to a real test," OpenEvidence "flopped on 11 NEJM questions," getting only "about half right."[9]

48.     Yet, as part of its public marketing about the accuracy of its platform, on August 15, 2025, OpenEvidence claimed it had created "the First AI in History to Score a Perfect 100% on the United States Medical Licensing Examination (USMLE)."[10]

49.     OpenEvidence has promoted paid advertisements repeating that claim.

50.     That claim is false. As OpenEvidence's separate "answers & explanations" page admits, OpenEvidence's platform did not complete a real proctored USMLE test. Instead, it ran a publicly available sample set that included explanations and citations. And even then, OpenEvidence excluded all image-based questions from the sample set.

51.     Critically, contrary to the big font and eye-grabbing headline of "perfect 100%,"[11] OpenEvidence acknowledges that it answered a question *incorrectly*, but OpenEvidence disagrees with the answer and therefore credits itself with a "perfect score" according to its own subjective criteria.

52.     As with its claims that its platform is incapable of hallucinating, OpenEvidence's false and misleading claim that its platform received a "perfect" score on the USMLE was designed to give physicians and potential customers the false impression that the OpenEvidence platform is more accurate than it is—indeed, "perfect," as Nadler has claimed the platform "has to be."[12]

---

[9]     https://sergeiai.substack.com/p/panda-vs-gibbon-md-100-accuracy-my.

[10]    https://www.openevidence.com/announcements/openevidence-creates-the-first-ai-in-history-to-score-a-perfect-100percent-on-the-united-states-medical-licensing-examination-usmle.

[11]    *See* https://www.openevidence.com/announcements/openevidence-creates-the-first-ai-in-history-to-score-a-perfect-100percent-on-the-united-states-medical-licensing-examination-usmle.

[12]    https://www.youtube.com/watch?v=UaDCChdL1zzE

**OpenEvidence's Campaign of False
and Misleading Statements About Doximity**

53.     OpenEvidence advertises itself as "the leading medical information platform,"
and has sought to position itself as a direct competitor to Doximity and Pathway. Rather than
pursuing organic innovation, however, OpenEvidence has focused on harming its competitors.

54.     To accomplish those goals, OpenEvidence has made and continues to make
materially false statements regarding Doximity and its AI product, Doximity GPT.
OpenEvidence has made these statements in a wide variety of forums with the purpose of
influencing Doximity's current and prospective customers, and employees.

**Public Advertisements**

55.     OpenEvidence has published and paid to promote false advertisements
disseminated on LinkedIn and elsewhere.

56.     Among other tactics, OpenEvidence claims to have a more successful, prolific,
and reliable product than Doximity by manipulating data and presenting deceptive statistics.

57.     First, starting no later than on or around May 15, 2025, OpenEvidence promoted a
LinkedIn advertisement proclaiming that "Doximity is a Loser in the AI Race." The
advertisement contains a line graph purporting to display the "monthly visits to OpenEvidence"
and claims that those monthly visits outnumber visits to Doximity GPT twelvefold.



58.     The text of the advertisement suggests that the "exponential growth" shown in the line graph represents the growing use of OpenEvidence "among doctors"—a credentialed group that consumers trust with respect to healthcare products—and purports to show that Doximity is a "loser" because its growth appears to be far more modest and linear.

59.     But both the post and its supposedly scientific-looking chart are deliberately misleading. The chart does not represent monthly visits to OpenEvidence "among doctors" at all; it merely depicts visits from the general user population. In fact, there is no evidence or citation anywhere in the post that the data reflects clinicians' usage in any way. As explained above, OpenEvidence does not limit the use of its website to doctors.

60.     OpenEvidence's purported statistics are deceptive in yet another way. The advertisement misrepresents the "monthly visits to . . . Doximity's AI Products." The visits represented in OpenEvidence's advertisement completely omit all visits to Doximity's app—the

primary source of monthly physician visits to its AI products. Furthermore, OpenEvidence's advertisement only includes traffic to the "Doximity AI" domain.

61.     An actual comparison of traffic to doximity.com and openevidence.com from the same source (SimilarWeb) and timeframe, shows that traffic to Doximity is nearly double that of OpenEvidence.

62.     Moreover, upon information and belief, OpenEvidence made these false and misleading claims about Doximity while knowing full well that they were false. As Doximity had previously explained to the market in an earnings call, in the third quarter of fiscal 2025, its "AI tools grew the fastest . . . up 60% over the prior quarter." The chart OpenEvidence published clearly omits this fact by showing the false flat growth curve for Doximity's AI products.

63.     OpenEvidence's false comparative claims regarding visits to its platform and to Doximity are designed to mislead physicians, clients and Doximity employees into believing that Doximity's business is stagnant amid a rapidly expanding market for AI products. These false statements are intended to distort market perception and unlawfully secure a competitive advantage for OpenEvidence at Doximity's expense. The campaign of deception is material, as it is calculated to influence physicians and clients in their decisions regarding whether to use or support Doximity's services.

64.     Second, starting no later than on or around May 20, 2025, OpenEvidence advertised that OpenEvidence is "America's #1 App for Doctors" and displayed a purported ranking in the "Medical" category on the Apple App Store.

65.     OpenEvidence's advertisement falsely represents that OpenEvidence is "#1 for Doctors," while Doximity is "#5 for Doctors," suggesting that a credentialed and trusted group

(doctors) has expressed a preference for OpenEvidence based on their experience, i.e., that a majority chose OpenEvidence.

66.     This claim is false. The Apple App Store lacks a "for Doctors" category; that purported metric is fictional.

67.     In much smaller font, OpenEvidence admits that this claim is false, stating: "The 'Medical' category on the Apple App Store encompasses all medical apps, including those intended for consumers and non-clinical users." But despite admitting that it knows "for Doctors" is not a legitimate third-party metric within the Apple App Store, OpenEvidence misleadingly represents that Apple App Store figures show that "Doctors"—as opposed to users generally—use OpenEvidence in greater numbers than competitor offerings.

68.     OpenEvidence's claim is also misleading because it omits the context that (1) the Apple App Store rankings do not measure the total number of downloads, and (2) the OpenEvidence app has roughly 4,500 reviews on the App store, while the Doximity app has over 183,000, which is approximately forty times more than OpenEvidence.

69.     Third, starting no later than on or around May 19, 2025, OpenEvidence promoted a false and misleading LinkedIn advertisement claiming that Doximity's stock prices have underperformed those of McDonald's Corporation for the last four years:



70.     OpenEvidence disseminated this advertisement shortly after the Doximity earnings call on May 15, 2025 and referenced the number of times the phrase "AI" was used on that call. Accordingly, viewers would understand that OpenEvidence was referring to Doximity.

71.     OpenEvidence's claim that Doximity's stock has underperformed McDonalds over the last four years is false as Doximity had been publicly listed for less than four years at that point.

72.     Moreover, Doximity's stock trades at a premium of roughly six times its private May 2021 price, and over 150 percent higher than its June 2021 IPO price—well above McDonald's roughly 25 percent gain over the same four-year period.

