# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OPENEVIDENCE INC., | |
| *Plaintiff,* | Civil Action No. 1:25-cv-11802-RGS |
| v. | |
| DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, ERIC YAMGA, KHUDHUR MOHAMMED, and VINCE ROY | |
| *Defendants.* | |

## MEMORANDUM IN SUPPORT OF OPENEVIDENCE'S
## MOTION TO DISMISS DOXIMITY INC.'S AND PATHWAY MEDICAL, INC.'S
## AMENDED COUNTERCLAIMS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

      A.    The Parties ......................................................................................................... 2

      B.    Defendants Misappropriated Physician Identities to Gain Unauthorized Access ........... 2

      C.    Doximity Files Retaliatory Counterclaims ...................................................... 3

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.      THE LANHAM ACT CLAIM (COUNT I) SHOULD BE DISMISSED ................................... 4

      A.    The LinkedIn "Puppet Account" Allegations Fail to Identify Specific Statements ......... 5

      B.    The Investor Statements (by Sequoia and Coatue) and Unattributed Statements Are Not Actionable Against OpenEvidence .................................................. 6

      C.    The "Loser," "#1 for Doctors," and HIPAA Compliance Statements Are Non-Actionable Puffery or Legal Opinion ............................................................. 9

      D.    The Stock Performance and User Growth Statements Are Verifiably True ................. 10

      E.    The USMLE Score and "#1 for Doctors" Statements Include Disclaimers ................... 11

      F.    Counterclaim-Plaintiffs Fail to Plausibly Allege Falsity for Key Statements ............... 12

      G.    Counterclaim-Plaintiffs Fail to Allege Actual Deception or Materiality ...................... 13

      H.    Counterclaim-Plaintiffs Fail to Plead Injury and Damages ........................................... 13

II.      THE DEFAMATION CLAIM (COUNT III) SHOULD BE DISMISSED ............................. 14

      A.    The Alleged Statements Are Not Defamatory As a Matter of Law .............................. 14

      B.    Doximity Fails to Plausibly Allege Harm ...................................................... 16

III.    THE UNFAIR BUSINESS PRACTICES CLAIM (COUNT II) SHOULD BE DISMISSED ................................................................................................................... 16

      A.    Counterclaim-Plaintiffs Fail to Plead That Any Conduct Occurred Primarily and Substantially in Massachusetts ....................................................................... 17

      B.    The Chapter 93A Claim Is Derivative and Fails for the Same Reasons As The Lanham Act and Defamation Claims ............................................................. 17

CONCLUSION........................................................................................................................ 18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023)...................................................................................................8

*Amrak Prods., Inc. v. Morton*,
   410 F.3d 69 (1st Cir. 2005)......................................................................................15

*Arantzazu Zuzene Galdos-Shapiro v. The Town of Great Barrington*,
   2025 WL 2959878 (D. Mass. Oct. 17, 2025) ..........................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................3, 4

*Azurity Pharms., Inc. v. Edge Pharma, LLC*,
   45 F.4th 479 (1st Cir. 2022)..................................................................................5, 10

*BBJ, Inc. v. MillerCoors, LLC*,
   2015 WL 4465410 (D. Mass. Jul. 21, 2015) ...........................................................16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................3, 4

*Bern Unlimited, Inc. v. Burton Corp.*,
   25 F. Supp. 3d 170 (D. Mass. 2014).........................................................................9

*Bose Corp. v. Consumers Union of the U.S., Inc.*,
   57 F.R.D. 528 (D. Mass. 1973).................................................................................16

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003) ........................................................................................8

*Carnelli v. Bell at Salem Station*,
   2019 WL 929624 (Mass. App. Ct. Feb. 25, 2019) ...................................................16

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
   284 F.3d 302 (1st Cir. 2002)......................................................................................5

*Clemente Props., Inc. v. Pierluisi Urrutia*,
   693 F. Supp. 3d 215 (D.P.R. 2023) ..........................................................................14

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
   228 F.3d 24 (1st Cir. 2000)..............................................................................5, 10, 12

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) .....................................................................................9

*CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*,
    768 F. Supp. 3d 183 (D. Mass. 2025) ...................................................................17

*DiCroce v. McNeil Nutritionals, LLC*,
    640 F. Supp. 3d 182 (D. Mass. 2022) ............................................................11, 12

*Duty Free Americas Inc. v. Estee Lauder Cos.*,
    797 F.3d 1248 (11th Cir. 2015) ....................................................................... 6, 7

*Encompass Ins. Co. of MA v. Giampa*,
    522 F. Supp. 2d 300 (D. Mass. 2007) ........................................................5, 6, 13

*F.T.C. v. Direct Mktg. Concepts, Inc.*,
    624 F.3d 1 (1st Cir. 2010) ............................................................................ 9, 13

*Ferring Pharmaceuticals Inc. v. Braintree Laboratories, Inc.*,
    38 F. Supp. 3d 169 (D. Mass. 2014) ....................................................................5

*Gattineri v. Wynn MA, LLC*,
    93 F.4th 505 (1st Cir. 2024) ..............................................................................17

