UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
OPENEVIDENCE INC.,                              :
         Plaintiff,                             :   Civil Action
   v.                                               No. 25-11802-RGS
                                                :
DOXIMITY, INC., JEY BALACHANDRAN,
JAKE KONOSKE, PATHWAY MEDICAL,                  :
INC., LOUIS MULLIE, JONATHAN
HERSHON ST-JEAN, HOVHANNES                      :
KARAPETYAN, ERIC YAMGA, KHUDHUR
MOHAMMED, and VINCE ROY,                        :

         Defendants.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, AND PATHWAY
MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

James R. Carroll
William K. Wray Jr.
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116

William E. Ridgway
Brian O'Connor
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
320 S. Canal Street
Chicago, Illinois 60606

Bijal V. Vakil
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301

*Counsel for Defendants
Doximity, Inc., Jey Balachandran,
Jake Konoske, and Pathway Medical, Inc.*

Dated:  January 9, 2026

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
ARGUMENT ............................................................................................................................1
I.    OPENEVIDENCE DOES NOT STATE A
COMPUTER FRAUD AND ABUSE ACT CLAIM (COUNT I).......................................1
        A.    Defendants Did Not Circumvent A Technological Access Barrier .........................2
        B.    OpenEvidence's Chatbot Is Publicly Available .......................................................5
        C.    Defendants Did Not Cause Any Technological Harm .............................................6
II.    OPENEVIDENCE DOES NOT STATE A
BREACH OF CONTRACT CLAIM (COUNT II)................................................................8
III.    OPENEVIDENCE DOES NOT STATE AN
UNJUST ENRICHMENT CLAIM (COUNT III) ................................................................8
IV.    OPENEVIDENCE DOES NOT STATE A
TRESPASS TO CHATTELS CLAIM (COUNT IV) ...........................................................9
V.    THE AMENDED COMPLAINT VIOLATED RULE 15 ....................................................10
CONCLUSION ........................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                          **PAGE(S)**

*Advanced Micro Devices, Inc. v. Feldstein*,
    951 F. Supp. 2d 212 (D. Mass. 2013) ...........................................................................2, 4

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
    No. 20-CV-8686 (JPC), 2021 WL 3173736 (S.D.N.Y. July 26, 2021) ..............................7

*In re Boston University COVID-19 Refund Litigation*,
    511 F. Supp. 3d 20 (D. Mass. 2021) ...................................................................................9

*Chatham Financial Corp. v. Milhaus, LLC*,
    No. 25-cv-00157-SB, 2025 WL 3007405 (D. Del. Oct. 28, 2025) ......................................6

*EF Cultural Travel BV v. Explorica, Inc.*,
    274 F.3d 577 (1st Cir. 2001) ...............................................................................................4

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) .........................................................................................5, 7

*Gan v. GSUIG Real Estate Member LLC*,
    797 F. Supp. 3d 69 (E.D.N.Y. 2025) ...................................................................................9

*Grey v. Grant*,
    No. 22-cv-2088, 2022 WL 7055226 (W.D. Tenn. Oct. 12, 2022) .....................................10

*Harrington v. City of Attleboro*,
    172 F. Supp. 3d 337 (D. Mass. 2016) ...............................................................................10

*Hayes v. District of Columbia*,
    275 F.R.D. 343 (D.D.C. 2011) ..........................................................................................10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ...............................................................................4, 5, 6, 7

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ..............................................................................4

*Novi Footwear International Co. v. Earth OpCo LLC*,
    No. 22-10952-RGS, 2022 WL 16640729 (D. Mass. Nov. 2, 2022) ....................................9

*Ramos v. Aurora Loan Services*,
    No. 09-61938-CIV, 2010 WL 966856 (S.D. Fla. Mar. 15, 2010) .....................................10

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) .........................................................................................9, 10

