**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

OPENEVIDENCE, INC.,

        Plaintiff,

        v.

DOXIMITY, INC., JEY BALACHANDRAN,
JAKE KONOSKE, PATHWAY MEDICAL,
INC., LOUIS MULLIE, JONATHAN
HERSHON ST-JEAN, HOVHANNES
KARAPETYAN, ERIC YAMGA,
KHUDHUR MOHAMMED, and VINCE
ROY,

        Defendants.

Case No. 1:25-cv-11802-RGS

**REPLY IN SUPPORT OF MOTION TO DISMISS**
**ON BEHALF OF THE INDIVIDUAL PATHWAY DEFENDANTS MULLIE, HERSHON**
**ST-JEAN, KARAPETYAN, MOHAMMED, AND ROY**

## ARGUMENT

OpenEvidence's Opposition (Dkt. 78) to the Individual Pathway Defendants' Motion to Dismiss (Dkt. 66) is most notable for the factual allegations and legal arguments it does *not* make. OpenEvidence alleges that some of the Individual Pathway Defendants misrepresented aspects of their identities during the account sign-up process for OpenEvidence. But what OpenEvidence does *not* allege is that it had technological measures in place to block account creation based on a verification check of those details. OpenEvidence likewise does *not* allege that the Individual Pathway Defendants ever did anything other than use credentials OpenEvidence issued to enter prompts into OpenEvidence's chatbot. Nor does OpenEvidence ever allege that the Individual Pathway Defendants' collective submission of hundreds of queries over the course of a year caused any meaningful technological harm – such as amounting to a denial-of-service attack that caused a systemwide server crash. OpenEvidence alleges that Defendants may have received some one-off answers to their medical questions that contained better academic journal citations, but does *not* allege that Defendants exfiltrated trade secrets like proprietary dataset compilations or confidential source code. Indeed, after nearly a year of litigation against Pathway, OpenEvidence has dropped those more speculative and aggressive claims.

These pleading gaps render OpenEvidence's CFAA and Trespass claims against the Individual Pathway Defendants' both factually implausible and legally unviable. Users allegedly misrepresenting some aspect of their identity when they sign-up for a website may, in some circumstances, contractually violate a website's terms of service. But mere contract violations do not rise to the level of computer fraud; to hold otherwise would "criminalize everything from embellishing an online-dating profile to using a pseudonym on Facebook." *Van Buren v. United States*, 593 U.S. 374, 394 (2021). Moreover, when those same users use their accounts to submit questions on a chatbot platform, they do not cause cognizable "damage" or "harm" to computers.

1

OpenEvidence's CFAA (Count I) and Trespass (Count IV) claims must be dismissed. And because OpenEvidence has failed to plausibly plead that the Individual Pathway Defendants each affirmatively and contemporaneously assented to OpenEvidence's terms of service, the breach of contract (Count II) claim also fails. The Court should grand the Individual Pathway Defendants' motion to dismiss.

## I. OPENEVIDENCE FAILS TO STATE A CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT (Count I)

Contractual "real identity" user requirements, that a website does not in turn technologically verify, do not legally support CFAA claims. As the U.S. Supreme Court recognized in *Van Buren*, websites often "authorize a user's access only upon his agreement to follow specified terms of service," 593 U.S. at 394. A user violating those contractual terms, however, does not give rise to an "exceeding authorized access" claim under the CFAA. *Id.* at 396.

Because an "exceeding authorized access" claim is barred by *Van Buren*, OpenEvidence instead doubles-down on an even more aggressive legal theory. OpenEvidence asserts that the Individual Pathway Defendants' actions in signing up for OpenEvidence accounts amounted to "access[ing] a computer without authorization,." a higher standard than "exceeding authorized access." *See* Opp., Dkt. 78 at I-A; Am. Compl. Dkt. 38 ¶ 93. That arugment contravenes the plain meaning of "authorization": a user is "authorized to access a computer when [the network owner] approves or sanctions his admission to that computer." *See NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 167 (3d Cir. 2025) (collecting cases and holding that the CFAA does not turn "policy infractions into federal crimes"). Plaintiff cites two cases from the Southern District of Texas to support this claim, but they are inapposite as both cases involve former employees who, after being fired, accessed secured systems. *See Surgical Assocs. of Houston, P.A v. Rensel*, No. 4:23-cv-4719,

2024 WL 4108781, at *1 (S.D. Tex. Sept. 6, 2024); *Absolute Energy Sols., LLC v. Trosclair*, No. H-13-3358, 2014 WL 360503, at *1 (S.D. Tex. Feb. 3, 2014). Here, OpenEvidence's NPI box did not serve to restrict access or authorization because the numbers follow a mathematical formula and are publicly available; they are therefore not analogous to a password.

