UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OPENEVIDENCE INC.,                                :

      Plaintiff,                                :     Civil Action
  v.                                                      No. 25-11802-RGS

                                     :

DOXIMITY, INC., JEY BALACHANDRAN,
JAKE KONOSKE, PATHWAY MEDICAL,          :
INC., LOUIS MULLIE, JONATHAN
HERSHON ST-JEAN, HOVHANNES               :
KARAPETYAN, ERIC YAMGA, KHUDHUR
MOHAMMED, and VINCE ROY,                    :

      Defendants.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DOXIMITY, INC.'S MOTION FOR
<u>LEAVE TO FILE SECOND AMENDED COUNTERCLAIMS</u>**

James R. Carroll
William K. Wray Jr.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

William E. Ridgway
Brian O'Connor
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
320 S. Canal St.
Chicago, Illinois 60606
(312) 407-0700

Bijal V. Vakil
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Ave
Palo Alto, California 94301
(650) 40-4500

*Counsel for Defendant
Doximity, Inc.*

Dated:  May 8, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT BACKGROUND ..........................................................................................1

ARGUMENT......................................................................................................................3

I.      THE COURT SHOULD GRANT DOXIMITY LEAVE  TO FILE ITS SECOND
        AMENDED COUNTERCLAIMS...................................................................................3

        A.      Applicable Legal Standard....................................................................................3

        B.      Doximity's Second Amended Counterclaims Are Not Futile .................................4

                1.      The Newly Discovered Facts Support Doximity's Existing Claims............4

                2.      The Newly Discovered Facts  Support New Tortious Interference
                        Claims ........................................................................................................6

        C.      Granting Doximity Leave to Amend Will Promote Judicial Economy ...................8

        D.      Granting Doximity Leave to Amend Will Not Cause Undue Delay........................9

        E.      Granting Doximity Leave to Amend Will Not Prejudice OpenEvidence ..............10

CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*In re A123 Systems, Inc. Securities Litigation*,
  930 F. Supp. 2d 278 (D. Mass. 2013) (Stearns, J.) ...............................................3

*Abbott Laboratories v. Inverness Medical Technology*,
  No. Civ.A. 98-10674, 2002 WL 1906533 (D. Mass. Aug. 19, 2002) ..................................8

*Amyndas Pharmaceuticals, S.A. v. Zealand Pharma A/S*,
  48 F.4th 18 (1st Cir. 2022) ....................................................................3, 4, 8, 9

*Barr Inc. v. Studio One, Inc.*,
  146 F. Supp. 3d 375 (D. Mass. 2015) .........................................................6, 7

*Blu Homes, Inc. v. Kaufmann*,
  No. 10-11418, 2011 WL 3290362 (D. Mass. July 29, 2011) ........................................3, 10

*Cabana v. Forcier*,
  200 F.R.D. 9 (D. Mass. 2001) .....................................................................10

*CMRK, Inc. v. Tampico Trading Group, LLC*,
  No. 4:17-cv-40023, 2017 WL 4798127 (D. Mass. Oct. 24, 2017) ................................8, 11

*Fafard Real Est. & Dev. Corp. v. Metro-Bos. Broad., Inc.*,
  345 F. Supp. 2d 147 (D. Mass. 2004) .................................................................7

*Foman v. Davis*,
  371 U.S. 178 (1962).......................................................................................3

*Glassman v. Computervision Corp.*,
  90 F.3d 617 (1st Cir. 1996) ...........................................................................4

*Klunder v. Brown University*,
  778 F.3d 24 (1st Cir. 2015) ...........................................................................11

*MIT v. Shire PLC*,
  No. 1:13-CV-10020, 2014 WL 404696 (D. Mass. Feb. 2, 2014)........................................3

*O'Donnell v. Robert Half International Inc.*,
  429 F. Supp. 2d 246 (D. Mass. 2006) ...........................................................8, 11

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017) .......................................................................10, 11

*Republic Maximal LLC v. Romulus Capital Partners II, LLC*,
  No. 22-cv-10429, 2024 WL 3169798 (D. Mass. June 25, 2024).......................................3

*Savoy v. White*,
    139 F.R.D. 265 (D. Mass. 1991) ..................................................................................10, 11

*Turnley v. Banc of America Investment Services, Inc.*,
    576 F. Supp. 2d 204 (D. Mass. 2008) ..............................................................................11

