# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OPENEVIDENCE INC.,                                  :

              Plaintiff,                  :    Civil Action
                                     No.  25-11802-RGS

    v.                                               :

DOXIMITY, INC., JEY BALACHANDRAN,    :
JAKE KONOSKE, PATHWAY MEDICAL,
INC., LOUIS MULLIE, JONATHAN          :
HERSHON ST-JEAN, HOVHANNES
KARAPETYAN, ERIC YAMGA, KHUDHUR     :
MOHAMMED, and VINCE ROY,

                                :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANTS' FIRST AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rule 33.1 of the Local Rules of the United States District Court for the District of Massachusetts, Doximity, Inc. ("Doximity" or the "Company"), Jey Balachandran, Jake Konoske, and Pathway Medical, Inc. (collectively, "Defendants" or "Respondent"), by their undersigned attorneys, hereby provide amended objections and responses to Plaintiff OpenEvidence Inc.'s ("Plaintiff"), Second Set of Interrogatories To Defendants, dated December 3, 2025 (the "Interrogatories"; each an "Interrogatory"). Louis Mullie, Jonathan Hershon St-Jean, Hovhannes Karapetyan, Khudhur Mohammed, and Vince Roy (the "Individual Pathway Defendants"), by and through their undersigned attorneys, join in these objections and responses as set forth below.

### SPECIFIC RESPONSES AND OBJECTIONS

Each of Defendants' General Responses and Objections are incorporated by reference into each and every Specific Response and Objection set forth below. Although Specific Responses and Objections are also interposed in response to individual Interrogatories, Defendants' failure to repeat any part of their General Responses and Objections shall not be construed as a waiver of those objections. Subject to the General Responses and Objections, and without waiver, modification, or limitation thereof, Defendants' Specific Responses and Objections to the Interrogatories are set forth below.

(vi) Proximate cause of injury.

These practices amplified false claims about Doximity and Pathway, exacerbating reputational and commercial harm.

(vii) Basis.

Acts include creation and funding of puppet accounts and advertisements by OpenEvidence through affiliated entities. Supporting facts include LinkedIn's ad library records and corporate name-change records.

**5. Dissemination of Misleading Substack Post**

(i) Commercial Advertising or Promotion

On information and belief, OpenEvidence paid to promote links to a third-party Substack article entitled "OPINION: The Epocrates-Doximity Connection (the 11.7B Dialer: Part 2)" (the "Article") through LinkedIn advertisements and other paid promotional channels. Those advertisements were disseminated to healthcare industry participants, pharmaceutical advertisers, and physician users, including Doximity's existing and prospective customers and users. OpenEvidence's promotion of the Article was undertaken for commercial purposes and was intended to influence purchasing, advertising, and business decisions in the healthcare communications and advertising market.

(ii) False or Misleading Statements of Fact

The Article contains multiple false or misleading statements of fact concerning Doximity's products, services, metrics, and business practices, including but not limited to the following:

The claim that Doximity "scrapes the NPI database" and creates physician profiles through scraping, and that physicians are counted as "active" merely by interacting with such scraped profiles. This statement is false. Doximity licenses access to NPI information through lawful channels and does not scrape the NPI database. While correcting a profile constitutes a form of activity, Doximity does not misreport the nature or extent of that activity.

Statements asserting or implying that Doximity's advertising impressions and engagement metrics are inflated, unverified, or delivered to non-existent or unaware users. These statements are false and misleading. Doximity undergoes third-party verification of its advertising services. The Alliance for Audited Media certified Doximity's practices in an August 31, 2025 certification, which includes evaluation of compliance with the Mobile Web Advertising Measurement Guidelines requiring that an ad impression be counted only when there is a real opportunity for the ad to be seen by a user.

The statement that "Tangney (CEO) and Bryson (CFO) have been fighting to liquidate their positions at peak valuations while buying back hundreds of millions of dollars of stock on

the company's dollar." This statement is false and misleading and mischaracterizes lawful, publicly disclosed transactions while implying improper or deceptive corporate conduct.

Statements asserting that Doximity's "80% of U.S. physicians are active members" metric is misleading because it allegedly includes inactive or unaware users created through scraping or passive data ingestion. These statements misstate how Doximity defines, tracks, and reports active membership and omit material facts regarding verification and engagement requirements.

Statements asserting or implying that Doximity engages in advertising "throttling," guaranteed over-delivery, or manipulation of impressions inconsistent with advertiser expectations or accounting standards, without factual support.

