## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

OPENEVIDENCE INC.,

       *Plaintiff,*

   v.

DOXIMITY, INC., JEY BALACHANDRAN,
JAKE KONOSKE, PATHWAY MEDICAL,
INC., LOUIS MULLIE, JONATHAN
HERSHON ST-JEAN, HOVHANNES
KARAPETYAN, ERIC YAMGA, KHUDHUR
MOHAMMED, and VINCE ROY

       *Defendants.*

Civil Action No. 1:25-cv-11802-RGS

## OPPOSITION TO DOXIMITY, INC.'S MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIMS

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND ....................................................................................................3

      A.     The Existing Pleadings and Recently-Extended Schedule ....................................3

      B.     Doximity Asks For Consent To Expand Its Counterclaims...................................4

      C.     The Proposed Second Amended Counterclaims.....................................................4

LEGAL STANDARD....................................................................................................................6

ARGUMENT.................................................................................................................................7

I.       DOXIMITY HAS NOT BEEN DILIGENT .....................................................................7

II.      THE AMENDMENTS WOULD CAUSE UNDUE PREJUDICE AND DISRUPT
        THE RECENTLY-EXTENDED SCHEDULE ................................................................9

III.     DOXIMITY'S NEW CLAIMS ARE FUTILE................................................................13

CONCLUSION............................................................................................................................15

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Amyndas Pharmaceuticals, S.A. v. Zealand Pharma A/S*,
   48 F.4th 18 (1st Cir. 2022)..................................................................................................8, 9

*B2 Opportunity Fund, LLC v. Trabelsi*,
   2017 WL 2818989 (D. Mass. June 29, 2017) ........................................................................13

*Bloom v. Campbell*,
   2026 WL 914980 (D. Mass. Apr. 3, 2026) ..........................................................................6, 8

*Calderón-Serra v. Wilmington Tr. Co.*,
   715 F.3d 14 (1st Cir. 2013) ....................................................................................................6

*City of Framingham v. Durham Sch. Servs., L.P.*,
   2024 WL 989004 (D. Mass. Mar. 7, 2024)............................................................................6

*Curley v. Softspikes, LLC*,
   2010 WL 2545611 (D. Mass. June 21, 2010) ......................................................................14

*Lu v. Niles*,
   2017 WL 3027251 (D. Mass. July 17, 2017)..........................................................................8

*Nat'l Fed'n of the Blind v. Container Store*,
   2020 WL 533022 (D. Mass. Feb. 3, 2020) .............................................................................6

*Nikitine v. Wilmington Tr. Co.*,
   715 F.3d 388 (1st Cir. 2013)...............................................................................................7, 8

*Noonan v. Staples, Inc.*,
   707 F. Supp. 2d 85 (D. Mass. 2010) ....................................................................................11

*Sensitech Inc. v. LimeStone FZE*,
   548 F. Supp. 3d 244 (D. Mass. 2021) ............................................................................13, 14

*Steir v. Girl Scouts of the USA*,
   383 F.3d 7 (1st Cir. 2004)....................................................................................................11

*Hagerty ex rel. U.S. v. Cyberonics, Inc.*,
   844 F.3d 26 (1st Cir. 2016)....................................................................................................6

*Villanueva v. United States*,
   662 F.3d 124 (1st Cir. 2011)..................................................................................................8

*Vranos v. Skinner*,
930 N.E.2d 156 (Mass. App. Ct. 2010) ................................................................................13

## PRELIMINARY STATEMENT

Six months after filing its First Amended Counterclaims, more than three months after this Court sustained them, and just two days after the Court granted the parties' joint motion to extend the case schedule, Doximity moves for leave to add sweeping new counterclaims. The Court should reject this attempt to drastically expand the scope of the case with just three months left in fact discovery. The proposed Second Amended Counterclaims ("PSAC") adds a new, dramatically different theory of defamation and two new causes of action for tortious interference premised largely (but not exclusively) on conduct Doximity has been alleging since November 2025. By Doximity's own description, these new claims seek to expand the case to encompass the parties' relationships with "virtually every major pharmaceutical company in the United States" and the "media-buying agencies that place pharmaceutical advertising on Doximity." Dkt. 93-1 ¶ 8. In doing so, the amendment would require expanding this case to include additional, extensive third-party discovery and entire categories of discovery not currently in scope. Doximity has already admitted to the core misconduct alleged in OpenEvidence's Amended Complaint—using misappropriated National Provider Identifiers to infiltrate OpenEvidence's platform in an effort to steal its intellectual property. The proposed Second Amended Counterclaims is a belated attempt at expansive distraction.

