**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| OPENEVIDENCE INC., <br><br>      *Plaintiff,* <br><br>     v. <br><br> DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, ERIC YAMGA, KHUDHUR MOHAMMED, and VINCE ROY <br><br>      *Defendants*. | Civil Action No. 1:25-cv-11802-RGS |

<u>**MEMORANDUM OF LAW IN SUPPORT OF OPENEVIDENCE'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO AMEND THE SCHEDULING ORDER**</u>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT BACKGROUND ..................................................................................................3

    A.    The Original Scheduling Orders ................................................................3

    B.    OpenEvidence Serves Discovery Pursuant to the Scheduling Order Limits ...........4

    C.    Doximity's Second Amended Counterclaims Expand The Case ...........................4

    D.    OpenEvidence's Proposed Second Amended Complaint .......................................5

LEGAL STANDARD..................................................................................................................6

ARGUMENT ..............................................................................................................................7

I.    THE COURT SHOULD GRANT LEAVE TO FILE THE SECOND AMENDED
COMPLAINT ..................................................................................................................7

    A.    Granting Leave Will Promote Judicial Economy And Will Not Unduly
Prejudice Doximity .......................................................................................7

    B.    OpenEvidence's Proposed Second Amended Complaint Is Not Futile..................9

    C.    OpenEvidence Has Been Diligent And There Was No Undue Delay ...................10

II.    GOOD CAUSE EXISTS TO MODIFY THE CASE SCHEDULING ORDER ...............11

    A.    Additional Discovery Is Necessary.........................................................................11

    B.    Good Cause Exists To Extend Fact Discovery By Six Months............................14

CONCLUSION..........................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Lab'ys v. Inverness Med. Tech.*,
2002 WL 1906533 (D. Mass. Aug. 19, 2002) ...........................................................................9

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*,
48 F.4th 18 (1st Cir. 2022)..................................................................................6, 9, 10

*Arana v. Molta*,
2025 WL 2159200 (D. Mass. Mar. 20, 2025).........................................................................11

*Bd. of Trs. of IUOE Local 4 Pension Fund v. Alongi*,
2022 WL 17541936 (D. Mass. Dec. 7, 2022).........................................................................9

*Darney v. Dragon Products Co., LLC*,
266 F.R.D. 23 (D. Me. 2010)..................................................................................13

*Delgado v. Galvin*,
2014 WL 1004108 (D. Mass. Mar. 14, 2014).........................................................................8

*Evans v. Thompson*,
2016 WL 2901729 (D. Mass. May 18, 2018).........................................................................11

*Gouin v. Nolan Associates, LLC*,
325 F.R.D. 521 (D. Mass. 2017).................................................................................7, 9

*Ivymedia Corp. v. Ilikebus, Inc.*,
233 F. Supp. 3d 228 (D. Mass. 2017) ....................................................................................9

*Klunder v. Brown Univ.*,
778 F.3d 24 (1st Cir. 2015)..................................................................................8

*Murray v. Wal-Mart Stores, Inc.*,
2018 WL 4087998 (D. Me. Aug. 24, 2018).........................................................................13

*Noonan v. Staples, Inc.*,
707 F. Supp. 2d 85 (D. Mass. 2010) ....................................................................................8, 13

*O'Connell v. Hyatt Hotels of Puerto Rico*,
357 F.3d 152 (1st Cir. 2004)..................................................................................7

*Portier v. NEO Tech. Sols.*,
2019 WL 7946103 (D. Mass. Dec. 31, 2019).........................................................................10

ii

## PRELIMINARY STATEMENT

OpenEvidence has now uncovered that Doximity's use of doctors' credentials to attempt to hack its system was the tip of the iceberg. Doximity built its business on a fraud, charging advertisers premium prices for physician "engagement" it knew it was not delivering. OpenEvidence had intended to pursue its claims arising from that fraud in a separate action, but after this Court granted Doximity leave to add its new defamation counterclaims—claims that turn on the truth of statements about Doximity's misconduct—Doximity's fraud is now central to this case. Litigating that issue in two forums would invite inconsistent results and waste judicial resources. The only way to avoid that risk and waste is to resolve these intertwined claims in a single proceeding. OpenEvidence thus brings this combined motion in response to two key developments that have reshaped the scope of this litigation.