73.     OpenEvidence's misleading statements about Doximity's stock performance create the false impression that the company is struggling, when in reality Doximity is growing

its business strongly and its stock is trading at one of the highest revenue multiples in the entire healthcare and technology industry.

74.     In apparent recognition of the false and defamatory nature of this advertisement, OpenEvidence took this advertisement down from their LinkedIn library shortly after OpenEvidence filed this lawsuit against Doximity.

### Fake LinkedIn News Sites

75.     All of the advertisements identified above were published and promoted through OpenEvidence's own LinkedIn page. But the depth of OpenEvidence's desire to defame Doximity goes further, as OpenEvidence has also established **multiple** fake LinkedIn accounts and posted about Doximity on those accounts in an attempt to trick consumers into believing that the posts are by credible **independent** sources.

76.     On information and belief, OpenEvidence has created at least the following LinkedIn pages: "American Courtroom," "Bubble Watch," "Tech Law News," and "Curated Market Research."



77.     OpenEvidence has created and used these accounts to masquerade as legitimate news sources on LinkedIn and shield its true identity from consumers while it continues to pay for and promote numerous harmful and deceptive advertisements targeting Doximity.

78.     OpenEvidence operates these puppet accounts with the goal of harming Doximity's reputation, disrupting key client relationships, and unfairly advantaging OpenEvidence in the marketplace. Worse, it pushes targeted advertisements designed to promote negative information about Doximity from these LinkedIn accounts while hiding behind misleading account names to give off the appearance of unbiased reporting.

79.     All of these LinkedIn pages have very few, or even zero, followers, have no affiliated employees, do not appear to be legal entities or sole proprietorships, and use logos that are either stock images or images that yield no discernable matches when searched.

80.     LinkedIn's advertisement library confirms that OpenEvidence controls these accounts.

81.     For example, the "American Courtroom" advertisements targeting Doximity and its employees—which made up ten of that account's 19 total advertisements as of November 11, 2025—are all funded by "Scalable Magic U.S. Inc."

82.     The same advertiser, Scalable Magic U.S. Inc., appears for Bubble Watch's singular advertisement, also about Doximity.

83.     On November 17, 2025, another account with no followers titled "Curated Market Research launched a new advertisement aimed at Doximity, also funded by "Scalable Magic U.S. Inc."

84.     Scalable Magic U.S. Inc.—the party identified as paying for all of these targeted advertisements mentioning Doximity—does not currently exist. But it used to, before it changed its name to **OpenEvidence**:[13]



85.     OpenEvidence is using a false name to promote posts by puppet accounts that it created to post negative information about Doximity as if that information were posted by an independent third party. This harmful and deceptive practice is designed to harm Doximity including by targeting its reputation among physicians, destroy Doximity's client relationships, and disrupt the ordinary course of Doximity's business.

86.     These puppet accounts run afoul of the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising, codified at 16 C.F.R. § 255.0, which emphasize the need for "clear and conspicuous" disclosures when there is a "material connection between

---

[13] Specifically, Scalable Magic U.S. Inc. changed its name to Monocle Technologies Inc. on August 20, 2021, which then changed its name to XYLA Inc. on November 4, 2021, which then changed its name to OpenEvidence, Inc. on or around February 24, 2025. (*See* Exhibit A, attached hereto (extracts of Delaware Secretary of State records).)

an endorser and an advertiser." A material connection includes any relationship that might affect the weight or credibility of the endorsement, such as compensation or other incentives. The failure to disclose such connections can be considered deceptive if it misleads consumers into believing that the endorsement is unbiased or independent. OpenEvidence has shielded its actions using these puppet accounts and has thus engaged in a pattern of false endorsements and testimonials that directly harm Doximity.

## Social Media

87.     Beyond LinkedIn, OpenEvidence's campaign to harm Doximity has also included the publication of false and disparaging content about Doximity and its employees on numerous online social media platforms.

88.     By way of example, on information and belief OpenEvidence disseminated a video on YouTube that, among other things, falsely asserts that Doximity "scrapes" physician information and that Doximity's users do not affirmatively sign up and undergo rigorous verification.

## Client Pitch Decks

89.     OpenEvidence has not been content to merely publish false and damaging claims about Doximity on LinkedIn and other public platforms. It has also directly provided false and damaging claims to current and prospective clients, seeking to harm Doximity.

90.     For example, a July 2025 pitch deck includes a chart purporting to compare OpenEvidence to Doximity across a variety of metrics, including Newsfeed Monthly Active Users (MAUs). As shown below, OpenEvidence claims that Doximity has 300,000 Newsfeed MAUs—a claim it attributes to public IR reports:

## OpenEvidence vs Doximity vs Medscape

| Category | OpenEvidence | Doximity | Medscape |
|---|---|---|---|
| MAUs | 335,700<br>(up 70,000 over this time last month) | 300,000 to newsfeed<br>(per Q4 IR report) | 1.1M<br>(the vast majority are email opens) |

91.     The claim that Doximity has 300,000 Newsfeed MAUs is false. Doximity has never provided a Newsfeed MAU metric in public IR materials, and instead has stated that it has over 1,000,000 Newsfeed Quarterly Active Users (QAUs). OpenEvidence's claim has no basis in the attribution it provides.

92.     Additionally, OpenEvidence claimed in a July 2025 client pitch deck that it took Doximity "11 years" to get to 300,000 users:



93.     That too is blatantly false and misleading. It appears to rely on Doximity's statement in its S-1 that it "had over 300,000 unique active providers . . . use our telehealth tools in the quarter ended March 31, 2021," but those telehealth tools did not launch until May 2020. It has not taken Doximity "11 years" to obtain 300,000 users in any core offering or product. The S-1 is clear as to what that metric refers to, yet OpenEvidence has chosen to use it in a deliberately misleading manner to make OpenEvidence appear better adopted than Doximity to clients.

**OpenEvidence's Deceptive and Unlawful Campaign
Is Intended to, and Does, Harm Doximity in the Market,
Poach Its Employees, And Interfere with Its Client Relationships**

94.     OpenEvidence, including its CEO Daniel Nadler, has also incessantly solicited Doximity personnel—particularly those with deep insider access to Doximity's clients and product development strategies. Those efforts are a tacit acknowledgement that OpenEvidence needs Doximity's secrets and expertise to compete, undermining its false and misleading public statements about Doximity.

95.     In an improper attempt at recruitment, OpenEvidence has repeatedly harassed Doximity's employees and sent them unsolicited job offers. OpenEvidence has sent countless unsolicited text messages, like the following text sent to a member of Doximity's sales team, offering a million-dollar bonus just to join OpenEvidence. This employee and most others did not accept their offers.

> Ok - I know it's a bit presumptive but here's an offer that we are willing to give you today.
>
> $1M sign on bonus
> $1M OTE
> $1M Equity a year - renews every year (at the hottest tech company in healthcare right now)
>
> **My plan is to retire in 2-3 years and if you're of the same mindset, there is no better place to be than here.** Also, it's magnitudes easier to work her not being a public company.
>
> Ok - that's it. Sorry again for the direct reach out but I hope you can see how much we want you on this team.