*Gentle Wind Project v. Garvey*,
    2004 WL 1946448 (D. Me. Sept. 2, 2004) ..........................................................13

*Hayes v. Mirick*,
    378 F. Supp. 3d 109 (D. Mass. 2019) .................................................................16

*Hogan v. Teamsters Local 170*,
    495 F. Supp. 3d 52 (D. Mass. 2020) ...............................................................4, 14

*Imagine Medispa, LLC, v. Transformations, Inc.*,
    999 F. Supp. 2d 873 (D. W.Va. 2014) ..................................................................6

*Levinsky's v. Wal-Mart Stores, Inc.*,
    127 F.3d 122 (1st Cir. 1997) ..............................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..........................................................................................14

*Linkage Corp. v. Trustees of Boston Univ.*,
    425 Mass. 1 (1997) ...........................................................................................17

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
    142 F.3d 26 (1st Cir. 1998) ................................................................................15

*McCabe v. Rattiner*,
    814 F.2d 839 (1st Cir. 1987) ..............................................................................15

*Mead Johnson & Co. v. Abbott Laboratories*,
    201 F.3d 883 (7th Cir. 2000) .......................................................................11, 12

*Mulvihill v. Spalding Sports, Worldwide, Inc.*,
    184 F. Supp. 2d 99 (D. Mass. 2002) ................................................................... 4, 14

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
    457 F. Supp. 3d 207 (E.D.N.Y. 2020) .................................................................... 12

*Phantom Touring, Inc. v. Affiliated Publications*,
    953 F.2d 724 (1st Cir. 1992) ................................................................................. 15

*Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*,
    2014 WL 1203106 (D. Mass. Mar. 19, 2014) ....................................................... 17

*RainSoft v. MacFarland*,
    350 F. Supp. 3d 49 (D.R.I. 2018) ............................................................................ 8

*Ravnikar v. Bogojavlensky*,
    438 Mass. 627 (2003) ........................................................................................... 16

*Seelig v. Infinity Broadcasting Corp.*,
    97 Cal. App. 4th 798 (Cal. Ct. App. 2002) .......................................................... 15

*Shay v. Walters*,
    702 F.3d 76 (1st Cir. 2012) ................................................................................... 15

*Stiffel Co. v. Westwood Lighting Grp.*,
    658 F. Supp. 1103 (D.N.J. 1987) ............................................................................ 9

*Ultra-Temp Corp v. Advanced Vacuum Systems Inc.*,
    27 F.Supp.2d 86 (D. Mass. 1998) ....................................................................... 5, 8

*Wang Yan v. ReWalk Robotics Ltd.*,
    330 F. Supp. 3d 555 (D. Mass. 2018) .................................................................. 10

## **Rules/Statutes**

15 U.S.C. § 1125(a) .............................................................................................. 4, 6, 8

## INTRODUCTION

Doximity and Pathway ("Counterclaim-Plaintiffs") have admitted that their executives impersonated physicians to infiltrate OpenEvidence's platform. Answer ¶¶ 7, 10, 14, 31, 44, 58, 61-62, 66, 74, 78-81, 83. When OpenEvidence sued based on this now-admitted misconduct, Counterclaim-Plaintiffs retaliated with these counterclaims. But there is a distinction between using unsuspecting doctors' credentials to gain unauthorized access to a competitor's platform in order to build your own (what Doximity and Pathway did), and touting one's platform by referring to independent third-party comparisons (what OpenEvidence is accused of doing). And though Doximity and Pathway were given the opportunity to cure their deficient pleadings, they still fail to identify actionable statements—in many cases failing even to identify the specific language they claim is unfairly competitive. It is not enough to state a Lanham Act claim, for example, by pointing to unspecified YouTube videos without any allegations regarding the source or specific content at issue.

Indeed, most of the supposed "false advertising" Counterclaim-Plaintiffs complain of did not come from OpenEvidence, but rather from independent third parties: Coatue's unsolicited short thesis on Doximity, Doximity's own Wall Street public filings, and a foreign physician's group publication. The counterclaims are not a response to wrongdoing—they are retaliation for being called out by Wall Street and the consequences thereof (Doximity's stock price is currently at a 52-week low and has declined 25% over the past year, and who better to blame than OpenEvidence).

By omitting key factual allegations, each claim fails. The Lanham Act claim founders on an inability to identify actionable statements, let alone deception or injury. Where Counterclaim-Plaintiffs do identify a subset of alleged statements they are textbook puffery, and there are no allegations suggesting that doctors are swayed by a company calling itself #1. The defamation

1

claim rests on demonstrably true statements and non-actionable opinion. The Chapter 93A claim is derivative and fails to allege that conduct occurred in Massachusetts. And Pathway's joinder is hollow: not a single alleged statement even mentions Pathway. The Court should thus dismiss all counterclaims with prejudice.

## BACKGROUND

### A.    The Parties

OpenEvidence, founded by Daniel Nadler and Zachary Ziegler, operates the world's leading AI-powered medical information platform and is the most valuable company with a direct-to-doctors product in the United States. Am. Compl. ¶ 21. Doximity is a smaller cap social network for some healthcare professionals founded in 2010. *Id.* ¶ 22; Am. Counterclaim ¶ 1. Pathway is a Canadian company that Doximity acquired in July 2025. Am. Compl. ¶ 14.