*Rice v. Shelter Mutual Insurance Co.*,
   No. 2:21-CV-04093-WJE, 2021 WL 4228344 (W.D. Mo. May 27, 2021) ....................... 11

*Ryanair DAC v. Booking Holdings Inc.*,
   No. 20-1191-WCB, 2024 WL 3732498 (D. Del. June 17, 2024) ....................................... 7

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017) ................................................................................................ 9

*Socialedge, Inc. v. Traackr, Inc.*,
   No. 23 Civ. 6860 (PAE), 2024 WL 1533624 (S.D.N.Y. Apr. 9, 2024) ......................... 6, 7

*Van Buren v. United States*,
   593 U.S. 374 (2021) .................................................................................................... 2, 5

*Vox Marketing Group v. Prodigy Promos*,
   556 F. Supp. 3d 1280 (D. Utah 2021) ............................................................................. 7

*Watters v. Breja*,
   No. 23-CV-03183-HSG, 2024 WL 201356 (N.D. Cal. Jan. 18, 2024) ............................ 2

*Welter v. Medical Professional Mutual Insurance Co.*,
   No. 22-CV-11047-PBS, 2023 WL 2988627 (D. Mass. Feb. 23, 2023) ............................ 6

## **STATUTES**

18 U.S.C. § 1030(e)(11) ......................................................................................................... 7

Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 10

**ARGUMENT**[1]

OpenEvidence's opposition (ECF No. 76, ("Pl. Opp.")) confirms that OpenEvidence—fully aware of the underlying facts from the outset—has abandoned any allegation that Doximity or Pathway stole its "crown jewel" trade secrets by conversing with its chatbot. What remains of OpenEvidence's case is limited to two contentions: first, that certain Defendants provided inaccurate information when registering for OpenEvidence accounts; and second, that Defendants, like every OpenEvidence user, received what OpenEvidence calls "Q&A pairs"—that is, the medical questions they submitted (the "Qs") and the chatbot's answers (the "As").

Unable to cram its unremarkable allegations into the causes of action it has chosen, OpenEvidence distorts both its own complaint and the governing law. Its opposition advances a series of untenable arguments: First, the NPI field in the account registration process is an authentication barrier, despite OpenEvidence's admitted failure to use that information to verify user identities. Second, OpenEvidence's Terms of Use create binding "clickwrap" agreements even though the Terms say otherwise. Third, the medical advice routinely dispensed by OpenEvidence's platform to users worldwide somehow constitutes a valuable secret. And fourth, a small number of queries "trespassed" on its system by using "computational resources." In short, OpenEvidence persists in manufacturing baseless claims to disadvantage its competitors. The Court should dismiss the amended complaint with prejudice.

**I.   OPENEVIDENCE DOES NOT STATE A COMPUTER FRAUD AND ABUSE ACT CLAIM (COUNT I)**

OpenEvidence's sole remaining claim under federal law has nothing to do with any alleged attempt to ask OpenEvidence's platform about its "system prompt." Instead, its theory is

---

[1] All capitalized terms retain the definitions in Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.'s Memorandum of Law in Support of Motion to Dismiss, ECF No. 59 ("Defs. Br.").

that Defendants violated the CFAA, a criminal anti-hacking statute, by merely entering one or more pieces of incorrect information while registering for OpenEvidence accounts. That is wrong as a matter of law. Defendants did not circumvent any technological access barrier or cause any technological harm, so the CFAA claims should be dismissed.

### A.      Defendants Did Not Circumvent A Technological Access Barrier

OpenEvidence's allegations fail to establish that Defendants accessed protected information "without authorization" under the CFAA. The Supreme Court in *Van Buren v. United States* made clear that this provision turns on a "gates-up-or-down inquiry—one either can or cannot access a computer system." 593 U.S. 374, 390 (2021). The CFAA is thus aimed at prohibiting the circumvention of **technological barriers**, such as by exploiting a security flaw.[2] OpenEvidence first argues that it does not even need to satisfy this requirement. (Pl. Opp. at 6.) But even the cases it cites say otherwise. *See, e.g.*, *Watters v. Breja*, No. 23-CV-03183-HSG, 2024 WL 201356, at *2 (N.D. Cal. Jan. 18, 2024) (granting motion to dismiss because the CFAA "is an anti-hacking statute" and "[t]he conduct at issue [was] simply not analogous to 'breaking and entering,' which is the kind of computer misconduct the CFAA was designed to combat").