OpenEvidence's allegations frankly acknowledge that the technological operation of its computer systems permitted each of the Individual Pathway Defendants to create and use OpenEvidence accounts. *See, e.g.,* Am. Compl. ¶¶ 57, 58, 74, 75, 82, 83. OpenEvidence permitted Mr. Hershon and Mr. Karapetyan to open accounts without requiring a National Provider Identifier number; OpenEvidence permitted Mr. Mohammed and Mr. Roy to open accounts with a mathematically valid but not identity-verified NPI number; [1] and OpenEvidence permitted Mr. Mullie to open an account with a publicly-available NPI belonging to another person. *See* Motion to Dismiss, Dkt. 66 at 3-6 (summarizing Am. Compl., ¶¶ 74, 75). [2] In other words, within the meaning of the CFAA, OpenEvidence "authorized" the Individual Pathway Defendant accounts. OpenEvidence's failure to block account creation by either universally requiring, or technologically verifying, National Provider Identifier numbers cross-referenced to real identities cannot plausibly convert the Individual Pathway Defendants' account sign-ups into CFAA

---

[1] National Provider Identifiers are 10-digit numbers "with an ISO standard check-digit in the 10th position." *See* NPI Final Rule, Federal Register, Vol 69, No. 15, at 3443 (Jan. 23, 2004). That mathematical format enables the creation of "at least 200 million unique NPIs." *Id.* There are therefore more mathematically valid NPIs than there are NPIs currently assigned to health care professionals. OpenEvidence requiring users to enter a 10-digit NPI number (Am. Compl. ¶ 42, 48, 76) is therefore not equivalent to an allegation that OpenEvidence technologically verified those 10 digits against real identities as a technological gate before creating and authorizing user accounts.

[2] OpenEvidence takes issue with the Individual Pathway Defendants' reference to OpenEvidence's Amended Complaint in the *Pathway* litigation, arguing that the Court should not consider those allegations. (Opp. at 10 n.5.) But "'where a plaintiff blatantly changes his statement of facts . . . and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true.'" *Adams v. Gissell*, No. 20-11366-PBS, 2021 WL 8316261, at *6 (D. Mass. Dec. 8, 2021) (quoting *Plourde v. Redington-Fairview Hosp.*, No. 20-cv-00011-JAW, 2020 WL 5440504, at *2 (D. Me. Sept. 10, 2020)) (cleaned up); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 939 (9th Cir. 2012) (en banc) ("He may have other facts to allege—though they must not be inconsistent with those already alleged.").

violations. "[A]bsent evidence of code-based hacking, the CFAA does not countenance claims premised on a breach of … computer-use policies." *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 169 (3d Cir. 2025).

The implications of OpenEvidence's contrary legal theory, that every act of "misrepresenting … identities and inputting false information at registration" constitutes a violation of the CFAA (Opp. at 8), are stunning. Plaintiff would have the Court "criminalize contract law." *See NRA*, 154 F.4th at 169. If entering an inaccurate NPI to create an account with OpenEvidence is a CFAA violation, then so are innumerable other minor misrepresentations users make every day when creating other internet accounts. Under OpenEvidence's theory, everything from entering inaccurate birthdays to gain entrance to age-gated websites and entering inaccurate email addresses or phone numbers to avoid marketing spam from retail websites to entering misspelled or pseudonymous names to register for social media websites would become acts of federal computer fraud. Such everyday acts—on websites broadly available to the public—may violate those websites' terms of service, but they do not convert users into either civil or criminal computer fraudsters. *See Van Buren*, 593 U.S. at 394.