*Weinreich v. Brooks*,
    340 F.R.D. 57 (D. Mass. 2021) ...................................................................................9, 11

## PRELIMINARY STATEMENT

Defendant Doximity, Inc. ("Doximity") respectfully moves for leave to file its Second Amended Counterclaims for two purposes. First, to set forth recently discovered facts about OpenEvidence, Inc.'s ("OpenEvidence") escalating campaign to harm Doximity through the dissemination of false and misleading statements and other unlawful conduct. Second, to assert new claims for tortious interference with contractual and advantageous business relations arising from OpenEvidence's newly discovered misconduct.

Consistent with Rule 15 of the Federal Rules of Civil Procedure and this Court's precedent, leave to amend should be freely granted because the proposed Second Amended Counterclaims plead multiple claims for relief premised on the same conduct that supports the claims in the First Amended Counterclaims. Litigating those claims will promote judicial efficiency and will not materially expand discovery. And there is no prejudice to OpenEvidence because the parties are still engaging in document discovery, no depositions have been taken or scheduled, the deadline for dispositive motions is many months away, and no trial date has been set. Accordingly, the Court should allow Doximity to amend its counterclaims.

## RELEVANT BACKGROUND

On June 20, 2025, OpenEvidence filed this action. (ECF No. 1.) On September 17, 2025, Defendant Doximity filed counterclaims against OpenEvidence. (ECF No. 33.) On November 24, 2025, Doximity amended its counterclaims as of right and Defendant Pathway asserted counterclaims of its own. (ECF No. 60 (the "First Amended Counterclaims").) On December 23, 2025, OpenEvidence moved to dismiss the counterclaims (ECF No. 73), and on January 22, 2026, the Court dismissed Pathway's counterclaims but sustained Doximity's counterclaims in their entirety (ECF No. 87).

As Doximity alleged in its First Amended Counterclaims, OpenEvidence promoted paid advertisements on LinkedIn that made false and misleading assertions about Doximity. (*See* ECF No. 87.) Since the First Amended Counterclaims were filed, Doximity has obtained significant new information about that advertising campaign. On April 10, 2026, LinkedIn produced records in response to Doximity's subpoena—a subpoena OpenEvidence unsuccessfully sought to quash. Those records laid bare the scope and scale of OpenEvidence's efforts:

- OpenEvidence paid more than $3.6 million to run at least 93 LinkedIn advertising campaigns directed at Doximity, comprising more than 20 unique advertisements that together generated more than 6.2 million impressions (Proposed Second Am. Counterclaims ¶ 73);[1]

- OpenEvidence specifically targeted these false and defamatory advertisements at Doximity's customers and advertisers—including, by name, virtually every major pharmaceutical company in the United States and the media-buying agencies that place pharmaceutical advertising on Doximity—as well as Doximity's own employees, in a calculated effort to destroy and interfere with Doximity's contractual and business relationships (*see, e.g.*, *id.* ¶¶ 8, 97, 100); and

- OpenEvidence took steps to cover its tracks. LinkedIn's production disclosed that OpenEvidence paid for those campaigns under the name "Scalable Magic U.S. Inc.," a shell entity OpenEvidence later renamed—allowing it to run the targeted campaigns while preventing Doximity (and Doximity's customers and advertisers) from tracing them back to their source (*id.* ¶¶ 107–110).

In addition, since filing its First Amended Counterclaims, Doximity has uncovered other actionable conduct, including: (1) OpenEvidence paid more than $722,000 to promote two Substack articles replete with false and defamatory statements about Doximity through at least twelve ad variants that together generated more than one million impressions (*id.* ¶ 71); (2) OpenEvidence dispatched an advisor to spread misinformation about Doximity at a Barclays event on January 30, 2026 (*id.* ¶ 124); and (3) OpenEvidence offered individuals at potential

---

[1] The Proposed Second Amended Counterclaims are attached as Exhibit 1 to Doximity's Motion.

advertisers and advertiser intermediaries "consulting" agreements with nominal obligations to improperly influence them to favor OpenEvidence at Doximity's expense (*id.* ¶ 21). Doximity therefore seeks to amend its counterclaims to add specific and concrete allegations about this recent and newly-discovered conduct and thereby provide notice of all the bases for its claims.