(iii) Interstate Commerce

OpenEvidence's promotion of the Article occurred through national digital advertising platforms, including LinkedIn, and was disseminated to audiences across multiple states. The promotion and dissemination of the false and misleading statements therefore occurred in interstate commerce.

(iv) Materiality

The false and misleading statements concern material characteristics of Doximity's products and services, including the authenticity of its user base, the accuracy and verification of its engagement metrics, and the integrity of its advertising delivery. These characteristics are material to advertisers' purchasing decisions, users' trust in the platform, and business counterparties' decisions whether to engage with Doximity.

(v) Actual or Likely Deception

The false and misleading statements were likely to deceive, and did deceive, a substantial segment of the intended audience, including pharmaceutical advertisers, healthcare marketers, and physician users, by creating the false impression that Doximity inflates metrics, misrepresents engagement, or engages in deceptive advertising practices.

(vi) Proximate Cause of Injury

OpenEvidence's promotion of the Article proximately caused, and was likely to cause, commercial and competitive injury to Doximity by misleading current and prospective customers and users, diverting business, damaging goodwill, and forcing Doximity to respond to false allegations concerning its metrics, advertising practices, and corporate integrity.

(vii) Factual Basis

The factual basis for these claims includes, among other things: the content of the Article; OpenEvidence's paid promotion of links to the Article on LinkedIn and other channels; the targeting of Doximity's customers and users; Doximity's licensing of NPI data; third-party

verification of Doximity's advertising metrics; and publicly available disclosures concerning Doximity's advertising practices and corporate transactions.

### 6. Dissemination of Other Misleading Substack Post

(i) Commercial Advertising or Promotion

On information and belief, OpenEvidence posted and paid to promote links to a Substack post entitled "The $11.7B Dialer: What Doximity Reveals About Healthcare Tech" through commercial channels, including LinkedIn. The promotion was directed at healthcare industry participants, pharmaceutical advertisers, and physician users, including Doximity's customers and prospective customers, and was intended to influence commercial decision-making in the healthcare advertising and communications market.

(ii) False or Misleading Statements of Fact

The Article contains numerous false or misleading statements of fact about Doximity, including but not limited to the following categories:

Anonymous and Unverified Sources Presented as Fact.

The Article repeats anonymous Reddit comments and statements from unidentified online users posted years earlier, including unverified claims about Doximity's business practices, and presents those statements as truthful, authoritative evidence rather than unverified opinion or anecdote

Misrepresentations Concerning the Reserved Share Program.

The Article misrepresents the nature and purpose of Doximity's reserved share program, including eligibility requirements, falsely suggesting that the program was designed to manipulate engagement metrics or induce artificial activity, rather than to offer eligible physicians an opportunity to participate in an IPO under disclosed criteria.

False Statements About Physician Motives and Conduct.

The Article asserts that thousands of physicians logged into Doximity solely to qualify for reserved shares and attributes improper motives to those physicians without factual support, presenting speculation as fact.

False Claims that Engagement Was "Fake" or Manufactured.

The Article repeatedly states or implies that engagement on Doximity was "fake," manufactured, or generated through deception, without factual support and contrary to Doximity's disclosed engagement definitions and practices.

Mischaracterization of Judicial Proceedings.

The Article falsely states or implies that a court found it "plausible" or made factual findings that Doximity misrepresented engagement metrics, when the cited rulings merely applied the pleading standard applicable to motions to dismiss and made no factual determinations on the merits.

False Statements Concerning OpenEvidence's Own Litigation.

The Article misrepresents the nature, posture, and allegations of OpenEvidence's lawsuit against Doximity, including by implying findings or admissions that do not exist.

False Claims of "Generated" or Miscounted Engagement.

The Article asserts that Doximity "generates" engagement, miscounts engagement, maintains "ghost profiles," or inflates engagement metrics, without factual basis.

Misstatements About What Counts as Engagement.

The Article falsely claims that Doximity improperly counts routine actions, profile corrections, or compelled logins as engagement for commercial purposes.

False Statements Regarding Forced Logins and Reputation Management.

The Article asserts that Doximity forces healthcare providers to log in to manage their online reputation and then counts such corrections as growth or engagement, mischaracterizing Doximity's practices.

False Claims that Errors Generate Revenue.

The Article asserts that errors in physician profiles intentionally generate revenue for Doximity and that such errors are a structural and intentional business decision.