The scope of discovery implicated by the proposed amendment cannot be understated. For example, in an apparent attempt to bolster its defamation claim, the PSAC adds new allegations regarding OpenEvidence's promotion of two third-party Substack articles—articles OpenEvidence concededly did not author, *see* PSAC ¶ 70—that contain detailed allegations that Doximity executives engaged in a massive fraud on advertisers and investors. *See id.* ¶¶ 66-73. Because truth is a defense to defamation, these new allegations and theory—if allowed into the case—would entitle OpenEvidence to discovery to prove that the Substack article's accusations against

1

Doximity are true.  That inquiry has no overlap with the existing case.  The tortious interference claims similarly would expand the case's scope well beyond its current form—and require third-party discovery from countless pharmaceutical companies.  To respond to Doximity's new allegations, OpenEvidence would need to serve new interrogatories, document requests, requests for admission, and subpoenas.  And the deposition limit would need to be increased substantially.

The motion should be denied because Doximity has not been diligent; the amendment would unduly prejudice OpenEvidence and disrupt the schedule the Court has just extended; the "newly discovered" facts on which Doximity relies relate to claims already pled in the operative First Amended Counterclaims ("FAC"); and the new counts are futile in any event.

The timing and scope of the proposed amendment are equally problematic.  The Court entered the Scheduling Order on October 20, 2025 (Dkt. 37), and on May 6, 2026—two days before Doximity filed this motion—the Court extended that schedule, with fact discovery now closing on August 10, 2026.  Dkt. 92.  The parties' joint motion for that extension said nothing about any contemplated amendment.  *See* Dkt. 91 ¶¶ 10-13.  Indeed, absent this proposed amendment, the case is a narrow one that could complete discovery by August 10.  OpenEvidence's case against Doximity is narrow and targeted.  But what Doximity now seeks is not a modest addition to its operative pleading.  The PSAC would transform a narrow case—in which Doximity has already admitted infiltrating the OpenEvidence platform through misappropriated National Provider Identifiers to extract OpenEvidence's proprietary source code—into a sprawling industry-wide proceeding requiring third-party discovery and an in-depth investigation into the facts underlying the Substack articles' fraud claims.  That kind of expansion cannot be litigated within the schedule the Court has just entered, and Doximity has not attempted—and cannot make—the diligence showing that Rule 15 demands.  Granting the motion

2

would necessitate yet another amendment of the schedule the Court has only just extended.

The Court should deny the motion. If the Court is not inclined to do so, OpenEvidence requests the Court order the parties to negotiate a new schedule and discovery limits that afford OpenEvidence the time and discovery necessary to defend against Doximity's new theories and claims, including time for additional and expansive third-party discovery.

**RELEVANT BACKGROUND**

A.     **The Existing Pleadings and Recently-Extended Schedule**

OpenEvidence filed this action on June 20, 2025, and filed the operative Amended Complaint on October 29, 2025. Dkt. 38. OpenEvidence's Amended Complaint pleads a focused set of claims arising from Defendants' now-admitted infiltration of the OpenEvidence platform through the use of National Provider Identifiers that did not belong to them, in violation of OpenEvidence's Terms of Use and the Computer Fraud and Abuse Act (among other laws), and their subsequent submission of hundreds of queries seeking to extract OpenEvidence's proprietary source code. Dkt. 38. Defendants have already admitted significant aspects of that misconduct.

Doximity filed its initial counterclaims on September 17, 2025 (Dkt. 33), and FAC on November 24, 2025 (Dkt. 60). The FAC asserts three claims—false advertising, defamation, and Chapter 93A—centered on OpenEvidence's alleged commercial advertising, including the use of so-called "puppet" LinkedIn accounts. FAC ¶¶ 75-88. On January 22, 2026, the Court sustained Doximity's counterclaims. Dkt. 87.