*First*, pursuant to Rule 15, OpenEvidence seeks leave to file a Second Amended Complaint ("Proposed SAC") adding claims for deceptive practices, unfair competition, and false advertising. These claims arise from Doximity's scheme to deceive and defraud pharmaceutical and medical device advertisers, including by charging premium prices for "deep engagement" that Doximity knew it was not delivering and could not deliver. The fraud was designed from the outset to be undetectable: Doximity refused to allow independent ad verification and cultivated a workplace culture in which employees were trained to repeat talking points without knowing whether what they were selling actually existed. As a result, uncovering the evidentiary foundation to assert these fraud-based allegations with Rule 9(b) specificity took substantial time, but OpenEvidence was diligent in its effort to do so and did not unduly delay.

Allowing this amendment would not result in any undue prejudice. Doximity has placed the truth of the fraud allegations squarely at issue in its recently added defamation counterclaims. Dkt. 110. Doximity's Second Amended Counterclaims (the "Counterclaims") allege that

1

OpenEvidence defamed Doximity by reposting without comment Substack articles written by an independent third party who accused Doximity executives of falsifying ad engagement data and systematically misrepresenting physician engagement metrics to advertisers.  Dkt. 110 ¶¶ 66-69. Truth is a defense to defamation, and OpenEvidence is therefore already entitled to develop record evidence that proves the statements in those articles are, in fact, true.  That evidence will substantially overlap with the evidence that will prove OpenEvidence's proposed amended claims as they are based on the same underlying facts, namely: Doximity's misrepresentations to advertisers about physician "engagement" with ads, the metrics Doximity uses to measure and report that engagement, and whether the engagement Doximity sells is real.  Allowing OpenEvidence to amend its complaint to add these causes of action ensures OpenEvidence can pursue the full range of remedies to which it is entitled if the fraud is proven, in the same proceeding where the truth of those allegations will be tried in any event.

Nor is there any legitimate argument that OpenEvidence's amendment would be futile. The Proposed SAC pleads actionable claims for false advertising and unfair competition, each supported by specific allegations that Doximity misrepresented the nature and value of the advertising engagements it sold.  Whether Doximity's representations are false is a factual dispute that cannot be resolved on the pleadings.  Just as the Court held in granting Doximity leave to amend only weeks ago, "[f]actual disputes are beyond the scope of the court's ability to resolve in this posture." Dkt. 109.  The same reasoning supports granting OpenEvidence leave to amend.

**Second**, as a result of Doximity's Counterclaims (and OpenEvidence's Proposed SAC if leave is granted), the parties will require additional discovery and an extension to the current schedule.  The Court's prior scheduling order, Dkt. 37, permitted each side 30 interrogatories, 30 requests for production, 30 requests for admission, and six depositions.  That schedule was entered

based on a case that involved only OpenEvidence's and Doximity's initial claims and counterclaims, respectively, and before OpenEvidence's claims against Doximity and Pathway were consolidated. *See* Dkt. 1, 33, 37. Both parties then used their allotted number of discovery requests to ascertain information about OpenEvidence's and Doximity's first amended claims and counterclaims. Thus, OpenEvidence has no remaining discovery requests to investigate Doximity's new tortious interference claims and defamation theories the recently added Counterclaims introduce, let alone the unfair competition and false advertising claims in OpenEvidence's proposed SAC. Doximity's amendment necessitates additional third-party discovery (particularly with respect to the new tortious interference claim—OpenEvidence is entitled to test whether any of these third-party relationships was actually interfered with) and entire categories of discovery not previously in scope. The six-deposition cap is equally untenable: OpenEvidence cannot even depose each of the named Defendants, which is required particularly given their varied responses to discovery requests. And the two remaining months in fact discovery simply is not enough time given the expanded scope of the case. OpenEvidence thus requests 25 additional depositions and discovery requests, and six additional months to complete discovery and related down-stream deadlines. Good cause supports these requests, which are tailored to the expanded nature of the case.