96.     Nadler has also directly sent many unsolicited and harassing emails to Doximity employees, in which he has repeated the false claims in the advertisements above. For example, Nadler has used OpenEvidence's false claim that "Doximity is a Loser in the AI Race" in recruitment emails targeting Doximity's employees, and included statements such as: "Now set aside whether you think Doximity's engineers — two years behind, with zero career experience in AI — will catch up to a team of Harvard and MIT PhDs…"

97.     As this correspondence demonstrates, OpenEvidence's false and misleading claims about Doximity are part of a calculated attempt by OpenEvidence to harm its competitor Doximity in a variety of ways, including using fear and hyperbole to gain recruitment leverage.

98.     Mr. Nadler's many emails are often lengthy and strange. For example, Nadler sent this unsolicited letter to Doximity's General Counsel, Jennifer Chaloemtiarana, after Doximity's first female employee accepted one of his offers.

From: **Daniel Nadler** <daniel@openevidence.com>
Date: Sun, Aug 31, 2025 at 10:37 AM
Subject: Pre-Re: Letter from Doximity - 'Koury' with a 'K'
To: Jennifer Chaloemtiarana <jchaloemtiarana@doximity.com>

To make this more efficient, how about we agree that at the start of every month, I just send you the list of the people we are taking (with correct spelling), so you can *batch* prepare the letters in advance, as well as the list of the people we are leaving behind.

My only ask in exchange for this offer of logistical efficiency is that you let us know if we overlooked anyone. If the thought occurs to you "Wait, why haven't they taken such-and-such a person yet?!" the simple answer might be that we merely overlooked them, and thus would appreciate the tip in that case.

I know right now it seems inconceivable that you would ever agree to do that, but since by now it is clear that y'all are utterly impotent to retain your own talent, it might dawn on y'all that the planetary show must indeed go on, **the species must indeed continue with *someone's seed***, and perhaps we all just set differences aside and do one *clean* for the ecosphere. I have been going deep lately on the Late Eastern Han Dynasty in 2nd Century China, and the eunuchs of that era managed to achieve that level of ego-dissolution and species-level future projection (唯我無種者，護持斯族，必先奉養能「繁衍」之帝 → "*Only we, the seedless, will protect the species **by prioritizing emperors who breed**"— Hou Hanshu [Book of the Later Han], ch. 78–79 ["Biographies of the Eunuchs"]*). As Jeffrey "The Dude" Lebowski says, "Right on, man."

Consider it.

Hugs and high-fives,

Daniel Nadler, PhD
Founder, OpenEvidence



99. In addition, Nadler wrote the following taunting message to Doximity's General Counsel after she stepped down from her role at Doximity:



From: **Daniel Nadler** <daniel@openevidence.com>
Date: Tue, Aug 26, 2025 at 11:25AM
Subject: Re: Letter from Doximity - Dziobczynski
To: Jennifer Chaloemtiarana <jchaloemtiarana@doximity.com>

we started an internal race of which would last longer: This head of lettuce, or your role at Doximity.

Don't tell me I lost twenty bucks?! I was betting on you, Jen-Junction!

100. Additionally, OpenEvidence is using its own lawsuit against Doximity as a recruiting tool. In at least one instance, an OpenEvidence employee told a Doximity employee that this could be a "billion-dollar lawsuit for Doximity." Following this, that employee received an unsolicited offer to work there which she declined.

101. Upon information and belief, OpenEvidence has also widely shared their lawsuit against Doximity with Doximity's clients in an attempt to disrupt Doximity's most significant client relationships.

102.    In yet another instance, OpenEvidence baselessly threatened a Doximity employee with a lawsuit against him ***personally*** for speaking on a topic that neither mentioned OpenEvidence nor discussed any other competitors. OpenEvidence continued with its baseless and anti-competitive threats by disseminating this letter to multiple third parties in a fruitless bid to have Doximity's speech cancelled by the organizers of an important pharmaceutical industry conference.

---

We represent OpenEvidence. It has come to our attention that you plan to give a talk on September 9, 2025, at FiercePharma, titled *How to Lose a Doctor in 10 Days: Product and UX Antipatterns Guaranteed to Get you Ghosted*. We understand that you plan to make defamatory statements about OpenEvidence during what you bill as your "sharp-edged" presentation. Sharp edges cut both ways. One of my ███████████ partners will be seated in front of you during your presentation. We are hereby putting you on notice that, should you make defamatory statements about OpenEvidence, we are instructed to bring claims against you *personally*, for any and all such statements, and to seek the maximum damages (including the maximum damages appropriate for defaming a company publicly valued in the billions of dollars) and all available remedies under the law against you *personally*.

We look forward to your presentation.

---

## OpenEvidence Targets Pathway

103.    OpenEvidence has also aimed its tactics of harassment and disparagement at Pathway, and has even directly interfered with Pathway's business relationships.

104.    In one instance, Pathway had built a significant relationship with a major advertising agency client and obtained invitations to speak at their events. However, shortly after OpenEvidence first filed its claims against Pathway, that client rescinded its invitations and notified Pathway it would not move forward with its commitments.

105.    Upon information and belief, Nadler personally communicated with the client, disparaged Pathway, and shared information about its lawsuit.

106.    In addition, two days after Doximity announced its acquisition of Pathway, Nadler sent an unsolicited email to the founders of Pathway (whom he has never met), stating: "you go and sell your whole company for less cash than I just paid for one of my apartments.

From: Daniel Nadler <daniel@openevidence.com>
Date: Saturday, August 9 2025 at 1:54 AM CEST
Subject: O Canada
To: jonathan@pathway.md, louis@pathway.md, louis.mullie@gmail.com, vince@pathway.md, Vince.Roy@pathway.md

Boys,

I have spent years trying to change the cliché that Canadians are weak negotiators, and there you go and take a once-in-a-lifetime historic opportunity to create generational wealth for yourselves and your children—when pre-product AI companies are trading at a billion dollars, and when a buyer can add a billion dollars in market cap in one trading day just by announcing a buy with the word 'AI' in it—**and you go and sell your whole company for less cash than I just paid for one of my apartments.**

107.    At the same time OpenEvidence was targeting Pathway's clients and harassing its employees, OpenEvidence was also copying Pathway's features and piggybacking off its innovation.

108.    For example, in 2024, Pathway introduced CME accreditation and announced that "Pathway [was] now the first and only generative AI solution purpose-built for medicine to earn CME accreditation."[14] The following year, OpenEvidence announced the same feature.[15]

109.    In fact, OpenEvidence personnel, including OpenEvidence co-founder and CTO Zachary Ziegler, Eric Lehman (Head of NLP), Jagath Jai, and Micah Smith, have accessed Pathway's platform on multiple occasions. On information and belief, they did so in order to gather competitive intelligence.

110.    Moreover, in at least one instance, a member of the OpenEvidence team used placeholder or non-valid National Provider Identifiers (NPIs) to access Pathway's

---

[14]    https://www.pathway.md/blog/introducing-cme-for-pathway-ai

[15]    https://www.openevidence.com/announcements/cme-has-arrived

functionality—underscoring the hypocrisy of its claims against Pathway, Doximity, and Veracity Health.