### B.    Defendants Misappropriated Physician Identities to Gain Unauthorized Access

Counterclaim-Plaintiffs admit that, beginning in March 2025, Doximity's executives systematically used other physicians' NPI credentials to access OpenEvidence's platform. Answer ¶¶ 7, 10, 58, 61-62, 66.[1] Similarly, beginning in October 2023, Pathway executives and employees created false personas and used misappropriated NPI credentials to access OpenEvidence's platform. Answer ¶¶ 14, 31, 44, 74, 78-81, 83. Counterclaim-Plaintiffs further admit that, once inside, their executives and employees used "prompt injection attacks"—a sophisticated cyberattack technique—to attempt to extract OpenEvidence's highly proprietary system prompts and other confidential information. Answer ¶¶ 7, 61-62, 78-80. In the midst of these attacks, Pathway's Chief Medical Officer, Louis Mullie, input "Haha pwned!!" (Answer ¶ 80)—hacker

---

[1]  At the same time as Doximity executives were infiltrating OpenEvidence, Doximity CEO Jeff Tangney reached out to OpenEvidence CEO Daniel Nadler to try to arrange dinner. Am. Compl. ¶¶ 51-52. Tangney described himself as a "big fan" and "admirer." *Id.*

slang for "you've been owned" or "compromised."[2]  Mullie continued submitting such queries to OpenEvidence on December 20, 2024—the day after Pathway received OpenEvidence's cease and desist letter.  Answer ¶ 81.

OpenEvidence sued Pathway for its misconduct on February 26, 2025.  Thereafter, OpenEvidence learned that Doximity's executives were up to the same misconduct, and filed suit against Doximity on June 20, 2025.  In July 2025, less than a month later and while both lawsuits were pending, Doximity acquired Pathway for $63 million, making Pathway a wholly-owned subsidiary.  Am. Compl. ¶¶ 85-86.  OpenEvidence therefore dismissed its lawsuit against Pathway on October 23, 2025, and filed an Amended Complaint on October 29, 2025, adding Pathway and individual Pathway defendants to this action. Dkt. 38.

    **C.**    **Doximity Files Retaliatory Counterclaims**

On September 17, 2025, Doximity filed counterclaims under the Lanham Act, Massachusetts defamation law, and Chapter 93A. Dkt. 33. On November 7, 2025, OpenEvidence moved to dismiss. Dkt. 43.  On November 24, 2025, Doximity and Pathway filed Amended Counterclaims asserting the same three causes of action.  Dkt. 60.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is insufficient for a pleading to offer mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Rather, a pleading requires more than

---

[2]  *See* https://haveibeenpwned.com/FAQs (explaining that "pwned" is "typically used to imply that someone has been controlled or compromised").

just "naked assertion[s]" without "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Defamation "is a disfavored action" in Massachusetts and courts apply heightened pleading requirements to defamation claims, requiring plaintiffs to plead with specificity: (a) the speaker; (b) the approximate date; (c) the medium of delivery; (d) the third-party recipient; and (e) the precise wording used. *Mulvihill v. Spalding Sports, Worldwide, Inc.*, 184 F. Supp. 2d 99, 103–04 (D. Mass. 2002). The complaint must set forth the "who, what, when, and where" of the alleged defamatory statements with enough particularity to "give Defendants fair notice of the factual basis for Plaintiff's defamation claim." *Hogan v. Teamsters Local 170*, 495 F. Supp. 3d 52, 61–62 (D. Mass. 2020).

## ARGUMENT

## I.    THE LANHAM ACT CLAIM (COUNT I) SHOULD BE DISMISSED

To state a false advertising claim under the Lanham Act (15 U.S.C. § 1125(a)), a plaintiff must allege: "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales

or by a lessening of goodwill associated with its products."[3]  *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002).  "[F]ailure to allege factual support for any of these elements is fatal to a claim for false advertising under the Lanham Act."  *Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp. 2d 300, 311 (D. Mass. 2007).  Counterclaim-Plaintiffs fail to allege such factual support.

### A.   The LinkedIn "Puppet Account" Allegations Fail to Identify Specific Statements

Counterclaim-Plaintiffs allege OpenEvidence created "fake LinkedIn accounts" that falsely attribute disparagement of Doximity to independent third party sources."  Am. Counterclaim ¶ 137(e); *see also* Am. Counterclaim ¶¶ 75-76.[4]  But they do not identify or quote a single post, describe the substance of any "advertisement," or explain what specific claims were made.  To state a Lanham Act claim, a plaintiff must identify an actual "statement" and establish that it is "false or misleading." *See Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 33 (1st Cir. 2000) (identifying the particular advertisements or statements at issue); *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486 (1st Cir. 2022) (same); *Ultra-Temp Corp v. Advanced Vacuum Systems Inc*., 27 F.Supp.2d 86, 91 (D. Mass. 1998) ("It is axiomatic that, to establish false advertising, Plaintiffs must identify an advertisement or promotion containing false information.").  Counterclaim-Plaintiffs offer only vague and conclusory assertions that these accounts "promoted numerous harmful and deceptive advertisements" (Am.