OpenEvidence alternatively contends that the NPI field in its account registration process serves as an authentication mechanism and thus constitutes a technological barrier under the CFAA. *See Van Buren*, 593 U.S. at 390 n.9 (suggesting that "gates" might consist of "a specific type of authorization—that is, authentication, which turns on whether a user's credentials allow him to proceed past a computer's access gate"). Yet OpenEvidence's own allegations directly undermine this theory and demonstrate that OpenEvidence does not use the NPI field for this

---

[2]   Indeed, OpenEvidence concedes that in *Van Buren* the Supreme Court adopted a "narrow interpretation" of the CFAA, which "reflects a technological model of authorization, whereby the scope of authorized access is defined by the technologically implemented barriers that circumscribe that access." *Advanced Micro Devices, Inc. v. Feldstein*, 951 F. Supp. 2d 212, 217 (D. Mass. 2013). (*See* Pl. Opp. at 8.)

2

purpose. The amended complaint alleges that some Defendants created accounts under their real names and entered numeric digits when prompted to provide an NPI. (Am. Compl. ¶¶ 57-58, 74.) It further alleges that the digits some (but not all) of those Defendants entered formed an NPI number associated with a different individual (*id.* ¶¶ 10, 75)—implying that the digits other Defendants entered did not form an NPI associated with any individual at all. In other words, OpenEvidence does not even use the NPI information to *verify* users' identities, much less *authenticate* them. One cannot circumvent a barrier that does not exist. Moreover, NPI numbers are public, and published in a generally available registry online. OpenEvidence cites no cases holding that a field for entering public information—rather than an authentication tool based on private information, such as a password—constitutes an access barrier under the CFAA.

OpenEvidence's NPI "authentication" theory has other fatal flaws. First, even if there was a technological barrier excluding individuals who are not physicians (there was not), OpenEvidence does not dispute that many Defendants were in fact physicians.[3] To the extent that the Defendants who were licensed physicians entered digits in the NPI field, they did not "misrepresent" anything about their status as OpenEvidence claims or "circumvent" a barrier designed to keep non-physicians from opening OpenEvidence accounts. (*See* Pl. Opp. at 8.) Second, some Defendants did not even enter digits in the NPI field. Defendant Kerapetyan, for example, is an Armenian physician who registered using Armenian credentials. And Defendant Hershon St-Jean registered as a patient, not a healthcare provider. Neither registration included an NPI field. (*See* Am. Compl. ¶¶ 74, 75.) As this range of scenarios demonstrates, the NPI field

---

[3]   *See OpenEvidence, Inc. v. Pathway Med. Inc.*, Case No. 1:25-cv-10471-MJJ (D. Mass.), Complaint, ECF No. 61, ¶¶ 52, 60. Those Defendants were located outside the United States, and therefore did not possess United States NPI numbers. OpenEvidence does not dispute that such users are allowed to register for accounts without entering an NPI.

3

is nothing more than a request for information about U.S.-based users. It is not used to verify user identity or impose a technological access "gate" that keeps certain individuals out.