The Individual Pathway Defendants otherwise adopt Doximity's legal arguments in reply to Doximity's parallel motion to dismiss, including as to the lack of cognizable harm Defendants' prompts caused to OpenEvidence's systems. For example, the Amended Complaint complains that "Defendant Karapetyan submitted 'crab pneumonia clinical presentation and treatment options?' **twice over five days** and 'dose of calcium chloride for treatment of digoxin toxicity?' **twice over five days**," but fails to explain how an Armenian doctor submitting the very kinds of medical prompts OpenEvidence's medical chatbot product is designed to answer caused any cognizable harm. (Am. Compl. ¶ 82; *see also* Opp. at 6.)

OpenEvidence's CFAA claims against the Individual Pathway Defendants should be dismissed.

## II.      OPENEVIDENCE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT (Count II)

OpenEvidence's breach of contract claims against the Individual Pathway Defendants fail because Plaintiff does not plead that each Individual Pathway Defendant affirmatively and contemporaneously assented to the Amended Complaint's alleged contract terms. While improperly attempting to amend its complaint via opposition by attaching earlier terms of service, OpenEvidence relies on an allegation that "the Pathway Defendants explicitly agreed to OpenEvidence's Terms of Use….confirming at the time they registered, using stolen NPIs of physicians, that they had" agreed to those terms. (*See* Opp at 12 (citing Am. Compl. ¶ 77).) This allegation is not plausible, however, because OpenEvidence's more detailed allegations as to each Individual Pathway Defendant only contend that Mr. Mullie used a "stolen NPI." (*See* Mot. to Dismiss, Dkt. 66 at 4.) Everyone else either used a test number, or did not enter an NPI at all. (*See id.* at 4-6.) OpenEvidence's lack of precision as to the timing, terms, and registration sign-up process on a defendant-by-defendant basis means it has failed to state individual breach of contract claims.

The Individual Pathway Defendants otherwise adopt Doximity's legal arguments in reply to Doximity's parallel motion to dismiss.

## III.     OPENEVIDENCE FAILS TO STATE A CLAIM FOR TRESPASS TO CHATTELS (Count IV)

Plaintiff fails to state a claim for trespass to chattels against the Individual Pathway Defendants. Trespass to chattels claims require a high showing of actual disruption and harm to Plaintiff's computer systems. *See OCLC, Inc. v. Anna's Archive*, No. 2:24-cv-144, 2025 WL 1235238, at *7 (S.D. Ohio Mar. 21, 2025) ("[A]bsent a crash, data loss, or a similar catastrophe,

the Court struggles to see how data scraping can constitute a trespass.").  Plaintiff fails to argue how the submission of "hundreds" of queries to a system that handles more than 15 million monthly medical questions (*see* Am. Compl. ¶ 40 n.8 (statistics available at the footnote's linked citation)) disrupted or harmed its systems—or even had the ability to do so.  Plaintiff's trespass to chattels claim should be dismissed.

The Individual Pathway Defendants otherwise adopt Doximity's legal arguments in reply to Doximity's parallel motion to dismiss.

## CONCLUSION

For the foregoing reasons, as well as the arguments presented in the Doximity Reply, the claims against the Individual Pathway Defendants should be dismissed.

Dated: January 9, 2026         MORRISON & FOERSTER LLP

*/s/ Nathaniel R. Mendell*

MORRISON & FOERSTER LLP
DANIEL P. MUINO (pro hac vice)
CAROLYN M. HOMER (pro hac vice)
DAVID NATHANIEL TAN (pro hac vice)
2100 L St., NW, Suite 900
Washington, D.C. 20037
Telephone: (202) 887-1500
Facsimile: (202) 637-2201
Email: dmuino@mofo.com
      cmhomer@mofo.com
      NTan@mofo.com


MORRISON & FOERSTER LLP
Nathaniel R. Mendell
200 CLARENDON STREET
BOSTON, MA 02116
Tel: (617) 648-4700
Email: NMendell@mofo.com

*Counsel for Defendants Louis Mullie; Jonathan
Hershon St-Jean; Hovhannes Karapetyan;
Khudhur Mohammed; and Vince Roy*