## ARGUMENT

### I.    THE COURT SHOULD GRANT DOXIMITY LEAVE TO FILE ITS SECOND AMENDED COUNTERCLAIMS

#### A.    Applicable Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court 'should freely give leave' . . . to amend . . . 'when justice so requires.'" *Republic Maximal LLC v. Romulus Cap. Partners II, LLC*, No. 22-cv-10429, 2024 WL 3169798, at \*5 (D. Mass. June 25, 2024) (granting leave to amend). Leave to amend should be "freely given," the Supreme Court explained, because the Federal Rules exist "to facilitate a proper decision on the merits," not to allow "one misstep" to decide the outcome of the case. *Foman v. Davis*, 371 U.S. 178, 181–82 (1962). Consistent with that principle, the First Circuit "liberally permit[s]" amendments absent a showing of undue delay, bad faith dilatory motive, futility, or undue prejudice. *Blu Homes, Inc. v. Kaufmann*, No. 10-11418, 2011 WL 3290362, at \*11 (D. Mass. July 29, 2011) (granting leave to amend "under the liberal standard of Rule 15(a)(2)" in the absence of a "compelling basis for [denial]"); *In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278, 286–87 (D. Mass. 2013) (Stearns, J.) (granting leave to amend and "permitting a third bite at the apple" under Rule 15 where litigation was in the "early stage[s]"). The standard "puts a thumb on the scale in favor of allowing amendments in non-frivolous cases," *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 39 (1st Cir. 2022) and leave should be denied only where there is an "apparent or

declared reason" to do so. *MIT v. Shire PLC*, No. 1:13-CV-10020, 2014 WL 404696, at *10 (D. Mass. Feb. 2, 2014). No such reason exists here.

**B.      Doximity's Second Amended Counterclaims Are Not Futile**

Doximity's amendments are not futile. A proposed amended complaint fails that test only "if it is either frivolous or contains some fatal defect." *Amyndas Pharms.*, 48 F.4th at 40 (reversing denial of motion for leave to amend). "Normally, this means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id.* (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Here, Doximity's new allegations state multiple claims for relief.

**1.      The Newly Discovered Facts Support Doximity's Existing Claims**

First, the proposed Second Amended Counterclaims provide detailed allegations about OpenEvidence's conduct that directly support Doximity's existing claims for false advertising, defamation, and unfair competition, including:

- On November 15, 21, 25, 28, 29, and December 6, 2025, OpenEvidence promoted a November 6, 2025 article entitled "The $11.7B Dialer: What Doximity Reveals About Healthcare Tech" published on Substack.com, as well as a subsequent December 12, 2025 article by the same author. Both articles contained countless falsehoods and misrepresentations concerning Doximity, and OpenEvidence even continued to circulate a pdf of the original article after an updated version with corrections was issued. According to LinkedIn's production, OpenEvidence paid more than $722,000 to promote the two articles on LinkedIn alone, with the December 12 article costing OpenEvidence more than $430,000 (Proposed Second Am. Counterclaims ¶¶ 66–73);

- Starting no later than November 19, 2025, OpenEvidence paid to promote a LinkedIn advertisement citing a purported Coatue Management analysis comparing Doximity to BlackBerry and OpenEvidence to the iPhone based on false and misleading statistics—an advertisement OpenEvidence spent more than $421,000 promoting across at least three variants, which together generated nearly one million impressions (*id.* ¶¶ 95–97);

4

- Starting no later than May 14, 2025, OpenEvidence paid to promote a separate LinkedIn advertisement citing a purported Coatue Management analysis describing OpenEvidence's "rapid adoption" among physicians, which similarly relies on false and misleading statistics—the single most expensive advertisement classification in LinkedIn's production, on which OpenEvidence spent more than $666,000 across ten variants running for nearly a year (*id.* ¶¶ 98–101); and

- OpenEvidence dispatched an advisor to speak at a Barclays event on January 30, 2026, where the advisor used the opportunity to promote yet more falsehoods and misrepresentations concerning Doximity, including the already-disproven "perfect" USMLE score claim (*id.* ¶ 124).