False Statements Regarding Advertising Representations.

The Article claims that Doximity reports profile corrections and alleged errors to pharmaceutical companies as engaged physicians and describes this as a "feature," which is false.

False Allegations of Stolen Technology.

The Article states or implies that Doximity is based on stolen technology, without factual support.

False Allegations of Improper Data Sales.

The Article states or implies that Doximity sells private physician information to recruiters or third parties without consent, which is false.

False Statements Attributed to Purported Former Employees.

The Article attributes statements to purported former Doximity employees that relay inaccurate or misleading information about Doximity's practices, without verification.

False Claims of Defamation by Doximity's CEO.

The Article asserts that Doximity's CEO "resorted to defamation," a factual allegation of wrongdoing that is false and unsupported.

Misleading AI-Generated Video Content.

Prior to its removal, the Article was promoted alongside an AI-generated video purporting to depict Doximity management discussing inflating metrics and deceiving investors, which falsely suggested actual statements or conduct by Doximity executives.

(iii) Interstate Commerce

OpenEvidence's promotion of the Article occurred via national online platforms and digital advertising channels and was disseminated to audiences across multiple states, constituting use in interstate commerce.

(iv) Materiality

The false and misleading statements concern material characteristics of Doximity's business, including engagement metrics, data practices, advertising integrity, corporate governance, and technology origins. These matters are material to advertisers' purchasing decisions, users' trust, and commercial relationships.

(v) Actual or Likely Deception

The statements were likely to deceive, and did deceive, a substantial segment of the intended audience by conveying false impressions that Doximity engages in deceptive, unlawful, or unethical business practices, inflates engagement, and misleads customers and investors.

(vi) Proximate Cause of Injury

OpenEvidence's promotion of the Article proximately caused, and was likely to cause, commercial injury to Doximity by misleading current and prospective customers, diverting advertising business, damaging goodwill, and forcing Doximity to respond to false allegations disseminated in commercial channels.

(vii) Basis

The factual basis for these claims includes the contents of the Article; OpenEvidence's posting and paid promotion of links to the Article; the timing of such promotion prior to the addition of disclaimers and removal of misleading AI-generated video content; the repetition of

Dated:    February 16, 2026
           Boston, Massachusetts

William E. Ridgway
Brian O'Connor
(admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
320 S. Canal Street
Chicago, Illinois 60606
(312) 407-0700
william.ridgway@skadden.com
brian.oconnor@skadden.com

Bijal V. Vakil
(admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
bijal.vakil@skadden.com

*/s/ Carolyn M. Homer*
MORRISON & FOERSTER LLP
Daniel P. Muino (admitted *pro hac vice*)
Carolyn M. Homer (admitted *pro hac vice*)
David Nathaniel Tan (admitted *pro hac vice*)
2100 L St., NW, Suite 900
Washington, D.C. 20037
Telephone: (202) 887-1500
Facsimile: (202) 637-2201
dmuino@mofo.com
cmhomer@mofo.com
ntan@mofo.com

MORRISON & FOERSTER LLP
Nathaniel R. Mendell
200 CLARENDON STREET
BOSTON, MA 02116
Tel: (617) 648-4700
nmendell@mofo.com

*Counsel for Defendants Louis Mullie; Jonathan
Hershon St-Jean; Hovhannes Karapetyan;
Khudhur Mohammed; and Vince Roy*

As to objections,

James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com

*Counsel for Defendants
Doximity, Inc., Jey Balachandran,
Jake Konoske, and Pathway Medical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2026, the foregoing First Amended Responses and Objections to Plaintiff's Second Set of Interrogatories was served via email on:

Nathaniel Andrew Hamstra
Quinn Emanuel Urquhart & Sullivan LLP
191 N. Wacker Dr.
Suite 2700
Chicago, IL 60606
312-705-7400
Email: nathanhamstra@quinnemanuel.com

Stacylyn May Doore
Ryan Gorman
Vanessa Rodriguez
Zi Chun Wang
Quinn Emanuel Trial Lawyers
111 Huntington Avenue, Suite 520
Boston, MA 02199
617-712-7121
Email: stacylyndoore@quinnemanuel.com
Email: ryangorman@quinnemanuel.com
Email: vanessarodriguez@quinnemanuel.com
Email: michellewang@quinnemanuel.com

Stephen Broome
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, NY 10016
212-849-7330
Email: stephenbroome@quinnemanuel.com

_____
William K. Wray Jr.