On October 20, 2025, the Court entered a scheduling order setting the fact discovery cutoff as June 10, 2026. Dkt. 37. On May 6, 2026—following resolution of a third-party subpoena dispute with LinkedIn and mediation discussions—the parties jointly moved to extend the schedule, citing (i) the LinkedIn subpoena dispute, (ii) mediation efforts, (iii) counsel scheduling conflicts, and (iv) personal circumstances of one defendant. Dkt. 91 ¶¶ 10-13. The Court granted

3

the motion in part the same day, extending the case schedule by two months and setting the fact discovery cutoff as August 10, 2026. Dkt. 92. Nothing in the motion disclosed that Doximity intended to file a sweeping amendment two days later that would render the just-extended schedule unworkable.

**B.** **Doximity Asks For Consent To Expand Its Counterclaims**

On May 6, 2026, Doximity's counsel circulated a draft of the proposed amendment. The next day, OpenEvidence's counsel advised Doximity in writing that the draft contained "egregious falsehoods" and warned that, if filed in that form, OpenEvidence may seek relief under Federal Rule of Civil Procedure 11. Doximity responded by withdrawing several allegations.

**C.** **The Proposed Second Amended Counterclaims**

On May 8, 2026, Doximity filed the instant motion. Dkt. 93. The PSAC seeks to add two new claims of tortious interference with contractual relations (Count IV) and tortious interference with advantageous business relations (Count V). PSAC ¶¶ 193-205. But the conduct on which the new claims rest is not new. The FAC—filed nearly six months ago—already alleged the puppet-account scheme by name ("American Courtroom," "Bubble Watch," "Tech Law News," and "Curated Market Research"), the shell-entity payor ("Scalable Magic U.S. Inc."), and the theory that OpenEvidence used the puppet accounts "with the goal of harming Doximity's reputation, [and] *disrupting key client relationships*." FAC ¶¶ 76-84 (emphasis added). Doximity went as far as to allege that OpenEvidence's "Deceptive and Unlawful Campaign Is Intended to . . . *Interfere with Its Client Relationships*." *Id.* ¶¶ 93-94 (emphasis added). Although OpenEvidence sought discovery as early as December 3, 2025 into precisely which client relationships were disrupted, Doximity *still* has not identified a single one. Notably, the proposed amendment does not either.

The PSAC's two new causes of action derive almost entirely from those same vague

allegations.   The PSAC recycles the FAC's puppet-account and "Scalable Magic" allegations (PSAC ¶¶ 101-112) and repackages the FAC's "disrupt[ing] key client relationships" theory of harm into freestanding causes of action for tortious interference (*id.* ¶¶ 104, 193-205).  The PSAC's new allegations rest on "information and belief"—not newly discovered evidence—or simply add redundant examples of the same conduct alleged in the FAC.  *See, e.g. id.* ¶¶ 21, 22 (new allegations of "consulting contract[s]" upon "information and belief"), 95-100 (new LinkedIn advertisement allegations).  The PSAC seeks to relabel those recycled facts with a new and broader damages theory that reaches, by Doximity's own description, "virtually every major pharmaceutical company in the United States."  *Id.* ¶ 8.  What the PSAC adds, in other words, is not new facts but new claims—and the sweeping third-party discovery that comes with them.

The PSAC also significantly expands Doximity's defamation cause of action, though similarly based on stale evidence.  The PSAC adds new allegations claiming that OpenEvidence is liable for promoting two third-party Substack articles, titled "The $11.7B Dialer" (published November 6, 2025) and a follow-up post (published December 12, 2025).  PSAC ¶¶ 66-73. Doximity concedes that OpenEvidence "did not author either of the Substack articles."  *Id.* ¶ 70. The articles accuse Doximity and its executives of a wide-ranging scheme to defraud advertisers and investors, including that Doximity's management "falsifies ad engagement data," that Doximity "scrapes the NPI database and creates profiles for every physician in America" without consent, that Doximity "pretend[s] [users] engage with what makes [Doximity] money," that Doximity employs a "fake measurement methodology," that Doximity's leaders "have been fighting to liquidate their positions at peak valuations while buying back hundreds of millions of dollars of stock on the company's dollar," that "[w]histleblowers [have] expose[d]" conduct that caused the stock to crash, and that auditors brought in to confirm Doximity's advertising metrics

only "verify that contracts were signed and ads were served," not that the "active member" receiving the ad was "a real person engaging voluntarily." *Id.* ¶¶ 67-69. Doximity does not allege that OpenEvidence had any role in creating these articles, that OpenEvidence directed their content, or that OpenEvidence and the third-party author communicated about their substance. The new defamation theory thus rests entirely on OpenEvidence's alleged reposting of a third party's detailed accusations of executive fraud. While OpenEvidence believes many of the accusations in the Substack articles to be true, if this new theory of defamation is added to the case, OpenEvidence would—at minimum—be entitled to  seek discovery of Doximity to confirm the accuracy of the accusations. That is because truth is a complete defense to defamation.