## **RELEVANT BACKGROUND**

### A.    **The Original Scheduling Orders**

OpenEvidence filed this action on June 20, 2025. Dkt. 1. Doximity, then the sole corporate Defendant along with two of its executives, filed its initial counterclaims on September 17, 2025. Dkt. 33. On October 20, 2025, the Court entered the Scheduling Order, permitting each side to serve 30 interrogatories, 30 requests for production, and 30 requests for admission, and to take a

3

total of six depositions without further leave.  Dkt. 37.  Fact discovery was set to close on June 10, 2026.  *Id.*

Nine days later, on October 29, 2025, OpenEvidence filed its Amended Complaint, adding seven additional Defendants—Pathway Medical, Inc. and six individual Pathway defendants— bringing the total number of Defendants to ten.  Dkt. 38.  On November 24, 2025, Doximity and Pathway filed Amended Counterclaims.  Dkt. 60.  The Court sustained Doximity's counterclaims on January 22, 2026, and dismissed Pathway's.  Dkt. 87.

On May 6, 2026, the parties jointly moved to extend the schedule, and the Court granted that motion, extending the fact-discovery cutoff to August 10, 2026.  Dkt. 91; Dkt. 92.

### B.    OpenEvidence Serves Discovery Pursuant to the Scheduling Order Limits

On December 3, 2025, OpenEvidence served its full allotment of written discovery—30 interrogatories, 30 requests for production, and 30 requests for admission—directed at its claims and Doximity's First Amended Counterclaims.  OpenEvidence also served document requests and a deposition notice on a former Doximity and Pathway consultant, Paul Jorgensen.  Recognizing that the deposition cap was set when the case had only three Defendants, OpenEvidence proposed that the parties jointly seek leave to increase the limit from six to 12.  The parties could not reach an agreement.

### C.    Doximity's Second Amended Counterclaims Expand The Case

On May 8, 2026, Doximity moved for leave to file the Counterclaims, Dkt. 93, and the Court granted that motion on May 26, 2026, Dkt. 109.  The Counterclaims add two new causes of action—tortious interference with contractual relations and tortious interference with advantageous business relations—that, by Doximity's own description, reach "virtually every major pharmaceutical company in the United States" and the "media-buying agencies that place pharmaceutical advertising on Doximity."  Dkt. 110 ¶ 8.  The allegation that Doximity's new

claims reach every pharmaceutical and media-buying agency in the United States lies in stark contrast to Doximity's prior allegations and discovery responses, in which Doximity failed to identify a single customer or client it had lost as a result of OpenEvidence's alleged misconduct. *See* Declaration of Stephen Broome, Ex. 1 at 2.  And of course with the new tortious interference claims, the details of Doximity's relationships with every major pharmaceutical company it claims were harmed—beyond just the yet unnamed identities—and exactly what OpenEvidence allegedly did to interfere with each one is now relevant as well.  The Counterclaims also expand Doximity's defamation count with a new theory premised on OpenEvidence's alleged reposting (without comment) of two third-party Substack articles that Doximity concedes OpenEvidence did not write.  Dkt. 110  ¶ 70.  Those articles contain detailed accusations that Doximity executives engaged in a massive fraud on advertisers and investors.  Doximity alleges that at least 29 distinct statements in those articles are false and defamatory.  *Id.* ¶¶ 67, 69.

### D.    OpenEvidence's Proposed Second Amended Complaint

OpenEvidence's Proposed SAC adds claims for false advertising under the Lanham Act (against Doximity) and unfair competition under California Business & Professions Code §§ 17200 et seq. (against Doximity), premised on Doximity's scheme to defraud pharmaceutical advertisers.  Doximity has represented to advertisers that it delivers "deep engagement" physician clicks on sponsored DocNews content cards in the Doximity Newsfeed—charging anywhere from $60 to hundreds of dollars per "click" on the premise that each click represents a genuine, intentional physician interaction with advertisers' content.  Proposed SAC ¶¶ 70-74.  In reality, however, Doximity has delivered email newsletter opens and "force-unfurled" banner ads that physicians must click to close.  A senior Doximity executive acknowledged that only 1% of physician engagement with DocNews was occurring within the Doximity app—meaning 99% of

5

the "clicks" Doximity was selling were not the in-feed clicks on DocNews cards it had promised. *Id.* ¶ 96.