<strong><u>OpenEvidence Fails to Protect Patient Confidentiality</u></strong>

111.    OpenEvidence also makes a variety of false and misleading claims about patient confidentiality on its own AI platform that are intended to deceive physicians and health systems and create a false equivalency between OpenEvidence, Doximity, and Pathway's AI offerings.

112.    As an example, on April 25, 2025, OpenEvidence announced that "OpenEvidence is now HIPAA compliant," and claimed that "U.S. covered entities can securely input protected health information (PHI) in accordance with HIPAA's privacy and security standards."[16]

113.    More broadly, OpenEvidence now asserts that it "secure[s] ***all***processed data in compliance with HIPAA":



114.    OpenEvidence also claims it has "implemented appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and availability of electronic PHI."[17]

---

[16]    https://www.openevidence.com/announcements/openevidence-is-now-hipaa-compliant.

[17]    https://www.openevidence.com/security

115.     Contrary to its representations, OpenEvidence fails to protect patient confidentiality or comply with the Health Insurance Portability and Accountability Act ("HIPAA"), which among other things requires appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of such information without an individual's authorization.

116.     OpenEvidence's platform does not scrub PHI from its searches. In fact, OpenEvidence has **disclosed** patient data to third parties and, at times, the public.

117.     Indeed, OpenEvidence currently has many **publicly available** patient histories on its website, a significant portion of which include sensitive information. Below is one example, which reveals the full patient name, medical record number (MRN), date of birth, medical condition, and treatment.



118.     The ongoing public exposure of protected health information (PHI) has reached such a flagrant and persistent level that even archival sites like "The Wayback Machine"[18] now catalog abundant examples of these breaches—making confidential patient details permanently

---

[18]     https://web.archive.org/web/20250611175837/https://www.openevidence.com/ask/7876b336-ddb0-4ea7-a423-05717a02883b

accessible online. For instance, one OpenEvidence public page features a clinical assessment of a 25-year-old man with chronic sleep issues, listing his symptoms, the results of his sleep study, and even documenting the number of "total arousals" he experienced—sensitive information that should never be publicly viewable. See link below:



119.     Upon information and belief, OpenEvidence has no General Counsel or named Privacy & Security Officer to oversee its HIPAA compliance or CEO. In contrast to OpenEvidence, Doximity has invested heavily in patient confidentiality, and both internal and external checks, completing regular annual SOC-2 audits and hundreds of privacy reviews with health systems.

120.     OpenEvidence's false and misleading claims about patient confidentiality are designed to lead individuals choosing between Doximity, Pathway, and OpenEvidence to believe the offerings are equivalent, when in fact they are not.

**OpenEvidence Sells User Prompt and Potential Patient Data to Advertisers**

121.     OpenEvidence's representations regarding its protection of patient confidentiality, handling of patient and physician data, and compliance with HIPAA, are also false and misleading because OpenEvidence sells physician-specific prompt data to advertisers and pharmaceutical companies.

122.     Indeed, OpenEvidence's pitch materials openly highlight that "pharma can target NPIs by their search data," and that "This is the first time in history when search data is available at the NPI level":



123.     Until it was recently revised, Open Evidence's Privacy Policy admitted that user data, including individual "questions/prompts," may be "sold to third parties or otherwise monetized as a commercial data feed":



124. Selling individual user search data is a novel business model that departs from accepted industry practices and exposes physicians to legal compliance and malpractice risk. The sale of research queries potentially containing identifiable patient information creates a substantial likelihood that physician users will unknowingly violate physician-patient confidentiality. This deceptive practice will erode client trust in not just OpenEvidence's offering, but offerings from competitors including Doximity and Pathway as well.

125. Even though OpenEvidence's privacy policy discloses that it sells queries to advertisers, its Business Associate Agreement, which governs the company's treatment of PHI, does not allow it to share such information with advertisers, much less to share that information publicly on the OpenEvidence platform.[19]

126. By engaging in these practices, OpenEvidence fails to protect patient confidentiality, and violates its obligations under HIPAA.

127. On information and belief, OpenEvidence even offers clients and agency partners equity in the company, a practice that deepens OpenEvidence's ethical conflicts of interest, and which OpenEvidence does not publicly disclose.

**OpenEvidence Harasses Physician Critics**

128. But when individual physicians have raised legitimate concerns about OpenEvidence's alarming practices, OpenEvidence has aimed its aggressive tactics at them.

129. In one instance, OpenEvidence aggressively retaliated against a physician that posted a screenshot of OpenEvidence's privacy policy:

---

[19] *See* https://www.openevidence.com/policies/baa.



130. In response to that tweet, OpenEvidence posted a lengthy and aggressive public comment baselessly accusing the physician of personal wrongdoing and referencing this lawsuit.

131. To make matters worse, an individual purporting to be a "freelancer" reached out to the CEO of that employed physician's health system threatening to publicize "allegations" about him and asking if the physician has ever "discuss[ed] OpenEvidence in a negative light."



132.     As shown below, OpenEvidence purports to advance medicine "at the speed of trust":



133.     But in reality, OpenEvidence does not address physicians' legitimate concerns about its practices. It prefers to attack and intimidate them into silence.

# CLAIMS FOR RELIEF

## COUNT I
### (False Advertising in Violation of the Lanham Act (15 U.S.C. § 1125(A))
### (On behalf of Doximity and Pathway)

134.  The paragraphs above are incorporated and reasserted as if fully set forth herein.

135.  OpenEvidence's marketing and advertising of its AI platform, and marketing and advertising concerning Doximity, constitute false and misleading statements of fact in commercial advertising and promotion under the Lanham Act.

136.  OpenEvidence has made, and continues to make, false or misleading claims and statements, including false claims about Doximity and comparisons between Doximity, Pathway and OpenEvidence.

137.  OpenEvidence's false and misleading statements include, *inter alia*:

    a.  Claiming that like Doximity and Pathway, OpenEvidence limits access to its platform to healthcare professionals, including by falsely representing that OpenEvidence verifies that users have a National Provider Identifier (NPI);

    b.  Making false or exaggerated claims regarding the purported accuracy of its platform's results and purported lack of any "hallucinations," including falsely asserting that OpenEvidence scored 100% on the United States Medical Licensing Examination (USMLE);

    c.  Promoting fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity and Pathway;

d.  Manipulating data and presenting deceptive statistics to make false claims about Doximity's growth, engagement, and stock performance, including as compared to OpenEvidence;

e.  Creating fake LinkedIn accounts purporting to belong to legitimate news sources instead of OpenEvidence, which falsely attribute disparagement of Doximity to independent third party sources; and

f.  Claiming that like Doximity and Pathway, OpenEvidence protects patient confidentiality, despite (1) publishing sensitive information about individual patients on its publicly available website, and (2) selling physician queries to advertisers and pharmaceutical companies.

138.  OpenEvidence's false and misleading claims have a tendency to confuse, mislead, and deceive a substantial segment of its audience as to the real and relative success of OpenEvidence, Doximity, and Pathway in the medical AI industry, and the characteristics of their AI platform offerings.