---

[3]  Even if the Court were to find that Counterclaim-Plaintiffs stated a Lanham Act claim based on certain statements, the Court can and should dismiss the claim insofar as it rests on other statements that the Court finds are not plausibly alleged to be actionable. *See Ferring Pharmaceuticals Inc. v. Braintree Laboratories, Inc.*, 38 F. Supp. 3d 169, 186 (D. Mass. 2014) (dismissing a Lanham Act claim as to some statements but denying dismissal as to others).  Given the breadth of Counterclaim-Plaintiffs' allegations, dismissing non-actionable theories now will substantially reduce litigation costs and focus the parties' resources on claims that have legal merit.

[4]  There are no allegations that any of the unidentified LinkedIn posts said anything—negative or otherwise—about Pathway.

Counterclaim ¶ 77)—precisely the type of conclusory allegation that fail to state a claim.  *See Imagine Medispa, LLC*, *v. Transformations, Inc.*, 999 F. Supp. 2d 873, 881–82 (D. W.Va. 2014) (holding that pleading generally that a defendant "produced and caused to be aired false and misleading [] advertisements," without additional specifics, was "nothing but a conclusory allegation that fails"). Because the Court cannot assess the truth or falsity of unidentified statements, these claims must be dismissed.[5]

### B.    The Investor Statements (by Sequoia and Coatue) and Unattributed Statements Are Not Actionable Against OpenEvidence

Several challenged statements were made by third parties or lack any identified source. But mere publication of a statement by a third party, without allegations establishing "control over" or "coordinated action, or encouragement, [or] inducement" of the third party, is insufficient. *Duty Free Americas Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1279 (11th Cir. 2015); *see also Encompass*, 522 F. Supp. 2d at 311 (to be actionable "commercial advertising or promotion," the plaintiff must identify the source as "a speaker who is a competitor of the plaintiff in some line of trade or commerce").

**Sequoia's "no hallucinations" statement.** Counterclaim-Plaintiffs allege that Sequoia Capital stated that "[t]here are no hallucinations" on OpenEvidence's platform.  Am. Counterclaim ¶ 41.  But they allege only that OpenEvidence "disseminated" this statement "through its primary investor," which is insufficient to establish control or coordination. *See Duty Free Americas Inc.*,

---

[5]    While Counterclaim-Plaintiffs allege these accounts failed to disclose OpenEvidence's sponsorship in violation of FTC guidelines (Am. Counterclaim ¶ 86), the Lanham Act does not provide a private right of action for alleged FTC violations.  Counterclaim-Plaintiffs fail to establish how the purported non-disclosure of a source's identity constitutes a "false or misleading representation of fact" about "the nature, characteristics, qualities, or geographic origin of [another's] goods, services, or commercial activities"—the only speech the Lanham Act reaches. 15 U.S.C. § 1125(a)(1)(B).

797 F.3d at 1279 (requiring a showing of "control" or "coordination" for third party speech).

**Coatue's "Loser in the AI Race" graph.** Counterclaim-Plaintiffs allege that OpenEvidence reposted a graph created by third party Coatue characterizing Doximity as a "Loser in the AI Race." Am. Counterclaim ¶¶ 57, 137(c). But as the graph itself makes clear, Coatue—one of the world's largest hedge funds—created it, not OpenEvidence. *See* Am. Counterclaim ¶ 57. Because the challenged phrase was coined by Coatue, there is no basis to impute it to OpenEvidence. Certainly the Amended Counterclaims identify no such basis—Counterclaim-Plaintiffs do not even attempt to allege "control" or "coordination." *See Duty Free Americas Inc.*, 797 F.3d at 1279.

**Unidentified statements.** Several other allegations lack sufficient detail about source, audience, or purpose. Counterclaim-Plaintiffs allege that: (1) OpenEvidence co-founder Zachary Ziegler claimed the OpenEvidence platform "was not at risk of hallucinations" in an "Australia Doctor Group" article without attaching the article or alleging any additional context about its audience[6] (Am. Counterclaim ¶ 38); (2) OpenEvidence "on information and belief" disseminated a YouTube video that "falsely asserts that Doximity 'scrapes' physician information and that Doximity's users do not affirmatively sign up and undergo rigorous verification," without providing a link, identifying its creator, or explaining how OpenEvidence was involved (Am. Counterclaim ¶ 88); (3) OpenEvidence showed "pitch decks" containing allegedly false metrics—including that Doximity took "11 years to reach 300,000 users"—to unidentified "current and prospective clients," without attaching the actual "pitch deck" or alleging facts regarding whether, when, and to whom they were disseminated (Am. Counterclaim ¶¶ 89-93); and (4) OpenEvidence

---

[6]  Doximity provides a hyperlink to the "AusDoc" website. The article is behind a paywall and cannot be accessed in full. The article preview does not contain any quotes attributable to Mr. Ziegler.

made statements about NPI verification by providing screenshots with no citation to any source or allegations regarding when, where, or by whom they were created (Am. Counterclaim ¶¶ 23, 29). Without knowing the source or context of these alleged statements—or in some cases, the actual language of the statements themselves—the Court cannot assess whether they constitute "commercial advertising or promotion" made "with the intent of influencing potential customers" and "disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion,'" as the Lanham Act requires. *RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 61–62 (D.R.I. 2018).