OpenEvidence's argument amounts to a claim that any inaccuracy in an account registration field violates the CFAA. But the cases OpenEvidence cites do not support that sweeping position. In *United States v. Cuomo*, 125 F.4th 354 (2d Cir. 2025), the Second Circuit upheld a criminal conviction under the CFAA because the defendant stole social security numbers to circumvent a "code-based" authentication procedure for a government website. *Id.* at 364. To create an account, users had to provide "a valid social security number . . . to verify they are who they say they are." *Id.* Thus, the defendant stole ***private*** information (social security numbers) to circumvent a system that verified identities by ***cross-checking*** the private information against users' names. None of that is true here.[4] And while in *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022), the court reasoned that the use of "fake" accounts contributed to a CFAA violation, that was only true because (1) the "fake" accounts were used to access a password-protected page, and (2) the plaintiff had already directly revoked the defendant's access. *Id.* at 1261, 1277 (observing that in general, "the idea of using a 'fake' account to access social networking platforms is obvious and widely used").

Despite its insistence otherwise, OpenEvidence's objections are based on its policies, not circumvention of an authentication procedure. OpenEvidence does not ***verify*** that its users are

---

[4] Similarly, in *Advanced Micro Devices, Inc. v. Feldstein*, 951 F. Supp. 2d 212 (D. Mass. 2013), which pre-dates *Van Buren*, the court declined to dismiss a CFAA claim "out of an abundance of caution" because at that time the CFAA's standards were "an unsettled area of federal law." *Id.* at 219. The court noted that in *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 583–84 (1st Cir. 2001), the First Circuit upheld a CFAA claim alleging the defendant misappropriated "unique information" allowing it to log into a system and obtain "information to which [defendant] would otherwise not have had access." *Advanced Micro Devices*, 951 F. Supp. 2d at 219. But *Van Buren* subsequently abrogated *EF Cultural Travel*, undermining the court's rationale. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (recognizing abrogation). And in any event, as explained above, in this case the amended complaint does not allege that Defendants misappropriated any "unique" information granting them access.

4

healthcare professionals or patients, but it has a ***policy*** of only allowing healthcare professionals and patients to create accounts. It does not ***verify*** that U.S.-based healthcare provider users have active NPI credentials, but it has a ***policy*** requiring such users to provide them. A "violation of the terms of use of a website—without more—cannot establish liability under the CFAA." *Facebook, Inc. v. Power Ventures*, 844 F.3d 1038, 1067 (9th Cir. 2016). As the Supreme Court has warned, interpreting the CFAA to prohibit a mere "violation of a computer-use policy," such as inputting inaccurate information when registering, would make "millions of otherwise law-abiding citizens . . . criminals," and could "criminalize everything from embellishing an online-dating profile to using a pseudonym on Facebook." *Van Buren*, 593 U.S. at 394. That is this case. Indeed, contrary to OpenEvidence's claim of "impersonation," Defendants used their ***real names***, not "pseudonyms." And because the CFAA provides for both criminal and civil liability, if OpenEvidence is right, anyone who enters incorrect information while registering for an account online may be subject to ***criminal prosecution***. That is not the law.

      **B.**      <u>**OpenEvidence's Chatbot Is Publicly Available**</u>

The CFAA claim also fails because OpenEvidence's chatbot is publicly available to everyone regardless of whether they have an OpenEvidence account. *See hiQ Labs*, 31 F.4th at 1201 ("[W]hen a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA."). In its brief, OpenEvidence attempts to dismiss its repeated allegations that logging into an account removes limits on the number of questions users can ask at a time—tacitly conceding Defendants' argument that circumventing a ***volume*** restriction rather than an ***access*** restriction does not violate the CFAA. (*See* Defs. Br. 8–9.) Instead, OpenEvidence hinges its claim on one paragraph in the amended complaint (Am. Compl. ¶ 48) that suggests there could be differences between the responses provided to logged-out and logged-in users. Based on that allegation,

5

OpenEvidence contends that logged-in users access a ***different product altogether***, rendering the platform's public nature irrelevant. (Pl. Opp. at 8–10.) But OpenEvidence does not allege that any such hypothetical differences applied to the questions Defendants asked. OpenEvidence's chatbot is publicly available, and that precludes any CFAA claim premised on accessing it.