These new allegations readily support Doximity's claims against OpenEvidence—and this Court has already so held with respect to materially similar ones. In connection with Doximity's First Amended Counterclaims, this Court sustained claims for false advertising, defamation, and unfair competition based on "specific quotes and assertions made by OpenEvidence about Doximity which the company claims are deceptive or untrue." (ECF No. 87.) In doing so, the Court rejected each of OpenEvidence's arguments for dismissal, explaining that they "hinge[d] on resolution of factual disputes and thus are premature." (*Id.*) The additional false statements Doximity has now identified stand on the same footing. In many instances, the statements are substantially identical to those this Court already ruled state claims for relief—such as whether OpenEvidence scored 100% on a licensing exam. In others, OpenEvidence promoted additional falsehoods about topics including Doximity's advertising offerings and this very litigation. To the extent OpenEvidence contends the challenged statements are actually true, that defense requires factual development and affords no basis for dismissal on the pleadings.

The Second Amended Counterclaims also detail more newly discovered facts about OpenEvidence's use of "LinkedIn 'puppet accounts' to post negative stories about Doximity and represent those accounts as independent news or market websites rather than affiliates of OpenEvidence" (ECF No. 87), which the Court has already ruled states claims for relief. (*See id.*) By way of example, OpenEvidence spent at least $129,709 on a LinkedIn advertising

campaign, run under the "Tech Law News" puppet account, that identified Doximity's General Counsel by name, across five variants that generated more than 434,000 impressions. (Proposed Second Am. Counterclaims ¶ 114.) In addition, OpenEvidence ran a paid LinkedIn advertising campaign through another of its puppet accounts—"Curated Market Research"—that explicitly referenced a purported shareholder lawsuit against Doximity and narrowly targeted the advertisement to the nation's leading plaintiffs' securities litigation firms, major pension funds, and institutional investors with standing to serve as lead plaintiffs. (*Id.* ¶¶ 116–118.) LinkedIn's production confirms that OpenEvidence's CEO, Daniel Nadler, personally created each of the puppet accounts. (*Id.* ¶ 106.) These allegations only strengthen claims that the Court has already sustained.

### 2.    The Newly Discovered Facts Support New Tortious Interference Claims

In addition, Doximity has uncovered evidence that supports two additional claims for relief arising directly from the same campaign: tortious interference with contractual relations (Count IV) and tortious interference with advantageous business relations (Count V). Both are well-pled.

Under Massachusetts law, a tortious interference with contractual relations claim requires that (1) the plaintiff had a contract with a third party; (2) the defendant knew of the contract; (3) the defendant intentionally interfered with the contract for an improper purpose or by improper means; and (4) the plaintiff was harmed by the interference. *See Barr Inc. v. Studio One, Inc.*, 146 F. Supp. 3d 375, 382 (D. Mass. 2015) (sustaining tortious interference claim where defendant allegedly made false statements that induced party to break contract, causing the plaintiff economic harm). The proposed Second Amended Counterclaims plausibly plead each element. Doximity alleges it has advertising contracts with its pharmaceutical customers

6

(Proposed Second Am. Counterclaims ¶ 197); that OpenEvidence knows of those contracts, shown by the fact that OpenEvidence identified those customers by name in the targeting parameters of the LinkedIn advertising campaigns described above (*id.* ¶ 198); that OpenEvidence had improper means and motive, including the paid dissemination of false and defamatory advertisements directly to those customers and their agencies, the use of shell-entity payor "Scalable Magic U.S. Inc." and puppet accounts to conceal OpenEvidence's identity as the source of the disparagement, and the offer of undisclosed "consulting" contracts with substantial compensation to individual personnel working for customers and their agencies in exchange for favoring OpenEvidence (*id.* ¶¶ 24, 110–113, 199); and resulting damages in the form of terminated, reduced, or non-renewed advertising relationships (*id.* ¶ 200). Those allegations are more than enough at this stage. *See Barr*, 146 F. Supp. 3d at 382.

As to tortious interference with advantageous business relations, the prospective variant tracks the same framework but substitutes an "advantageous relationship" for a contract. *Fafard Real Est. & Dev. Corp. v. Metro-Bos. Broad., Inc.*, 345 F. Supp. 2d 147, 154 (D. Mass. 2004) (Stearns, J.) (denying motion to dismiss and holding: "'A probable future business relationship from which there is a reasonable expectancy of financial benefit'" is enough "to survive the notice pleading standard of Rule 8 in an interference with advantageous relations case" (quoting *Powers v. Leno*, 24 Mass. App. Ct. 381, 384–385 (1987)). The Second Amended Counterclaims plead each element as to Doximity's advantageous business relationships with its pharmaceutical advertising customers and with the media-buying agencies that place those customers' advertising on Doximity. (Proposed Second Am. Counterclaims ¶ 204.) The same paid-advertising, shell-entity, puppet-account, and undisclosed-consulting-contract conduct constitutes improper means and motive as to these prospective relationships as well. (*Id.* ¶ 206.)