## **LEGAL STANDARD**

Although Rule 15 provides that a court should "freely give leave" to amend, it does not "require the district court to 'mindlessly grant every request for leave to amend.'" *City of Framingham v. Durham Sch. Servs., L.P.*, No. 23-10460-RGS, 2024 WL 989004, at *1 (D. Mass. Mar. 7, 2024) (quoting *Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013)). "[A] district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part." *Nat'l Fed'n of the Blind v. Container Store*, No. 15-12984-NMG, 2020 WL 533022, at *3 (D. Mass. Feb. 3, 2020) (citation omitted).

"[U]ndue delay, on its own, may be enough to justify denying a motion for leave to amend." *Hagerty ex rel. U.S. v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016). In deciding a Rule 15 motion, "a movant has at the very least the burden of showing some valid reason for his neglect and delay." *Id.* (citation omitted). "In assessing whether a movant has carried this burden, courts must take into account what the plaintiff knew or should have known and what he did or should have done." *Id.* (citation omitted). "[T]he longer a party waits before filing its motion to amend,

6

the more exacting the standard becomes." *Bloom v. Campbell*, No. 24-cv-10339-RGS, 2026 WL 914980, at *3 (D. Mass. Apr. 3, 2026).

**ARGUMENT**

**I.    DOXIMITY HAS NOT BEEN DILIGENT**

A comparison of the FAC and the PSAC shows that the conduct on which Doximity premises its proposed amendment is, in material respects, conduct Doximity has already been alleging for nearly six months. *See* Dkt. 93-2. The FAC identified the "puppet" LinkedIn accounts on which Doximity now bases its tortious interference theory. *Compare* FAC ¶ 76 *with* PSAC ¶ 102-04. The FAC alleged that those accounts were funded by "Scalable Magic U.S. Inc." FAC ¶¶ 81-84. And, most importantly, the FAC alleged the very theory of harm that Doximity now claims is "newly discovered": that OpenEvidence "operates these puppet accounts with the goal of harming Doximity's reputation, *disrupting key client relationships*, and unfairly advantaging OpenEvidence in the marketplace." *Id.* ¶ 78 (emphasis added). Doximity's PSAC seeks to bootstrap that same conduct into two tortious interference claims. *See* PSAC ¶¶ 193-205. To be sure, in its Motion, Doximity concedes its "two additional claims for relief aris[e] directly from the *same campaign*" of purported misconduct. Dkt. 94 at 6 (emphasis added). That alone is a basis to deny its motion. *See Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 391 (1st Cir. 2013) (affirming denial of leave to amend where "the plaintiff was scrambling to devise new theories of liability based on the same facts pled in his original complaint") (citation omitted).

Aside from recycling old allegations, the PSAC's few new allegations pre-date the FAC. The Substack article titled "The $11.7B Dialer" was published on November 6, 2025—eighteen days *before* the FAC. PSAC ¶ 66. The Coatue Management advertisement comparing Doximity to BlackBerry began running "no later than November 19, 2025," five days *before* the FAC. *Id.* ¶ 95. And the May 2025 Coatue "rapid adoption" advertisement—described in the motion as "the

single most expensive advertisement classification in LinkedIn's production," Mot. at 5—had been running for more than six months by the time Doximity filed the FAC. *Id.* ¶¶ 98-101. Doximity offers no explanation for why the tortious interference theory could not have been pled then on the puppet-account, shell-entity, and customer-targeting conduct the FAC already alleged. *See Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (affirming denial of motion to amend based on finding undue delay after four months).