The allegations in the Proposed SAC have substantial overlap with Doximity's Second Amended Counterclaims. Doximity's new defamation theory is premised on OpenEvidence's reposting (without comment) of two third-party Substack articles that assert, in detail, that Doximity falsifies ad engagement data and misrepresents physician engagement metrics to advertisers. *See* Dkt. 110 ¶¶ 66-73. The allegedly defamatory statements in those articles are, in large part, substantially similar to the allegations underlying the amended claims and allegations in OpenEvidence's Proposed SAC. *Compare, e.g.*, Proposed SAC ¶¶ 87-90 (alleging Doximity's CEO knew the "deep engagement" representations were false because he tracked actual user activity on Doximity's platform) with Dkt. 110 ¶ 69 (same).

After the Court granted Doximity leave to amend, OpenEvidence proposed that the parties jointly move to (i) increase the written discovery limits, (ii) increase the deposition limit to 21, and (iii) extend fact discovery by six months. Doximity refused, instead offering to agree to only four additional discovery requests and two additional months for fact discovery. This motion followed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The First Circuit has held that Rule 15's liberal amendment policy "puts a thumb on the scale in favor of allowing amendments in non-frivolous cases," and leave should be denied only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022).

Good cause is required to modify a scheduling order. Fed. R. Civ. P. 16(b)(4); *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) (quotation omitted). "The Court has broad discretion to allow motions to extend deadlines" and the good cause standard "provides courts with the devices necessary to manage [their] docket[s] and facilitates effective case management." *Gouin v. Nolan Associates, LLC*, 325 F.R.D. 521, 523-24 (D. Mass. 2017) (quotation omitted). The "good cause standard focuses more on the moving party's diligence than prejudice to the opposing side." *Id.* at 524.

## ARGUMENT

### I.    THE COURT SHOULD GRANT LEAVE TO FILE THE SECOND AMENDED COMPLAINT

Rule 15's liberal amendment policy counsels that leave to amend should be freely granted. OpenEvidence's proposed unfair competition and false advertising claims are well-pled, timely, and directly connected to claims that Doximity just recently injected into this litigation. None of the grounds that could justify denial—undue delay, bad faith, futility, or undue prejudice—is present here.

### A.    Granting Leave Will Promote Judicial Economy And Will Not Unduly Prejudice Doximity

OpenEvidence's proposed amendment will not unduly prejudice Doximity. This case remains at an early stage—it was filed less than a year ago, fact discovery is open, no depositions have been taken, and no trial date has been set. OpenEvidence's new claims can be litigated without disrupting the scope of the case much beyond the discovery and scheduling adjustments that are already necessary because of Doximity's recent filing of its Second Amended Counterclaims. The lack of prejudice is underscored by the fact that the conduct underlying the proposed amendment is now already squarely in this case. Doximity's new defamation counterclaims, for example, are premised on OpenEvidence's reposting without comment of

7

articles that allege, in detail, much of the same fraud at the core of OpenEvidence's amendment—that Doximity falsifies ad engagement data and misrepresents physician engagement metrics to advertisers.  Doximity alleges, for example, that those articles falsely state that Doximity "counts physicians updating their profile information as 'engagement,'" that it "misrepresents engagement and use metrics to pharmaceutical companies," that it employs a "fake measurement methodology," and that its management "falsifies ad engagement data."  Dkt. 110 ¶¶ 67-68. Because truth is a complete defense to defamation, *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010), OpenEvidence is already entitled to discovery going to the truth of the fraud allegations as a defense to those new allegations.  Doximity therefore cannot credibly claim prejudice from litigating the truth of its advertising practices when it has voluntarily injected those same issues into this case.  *E.g.*, *compare* Dkt. 110 ¶ 67 *with* Proposed SAC ¶ 3 (Doximity "manipulated and falsified return on investment ("ROI") data sent to pharmaceutical advertisers and their agencies").

Moreover, by adding two new tortious interference counterclaims to the case, ***Doximity***—not OpenEvidence—has necessitated that further discovery is required.  Thus, any marginal additional discovery that the Proposed SAC may warrant does not result in prejudice, much less undue prejudice.  *See Klunder v. Brown Univ.*, 778 F.3d 24, 34-35 (1st Cir. 2015) (finding no prejudice to defendant opposing when amendment would not result in additional prolonged discovery, significant postponement of trial, or major alteration in trial strategy and tactics); *See Delgado v. Galvin*, 2014 WL 1004108, at *9 (D. Mass. Mar. 14, 2014) (allowing leave to amend where no trial date was set, some discovery disputes remained, and the deadline for filing summary judgment motions had not passed).