139.  OpenEvidence's false and misleading statements are material because they are likely to influence the decision-making of consumers in the relevant market—which include physicians, health care professionals, and clients—in ways that harm Doximity and Pathway as described above.

140.  OpenEvidence placed these false and misleading statements in interstate commerce by disseminating these representations nationwide, including through promoted social media posts.

141.  As a direct and proximate cause of these false and misleading statements, Doximity has been and will continue to be damaged. Doximity's damages include actual

damages in the form of lost profits from reduced demand for Doximity GPT; the disgorgement of any profits that OpenEvidence unfairly realized, retained, or gained as a result of its false and misleading advertising; and the costs associated with this action.

142. Based on the foregoing, OpenEvidence has engaged in false and deceptive representations that are likely to cause confusion or deceive consumers as to the characteristics of and relative success and consumer confidence in Doximity and Pathway's AI offerings compared with OpenEvidence's competing product, in violation of 15 U.S.C. § 1125.

143. On information and belief, OpenEvidence has engaged in this activity knowingly, willfully, and in bad faith.

144. OpenEvidence's willful and deliberate acts make this an exceptional case under 15 U.S.C. § 1117(a), and Doximity and Pathway are thus entitled to enhanced damages, injunctive relief, and an award of attorneys' fees and costs.

**COUNT II**
**(Violations of Mass. Gen. L. c. 93A §§ 2 and 11)**
**(On behalf of Doximity and Pathway)**

145. The paragraphs above are incorporated and reasserted as if fully set forth herein.

146. At all relevant times, OpenEvidence was engaged in trade or commerce as those terms are used in Mass. G.L. c. 93A, §§ 2 and 11.

147. While engaged in trade or commerce, OpenEvidence engaged in unfair and deceptive acts through the creation of a series of false and misleading advertisements, including, without limitation:

> a. Claiming that like Doximity and Pathway, OpenEvidence limits access to its platform to healthcare professionals, including by falsely representing that OpenEvidence verifies that users have a National Provider Identifier (NPI);

b. Making false or exaggerated claims regarding the purported accuracy of its platform's results and purported lack of any "hallucinations," including falsely asserting that OpenEvidence scored 100% on the United States Medical Licensing Examination (USMLE);

c. Promoting fabricated and misleading metrics designed to create the false impression that licensed clinicians and doctors prefer OpenEvidence to Doximity and Pathway;

d. Manipulating data and presenting deceptive statistics to make false claims about Doximity's growth, engagement, and stock performance, including as compared to OpenEvidence;

e. Creating fake LinkedIn accounts purporting to belong to legitimate news sources instead of OpenEvidence, which falsely attribute disparagement of Doximity to independent third party sources; and

f. Claiming that like Doximity and Pathway, OpenEvidence protects patient confidentiality, despite (1) publishing sensitive information about individual patients on its publicly available website, and (2) selling physician queries to advertisers and pharmaceutical companies.

148. OpenEvidence's false and misleading claims tend to confuse, mislead, and deceive a substantial segment of its audience as to the real and relative success of OpenEvidence and Doximity and Pathway in the medical AI industry, and the characteristics of their AI platform offerings.

149. OpenEvidence's false and misleading statements constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

150. Likewise, OpenEvidence's use of puppet accounts in violation of the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising, codified at 16 C.F.R. § 255.0, is itself an unfair method of competition and an unfair or deceptive act or practice in the conduct of trade or commerce.

151. The unfair and deceptive events described above occurred primarily and substantially in Massachusetts, in which OpenEvidence does business, conducts its principal operations, and maintains its headquarters.

152. As a result of the unfair and deceptive conduct of OpenEvidence, Doximity and Pathway sustained damages including, but not limited to, damage to their reputations, damages to their relationships with existing and prospective customers, loss of customers and prospective customers, and loss of business opportunities. Doximity and Pathway's damages include actual damages in the form of lost profits from reduced demand for Doximity and Pathway's AI offerings; the disgorgement of any profits that OpenEvidence unfairly realized, retained, or gained as a result of its false and misleading advertising; and the costs associated with this action.

## COUNT III
### (Defamation, Mass. G.L. Ch. 231, § 92.)
### (On behalf of Doximity)

153. The paragraphs above are incorporated and reasserted as if fully set forth herein.

154. Upon information and belief, OpenEvidence published false and defamatory statements about Doximity to third parties, in violation of Massachusetts common law principles of defamation as codified in Mass. G.L. ch. 231, § 92.

155. The false and defamatory statements included, without limitation:

a. Using a graph comparing monthly visits to OpenEvidence by both non-clinicians and clinicians with monthly visits to the "Doximity AI" domain

by clinicians only to declare Doximity a "Loser in the AI Race," while omitting visits to Doximity's app and the doximity.com domain;

b. Claiming that Doximity is ranked lower than OpenEvidence in a "for Doctors" category within the Apple App Store, even though no such category exists in the Apple App Store;

c. Claiming that Doximity's stock price "underperforms McDonald's over the last four years," when Doximity's stock has outperformed McDonald's (NYSE: MCD) over the three years it has been publicly listed;

d. Misrepresenting Doximity's disclosures and claiming that took Doximity "11 years" to get to 300,000 users; and

e. Claiming without basis that Doximity has 300,000 Monthly Active Users (MAUs) and falsely attributing that figure to Doximity.

156. These statements are defamatory because they expose Doximity to hatred, contempt, ridicule, or obloquy, and tend to injure Doximity in its business by falsely diminishing the perceived quality of Doximity's products and success in the marketplace among investors, employees, and current and potential customers.

157. The statements are defamatory *per se* because they charge Doximity with incompetence and unfitness in its business as a provider of medical information to healthcare professionals, falling within the category of statements that are actionable without proof of special damages under Massachusetts law.

158. The defamatory statements were published to third parties including physicians, employees, and current and prospective customers upon which Doximity depends for revenue.

159. The statements are false, as evidenced by the independent investigation and verification set forth above.

160. OpenEvidence knew or should have known that the statements were false when made, as they included easily verifiable claims for which OpenEvidence possessed and even admitted to possessing facts rendering the statements false.