Moreover, Counterclaim-Plaintiffs' limited allegations demonstrate that the statements meet none of these requirements. For example, Mr. Ziegler's alleged statement in an Australian publication is not actionable without any additional context. *See Boule v. Hutton*, 328 F.3d 84, 91–92 (2d Cir. 2003) (explaining that a quote in an article does not automatically qualify as commercial advertisement to be actionable under the Lanham Act, and that where the quote is "inextricably intertwined with the reporters' coverage" of a "matter of public concern," it is not actionable); *see also Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023) (Section 1125(a)(1) of the Lanham Act does not have extraterritorial reach). And "pitch decks" allegedly shown to a limited number of (unidentified) potential clients do not constitute "commercial advertising or promotion," which requires the misrepresentation to be "disseminated sufficiently to the relevant purchasing public." *Ultra-Temp Corp.*, 27 F. Supp. 2d at 95. Counterclaim-Plaintiffs' reliance on screenshots, paywalled articles, and unidentified videos creates a factual vacuum that is fatal under *Twombly* and the Lanham Act. Without a specific advertisement disseminated to the relevant purchasing public, no claim can stand.

## C.    The "Loser," "#1 for Doctors," and HIPAA Compliance Statements Are Non-Actionable Puffery or Legal Opinion

Even where source and audience are alleged, many are non-actionable as a matter of law because they constitute competitive puffery or legal opinion. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (whether a statement constitutes puffery is a "matter of law" that the Court may determine on a motion to dismiss.); *F.T.C. v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 7 (1st Cir. 2010) (explaining that puffery is "un-actionable" under the Lanham Act).

**"Loser in the AI race" and "#1 for Doctors."** Counterclaim-Plaintiffs take issue with Coatue's "Loser in the AI race" designation and OpenEvidence's statement that it is "#1 for Doctors" with reference to the Apple App Store. Am. Counterclaim ¶¶ 57, 64-68, 137(c)-(d).  But these statements are quintessential rhetorical hyperbole and thus inactionable.  *Direct Mktg. Concepts*, 624 F.3d at 11; *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 182 (D. Mass. 2014) (defining puffery as "exaggerated advertising or unspecified boasting . . . upon which no reasonable buyer would rely"); *Stiffel Co. v. Westwood Lighting Grp*., 658 F. Supp. 1103, 1115 (D.N.J. 1987) ("[C]laims of general superiority [] constitute[] puffing and [are] not actionable as false advertising).

**McDonald's stock comparison.** Counterclaim-Plaintiffs challenge an ad featuring Ronald McDonald with text stating "When your CEO drops 'AI' 24 times in a single earnings call . . . But your stock still underperforms McDonald's over the last four years."  Am. Counterclaim ¶¶ 69-73. Notably, this post does not even expressly mention Doximity.  Even if someone inferred that the post is about Doximity, this is the type of tongue-in-cheek, rhetorical comparison that no reasonable consumer would interpret as a precise factual claim.

**HIPAA Compliance.**  Counterclaim-Plaintiffs challenge OpenEvidence's statements

about HIPAA compliance.  Am. Counterclaim ¶¶ 111-114, 137(f).  But statements about compliance with complex regulatory schemes like HIPAA are generally non-actionable legal opinions unless "no good faith doubt concerning its interpretation would be possible." *Azurity*, 45 F.4th at 491.  Counterclaim-Plaintiffs do not even identify a HIPAA provision that OpenEvidence allegedly violated.[7]

### D.    The Stock Performance and User Growth Statements Are Verifiably True

Counterclaim-Plaintiffs assert claims based on multiple statements that are based on verifiable public information of which this Court can take judicial notice to confirm they are true. *Clorox*, 228 F.3d at 33 (requiring statement to be "literally false").

**McDonald's stock comparison.**  The statement suggests Doximity's stock "underform[ed] McDonald's over the last four years." Counterclaim ¶ 71.  But that is true. *Wang Yan v. ReWalk Robotics Ltd.*, 330 F. Supp. 3d 555, 563 n.3 (D. Mass. 2018) (the court may take judicial notice of publicly-traded stock prices).  From June 24, 2021 to May 19, 2025, McDonald's stock increased 37.67% ($233.33 to $321.23) while Doximity's increased 1.5% ($53.00 to $53.77).  Declaration of Stephen Broome ("Broome Decl."), Exs. 1–4.[8]

**"11 years to reach 300,000 users."**  Counterclaim-Plaintiffs concede this statement "relies on Doximity's statement in its S-1." Am. Counterclaim ¶ 93.  While Doximity disagrees with OpenEvidence's interpretation of that public S-1 data, a statement based on publicly available information cannot be "literally false." *See Clorox*, 228 F.3d at 33 (explaining that to succeed on

---

[7]  Counterclaim-Plaintiffs allege that OpenEvidence revised its privacy policy that previously contained boilerplate language reserving the right to share certain query data. Am. Counterclaim ¶¶ 111-114. But OpenEvidence's revisions to its policy do not establish a HIPAA violation. Counterclaim-Plaintiffs do not plead facts showing that OpenEvidence shared patient data in violation of HIPAA.