## C. Defendants Did Not Cause Any Technological Harm

OpenEvidence also fails to plausibly allege that any Defendant inflicted a technological harm recognized by the CFAA. *See Chatham Fin. Corp. v. Milhaus, LLC*, No. 25-cv-00157-SB, 2025 WL 3007405, at *11 (D. Del. Oct. 28, 2025) (dismissing CFAA claim for failure to plead technological harm, highlighting absence of "slowdowns," "deletion of information," "infection of computers," or "crashing of networks"). Even courts adopting a "broad" view of recoverable harm under the CFAA require that every loss relate "to *some* technological harm to plaintiff's computer system." *Id.* (emphasis in original). OpenEvidence has not plausibly alleged that any of Defendants' conduct, which largely consists of a relatively small number of ordinary medical queries (Am. Compl. ¶ 82), caused any such harm. And other than a stray conclusory reference to unnamed "technological effects" (Pl. Opp. at 14), OpenEvidence does not argue otherwise.[5]

In its brief, OpenEvidence abandons most of the theories of recovery in the amended complaint and focuses solely on what it calls "investigatory and remedial costs." (Pl. Opp. at 14.) Neither one is cognizable. ***First***, it argues that because certain Defendants entered queries relating to OpenEvidence's "system prompt," it had to assess whether those queries were "successful." (Pl. Opp. at 14.) Courts have rejected that exact argument. For example, in

---

[5] OpenEvidence appears to argue in a single sentence that the CFAA does not require "technological harm" (Pl. Opp. at 14), but it ignores the numerous cases Defendants cited holding that it does. *See, e.g.*, *hiQ Labs*, 31 F.4th at 1195 n.12 (interpreting *Van Buren* as having concluded that the civil remedies section of the CFAA "requires a showing" of technological harm); *Welter v. Med. Pro. Mut. Ins. Co.*, No. 22-CV-11047-PBS, 2023 WL 2988627, at *10 n.10 (D. Mass. Feb. 23, 2023) (same).

6

*Socialedge, Inc. v. Traackr, Inc.*, No. 23 Civ. 6860 (PAE), 2024 WL 1533624 (S.D.N.Y. Apr. 9, 2024), the court dismissed a CFAA claim for failure to allege "that the defendants' unauthorized access harmed the functioning of [the] computer systems." *Id.* at *6. There, the court explained that allegations that an individual "made an unauthorized account . . . , accessed [the] account without authorization, and exported . . . confidential information" described only "competitive injuries . . . but not the technological injuries relevant under the CFAA." *Id.*; *see also Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20-CV-8686 (JPC), 2021 WL 3173736, at *4 (S.D.N.Y. July 26, 2021) ("[A]n investigation . . . into the extent of any *misappropriation* of confidential information is not a 'cost of responding to an offense' . . . ."). An investigation into whether Defendants obtained information about a system prompt has nothing to do with impairment to the "functioning" of OpenEvidence's systems. "Simply put, this is not the form of harm for which a plaintiff has recourse under the CFAA." *Id.*[6]

**Second**, OpenEvidence argues that because Defendants created accounts, it was "forced to expend resources . . . identifying whether additional security measures were necessary (to remediate Defendants' circumvention of access permissions)." (Pl. Opp. at 14–15.) But the CFAA expressly limits covered remedial losses to the "reasonable costs[s]" of "restoring the data, program, system, or information ***to its condition prior to the offense***." 18 U.S.C. § 1030(e)(11) (emphasis added). Thus, one of OpenEvidence's own cases squarely held that a plaintiff cannot recover "the cost of measures that make its system more secure than it was before." *Ryanair DAC v. Booking Holdings Inc.*, No. 20-1191-WCB, 2024 WL 3732498, at *14

---

[6] Plaintiffs cite *Vox Marketing Group v. Prodigy Promos*, 556 F. Supp. 3d 1280 (D. Utah 2021), but to the extent that out-of-circuit case suggests a plaintiff can recover costs of an investigation into misappropriated information, rather than damage to a system, it is against the weight of authority. And *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) is likewise unpersuasive because it predates *Van Buren*. *See hiQ Labs*, 31 F.4th at 1195 n.12 (highlighting focus in *Van Buren* on "technological harms").