7

At bottom, both new claims rest on a factual record this Court has already held states claims for relief. Any contention that the challenged statements were true, or that the puppet-account and shell-entity conduct was not improper, would "hinge on resolution of factual disputes and thus are premature." (ECF No. 87.)

**C.     Granting Doximity Leave to Amend Will Promote Judicial Economy**

Where the asserted claims are not futile, a party must have a "valid" reason to amend—and that is not a "high hurdle." *Amyndas Pharms.*, 48 F.4th at 37. Doximity easily clears that bar. By amending, Doximity seeks to efficiently adjudicate all the alleged falsehoods OpenEvidence has promoted in its advertising campaign—falsehoods that turn on many of the same issues of fact—in a single proceeding. Particularly at this early stage, one case is better than two. *See Abbott Lab'ys. v. Inverness Med. Tech.*, No. Civ.A. 98-10674, 2002 WL 1906533, at *3 (D. Mass. Aug. 19, 2002) (granting motion for leave to amend because "[a]dding the [new] claims to the present case will promote efficiency and judicial economy").

By contrast, Doximity's proposed amendment is neither a last-minute shift to rescue a failing claim nor an attempt to make its pleading a moving target. *See O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 252 (D. Mass. 2006) (holding amendments where there was no evidence of plaintiffs' bad faith); *CMRK, Inc. v. Tampico Trading Grp., LLC*, No. 4:17-cv-40023 2017 WL 4798127, at *1 (D. Mass. Oct. 24, 2017). Doximity's existing counterclaims—false advertising, defamation, and 93A—were sustained by this Court on OpenEvidence's own motion to dismiss. (ECF No. 87.) The amendment does not supplant those claims or pivot to new legal theories; it adds specific allegations about additional false statements and unfair tactics OpenEvidence employed in the same campaign already at issue, together with new tortious interference claims that arise from the same underlying conduct. Amendment thus serves the interests of both justice and judicial economy.

8

D.        **Granting Doximity Leave to Amend Will Not Cause Undue Delay**

Doximity's proposed amendment is also timely. Delay alone is insufficient to deny leave to amend; the opposing party must establish "undue delay." *Amyndas Pharms.*, 48 F.4th at 37; *see also Weinreich v. Brooks*, 340 F.R.D. 57, 59 (D. Mass. 2021) (allowing amendment despite "considerable" delay). Whether delay is "undue" is "not simply a matter of counting days," but requires evaluation of the "totality of the circumstances." *Amyndas Pharms.*, 48 F.4th at 37. "This is not a high hurdle, and the dispositive datum often will be the reasonableness of the pleader's actions." *Id.* In *Amyndas*, for example, the district court denied a motion for leave to amend that the plaintiff filed 28 days after the court ruled on a motion to dismiss the prior complaint. *Id.* at 39. The First Circuit reversed, noting that the plaintiff had not taken a "wait and see" approach to its pleadings, but instead "filed its motion to amend less than two months after the emergence of new evidence." *Id.* The Court also rejected an argument that "most of the facts undergirding [the] proposed amended complaint were available before the hearing on the motion to dismiss," explaining that "[e]specially in complex cases, lawyers ought not to be expected to cobble together pleadings at breakneck speed," and "[a] party is not required to seek leave to amend its complaint each time a new piece of favorable information surfaces." *Id.* at 39–40.

As in *Amyndas*, the circumstances here place Doximity's motion well within the bounds of reasonableness. **First**, many of Doximity's new allegations and claims rest on information that OpenEvidence actively concealed—information Doximity did not have access to until LinkedIn produced records on April 10, 2026, in response to Doximity's subpoena (a subpoena OpenEvidence moved unsuccessfully to quash). Doximity brought this motion to amend within a month of receiving that production. OpenEvidence cannot fault Doximity for acting on evidence that OpenEvidence itself worked to prevent Doximity from obtaining—and that OpenEvidence paid for under a shell-entity name precisely to avoid detection. Indeed, denying Doximity leave

9

to amend would reward OpenEvidence for concealing this information and failing to include it in its discovery disclosures or responses.