Doximity's contention that the April 10, 2026 LinkedIn production was the trigger for amendment falls flat. The production merely added impression counts and budgets to allegations Doximity had already pled. The FAC alleged the puppet-account scheme and the targeting of Doximity's customers. *See* FAC ¶¶ 76, 78. Doximity could have pled the tortious interference counts on the same factual allegations at any time. It admits as much in its motion. *See* Mot. at 8 ("both new claims rest on a factual record this Court has already held states claims for relief"). "Importantly, this is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing." *Nikitine*, 715 F.3d at 391 (quoting *Villanueva*, 662 F.3d at 127). Instead, Doximity waited six months after the first Substack article, more than three months after this Court sustained its FAC, and nearly a month after the LinkedIn production, to move to amend on factual allegations its own prior pleading already articulated. *See Bloom*, 2026 WL 914980, at *3 (denying leave where movant "knew or should have known" of operative facts); *Lu v. Niles*, No. 16-12220-FDS, 2017 WL 3027251, at *5 (D. Mass. July 17, 2017) (denying leave to amend where the "proposed amended complaint [wa]s substantially similar to the original complaint").

Doximity's heavy reliance on *Amyndas Pharmaceuticals, S.A. v. Zealand Pharma A/S*, 48 F.4th 18 (1st Cir. 2022), only underscores the point. The plaintiff in *Amyndas* moved to amend 28

days after the district court dismissed its complaint and "less than two months after the emergence of new evidence." *Id.* at 39. Unlike the PSAC, the *Amyndas* plaintiff's amendment "specifically addressed a defect identified by the district court in its dismissal of the original complaint." *Id.*; *see also id.* at 38 ("Amyndas had a valid reason for moving to amend: the district court had pointed out a fatal flaw in its original complaint."). The First Circuit reversed because the plaintiff had "acted with reasonable diligence to cure the fatal defect in its original complaint" that the district court had identified. *Id.* at 40. Whereas here this Court did not identify any defect in Doximity's FAC; it *sustained* Doximity's FAC in its entirety on January 22, 2026. Dkt. 87. Doximity has no pleading defect to cure. Doximity does not seek to cure anything but rather expands the case to embrace two entirely new causes of action sweeping in "virtually every major pharmaceutical company in the United States" and the "media-buying agencies that place pharmaceutical advertising on Doximity." PSAC ¶ 8.

## II.    THE AMENDMENTS WOULD CAUSE UNDUE PREJUDICE AND DISRUPT THE RECENTLY-EXTENDED SCHEDULE

The most acute prejudice from the proposed amendment is not the addition of two more counts; it is the expansive discovery that will necessarily follow. As set forth above, OpenEvidence's claims center on Doximity's own conduct—Doximity executives' use of misappropriated credentials to access non-public portions of OpenEvidence's platform. Dkt. 38. No pharmaceutical advertiser is a witness to that conduct; no media-buying agency has documents relevant to it. Doximity's operative counterclaims, while broader, do not require the scope of third-party pharmaceutical industry discovery that is clearly required by the proposed amendment. The FAC's false-advertising, defamation, and Chapter 93A claims are limited to issues like Doximity's stock price, e.g., rather than massive fraud or Doximity's contracts with pharmaceutical companies and discovery into those business relationships.

9

The PSAC changes that.  The proposed tortious interference claims make Doximity's third-party commercial relationships the centerpiece of the case.  The PSAC alleges that Doximity has "valid and enforceable advertising contracts with a number of significant pharmaceutical and related advertising customers," (PSAC ¶ 194); that OpenEvidence "knew of Doximity's contracts" because it allegedly targeted those customers in its LinkedIn campaigns, (*id*. ¶ 195); and that OpenEvidence's conduct caused damages in the form of "significant pharmaceutical and related advertising customers" ceasing their purchases or declining to renew their contracts with Doximity (*id*. ¶ 197).

Although the underlying conduct on which Doximity now relies is largely the same conduct Doximity has alleged for months, the new legal theories the PSAC pleads—tortious interference and defamation premised on accusations made by a third-party author—drag entirely new categories of party and third-party discovery into the case.  While Doximity has had months to gather and serve discovery on the new theories it now seeks to plead, OpenEvidence would need to propound additional discovery in the few months that remain before the August cutoff.  Indeed, the PSAC's new allegations cannot be litigated without third-party discovery.  To defend, OpenEvidence will need to test the existence, terms, and renewal history of Doximity-advertiser contracts; the actual reasons advertisers and agencies terminated, reduced, or did not renew (which only the advertisers and agencies themselves can supply); what each third party knew about and thought of the advertisements at issue; the terms of any alleged "consulting" arrangement and who was offered what (none of which is identified in the PSAC); and Doximity's communications with each advertiser and agency about OpenEvidence.  That means subpoenas to pharmaceutical companies, subpoenas to media-buying agencies, and numerous depositions of third-party witnesses.  The third party discovery to date has been much more targeted.  And adding broad third

party discovery would require substantially extending the discovery schedule beyond the two-month extension the Court just granted.  The First Circuit has held that amendments "whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy" are "[p]articularly disfavored." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (citation omitted).