Courts in this District "often consider efficiency and case management when deciding a motion to amend." *Bd. of Trs. of IUOE Local 4 Pension Fund v. Alongi*, 2022 WL 17541936, at *4 (D. Mass. Dec. 7, 2022) (quoting *Gouin* , 325 F.R.D. at 523). In *Board of Trustees*, the court allowed an amendment to add overlapping claims (even despite the moving party's lack of diligence, which is not the case here), because resolving the claims in a single action avoided the "gross inefficiency and waste of resources" of parallel litigation over the same issues and "the possibility of inconsistent verdicts." *Id.* at *5; *see also Abbott Lab'ys v. Inverness Med. Tech.*, 2002 WL 1906533, at *3 (D. Mass. Aug. 19, 2002) (granting amendment because "[a]dding the [new] claims to the present case will promote efficiency and judicial economy"); *Ivymedia Corp. v. Ilikebus, Inc.*, 233 F. Supp. 3d 228, 231 (D. Mass. 2017) (granting leave to amend to promote judicial economy, explaining that "[i]f plaintiff is not permitted to amend the complaint, it may file a second case to reflect its supplemental copyright claim" and "[r]esolving the alleged copyright infringement with respect to both the original and supplemental copyright is the most efficient use of this Court's resources"). So too, here. Litigating OpenEvidence's amended claims alongside the overlapping conduct already at issue in this case avoids waste and risk of inconsistent verdicts. Indeed, denying amendment would require OpenEvidence to prove Doximity's fraud to defeat its newly-added defamation counterclaims while being barred from recovering affirmative relief for that same fraud in the same proceeding, instead being forced to bring these claims in a new, separate proceeding, which would result in inefficiency and potentially inconsistent outcomes.

### B.      **OpenEvidence's Proposed Second Amended Complaint Is Not Futile**

A proposed amendment is futile only if it "would fail to state a claim upon which relief could be granted." *Amyndas Pharms.*, 48 F.4th at 40. The Proposed SAC states cognizable claims for both false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair

competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  As to the Lanham Act, the Proposed SAC alleges that Doximity made false or misleading commercial representations of fact—principally that the "deep engagements" it sells are physician "clicks" on DocNews sponsored-content cards in its in-app Newsfeed—when in fact those purported clicks are largely email-newsletter opens, force-unfurled banner ads, and similar light-engagement interactions; that the misrepresentations are material to advertisers' premium purchasing decisions and tend to deceive a substantial segment of the relevant audience; that Doximity disseminated them in interstate commerce; and that OpenEvidence, as a direct competitor, was injured through diverted advertising revenue.  Proposed SAC ¶¶ 9, 178-184.

Those allegations also establish each prong of the UCL: the conduct is "unlawful" because it violates the Lanham Act, "fraudulent" because it is likely to deceive advertisers and physicians, and "unfair" because it harms competition.  *See Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *22-24 (D. Mass. Dec. 31, 2019).  The Proposed SAC pleads the who, what, when, where, and how with the requisite particularity for both the UCL and Lanham Act claims.  *See, e.g.*, Proposed SAC ¶¶ 71, 76-79, 95-97, 188.  As this Court found in granting Doximity leave to amend, these types of claims present factual disputes that are "beyond the scope" of resolution on a Rule 12(b)(6) motion.  Dkt. 109.

### C.    OpenEvidence Has Been Diligent And There Was No Undue Delay

Whether delay is "undue" turns on the "totality of the circumstances" and the reasonableness of the movant's conduct, not "simply a matter of counting days."  *Amyndas Pharms.*, 48 F.4th at 37.  Doximity designed its fraudulent scheme to be undetectable.  Doximity refused to implement industry-standard ad measurement technologies that would allow advertisers to confirm their ads were delivered to their target audience, kept internal engagement data secret from most employees, and instructed salespeople not to document the true mechanics of its

advertising products.  Proposed SAC ¶¶ 12, 88.  Developing the whistleblower accounts necessary to plead the fraud-based allegations with specificity required substantial investigation and time. OpenEvidence did not unduly delay–it brought the claims promptly after its investigation confirmed a sufficient evidentiary basis, and sought amendment less than two weeks after Doximity's amendment (and less than one year after bringing this suit).  *See Arana v. Molta*, 2025 WL 2159200, at \*4 (D. Mass. Mar. 20, 2025) (granting leave to amend more than a year after filing operative complaint); *Evans v. Thompson*, 2016 WL 2901729, at \*2 (D. Mass. May 18, 2018) (same).