### PRAYER FOR RELIEF
### (AS TO DOXIMITY AND PATHWAY'S AMENDED COUNTERCLAIMS)

WHEREFORE, Counterclaim-Plaintiffs Doximity and Pathway respectfully request that this Court grant the following relief:

1. A judgment that Counterclaim-Defendant OpenEvidence has made false and misleading statements in violation of 15 U.S.C. § 1125;

2. A judgment that Counterclaim-Defendant OpenEvidence engaged in unfair and deceptive acts and practices through the creation of a series of false and misleading advertisements in violation of Mass. G.L. c. 93A, §§ 2 and 11;

3. A judgment that Counterclaim-Defendant OpenEvidence published false and defamatory statements about Doximity to third parties, in violation of Massachusetts common law principles of defamation as codified in Mass. G.L. ch. 231, § 92;

4. Enter a permanent injunction, including an order restraining OpenEvidence, and its officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with it, from further promotion and distribution of the false and misleading advertisements and statements; requiring OpenEvidence to publish a statement explaining that its advertisements are not accurate and withdrawing them from circulation; requiring OpenEvidence to send notice of the withdrawal of its advertisements to all parties who received or saw its advertisements; requiring OpenEvidence to send corrections to any parties to which it has

previously made false and misleading statements; and restraining OpenEvidence from engaging in similar false and misleading advertising claims in the future;

5.  Order that OpenEvidence pay Doximity and Pathway the damages Doximity and Pathway have sustained by reason of the conduct alleged herein;

6.  Order that OpenEvidence pay the costs and attorneys' fees of this action as provided in 15 U.S.C. § 1117 and other applicable law;

7.  Order that OpenEvidence pay multiple damages and attorneys' fees as provided by Mass. Gen. L. c. 93A and other applicable law;

8.  Order that OpenEvidence pay pre- and post-judgment interest; and

9.  Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL
### (AS TO DOXIMITY AND PATHWAY'S AMENDED COUNTERCLAIMS)

Doximity and Pathway respectfully request a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

*  *  *

**DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE,
AND PATHWAY MEDICAL, INC.'S ANSWER TO AMENDED COMPLAINT**

Defendants Doximity, Inc. ("Doximity"), Jey Balachandran, Jake Konoske (collectively, the "Doximity Defendants"), and Pathway Medical, Inc. ("Pathway"), by and through their undersigned counsel, hereby answer the Amended Complaint of Plaintiff OpenEvidence Inc. ("Plaintiff") as follows:

The Doximity Defendants and Pathway are not responding to the headings in the Amended Complaint; to the extent a response is required, any allegations contained in the headings are denied. The Prayer for Relief and Demand for Jury in the Amended Complaint do not contain allegations of fact and are therefore omitted from this Answer. Unless expressly admitted, all allegations contained in the Amended Complaint are denied. The Doximity Defendants and Pathway reserve the right to amend and/or supplement this Answer.

## INTRODUCTION

1.      To the extent the allegations in paragraph 1 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 1, except admit that Doximity is a publicly traded healthcare technology company. The Doximity Defendants and Pathway further admit that Plaintiff has brought this action but deny any liability or wrongdoing.

2.      The Doximity Defendants and Pathway deny the allegations in paragraph 2, except admit that Doximity acquired Pathway in July 2025.

3.      The Doximity Defendants and Pathway deny the allegations in paragraph 3, except admit that: (i) Jey Balachandran is Doximity's Chief Technology Officer; and (ii) Jake Konoske is Doximity's Director of Products.

4.      The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's characterizations regarding its own platform and therefore deny those allegations. The Doximity Defendants and Pathway admit that Doximity operates a professional networking platform for healthcare professionals and offers certain clinical and workflow tools. The Doximity Defendants and Pathway deny all remaining allegations in paragraph 4.

5.      To the extent the allegations in paragraph 5 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway admit that Doximity offers AI-powered clinical tools. The Doximity Defendants and Pathway deny all remaining allegations in paragraph 5.

6.      The Doximity Defendants and Pathway deny the allegations in paragraph 6.

7.      The Doximity Defendants and Pathway deny the allegations in paragraph 7, except admit that Jake Konoske, Doximity's Director of Products, caused the text excerpted in paragraph 7 to be submitted as a query to OpenEvidence's AI platform.

8.      The Doximity Defendants and Pathway deny the allegations in paragraph 8.

9.      Paragraph 9 contains Plaintiff's characterization of its claims and/or legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 9.

10.     The Doximity Defendants and Pathway deny the allegations in paragraph 10, except admit that Konoske and Balachandran registered to use OpenEvidence's AI platform.

11.     To the extent the allegations in paragraph 11 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 11.

12.     The Doximity Defendants and Pathway deny the allegations in paragraph 12.

13.     Paragraph 13 contains Plaintiff's characterization of its claims and/or legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 13, except admit that Defendants did not acquire OpenEvidence's code or system prompts.

14.     The Doximity Defendants and Pathway deny the allegations in paragraph 14, except admit that (i) Doximity acquired Pathway in July 2025, and (ii) Louis Mullie caused a query containing the text quoted in paragraph 14 to be submitted as a query to OpenEvidence's AI platform.

15.     The allegations in paragraph 15 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway admit that Plaintiff purports to bring claims under various legal theories, but deny that Plaintiff accurately states those claims and/or is entitled to any of the requested relief.

## NATURE OF THE ACTION

16.     The allegations in paragraph 16 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway admit that Plaintiff purports to bring claims under various legal theories, but deny that Plaintiff accurately states those claims and/or is entitled to any of the requested relief.

17.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and therefore deny the allegations in paragraph 17.

18.     The allegations in paragraph 18 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 18.

19.     The allegations in paragraph 19 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 19.

20.     The allegations in paragraph 20 state Plaintiff's characterization of its claims and legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 20.

## THE PARTIES

21.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore deny those allegations.

22.     With regard to the second sentence of paragraph 22, the Doximity Defendants and Pathway admit that Doximity operates a professional network for healthcare professionals and offers AI-powered medical tools but denies any characterization thereof. The Doximity Defendants and Pathway admit the remaining allegations in paragraph 22.

23.     The Doximity Defendants and Pathway admit the allegations in paragraph 23.

24.     The Doximity Defendants and Pathway deny that Jake Konoske is Doximity's "Director of AI Products." The Doximity Defendants and Pathway admit the remaining allegations in paragraph 24.

25.     The Doximity Defendants and Pathway deny the allegations in paragraph 25, except admit that: (i) Pathway is a Canadian corporation with its principal place of business in Montreal, (ii) Doximity acquired Pathway in July 2025, and (iii) Pathway is now a wholly-owned subsidiary to Doximity.

26.     The Doximity Defendants and Pathway deny the allegations in paragraph 25, except admit that: (i) Defendant Mullie resides in Canada, (ii) Defendant Mullie co-founded Pathway and has served as its Chief Medical Officer, (iii) Defendant Mullie is a licensed medical professional in Canada, and (iv) Defendant Mullie does not possess a United States NPI number.

27.     The Doximity Defendants and Pathway deny the allegations in paragraph 25, except admit that Defendant St-Jean co-founded Pathway and has served as its Chief Executive Officer.

28.     The Doximity Defendants and Pathway deny the allegations in paragraph 28, except admit that Defendant Karapetyan has served as Pathway's Clinical Content Lead.

29.     The Doximity Defendants and Pathway deny the allegations in paragraph 29.

30.     The Doximity Defendants and Pathway deny the allegations in paragraph 30, except admit that Defendant Mohammed has served as a designer and engineer for Pathway.

31.     The Doximity Defendants and Pathway deny the allegations in paragraph 31, except admit that (i) Defendant Roy has served as Pathway's Chief Technology Officer, and (ii) Defendant Roy is not a doctor.

## JURISDICTION AND VENUE

32.     The allegations in paragraph 32 contain legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 32.

33.     The allegations in paragraph 33 contain legal conclusions to which no response is required. To the extent the allegations in paragraph 33 characterize or describe OpenEvidence's Terms of Use and Privacy Policy, the Doximity Defendants and Pathway refer to those documents for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 33, except admit that: (i) Doximity is registered to conduct business in Massachusetts; and (ii) Tangney has corresponded with Daniel Nadler on LinkedIn.