[8]  Doximity's attempt to use its "private May 2021 price" (Am. Counterclaim ¶ 72) is a red herring; the market only trades on public prices.

a "falsity" theory the statement must be "literally false"); *see also Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 886–87 (7th Cir. 2000) (holding that a reasonable interpretation of public data or "factual propositions"—even ones the competitor disputes—is not actionable false advertising).

E.    **The USMLE Score and "#1 for Doctors" Statements Include Disclaimers**

A statement cannot be misleading when accompanied by accurate clarification. *DiCroce v. McNeil Nutritionals, LLC*, 640 F. Supp. 3d 182, 188 (D. Mass. 2022) ("Courts 'routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived.'").

**USMLE "perfect 100%."** Counterclaim-Plaintiffs allege OpenEvidence falsely claimed to have scored 100% on the United States Medical Licensing Examination (USMLE) when, according to them, OpenEvidence got one answer wrong. Am. Counterclaim ¶ 137(b). But the very announcement that they cite acknowledges this fact.[9] *Id.* ¶ 48, n.10. It then explains why OpenEvidence nevertheless scored 100%: licensed physicians verified that OpenEvidence's answer was medically correct while the official answer key was wrong. OpenEvidence thus provided a transparent "disclaimer" that dispels any claim of literal falsity. *DiCroce*, 640 F. Supp. 3d at 188.[10]

**#1 for Doctors.** Counterclaim-Plaintiffs claim this ranking is misleading because the App Store's "Medical" category includes consumer apps, not just physician apps. Am. Counterclaim

---

[9]  "OpenEvidence Creates the First AI in History to Score a Perfect 100% on the USMLE," OPENEVIDENCE (Aug. 15, 2025), available at www.openevidence.com/announcements/openevidence-creates-the-first-ai-in-history-to-score-a-perfect-100percent-on-the-united-states-medical-licensing-examination-usmle.

[10]  Doximity also fails to allege facts establishing falsity; it relies entirely on anonymous comments regarding "NEJM questions," not the USMLE—an entirely different examination. Am. Counterclaim ¶ 47.

¶ 67. But they acknowledge that OpenEvidence's advertisement disclosed this very fact. *Id.* This "presence of a disclaimer" defeats any claim of deception. *DiCroce*, 640 F. Supp. 3d at 188; *see also Mead*, 201 F.3d at 884 (holding that "1st Choice of Doctors" was not misleading because "[i]n English, 'first' is ordinal. It denotes rank in a series," and the law does not forbid truthful ranking claims).

### F. Counterclaim-Plaintiffs Fail to Plausibly Allege Falsity for Key Statements

Counterclaim-Plaintiffs also do not plausibly allege that certain challenged statements are false or misleading. *See Clorox*, 228 F.3d at 33 (Lanham Act claim requires showing statement is "literally false" or "misleading").

**NPI Verification.** Counterclaim-Plaintiffs allege that statements about OpenEvidence limiting access to healthcare providers are false, but admit that OpenEvidence "users are prompted to enter an NPI number" to obtain full access. Am. Counterclaim ¶ 26. Their theory of falsity is that OpenEvidence does not cross-reference against the user's name—OpenEvidence in fact does exactly this—and regardless, this is a false grievance about *rigor*, not whether verification occurs. That their own executives were required to misappropriate NPIs to gain access to OpenEvidence confirms that an NPI *is* required. Answer ¶¶ 7, 10, 14, 31, 44, 58, 61-62, 66, 74, 78-81, 83.

**"No Hallucinations."** In AI, "hallucination" refers to fabricating facts—not providing an answer a user dislikes. Counterclaim-Plaintiffs' evidence consists of anonymous online comments from users who disagreed with OpenEvidence's recommendations (despite no obvious medical qualifications). Am. Counterclaim ¶¶ 42-46. None identifies a single instance where the platform fabricated information. Generic allegations that LLMs "sometimes" hallucinate (Am. Counterclaim ¶ 36) do not establish that OpenEvidence's platform does. *See N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 223–24 (E.D.N.Y. 2020) (conclusory assertions without "additional information suggesting why it is false" fail to "raise that allegation above the

speculative level").