7

(D. Del. June 17, 2024). OpenEvidence's investigation into potential "additional security measures" has no connection to any damage and fails to support a plausible CFAA claim.

## II. OPENEVIDENCE DOES NOT STATE A BREACH OF CONTRACT CLAIM (COUNT II)

OpenEvidence cannot save its breach of contract claims either. OpenEvidence's Terms of Use purport to take effect regardless of whether users affirmatively agree. (Defs. Br. at 14–15.)[7] That means they are browsewrap, not clickwrap, and using the word "clickwrap" in the amended complaint cannot change that fact. OpenEvidence appears to argue that a different type of agreement binds users of its so-called "full platform." (Pl. Opp. at 15–16.) But nothing in the Terms distinguishes between "full" and logged-out platforms. Nor do the Terms apply differently to users with accounts. Because the Terms are browsewrap, the breach of contract claims should be dismissed for failure to allege that OpenEvidence's website provides sufficiently conspicuous notice. (*See* Defs. Br. at 14.)[8]

## III. OPENEVIDENCE DOES NOT STATE AN UNJUST ENRICHMENT CLAIM (COUNT III)

The Court should dismiss OpenEvidence's "unjust enrichment" claim as well. First, OpenEvidence does not adequately allege that Defendants wrongfully obtained a "benefit" from using its platform. Its only argument in response is that Defendants, like countless other users, received "Q&A pairs"—OpenEvidence's preferred term for its platform's responses to ordinary user questions. (Pl. Opp. at 18–19.) But there is a big difference between obtaining proprietary

---

[7] To the extent the Court considers the additional Terms of Use attached to OpenEvidence's opposition brief, the same is true of the terms set forth in those documents.

[8] Even if OpenEvidence adequately alleged a clickwrap agreement with some Defendants, the Court should dismiss the breach of contract claims against Defendants Mullie, St-Jean, Karapetyan, Yamga, Mohammed, and Roy (the "Individual Pathway Defendants"). (*See* Defs. Br. at 16 n.10.) While the amended complaint provides screenshots purporting to show that Defendants Balachandran and Konoske checked a box stating they "read and agree[d]" to the Terms, it fails to do so for Individual Pathway Defendants. OpenEvidence's conclusory assertion that the Individual Pathway Defendants agreed to the Terms does not plead an enforceable agreement.

8

information about how a product works and simply observing a product. The former might be a cognizable "benefit"; the latter is certainly not. OpenEvidence does not cite any case suggesting that OpenEvidence's unjust enrichment theory is viable under Massachusetts law.

Nor has OpenEvidence identified any way in which receiving "Q&A pairs" is wrongful—after all, its platform was designed to provide them. To the extent this claim is based on an alleged violation of an *express* provision in its Terms of Use, OpenEvidence is wrong that it can simultaneously seek both equitable and legal relief. It is "the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Even if in some cases "it is possible to plead both the breach of contract and unjust enrichment claims as alternative theories," OpenEvidence fails to "sufficiently plead unjust enrichment and breach of contract allegations in the alternative." *Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69, 114 (E.D.N.Y. 2025). Instead, it tries to "backdoor" its way into equitable remedies based on a written agreement. That is "grounds for dismissal of the[] unjust enrichment claim." *Id.*[9]

## IV.  OPENEVIDENCE DOES NOT STATE A TRESPASS TO CHATTELS CLAIM (COUNT IV)

As to OpenEvidence's "trespass to chattels" claim, OpenEvidence does not meaningfully contest dismissal or bother to address any of the cases cited in Defendants' motion. (*See* Defs. Br. at 19–20.) OpenEvidence's unelaborated assertion that Defendants' submission of at most "hundreds" of queries "consum[ed] computational resources" (Am. Compl. ¶ 116) falls woefully short of stating a trespass to chattels claim. OpenEvidence's single case, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004), affirmed a ruling that the use of "programs performing