*Second*, Doximity independently identified numerous false or misleading statements that OpenEvidence made either after Doximity filed the operative pleading, or days before it did so. After identifying these additional statements, Doximity promptly put OpenEvidence on notice that it intended to pursue claims based on them. (*See* Exhibit 1 to Wray Declaration, at 24–29.) Shortly after, Doximity sought OpenEvidence's consent to consolidate those allegations into an updated pleading to provide additional specificity about the basis for its claims. (*See* Exhibit 2 to Wray Declaration.) As this timeline demonstrates, Doximity has consistently acted with diligence and transparency. There is no undue delay.

### E.    Granting Doximity Leave to Amend Will Not Prejudice OpenEvidence

Finally, Doximity's amendment will not prejudice OpenEvidence. The issues of prejudice and undue delay are closely linked because "courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party." *Savoy v. White*, 139 F.R.D. 265, 268 (D. Mass. 1991) (allowing leave to amend). And "delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (holding "denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion"). When a motion to amend is made at the early stages of litigation, courts routinely hold that there is no undue delay regardless of how much time has passed. *See Blu Homes*, 2011 WL 3290362, at *11 (allowing amendment and holding "there is no undue delay or undue prejudice" because litigation is at "the early stages" with no "trial date [having] yet been set"); *Cabana v. Forcier*, 200 F.R.D. 9, 13–14 (D. Mass. 2001) (allowing motions to amend, and holding no undue delay or prejudice, where motions made after close of discovery). As the First Circuit has explained, "prejudice takes the

10

form of additional, prolonged discovery and a postponement of trial." *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015) (no prejudice where discovery was ongoing); *Savoy*, 139 F.R.D. at 269 (no prejudice where new claims "closely relate to claims in the original complaint" and "the parties have not been assigned a trial date").

No prejudice exists here. Fact discovery is ongoing, no depositions have occurred, no trial date has been set, and dispositive motion practice remains months away. *See Weinreich*, 340 F.R.D. at 60 (holding no prejudice to defendants "because this case remains in its nascent stages"); *O'Donnell*, 429 F. Supp. 2d at 251 (granting leave to amend to "allege new facts in support of an alternative theory of . . . liability" where "litigation remains in the early stages and is not nearly ready for trial"); *Pasternack*, 863 F.3d at 174 (holding "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice"); *CMRK*, 2017 WL 4798127, at *1; *Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 219–20 (D. Mass. 2008) (allowing leave to amend where defendant contended amendment would be "unduly disruptive of existing litigation," but case was "still at a relatively preliminary stage").

More fundamentally, the central question in this litigation—whether OpenEvidence waged a campaign to harm Doximity—has not changed. The proposed amendment identifies additional specific false statements and unfair tactics employed in that same campaign, and in doing so narrows, rather than expands, the universe of contested facts. By pleading the precise advertisements, campaign names, variant counts, targeting parameters, impression figures, and dollar amounts with particularity—drawn directly from OpenEvidence's own records—the Second Amended Counterclaims give OpenEvidence clear notice of the specific conduct at issue and confine the range of factual disputes. Discovery will focus on identified campaigns, identified advertisements, and identified targeting lists—not abstract theories. Far from

11

prejudicing OpenEvidence, that specificity streamlines the case: OpenEvidence can mount a

complete defense to concrete allegations rather than relying on generalized denials.

**CONCLUSION**

For all these reasons, the Court should grant Doximity's motion for leave to file its

Second Amended Counterclaims.

Dated: May 8, 2026                    Respectfully submitted,
Boston, Massachusetts

/s/ *James R. Carroll*
James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

William E. Ridgway (*pro hac vice*)
Brian O'Connor (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
320 S. Canal St.
Chicago, Illinois 60606
(312) 407-0700
william.ridgway@skadden.com
brian.oconnor@skadden.com

Bijal V. Vakil (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Ave
Palo Alto, California 94301
(650) 470-4500
bijal.vakil@skadden.com

*Counsel for Defendant*
*Doximity, Inc.*