The PSAC's expanded defamation theory triggers an even more sweeping category of new discovery.  The PSAC alleges, for the first time, that OpenEvidence is liable for defamation based on its promotion of two third-party Substack articles that OpenEvidence did not author.  PSAC ¶¶ 66-73.  Truth, however, is a complete defense to defamation under Massachusetts law.  *See Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010) ("The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation.") (citation omitted).  As pleaded, the Substack articles contain detailed accusations that Doximity executives engaged in a massive fraud.  *See* PSAC ¶¶ 67, 69.  If Doximity is permitted to base its defamation count on those statements, OpenEvidence will be entitled to full discovery into the truth of those accusations.  Doximity does not allege that OpenEvidence had any role in writing the articles, and as Doximity itself concedes, OpenEvidence did not author them.  PSAC ¶ 70.  The truth defense thus turns not on what OpenEvidence said, but on whether the Substack allegations against Doximity are true or false, which will necessitate substantial discovery that cannot be completed by August 10.

A further category of discovery follows from the PSAC's accusations of competitive misconduct in the marketplace.  The PSAC repeatedly characterizes OpenEvidence's advertising and outreach as a deliberate campaign to "destroy Doximity's client relationships" and to "disrupt

the ordinary course of Doximity's business."   PSAC ¶ 111; *see also id.* ¶¶ 193-205.   For OpenEvidence to defend against those allegations—including through an anticipated unclean hands defense—it would require discovery into what Doximity's own sales personnel have been telling pharmaceutical advertisers and agencies about OpenEvidence.

Doximity suggests that its proposed amendment will not prejudice OpenEvidence because fact discovery is "ongoing," no depositions have been taken, and no trial date is set.  Not so.  Fact discovery closes in less than three months under the schedule the Court just entered.  Adding Counts IV and V would require Doximity to identify every contract and business relationship it claims OpenEvidence interfered with—which Doximity still has not done in response to interrogatories served back in December—and it would require third-party subpoenas across the pharmaceutical and media-buying industries.

The bait-and-switch nature of Doximity's request compounds the prejudice.  The parties jointly represented to the Court on May 6 that an extension of the schedule was needed to complete existing discovery, citing the LinkedIn subpoena dispute, mediation efforts, and counsel scheduling.  Dkt. 91 ¶¶ 10-13.  The joint motion made no mention of any intended amendment, and the Court relied on those representations in granting a two-month extension.  Dkt. 92.  Two business days later, Doximity filed this motion seeking to add two new causes of action, new factual allegations, and categories of party and third-party discovery far beyond anything the May 6 joint motion contemplated.  Effectively, Doximity now seeks through this motion an even greater extension of the case schedule than the one the parties jointly sought days earlier.[1]

---

[1]   While Doximity had notified OpenEvidence of its intent to seek leave to amend shortly before the parties' joint motion, the specific allegations Doximity proposed to add were a moving target. OpenEvidence flagged significant Rule 11 concerns with multiple draft allegations and Doximity's articulation of its proposed claims continued to evolve through the date of filing.  OpenEvidence's

Tellingly, Doximity's motion is silent on the discovery consequences of its proposed amendment. The motion does not acknowledge that the PSAC would require expansive new discovery, does not propose a schedule to accommodate that discovery, and does not request any further extension of the fact-discovery deadline the Court entered just two days before the motion was filed. Either Doximity intends to litigate its new allegations and tortious interference claims without the new party and third-party discovery its own allegations clearly call for—and without giving OpenEvidence the necessary time to mount a defense, or it intends to seek a further extension and additional discovery once leave is granted. If the latter, Doximity should say so now, in its reply, so that the Court and OpenEvidence can evaluate the true scope of what the motion entails.