## II.    GOOD CAUSE EXISTS TO MODIFY THE CASE SCHEDULING ORDER

### A.  Additional Discovery Is Necessary

OpenEvidence cannot defend against Doximity's expanded Counterclaims under the current six-deposition cap, which was set when the case had only three Defendants and far narrower claims.  *See* Dkt. 1, 33, 37.  Today, there are ten Defendants and—following the recently-added Counterclaims—new tortious interference claims and defamation theories that are likely to render new witnesses relevant, particularly given Doximity's proclamation that its new claims implicate every major pharmaceutical company in the world.  OpenEvidence should be permitted *at least* to depose each of the Defendants, including a Rule 30(b)(6) deposition.  *See* Fed. R. Civ. P. 30(a)(2) (presumption that each party will be allowed ten depositions without leave of court). The current cap forces OpenEvidence into an untenable position of choosing which named Defendants to depose.

The depositions of the named Defendants and certain additional fact witnesses are relevant and proportional to the needs of the now-expanded case.  This is particularly necessary here because, as demonstrated by Defendants' written discovery responses, Defendants have asserted

11

individual and often contradictory explanations for their behavior. For example, multiple defendants have responded to Requests for Admission by claiming they typed "random numbers" into the doctor identification number NPI[1] field when registering for the OpenEvidence platform. Yet only roughly 600,000 of 10 billion possible 10-digit combinations are valid NPIs—approximately 1 in 16,667. Defendant Konoske registered twice, both times with different valid NPIs (a roughly 1 in 277 million chance of twice hitting an NPI by randomly typing in numbers, as he claims). This is just one of several examples, but it highlights the need for fulsome depositions of each Defendant, at a bare minimum.

In addition to the plainly relevant named Defendants, there are fact witnesses with discoverable, relevant evidence. For instance, Mr. Tangney (Doximity's Chief Executive Officer) and Mr. Jorgenson (Doximity's former Chief Revenue Officer) appear to have knowledge about Doximity's fraudulent advertising-engagement representations. For example, Defendants' RFA responses indicate that Mr. Tangney was aware his employees were registering for the OpenEvidence Platform even though they are not healthcare providers. Broome Decl., Ex. 2 at 8-9. Thus, his testimony is highly relevant to, among other things, understanding to what extent the Defendants were directed by their employer to fraudulently register for the platform. And, as further explained below, the articles accusing Doximity of fraud that underly Doximity's recently amended defamation theory indicate a wide-ranging fraud at Doximity that plainly will require depositions of Tangney and other key Doximity personnel in charge of the business functions implicated by the alleged fraud. As yet another example, Mr. Jorgenson, as a former employee

---

[1]    NPI refers to a healthcare professional's National Provider Identifier, a unique 10-digit identification number assigned by the Centers for Medicare and Medicaid Services. Dkt. 38 ¶ 42. To ensure that only licensed HCPs access the full version of its platform, OpenEvidence requires them to input their NPIs at the time of registration. *Id.*

and consultant of both Doximity and Pathway, has relevant (and likely unique) knowledge into the extent of coordination between the two companies in launching their attacks on the OpenEvidence Platform. Moreover, Doximity has identified in discovery responses at least two additional employees that registered for an OpenEvidence account. OpenEvidence should be permitted to depose these individuals, including about their varied "explanations" as to how and why they registered for the OpenEvidence Platform.

Additional written discovery is also warranted. The 30-request cap on each type of written-discovery has been exhausted. Yet the requests were directed at OpenEvidence's own claims and Doximity's First Amended Counterclaims. The Counterclaims introduce entirely new claims and new theories of previously pled claims, both of which necessitate additional discovery. *Murray v. Wal-Mart Stores, Inc.*, 2018 WL 4087998, at \*3 (D. Me. Aug. 24, 2018) (allowing for additional discovery in light of new claim); *Darney v. Dragon Products Co., LLC*, 266 F.R.D. 23, 28-29 (D. Me. 2010) (amending a scheduling order to allow party to propound discovery requests in light of proposed amended complaint).