34.     The Doximity Defendants and Pathway deny the allegations in paragraph 34.

35.     The Doximity Defendants and Pathway deny the allegations in paragraph 35.

36.     The allegations in paragraph 36 contain legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 36.

37.     The Doximity Defendants and Pathway deny the allegations in paragraph 37, except admits that venue is proper in this judicial District.

## FACTUAL BACKGROUND

### OpenEvidence's Revolutionary AI Platform and Valuable Trade Secrets

38.     To the extent the allegations in paragraph 38 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 and therefore deny those allegations.

39.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 and therefore deny those allegations.

40.     To the extent the allegations in paragraph 40 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 40 and therefore deny those allegations.

41.     To the extent the allegations in paragraph 41 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 and therefore deny those allegations.

## OpenEvidence's Terms of Use and Access Restrictions

42. The Doximity Defendants and Pathway deny the allegations in paragraph 42, except admit that OpenEvidence generates revenue by selling digital advertising space to pharmaceutical and medical device companies.

43. To the extent the allegations in paragraph 43 characterize or describe the document attached to Plaintiff's Amended Complaint as Exhibit A, the Doximity Defendants and Pathway refer to that document for a full and accurate description of its content and deny any characterization or description that is inconsistent with it. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 43.

44. To the extent the allegations in paragraph 44 characterize or describe the document attached to Plaintiff's Amended Complaint as Exhibit A, the Doximity Defendants and Pathway refer to that document for a full and accurate description of its content and deny any characterization or description that is inconsistent with it. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 44, except admit that Balachandran, Konoske, Mullie, St-Jean, Karapetyan, Yamga, Mohammed, and Roy registered for accounts.

45. The allegations in paragraph 45 contain legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 45, except admit that the document attached to Plaintiff's Amended Complaint as Exhibit A contains the language excerpted in the first sentence of paragraph 45. The Doximity Defendants and Pathway refer to that document for a full and accurate description of its content.

46.     The allegations in paragraph 46 contain legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 46, except admit that the document attached to Plaintiff's Amended Complaint as Exhibit A contains the language excerpted in the first sentence of paragraph 46. The Doximity Defendants and Pathway refer to that document for a full and accurate description of its content.

47.     The allegations in paragraph 47 contain legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 47, except admit that the document attached to Plaintiff's Amended Complaint as Exhibit A contains the language excerpted in the first sentence of paragraph 47. The Doximity Defendants and Pathway refer to that document for a full and accurate description of its content.

48.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore deny those allegations, except admit that OpenEvidence allows non-verified members of the public to access its AI platform.

**Doximity and Pathway's Two-Pronged Strategy: Front Door and Back Door**

49.     The Doximity Defendants and Pathway deny the allegations in paragraph 49.

50.     The Doximity Defendants and Pathway deny the allegations in paragraph 50, except admit that: (i) Doximity held Medical Advisory Board meetings in March 2025, and (ii) among other topics of discussion, Doximity presented a live demonstration of its Doximity GPT product which was launched in February 2023, well before OpenEvidence launched.

51.     The Doximity Defendants and Pathway deny the allegations in paragraph 51, except admit that Tangney has corresponded with Daniel Nadler on LinkedIn. Nadler replied: "do you ever make it down to Southern California? Happy to host you for a nice lunch on the wild part of the coast…". Tangney doesn't do 'wild' lunches and never replied.

52.     The Doximity Defendants and Pathway deny the allegations in paragraph 52.

53.     The Doximity Defendants and Pathway deny the allegations in paragraph 53.

54.     The Doximity Defendants and Pathway deny the allegations in paragraph 54.

**The Doximity Defendants' Systematic**
**Campaign of Identity Theft and Unauthorized Access**

55.     The Doximity Defendants and Pathway deny the allegations in paragraph 55.

56.     To the extent the allegations in paragraph 56 characterize or describe documents or other sources, the Doximity Defendants and Pathway refer to those documents or sources for a full and accurate description of their content and deny any characterization or description that is inconsistent with those documents or other sources. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 56.

57.     The Doximity Defendants and Pathway deny the allegations in paragraph 57.

58.     The Doximity Defendants and Pathway deny the allegations in paragraph 58 except admit Konoske selected neurology and gastroenterology from drop down menus when accessing the OpenEvidence platform.

59.     The Doximity Defendants and Pathway deny the allegations in paragraph 59.

**Defendants' Prompt Injection Attacks**

60.     The Doximity Defendants and Pathway deny the allegations in paragraph 60.

61.     The Doximity Defendants and Pathway deny the allegations in paragraph 61 except admit that Balachandran caused queries including the language quoted in the second sentence of paragraph 61 to be submitted to OpenEvidence's AI platform.

62.     The Doximity Defendants and Pathway deny the allegations in paragraph 62 except admit that Konoske caused the text excerpted in paragraph 62 to be submitted as a query to OpenEvidence's AI platform.

63.     The Doximity Defendants and Pathway deny the allegations in paragraph 63.

64.     The Doximity Defendants and Pathway deny the allegations in paragraph 64.

65.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 65 and therefore deny those allegations. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 65.

66.     The Doximity Defendants and Pathway admit that Konoske caused queries regarding "nephrotic syndrome," and Balachandran and Konoske caused queries regarding "sedation before mri," to be submitted OpenEvidence's platform, either by entering those queries or by selecting pre-written queries suggested by the OpenEvidence platform. The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of queries submitted on those topics and therefore deny those allegations. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 66.

67.     The Doximity Defendants and Pathway deny the allegations in paragraph 67.

68.     The Doximity Defendants and Pathway deny lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 regarding the

functionality of the OpenEvidence platform and therefore deny those allegations. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 68.

69.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exact number of queries Konoske and Balachandran submitted to the OpenEvidence platform and therefore deny those allegations. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 69.

70.     The Doximity Defendants and Pathway deny the allegations in paragraph 70.

### Doximity's Acquisition of Pathway Medical, Inc.

71.     The Doximity Defendants and Pathway deny the allegations in paragraph 71.

72.     The Doximity Defendants and Pathway deny the allegations in paragraph 72 except admit that on February 26, 2025, OpenEvidence filed an action against Pathway and certain current and former employees.

73.     The Doximity Defendants and Pathway deny the allegations in paragraph 73 except admit that: (i) Pathway streamlines access to medical knowledge by providing curated information from medical literature, and (ii) Defendant Hershon St-Jean posted a tweet to X.com, which is depicted in screenshots contained in paragraph 73.

74.     The Doximity Defendants and Pathway deny the allegations in paragraph 74 except admit that Defendant Roy has not attended medical school.

75.     The Doximity Defendants and Pathway deny the allegations in paragraph 75.

76.     The Doximity Defendants and Pathway deny the allegations in paragraph 76.

77.     The Doximity Defendants and Pathway deny the allegations in paragraph 77.

78.     The Doximity Defendants and Pathway deny the allegations in paragraph 78, except admit that Defendant Mullie caused the text quoted in the second sentence of paragraph 78 to be submitted in a query to the OpenEvidence platform.