### G.     Counterclaim-Plaintiffs Fail to Allege Actual Deception or Materiality

Across forty-four pages, the Amended Counterclaims fail to identify a single physician, client, or customer who was actually misled, or explain how these statements would influence a sophisticated doctor's decision-making.  Indeed, Doximity quotes physicians who purportedly criticized OpenEvidence's platform, proving those physicians were not "deceived" by any of these purported statements. Am. Counterclaim ¶¶ 42-46.  And not a single alleged statement even mentions Pathway, making it implausible that anyone was misled about Pathway's business or offerings.  Counterclaim-Plaintiffs' conclusory assertions that OpenEvidence's statements "have a tendency to confuse, mislead, and deceive a substantial segment of its audience"  (Am. Counterclaim ¶ 138) and "are likely to influence the decision-making of consumers" (Am. Counterclaim ¶ 139) are precisely the generic recitation of elements that *Iqbal*, *Twombly*, and the Lanham Act forbid.  *Encompass*, 522 F. Supp. 2d at 311 (holding that a "formulaic recitation of the elements" in Lanham Act claims with "no factual allegations to support" each element constitute "conclusory allegations" that fail to state a claim); *Gentle Wind Project v. Garvey*, 2004 WL 1946448, at *6 (D. Me. Sept. 2, 2004), report and recommendation adopted, No. 04-CV-103-P-C, 2004 WL 2801576 (D. Me. Dec. 6, 2004) (holding that plaintiff's "failure to allege facts" that the statement "influenc[ed] potential customers" is "enough to entitle the moving defendants to dismissal"); *Direct Mktg. Concepts*, 624 F.3d at 7 (1st Cir. 2010) (requiring factual allegations that a statement is "misleading in a material respect").

### H.     Counterclaim-Plaintiffs Fail to Plead Injury and Damages

Counterclaim-Plaintiffs' damages allegations are fatally deficient. Doximity offers only a conclusory assertion of "lost profits from reduced demand for Doximity GPT" (Am. Counterclaim ¶ 141) without identifying any facts connecting this "reduced demand" to any specific

advertisement.    Pathway's allegations are even more hollow: the Amended Counterclaims allege generically that "Doximity and Pathway sustained damages" (Am. Counterclaim ¶ 152)[11] but fail to identify a single statement concerning Pathway or explain how statements about *Doximity* caused injury to *Pathway*. These generic allegations of harm "come nowhere close to meeting the *Iqbal* and *Twombly* plausibility requirement." *Clemente Props., Inc. v. Pierluisi Urrutia*, 693 F. Supp. 3d 215, 246 (D.P.R. 2023); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (Lanham Act plaintiff must allege an "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising").

## II.    THE DEFAMATION CLAIM (COUNT III) SHOULD BE DISMISSED

Doximity's defamation claim should be dismissed because the alleged statements are not defamatory as a matter of law and Doximity fails to plausibly allege harm.

### A.    The Alleged Statements Are Not Defamatory As a Matter of Law

Doximity's defamation claim fails because the alleged private statements lack the required detail to plead defamation, and the alleged public statements lack defamatory meaning, are non-actionable opinion, or are demonstrably true.

With respect to the alleged private statements—the "pitch deck," Am. Counterclaim 155(d)-(e)—Doximity fails to allege requisite elements of *how* the pitch deck statements were "uttered" and which "third parties . . . heard or read them." *Mulvihill*, 184 F. Supp. 2d at 104.  The naked assertion that materials were provided to "prospective clients" is insufficient.  *Hogan v. Teamsters Local 170*, 495 F. Supp. 3d 52, 61–62 (D. Mass. 2020) (defamation plaintiff required

---

[11]   The allegation that Pathway lost an unidentified advertising client (Am. Counterclaim ¶¶ 103-105) does not cure this deficiency.  That allegation concerns purported informal communications about *pending litigation*—not injury from false advertising about Pathway's products.  Pathway fails to allege that the purported client's decision was based on any false statement of fact as opposed to the mere existence of the lawsuit itself.

to plead the "who, what, when, and where").

And the alleged public statements fare no better:

**McDonald's stock comparison.**  Doximity does not expressly identify Doximity and thus this statement is not actionable. *Arantzazu Zuzene Galdos-Shapiro v. The Town of Great Barrington*, 2025 WL 2959878, at *19 (D. Mass. Oct. 17, 2025) ("adverting to Plaintiff only once in passing and not at all by name, cannot be construed to meet this [defamatory meaning] standard").  And the statement is demonstrably true.  *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 42 (1st Cir. 1998) ("Truth is an absolute defense to a defamation action under Massachusetts law.").  Doximity's public stock performance *did* underperform McDonald's during the period cited.  *See* Broome Decl., Exs. 1-4.

**"Loser in the AI race."**  This statement—by a third party (Coatue), not OpenEvidence—is mere "rhetorical hyperbole" and cannot form the basis of a defamation claim.  *Levinsky's v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 129-30 (1st Cir. 1997) (holding "trashy" is non-actionable opinion lacking "single, readily ascertainable meaning"); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir. 1992) (rejecting defamation claim based on calling a play "fake," "phony," and a "rip-off"); *McCabe v. Rattiner*, 814 F.2d 839, 842-43 (1st Cir. 1987) (similar regarding "scam"); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 810-11 (Cal. Ct. App. 2002) ("Loser is a description applied to persons in many contexts that bears no potential defamatory inference.").

**"#1 for Doctors / # 5 for Doctors."**  There is nothing inherently reputation-damaging about being ranked #5 in a competitive market; the statement does not impugn Doximity's competence or business ethics.  *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (statement must be "defamatory such that it 'could damage the plaintiff's reputation in the community.'"); *Amrak*

*Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005) ("[W]hether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court.").