---

[9] OpenEvidence cites inapposite cases where, unlike here, the complaint plead claims in the alternative. *See In re Bos. Univ. COVID-19 Refund Litig.*, 511 F. Supp. 3d 20, 25 (D. Mass. 2021); *Novi Footwear Int'l Co. v. Earth OpCo LLC*, No. 22-10952-RGS, 2022 WL 16640729, at *3 (D. Mass. Nov. 2, 2022).

multiple automated successive queries" that made it "highly probable" the system "would crash" likely stated a claim for trespass for chattels under New York law. *Id.* at 404. There are no allegations that could support a similar theory in this case.

## V.     THE AMENDED COMPLAINT VIOLATED RULE 15

OpenEvidence's amended complaint should be stricken for violating Rule 15. OpenEvidence resorts to arguing that the Court's September 23, 2025 Order extending the deadline to file a response brief did "double duty" and extended the time to amend the complaint as well. *Hayes v. District of Columbia*, 275 F.R.D. 343, 345 (D.D.C. 2011) (rejecting identical argument). But that Order extended "Plaintiff's response to the motion to dismiss" alone. (ECF No. 35.) OpenEvidence insists that "[a]n amended complaint is plainly a 'response' to a motion to dismiss." (Pl. Opp. at 20.) Yet courts have held just the opposite. *See, e.g.*, *Grey v. Grant*, No. 22-cv-2088, 2022 WL 7055226, at *1 (W.D. Tenn. Oct. 12, 2022) (extending the "time to respond to a Rule 12(b) motion" does not extend "the time to file an amended pleading"); *Harrington v. City of Attleboro*, 172 F. Supp. 3d 337, 351 (D. Mass. 2016) (same); *Ramos v. Aurora Loan Servs.*, No. 09-61938-CIV, 2010 WL 966856, at *1 (S.D. Fla. Mar. 15, 2010) (distinguishing between "fil[ing] a response" and "fil[ing] an Amended Complaint").

OpenEvidence further argues that the Court may grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). But OpenEvidence never sought such leave. *See Rice v. Shelter Mut. Ins. Co.*, No. 2:21-CV-04093-WJE, 2021 WL 4228344, at *3 (W.D. Mo. May 27, 2021) ("Should [Plaintiff] wish to amend her complaint, she must first seek . . . the Court's leave . . . ."). The amended complaint should be stricken.

## CONCLUSION

For the reasons above and in the opening brief, Defendants' motion to dismiss should be granted and OpenEvidence's amended complaint should be dismissed with prejudice.

10

| | |
|---|---|
| Dated: January 9, 2026<br>Boston, Massachusetts | Respectfully submitted,<br><br>/s/ *James R. Carroll*<br>James R. Carroll (BBO #554426)<br>William K. Wray Jr. (BBO #689037)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>500 Boylston Street<br>Boston, Massachusetts 02116<br>(617) 573-4800<br>james.carroll@skadden.com<br>william.wray@skadden.com<br><br>William E. Ridgway (*pro hac vice*)<br>Brian O'Connor (*pro hac vice*)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>320 S. Canal Street<br>Chicago, Illinois 60606<br>(312) 407-0700<br>william.ridgway@skadden.com<br>brian.oconnor@skadden.com<br><br>Bijal V. Vakil (*pro hac vice*)<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>525 University Avenue<br>Palo Alto, California 94301<br>(650) 470-4500<br>bijal.vakil@skadden.com<br><br>*Counsel for Defendants*<br>*Doximity, Inc., Jey Balachandran,*<br>*Jake Konoske, and Pathway Medical, Inc.* |