## III.    **DOXIMITY'S NEW CLAIMS ARE FUTILE**

Even setting aside delay and prejudice, the proposed new claims are subject to dismissal and are thus futile. *See B2 Opportunity Fund, LLC v. Trabelsi*, No. 17-10043-RGS, 2017 WL 2818989, at *3 (D. Mass. June 29, 2017) (denying leave to amend "that would be futile because [it] fail[s] to state a claim that could survive a motion to dismiss under Rule 12(b)(6)"). To state a claim for tortious interference with contractual relations under Massachusetts law, Doximity must identify a specific contract that OpenEvidence allegedly interfered with, or a specific Doximity customer that OpenEvidence "induced . . . to breach a contract or not to enter into or continue a business relationship" with Doximity. *Vranos v. Skinner*, 930 N.E.2d 156, 165 (Mass. App. Ct. 2010) (quotations omitted). And to state a claim for tortious interference with advantageous business relations, Doximity must show that "1) it had a business relationship or contemplated contract of economic benefit which 2) the offending party was aware of and,

---

first opportunity to consider the new allegations was when Doximity filed its Motion on May 8, 2026.

nonetheless, 3) intentionally and maliciously interfered with, 4) thereby causing harm to the counterclaimant via loss of that advantage." *Sensitech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244, 258 (D. Mass. 2021) (citation omitted).

Doximity fails to state a claim under either theory. The PSAC does not identify any actual pharmaceutical customer or specific contract that OpenEvidence allegedly interfered with. Nor does it identify a specific business relationship or opportunity that was lost as a result of OpenEvidence's conduct. Courts applying Massachusetts law frequently dismiss claims, like the one here, that rest on only conclusory generalized allegations of interference. *See Sensitech Inc.*, 548 F. Supp. 3d at 258-59 ("[A]llegations fall short of stating a plausible claim for tortious interference, . . . [where] they fail to identify any specific contract, relationship or opportunity that was lost."); *Curley v. Softspikes, LLC*, No. 09-cv-11451-RWZ, 2010 WL 2545611, at *3 (D. Mass. June 21, 2010) (dismissing tortious interference claim where "Plaintiffs make only the conclusory allegation that Defendants contracted directly with unidentified parties who otherwise would have contracted with [Plaintiffs]").

Moreover, the proposed amendment is riddled with demonstrably false assertions. Even after Doximity withdrew several core allegations from its proposed amendment in response to OpenEvidence's threatened Rule 11 motion—because Doximity recognized the allegations were blatant lies—the PSAC continues to include allegations that lack any reasonable evidentiary basis and are simply untrue. To take just one example, Doximity seeks leave to allege that OpenEvidence "dispatched an advisor to speak at a Barclay's event" to "spread misinformation about Doximity." PSAC ¶ 124. That statement is demonstrably false. The "advisor" is Laurent Schockmel—who Doximity alleges is the "spouse of the CEO of a prominent Healthcare Media & Marketing Agency," CMI Media Group, a major advertising firm that did business with

14

Doximity and knows its business well. *Id.* Mr. Schockmel is an experienced industry player and no doubt has his own sources of information about Doximity's antics. Critically, and contrary to Doximity's proposed amendment, OpenEvidence did not dispatch Mr. Schockmel to the Barclays event, had no advance notice of what he was planning to say, and did not coach or otherwise direct or inform his remarks. A simple pre-filing investigation would have revealed as much to Doximity had it complied with its Rule 11 obligations—which it clearly did not do. Mr. Schockmel stands ready to attest that Doximity's new allegations are lies, if that becomes necessary.

## CONCLUSION

For these reasons, OpenEvidence respectfully requests that the Court deny Doximity's motion. Alternatively, OpenEvidence requests the Court order the parties to negotiate a new schedule and discovery limits that afford OpenEvidence the time and discovery necessary to defend against Doximity's new theories and claims.

Dated: May 15, 2026

Respectfully submitted,

*/s/ Stephen Broome*
Stephen Broome (admitted *pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Stacylyn M. Doore (BBO# 678449)
Ryan P. Gorman (BBO# 707239)
Vanessa Rodriguez (BBO# 713607)
Zi Chun Wang (BBO# 709803)
stacylyndoore@quinnemanuel.com
ryangorman@quinnemanuel.com
vanessarodriguez@quinnemanuel.com
michellewang@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

Nathan Hamstra (admitted *pro hac vice*)
nathanhamstra@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Stephen Broome
Stephen Broome (*admitted pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000