To defend against Doximity's new allegations, new theories, and new claims, OpenEvidence will also need discovery into the truth of the contents of the third-party Substack articles on which Doximity bases its new defamation theory. *See Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010) ("The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation.") (citation omitted). For instance, the Counterclaims allege that at least *22* statements in the Substack article "The $11.7B Dialer: What Doximity Reveals About Healthcare Tech" are false. Dkt. 110 at ¶ 67. These include statements that Doximity misrepresents its active users, publishes false information about physicians to generate engagement, artificially inflates its engagement metrics; statements regarding the implementation

of ads on Doximity's Dialer platform and about the viewing of ads; and statements about the sale of physician information. *Id.* Defending against these new allegations will require new discovery related to, *inter alia*, whether Doximity publishes false information about physicians to generate fake and inflated engagement data. Doximity alleges that there are another seven allegedly false statements in the second Substack article underlying its new defamation allegations. *Id.* ¶ 69. These allegations also require new discovery, including into the scope and methodology of the third-party auditors Doximity engaged to verify the advertising metrics it reports to advertisers, and into the stock sales and stock-repurchase activity of Doximity's executives—subjects that OpenEvidence's prior written discovery did not address.

Further, OpenEvidence intends to assert an unclean hands defense (among others) in response to, at least, Doximity's new allegations that OpenEvidence has orchestrated a campaign to "destroy Doximity's client relationships" and to "disrupt the ordinary course of Doximity's business." Dkt. 110 ¶ 111. That defense renders relevant discovery that was not previously at issue, such as what Doximity's own sales personnel have told pharmaceutical advertisers and agencies about OpenEvidence.

### B.    Good Cause Exists To Extend Fact Discovery By Six Months

Just over two months remain before the August 10, 2026 fact-discovery cutoff. That window cannot accommodate the discovery that is now required by Doximity's recently-added Counterclaims, no matter how diligently OpenEvidence proceeds. A six-month extension, to February 10, 2027, is appropriate and proportionate to the expansion of the case. Because of the overlap in the Proposed SAC with the new Counterclaims, this extension would also accommodate discovery related to the allegations in OpenEvidence's Proposed SAC.

OpenEvidence has been diligent. It served all of its written discovery within the original schedule; it initiated discussions with Defendants to increase the deposition cap before the

14

Counterclaims were filed; it negotiated a search-term protocol that Doximity took nearly three months to engage with; and it moves now within days of the Court's order granting Doximity leave to amend. While the parties have been able to resolve many discovery-related disputes, Doximity has yet to produce *any* internal documents. Given the new subject matter and expanded scope of Doximity's Counterclaims, OpenEvidence needs to serve new discovery, and will need Doximity to produce documents in response to the new discovery—in addition to finally producing documents in response to the previously served discovery requests—in advance of taking depositions.

Because the discovery required in order to defend against Doximity's new allegations and legal theories brought in the Counterclaims cannot be completed by August 10, 2026 despite OpenEvidence's diligence, good cause exists to extend the discovery deadline by six months to February 10, 2027.

## **CONCLUSION**

OpenEvidence respectfully requests that the Court (1) grant OpenEvidence leave to file its Second Amended Complaint and (2) amend the scheduling order to increase the deposition limit from six to 21, increase the limit on the number of discovery requests from 30 to 55, and extend the close of fact discovery to February 10, 2027.

Dated: June 8, 2026                    Respectfully submitted,

*/s/ Stephen Broome*
Stephen Broome (*pro hac vice*)
stephenbroome@quinnemanuel.com
Valerie Lozano (*pro hac vice forthcoming*)
valerielozano@quinnemanuel.com
Scott E. Schlafer (*pro hac vice forthcoming*)
scottschlafer@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

15

865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Stacylyn M. Doore (BBO# 678449)
Ryan P. Gorman (BBO# 707239)
Vanessa Rodriguez (BBO# 713607)
Zi Chun Wang (BBO# 709803)
stacylyndoore@quinnemanuel.com
ryangorman@quinnemanuel.com
vanessarodriguez@quinnemanuel.com
michellewang@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

Nathan Hamstra (*pro hac vice*)
nathanhamstra@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Sascha N. Rand (*pro hac vice forthcoming*)
sascharand@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016

*Attorneys for OpenEvidence, Inc.*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Stephen Broome

Stephen Broome (*admitted pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000