79.     The Doximity Defendants and Pathway admit that Mullie caused queries regarding a "system prompt" to be submitted OpenEvidence's platform. The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of queries submitted on that topic and therefore deny those allegations. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 79.

80.     The Doximity Defendants and Pathway deny the allegations in paragraph 80, except admit that Defendant Mullie caused the text quoted in the fourth sentence of paragraph 80 to be submitted in a query to the OpenEvidence platform.

81.     The Doximity Defendants and Pathway deny the allegations in paragraph 81, except admit that Defendant Mullie caused a query to be submitted to the OpenEvidence platform on December 20, 2024.

82.     The Doximity Defendants and Pathway lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the exact text of the queries excerpted in paragraph 82 and number of queries submitted on the topics described, and therefore deny those allegations. The Doximity Defendants and Pathway deny the remaining allegations in paragraph 82.

83.     The Doximity Defendants and Pathway deny the allegations in paragraph 83, except admit that Defendant St-Jean caused queries to be submitted to the OpenEvidence platform regarding Mounjaro and Ozempic, and created a post on X.

84.     The Doximity Defendants and Pathway deny the allegations in paragraph 84.

85.     The Doximity Defendants and Pathway deny the allegations in paragraph 85, except admit that (i) Doximity acquired Pathway in July 2025, (ii) OpenEvidence filed an action against Pathway and certain current and former employees in 2025.

86.     The Doximity Defendants and Pathway deny the allegations in paragraph 86.

## The Ongoing Nature of Defendants' Misconduct

87.     The Doximity Defendants and Pathway deny the allegations in paragraph 87, except admit that OpenEvidence sent Doximity a letter on June 3, 2025. The Doximity Defendants and Pathway specifically deny that they engaged in any wrongdoing or that they possess any stolen information.

88.     The Doximity Defendants and Pathway deny the allegations in paragraph 88, except admit that Pathway received a letter from OpenEvidence on December 19, 2024.

89.     The Doximity Defendants and Pathway deny the allegations in paragraph 89.

## Damages to OpenEvidence

90.     The Doximity Defendants and Pathway deny the allegations in paragraph 90.

91.     The Doximity Defendants and Pathway deny the allegations in paragraph 91.

## FIRST CAUSE OF ACTION:
### Violation Of Computer Fraud And Abuse Act (18 U.S.C. § 1030)
### (Against All Defendants)

92.     The Doximity Defendants and Pathway repeat and reallege their answers to each and every allegation above as if fully set forth herein.

93.     The Doximity Defendants and Pathway deny the allegations in paragraph 93.

94.     Paragraph 94 contains legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 94.

95. The Doximity Defendants and Pathway deny the allegations in paragraph 95.

96. The Doximity Defendants and Pathway deny the allegations in paragraph 96.

97. Paragraph 97 contains legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 97.

98. The Doximity Defendants and Pathway deny the allegations in paragraph 98.

99. The Doximity Defendants and Pathway deny the allegations in paragraph 99.

100. The Doximity Defendants and Pathway deny the allegations in paragraph 100.

101. The Doximity Defendants and Pathway deny the allegations in paragraph 101.

102. The Doximity Defendants and Pathway deny the allegations in paragraph 102.

103. The Doximity Defendants and Pathway deny the allegations in paragraph 103.

## SECOND CAUSE OF ACTION:
### Breach Of Contract
### (Against Individual Defendants)

104. The Doximity Defendants and Pathway repeat and reallege their answers to each and every allegation above as if fully set forth herein.

105. The Doximity Defendants and Pathway deny the allegations in paragraph 105.

106. The Doximity Defendants and Pathway deny the allegations in paragraph 106.

107. The Doximity Defendants and Pathway deny the allegations in paragraph 107.

108. The Doximity Defendants and Pathway deny the allegations in paragraph 108.

## THIRD CAUSE OF ACTION:
### Unjust Enrichment
### (Against Doximity and Pathway)

109. The Doximity Defendants and Pathway repeat and reallege their answers to each and every allegation above as if fully set forth herein.

110. The Doximity Defendants and Pathway deny the allegations in paragraph 110.

111.    The Doximity Defendants and Pathway deny the allegations in paragraph 111.

112.    The Doximity Defendants and Pathway deny the allegations in paragraph 112.

## FOURTH CAUSE OF ACTION:
### Trespass To Chattels
### (Against All Defendants)

113.    The Doximity Defendants and Pathway repeat and reallege their answers to each and every allegation above as if fully set forth herein.

114.    Paragraph 114 contains legal conclusions to which no response is required. To the extent a response is required, the Doximity Defendants and Pathway deny the allegations in paragraph 114.

115.    The Doximity Defendants and Pathway deny the allegations in paragraph 115.

116.    The Doximity Defendants and Pathway deny the allegations in paragraph 116.

**WHEREFORE**, the Doximity Defendants and Pathway respectfully request that the Court enter judgment in their favor and against Plaintiff and grant them such other and further relief as the Court deems proper.

\* \* \* \* \* \* \* \* \* \*

## AFFIRMATIVE DEFENSES

Without relieving Plaintiff of its burden of proof or assuming any burden that the law would not otherwise impose, the Doximity Defendants and Pathway assert the following defenses to the Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, *in pari delicto*, and assumption of risk.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any injury-in-fact or damages as a result of any alleged actions by Doximity.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its failure to mitigate its alleged damages.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because recovery would result in unjust enrichment to Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of laches, waiver, acquiescence, ratification and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of preemption.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for false advertising and defamation are barred because the alleged statements are truthful.

## EIGHTH AFFIRMATIVE DEFENSE

The imposition of treble damages would be punitive and violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the Excessive Fines Clause of the United States Constitution.

## JURY DEMAND (AS TO PLAINTIFF'S PUTATIVE CLAIMS)

The Doximity Defendants and Pathway demand a trial by jury on all claims so triable.

## **PRAYER FOR RELIEF (AS TO PLAINTIFF'S PUTATIVE CLAIMS)**

WHEREFORE, the Doximity Defendants and Pathway respectfully request that this Court:

    (i)      Deny any and all relief requested by the Plaintiff;

    (ii)     Enter judgment in favor of the Doximity Defendants and Pathway on all of Plaintiff's claims and dismiss the complaint with prejudice;

    (iii)    Award the Doximity Defendants and Pathway their attorneys' fees and expenses; and

    (iv)    Award such other and further relief as the Court deems just and proper.

Dated: November 24, 2025
Boston, Massachusetts

Respectfully submitted,

/s/ *James R. Carroll*

James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

William E. Ridgway (*pro hac vice*)
Brian O'Connor (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
320 S. Canal Street
Chicago, Illinois 60606
(312) 407-0700
william.ridgway@skadden.com
brian.oconnor@skadden.com

Bijal V. Vakil (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
bijal.vakil@skadden.com

*Counsel for Defendants*
*Doximity, Inc., Jey Balachandran,*
*Jake Konoske, and Pathway Medical, Inc.*