### B.    Doximity Fails to Plausibly Allege Harm

Doximity must plead that the at-issue statements "either caused [it] economic loss (traditionally referred to as 'special damages' or 'special harm'), or are actionable without proof of economic loss [because it is defamation *per se*]." *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 630 (2003).  But Doximity offers only bare assertions of "damage to its reputation" and "tendency to injure its business." Am. Counterclaim ¶ 156.  These conclusory allegations are insufficient. *Hayes v. Mirick*, 378 F. Supp. 3d 109, 116 (D. Mass. 2019) (finding "injury to [] reputation" inadequate to plead special harm and dismissing defamation claim); *BBJ, Inc. v. MillerCoors, LLC*, 2015 WL 4465410, at *4 (D. Mass. Jul. 21, 2015) (plaintiff must "demonstrate that publication of the false statement resulted in a specific loss of sales to identified customers" and plaintiff who alleged "special and general damages, including the monetary loss of many customers" failed to "allege sufficient facts to support special damage" without specific names or facts); *see also Bose Corp. v. Consumers Union of the U.S., Inc.*, 57 F.R.D. 528, 530 (D. Mass. 1973) (requiring plaintiff to allege the "loss of particular customers by name," or "a general diminution in its business," and "extrinsic facts showing that such special damages were the natural and direct result of the false publication").  Moreover, Doximity also fails to plead defamation *per se*.  None of the challenged statements alleges that Doximity "lacks a necessary characteristic of the profession," or creates "'a devastating and continuing impact' on the plaintiff's professional relationship."  *Carnelli v. Bell at Salem Station*, 2019 WL 929624, at *2 (Mass. App. Ct. Feb. 25, 2019).

## III.    THE UNFAIR BUSINESS PRACTICES CLAIM (COUNT II) SHOULD BE DISMISSED

Counterclaim-Plaintiffs' Chapter 93A claim fails both because they have not alleged that

the challenged conduct occurred primarily and substantially in Massachusetts and because the claim is entirely derivative of their deficient Lanham Act and defamation theories.

### A.  Counterclaim-Plaintiffs Fail to Plead That Any Conduct Occurred Primarily and Substantially in Massachusetts

Counterclaim-Plaintiffs' Chapter 93A claim fails because they do not allege facts indicating that the misconduct occurred primarily and substantially in Massachusetts.  *See Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, 2014 WL 1203106, at *8 (D. Mass. Mar. 19, 2014) (dismissing Chapter 93A claim because the complaint "fail[ed] to articulate where defendant committed this misconduct").  Counterclaim-Plaintiffs rely on a single conclusory statement: "The unfair and deceptive events described above occurred primarily and substantially in Massachusetts, in which OpenEvidence does business, conducts its principal operations, and maintains its headquarters."  Am. Counterclaim ¶ 151.  Simply alleging that OpenEvidence's headquarters were in Massachusetts is insufficient.  *See CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*, 768 F. Supp. 3d 183, 186 (D. Mass. 2025)("[B]are allegations that party is 'headquartered in the state' [are] not enough").  Counterclaim-Plaintiffs do not allege where any of the challenged conduct actually occurred.  The allegedly offending commercial statements were published on national and international platforms—LinkedIn, YouTube, the Apple App Store—not primarily in Massachusetts.

### B.  The Chapter 93A Claim Is Derivative and Fails for the Same Reasons As The Lanham Act and Defamation Claims

Between commercial parties, Chapter 93A requires conduct that is "immoral, unethical, oppressive, or unscrupulous."  *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 27 (1997).  Where a Chapter 93A claim is "derivative of" other claims that fail, the Chapter 93A claim "must also fail."  *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024). A Chapter 93A claim is "merely derivative" when it "centers on the same alleged misconduct."  *Id.* at 512.  Here, the

Chapter 93A claim rests on the same factual allegations as the failed Lanham Act and defamation claims. *Compare* Am. Counterclaim ¶ 137, 155 *with* ¶ 147.  Because those theories fail, this claim also fails.[12]

## **CONCLUSION**

For the foregoing reasons, this Motion should be granted and the Amended Counterclaims dismissed with prejudice.

Dated: December 23, 2025                        Respectfully  submitted,

*/s/ Stephen Broome*

Stephen Broome (admitted pro hac vice)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th
Floor Los Angeles, California
90017-2543
(213) 443-3000

Stacylyn M. Doore (BBO# 678449)
Ryan P. Gorman (BBO# 707239)
Vanessa Rodriguez (BBO# 713607)
Zi Chun Wang (BBO# 709803)
stacylyndoore@quinnemanuel.com
ryangorman@quinnemanuel.com
vanessarodriguez@quinnemanuel.com
michellewang@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

---

[12]    Pathway purports to join this claim but the Amended Counterclaims contain no factual allegations concerning Pathway that would support a 93A claim.

Nathan Hamstra (*admitted pro hac vice*)
nathanhamstra@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>*/s/ Stephen Broome*</u>

Stephen Broome (*admitted pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

1