UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| OPENEVIDENCE INC., | : | |
| Plaintiff, | : | Civil Action |
| v. | | No. 25-11802-RGS |
| | : | |
| DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, ERIC YAMGA, KHUDHUR MOHAMMED, and VINCE ROY, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, AND PATHWAY MEDICAL, INC.'S MOTION FOR (1) AN ORDER SANCTIONING OPENEVIDENCE INC. UNDER RULE 37(B)(2) AND THE COURT'S INHERENT AUTHORITY AND (2) TO SHORTEN TIME TO RESPOND**

James R. Carroll
William K. Wray Jr.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*

Dated: September 25, 2026

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... I

TABLE OF AUTHORITIES ..... II

INTRODUCTION ..... 1

BACKGROUND ..... 3

A. OpenEvidence Has Used This Lawsuit to Publicize Allegations It Would Not Test ..... 3

B. The Court Overruled OpenEvidence's Confidentiality-Based Arguments and Ordered Production ..... 3

C. OpenEvidence Stated It Will Not Comply with the Court's Order ..... 5

D. OpenEvidence Deleted the Same Slack Messages That It Demanded that Doximity and Others Preserve ..... 6

ARGUMENT ..... 8

I. OPENEVIDENCE IS KNOWINGLY VIOLATING A COURT ORDER FOR A REASON THE COURT ALREADY REJECTED ..... 8

II. THE COURT SHOULD DISMISS OPENEVIDENCE'S CLAIMS AND ENTER DEFAULT JUDGMENT ON DOXIMITY'S COUNTERCLAIMS ..... 10

III. THE COURT SHOULD AWARD THE DOXIMITY DEFENDANTS THEIR FEES AND EXPENSES FOR THE ENTIRE CASE ..... 15

A. Rule 37(b)(2)(C) Makes an Award of Expenses Mandatory ..... 15

B. The Court Should Shift All of the Doximity Defendants' Fees Under Its Inherent Authority ..... 15

IV. THE COURT SHOULD SHORTEN OPENEVIDENCE'S TIME TO RESPOND ..... 17

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*AngioDynamics, Inc. v. Biolitec AG*,
780 F.3d 429 (1st Cir. 2015) ........ 10

*Benanav v. Healthy Paws Pet Insurance LLC*,
No. 2:20-CV-00421-LK, 2023 WL 8650155 (W.D. Wash. Dec. 14, 2023) ........ 8

*Benitez-Garcia v. Gonzalez-Vega*,
468 F.3d 1 (1st Cir. 2006) ........ 10

*Bourne v. Town of Madison*,
No. 05-cv-365-JD, 2007 WL 951552 (D.N.H. Mar. 27, 2007) ........ 8

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........ 15, 16

*Damiani v. Rhode Island Hospital*,
704 F.2d 12 (1st Cir. 1983) ........ 11, 13

*Fox v. Vice*,
563 U.S. 826 (2011) ........ 15

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ........ 15

*Hammond Packing Co. v. Arkansas*,
212 U.S. 322 (1909) ........ 16

*Hawkins v. Department of Health & Human Services for New Hampshire, Commissioner*,
665 F.3d 25 (1st Cir. 2012) ........ 14

*HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc.*,
847 F.2d 908 (1st Cir. 1988) ........ 13

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ........ 16

*Insurance Recovery Group, Inc. v. Connolly*,
95 F. Supp. 3d 73 (D. Mass. 2015) ........ 15

*International Union, United Mine Workers of America v. Bagwell*,
512 U.S. 821 (1994) ........ 14

*Lonardo v. City of Boston*,
No. 06-12033-RGS, 2008 WL 2130295 (D. Mass. May 20, 2008).............................10, 11

*Maness v. Meyers*,
419 U.S. 449 (1975).......................................................................................... 8

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
427 U.S. 639 (1976).......................................................................................... 10

*NuVasive, Inc. v. Day*,
2021 WL 9059745 (D. Mass. Aug. 23, 2021)................................................... 6

*Red Wolf Energy Trading, LLC v. Bia Capital Management, LLC*,
626 F. Supp. 3d 478 (D. Mass. 2022) .............................................10, 11, 13, 15

*Robson v. Hallenbeck*,
81 F.3d 1 (1st Cir. 1996) .............................................................................10, 11

*SEC v. Knox*,
No. 18-12058-RGS, 2025 WL 330557 (D. Mass. Jan. 29, 2025)...................... 13

*SEC v. Manterfield*,
No. 07-10712-RGS, 2009 WL 935953 (D. Mass. Apr. 8, 2009) ...................... 12

*Torres-Vargas v. Pereira*,
431 F.3d 389 (1st Cir. 2005) ................................................................. 2, 10, 13

*Tower Ventures, Inc. v. City of Westfield*,
296 F.3d 43 (1st Cir. 2002) ..........................................................................11

*Vallejo v. Santini-Padilla*,
607 F.3d 1 (1st Cir. 2010) ...........................................................................10, 11

*Young v. Gordon*,
330 F.3d 76 (1st Cir. 2003) ..........................................................................11

***RULES*** ***PAGE(S)***

Fed. R. Civ. P. 37.......................................................................... 10, 14, 15, 17, 18

***OTHER AUTHORITIES*** ***PAGE(S)***

8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2289 (3d ed. 2026) ................................................................................... 8, 15

## INTRODUCTION

OpenEvidence has decided that a federal court's order is optional—and that defying it is a price worth paying. That is the posture of a litigant that considers itself above the law and indifferent to whatever consequences this Court might impose. A party that deliberately and brazenly disobeys valid court orders and refuses to allow the claims to be tested forfeits the right to pursue litigation. Terminating sanctions are warranted.

OpenEvidence's conduct confirms that it filed this lawsuit to publicize accusations against Doximity, not to litigate them. After the Court ordered production that would test OpenEvidence's remaining claim and prove Doximity's counterclaims, OpenEvidence announced in writing that it would not comply and would accept the "consequences." The appropriate consequence for a plaintiff that will not abide by the rules of the forum it chose is dismissal of its claims, default on the counterclaims against it, and an award of the fees Defendants incurred defending a case OpenEvidence never intended to litigate on the merits.

On September 17, 2026, this Court granted Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.'s (the "Doximity Defendants") motion to compel and ordered OpenEvidence to produce, within twenty-one days, "responsive text messages and slack communications from any of the eight custodians identified by Doximity for the period of June 1, 2023 through February 6, 2026." (Dkt. 129.)

Six days later, OpenEvidence said it would not comply. It "will not or collect or produce" its CEO Daniel Nadler's text messages—even though Nadler's own false statements are central to this dispute. It will not collect anyone else's text messages either. It "will collect and search email from only" three custodians and "will not collect email from the other five custodians subject to the Order." And it "will not collect or produce text messages from any custodian." It

"will not collect emails from prior to January 1, 2025." (Ex. A.)[1] The following day, OpenEvidence's counsel conveyed that knowing defiance in a public letter to this Court: OpenEvidence "understands that, in taking this position, it will not be in compliance with the Order, and that consequences will follow." (Dkt. 131.)

OpenEvidence's stated reason is one the Court already rejected: "Doximity is using the discovery process to obtain sensitive competitive information." (*Id.*) The Court held that any such concern "can be addressed by designating such material as Attorneys' Eyes Only." (Dkt. 129; *see* Dkt. 128 at 1–2, 16.)

The refusal fits a pattern that began on the first day of this case. OpenEvidence has twice filed allegations, promoted them to the press and to the parties' mutual customers, and abandoned them before they could be tested. Before suing, it demanded that Doximity and Pathway preserve their Slack channels on pain of spoliation sanctions; it now reports that its own Slack data for the entire relevant period, including the eight months after it filed this action, "cannot be recovered." (Ex. A.) And now that discovery has reached its own files, OpenEvidence refuses to produce them. It filed this case unwilling to abide by the rules that govern it.

"[A] party's disregard of a court order is a paradigmatic example of extreme misconduct." *Torres-Vargas v. Pereira*, 431 F.3d 389, 393 (1st Cir. 2005). OpenEvidence has weighed the consequences and chosen noncompliance, so a sanction it has already priced in will not change its conduct. The Doximity Defendants therefore ask the Court to enter an order (1) dismissing OpenEvidence's claims with prejudice and entering default judgment against OpenEvidence on Doximity's counterclaims under Rule 37(b)(2)(A)(v) and (vi); and (2)

[1] Citations in the form "Ex. __" refer to the exhibits to the Declaration of William K. Wray Jr., submitted herewith. Exhibit A is the September 23, 2026 email from Stephen A. Broome of Quinn Emanuel Urquhart & Sullivan LLP to counsel for Defendants.

requiring OpenEvidence to pay the attorneys' fees and expenses the Doximity Defendants have incurred in this action since its inception, under Rule 37(b)(2)(C) and the Court's inherent authority. Should the Court decline to dismiss, the Doximity Defendants request in the alternative that OpenEvidence be held in civil contempt under Rule 37(b)(2)(A)(vii) and subjected to coercive sanctions until it complies.[2] Because fact discovery closes on November 10, 2026, the Doximity Defendants also ask the Court to shorten OpenEvidence's time to respond to five days.

## BACKGROUND

### A. OpenEvidence Has Used This Lawsuit to Publicize Allegations It Would Not Test

OpenEvidence began this case by alleging that Doximity misappropriated its "crown jewel" trade secrets. (Dkt. 1.) It promoted those allegations to the press and to the parties' mutual customers, then abandoned them four months later, before any discovery. (Dkt. 38.) It next filed a proposed amended complaint asserting fraud claims against Defendants (Dkt. 111-1), promoted those allegations to the press and the same customers, and withdrew its motion to add them before the Court could rule. (Dkt. 123.) Each time, OpenEvidence filed allegations it believed were shielded by the litigation privilege, publicized them, and withdrew them before they could be tested.

### B. The Court Overruled OpenEvidence's Confidentiality-Based Arguments and Ordered Production

Defendants served their First Set of Requests for Production on October 27, 2025. (Dkt. 127-1.) After extended conferral, described in Defendants' memorandum in support of their

---

[2] For the avoidance of doubt, the Doximity Defendants seek an order imposing sanctions against OpenEvidence, not OpenEvidence's counsel.

motion to compel (Dkt. 126 at 2–4), the parties remained divided on four ESI issues: whether OpenEvidence would collect Slack and text messages at all; whether it would collect from eight custodians or three; whether collection would run from June 1, 2023 or from March 2025; and search terms. Defendants moved to compel on September 1, 2026. (Dkts. 125–127.) OpenEvidence opposed on September 15. (Dkt. 128.)

The Court ruled on September 17, 2026. (Dkt. 129.) On ESI, the Court ordered: "OpenEvidence shall produce all relevant and nonprivileged responsive documents in accordance with the above rulings within twenty-one (21) days of this Order. That production should include responsive text messages and slack communications from any of the eight custodians identified by Doximity for the period of June 1, 2023 through February 6, 2026." (*Id.*) The Court rejected OpenEvidence's confidentiality objection: "OpenEvidence's concerns regarding disclosure of its technical and proprietary information can be addressed by designating such material as Attorneys' Eyes Only." (*Id.*) The only relief the Court denied without prejudice was Defendants' request for additional search terms, and it "encourage[d] the parties to confer on additional terms to reach a reasonable middle ground." (*Id.*) Twenty-one days from September 17 is October 8, 2026.

OpenEvidence litigated and lost each of the three positions it adopts today.[3] On custodians, OpenEvidence announced on May 21, 2026 that it would not collect from anyone

[3] While the Parties' negotiations regarding search terms are ongoing, OpenEvidence has also failed to comply with the Court's directive to "confer . . . to reach a reasonable middle ground" on terms. (Dkt. 129.) On September 22, 2026, the day before OpenEvidence indicated it was refusing to comply with the Court's order, the parties met and conferred on search terms. During that call, counsel for OpenEvidence represented that it was not authorized to agree to any additional search terms on that call and was not prepared to articulate objections to the individual terms it had previously refused. Counsel further noted it was unlikely that the parties could avoid another impasse without a subsequent Court order. Later that same day, in a show of good faith, Defendants provided a revised search term

other than Mr. Nadler, Mr. Ziegler, and Mr. Smith, on the stated ground that those three were "the only OpenEvidence custodians likely to have non-duplicative, relevant documents." (Dkt. 126 at 3; Dkt. 127-4 at 7–8.) When Defendants asked to discuss the five disputed custodians individually, counsel declined because OpenEvidence's position was "categorical." (Dkt. 126 at 4.) On text messages, OpenEvidence first proposed that the parties exchange them, then reversed course on June 24, 2026 and proposed that neither side collect them. (Dkt. 126 at 6.) On Slack, counsel admitted that OpenEvidence uses Slack to communicate but offered no reason for not collecting it. (*Id.* at 3.) On the date range, OpenEvidence had collected documents only from "the beginning of 2025 through June [2025]" and, in its opposition, offered to expand that to January 1, 2025 through February 6, 2026. (*Id.*; Dkt. 128 at 7–9.) OpenEvidence's opposition defended each position and characterized the disputed requests as "a veiled attempt by Doximity to obtain the commercially sensitive information it could not obtain through its prompt injection attacks." (Dkt. 128 at 1–2, 9–14, 16.) The Court rejected each argument. (Dkt. 129.)

### C. <u>**OpenEvidence Stated It Will Not Comply with the Court's Order**</u>

At 10:33 p.m. on September 23, 2026, OpenEvidence's counsel sent the email attached to the Declaration of William K. Wray Jr. as Exhibit A. Its operative paragraph reads in full:

> We are cognizant of the scope of the Court's Order and have advised OpenEvidence that it must comply. However, in light of Defendants' admitted efforts to steal OpenEvidence's intellectual property through hacking and OpenEvidence's concern that Doximity is using the discovery process to obtain sensitive competitive information, OpenEvidence has informed us that it will collect and search email from only Daniel Nadler, Zachary Ziegler, and Micah Smith. OpenEvidence has informed us that it will not collect email from the other five custodians subject to the Order. OpenEvidence has further informed us that, despite the Order's statement that the ordered production "should include responsive text messages," OpenEvidence will not collect or produce text

proposal that unilaterally dropped and/or narrowed certain proposed terms. OpenEvidence promised a response no later than September 24, but did not provide one. Shortly before the time of this filing, counsel for OpenEvidence also cancelled a meet and confer scheduled for September 25, citing the need for "additional time to consult with our client."

> messages from any custodian. Finally, despite the Order's statement that the custodial production should reflect "the period of June 1, 2023 through February 6, 2026," OpenEvidence informed us that it will collect and search emails from only January 1, 2025 through February 6, 2026 for the three custodians OpenEvidence has agreed to search (Daniel Nadler, Zachary Ziegler, and Micah Smith), and will not collect emails from prior to January 1, 2025.
>
> OpenEvidence has informed us that it understands that by taking these positions, it is not complying with the Court's order, and that there will be consequences.

(Ex. A (paragraph breaks added).)

### D. OpenEvidence Deleted the Same Slack Messages That It Demanded that Doximity and Others Preserve

The same email states that "[o]n Friday, September 18, our forensic vendor informed us that OpenEvidence's Slack data for June 1, 2023 through February 6, 2026 cannot be recovered," and that OpenEvidence "does not possess slack message from that time period and thus cannot collect or produce any slack messages." (Ex. A.) OpenEvidence adds that it "does not believe it had any relevant conversations on Slack." (*Id.*) That representation conflicts with counsel's prior representations.

The Slack data OpenEvidence deleted cover the entire period the Court ordered for production. The deleted communications were sent during the period both parties identified as relevant to OpenEvidence's and Doximity's allegations, and during the eight months that follow OpenEvidence's filing of this action.

OpenEvidence also told the Court on September 15 that Slack collection was unwarranted because the relevant communications "would have been discussed over email" (Dkt. 128 at 13). Its vendor reported the loss three days later, indicating that OpenEvidence had not attempted to collect its Slack data before taking that position.

OpenEvidence has known since before this case began that Slack communications are evidence. On December 19, 2024, its counsel wrote to Pathway's chief executive that Pathway

was "under a duty to preserve all potentially relevant evidence, including all emails, messages (including, but not limited to, all instant messages, messages and channels utilized via Slack . . . SMS messages (including on personal devices))," and warned of "an adverse inference, an award of attorneys' fees, and potentially case-termination sanctions." *OpenEvidence Inc. v. Pathway Med., Inc.*, No. 1:25-cv-10471 (D. Mass.), Dkt. 1-4 at 3–4 (citing *NuVasive, Inc. v. Day*, 2021 WL 9059745, at *8–9 (D. Mass. Aug. 23, 2021)). On June 3, 2025, the author of Exhibit A sent Doximity "a formal legal preservation demand" covering "emails, Slack channels, text messages (both professional and personal accounts)," and wrote that "[f]ailure to comply with this preservation demand will be considered spoliation of evidence and will be met with appropriate legal action." (Dkt. 1-2 at 7–8.) Finally, on December 19, 2025, OpenEvidence sent Defendants an ESI proposal that specifically identified Slack as a relevant data source.

Defendants are contemporaneously requesting the facts the Stipulated ESI Order requires OpenEvidence to disclose about the loss (Dkt. 57 ¶¶ 6(c)(i), 7, 9(b)) and will address it under Rules 37(e) and 37(b) when those facts are in hand.[4]

---

[4] Especially given its willingness to flout Court-ordered discovery obligations, the Court should not credit OpenEvidence's claim that it "does not believe it had any relevant conversations on Slack." (Ex. A.) On June 18, 2026, OpenEvidence's counsel made clear that it had determined OpenEvidence used Slack but had not been able to investigate its use further or review OpenEvidence's Slack communications. Then, nine days ago, in its opposition to the Doximity Defendants' motion to compel, OpenEvidence opposed production of Slack messages but did ***not*** deny that relevant Slack communications existed. Thus, OpenEvidence is making brand new claim about a source it says no longer exists ***after*** the data in question was deleted. It has not explained why it did not make that claim before.

# ARGUMENT

## I. OPENEVIDENCE IS KNOWINGLY VIOLATING A COURT ORDER FOR A REASON THE COURT ALREADY REJECTED

The Court's Order is unambiguous. It identifies the sources ("text messages and slack communications"), the custodians ("the eight custodians identified by Doximity"), and the period ("June 1, 2023 through February 6, 2026"), and the deadline ("within twenty-one (21) days"). OpenEvidence's violation is equally unambiguous. Its counsel wrote that OpenEvidence is "cognizant of the scope of the Court's Order," that counsel "advised OpenEvidence that it must comply," and that OpenEvidence "understands that by taking these positions, it is not complying with the Court's order." (Ex. A.) OpenEvidence has departed from the Order in at least three categories: refusing five of eight ordered custodians, all text messages, and nineteen of the ordered thirty-two months.

OpenEvidence's refusal is not confined to October 8. The Order requires OpenEvidence to produce, within twenty-one days, the responsive email and text messages of eight custodians covering thirty-two months. Meeting that deadline requires OpenEvidence to collect, review, and prepare those documents for production now. By its own account, it is not doing so, and it understands that its noncompliance is occurring now: It "understands that by taking these positions, it is ***not complying*** [present tense] with the Court's order." (*Id.* (emphasis added).)

"[A]ll orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). OpenEvidence cannot resurrect belated or rejected rationales to refuse ordered discovery. "The propriety of the discovery sought is not in issue at the time sanctions are being imposed under Rule 37(b). That question will have been decided when the court ordered the discovery." 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2289 (3d ed. 2026); *see also Benanav v. Healthy Paws Pet*

*Ins. LLC*, No. 2:20-CV-00421-LK, 2023 WL 8650155, at *8 (W.D. Wash. Dec. 14, 2023) ("Plaintiffs cannot unilaterally determine what information is relevant and decline to provide the information actually requested and ordered."); *Bourne v. Town of Madison*, No. 05-cv-365-JD, 2007 WL 951552, at *4 (D.N.H. Mar. 27, 2007) (explaining that a "refusal to comply with a court order provides an independent basis for a contempt finding").

OpenEvidence's stated reason for noncompliance is that Defendants engaged in "hacking" and that Doximity "is using the discovery process to obtain sensitive competitive information." (Ex. A.) That contention fails on its own terms. OpenEvidence abandoned its trade secret claims before any discovery. (Dkt. 38.) What remains is a claim about the medical questions Defendants' personnel typed into OpenEvidence's free and publicly available platform and the anodyne medical answers the platform returned, just as it was designed to do. OpenEvidence has produced those exchanges, and with few exceptions, Doximity's personnel asked ordinary clinical questions like "Can I take zofran in pregnancy?," "abilify dosing," and "Check for interactions between atorvastatin and grapefruit juice." The answers are public knowledge found in drug labeling and medical literature.

OpenEvidence's purported objection also collapses when measured against what it is withholding. It will comply with the Court's order and produce its CEO's emails, but not those of a salesperson (Mr. Lumley) who works for him. It will disclose the CEO's emails, but not his text messages; and his 2025 emails, but not his 2024 emails. Its withholding turns on custodian, message format, and date—not sensitivity.

The Court need not revisit the merits; it has already decided them. OpenEvidence made the same argument in opposing the motion to compel, in nearly the same words: the disputed requests were "a veiled attempt by Doximity to obtain the commercially sensitive information it

could not obtain through its prompt injection attacks." (Dkt. 128 at 1; *see id.* at 2, 16–19.) The Court's answer was that any such concern "can be addressed by designating such material as Attorneys' Eyes Only." (Dkt. 129.) The Stipulated Protective Order provides that designation and restricts Attorneys' Eyes Only material to outside counsel. (Dkt. 56 §§ 2.9, 7.3.)[5] As the Court has already recognized, that protection is sufficient. OpenEvidence recognizes that the Court has rejected its argument. (Dkt. 131 at 1–2.) Nonetheless, it raises the prospect that Doximity's counsel will ignore its ethical obligations and "communicate trade secrets from the documents to their clients." (*Id.* at 2.) In these circumstances, that is a baseless accusation, and the Court should reject it. OpenEvidence's unfounded belief that ***Doximity's counsel*** would violate a Court order in the future cannot justify ***its own willful violation*** of a Court order.

## II. THE COURT SHOULD DISMISS OPENEVIDENCE'S CLAIMS AND ENTER DEFAULT JUDGMENT ON DOXIMITY'S COUNTERCLAIMS

If a party "fails to obey an order to provide or permit discovery," the court "may issue further just orders," including orders that designated facts "be taken as established," that the disobedient party be prohibited "from supporting or opposing designated claims or defenses," that the action be dismissed "in whole or in part," that default judgment enter, and that the failure be treated as contempt. Fed. R. Civ. P. 37(b)(2)(A)(i – vii). "Instead of or in addition to" those orders, the court "must" award "the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"District courts have broad authority to issue sanctions in response to a party's failure to obey discovery orders." *Red Wolf Energy Trading, LLC v. Bia Capital Mgmt., LLC*, 626 F. Supp.

[5] The Stipulated Protective Order specifically provides enforcement mechanisms—including contempt—for any actual violation. (Dkt. 56 at 25.)

3d 478, 500 (D. Mass. 2022) (citing *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996)). Sanctions serve "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam); *see also AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015). The court considers the totality of the circumstances, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *AngioDynamics*, 780 F.3d at 435; *see also Vallejo v. Santini-Padilla*, 607 F.3d 1, 8 (1st Cir. 2010); *Lonardo v. City of Bos.*, No. 06-12033-RGS, 2008 WL 2130295, at *2 (Stearns, J.) (quoting *Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1, 5 (1st Cir. 2006)).

The First Circuit treats disobedience of a court order as a category of its own. "[A] party's disregard of a court order is a paradigmatic example of extreme misconduct." *Torres-Vargas v. Pereira*, 431 F.3d 389, 393 (1st Cir. 2005). "[D]isobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002); *accord Vallejo*, 607 F.3d at 8; *see also Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003). This Court has applied the same rule: "Disregard of judicial orders, in and of itself, can justify dismissal." *Lonardo*, 2008 WL 2130295, at *2. Neither bad faith nor the prior imposition of lesser sanctions is a prerequisite. *Young*, 330 F.3d at 82; *Damiani v. R.I. Hosp.*, 704 F.2d 12, 15 (1st Cir. 1983) ("There is nothing in the rule that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried."). The Rule itself "puts parties on notice" that a default judgment may

be entered against a party that disobeys discovery orders. *Red Wolf*, 626 F. Supp. 3d at 501 (citing *Robson*, 81 F.3d at 4).

The relevant factors compel terminating sanctions:

***Severity.*** OpenEvidence's refusal is willful and deliberate, and the subject of the Order is critical. The Order resolved the central ESI disputes in this case. OpenEvidence's refusal reaches all three: it cuts the custodian list by more than half, eliminates an entire ordered source, and deletes 19 out of 32 ordered months. That was its position ***before*** the Order issued; the Order therefore changed nothing about what OpenEvidence will do.

***Legitimacy of the excuse.*** There is none. The Court rejected OpenEvidence's confidentiality rationale. (*See supra* Part I.) And, as noted, that rationale has no apparent connection to the categories of documents it refuses to produce. Nor does OpenEvidence claim an inability to comply. OpenEvidence could not credibly claim burden: it told the Court in its opposition to the motion to compel that it is a mere "startup" (Dkt. 128 at 1), but its founder and chief executive owns nearly sixty percent of a company valued at twelve billion dollars in January 2026 and is himself worth an estimated $7.6 billion.[6] Collecting the custodial communications of five employees is not beyond its means.

***Repetition and deliberateness.*** It has now refused the same discovery after the Court ordered it. On text messages, OpenEvidence proposed to collect them, withdrew that proposal, resisted the motion, lost, and now again refuses to collect them. (Dkt. 126 at 6; Ex. A.) Deliberateness is established by OpenEvidence's own statements: counsel advised OpenEvidence that it must comply, it "understands" that it is not complying, and it accepts that

[6] Rashi Shrivastava, *AI Founder Daniel Nadler Is Twice As Rich After OpenEvidence Hits $12 Billion Valuation*, Forbes (Jan. 21, 2026).

“there will be consequences.” (Ex. A.) Its counsel have advised it that they "cannot and will not" defend OpenEvidence's noncompliance, let alone "argue that it is justified." (Dkt. 131 at 2.) This Court has entered default where a party broke a representation about compliance. *SEC v. Manterfield*, No. 07-10712-RGS, 2009 WL 935953, at *1 (D. Mass. Apr. 8, 2009) (Stearns, J.) (default entered based in part on defendant’s “failure to honor his representation to the court that he would cooperate with the deposition as noticed”). This is worse still: a written acknowledgment of refusal.

***Prejudice.*** The Order requires OpenEvidence to provide Defendants with the evidence they need to defend OpenEvidence’s claims and prove Doximity’s counterclaims. The custodians OpenEvidence will not produce include Nick Lumley and Jeff Eaton, both formerly of Doximity, who held OpenEvidence’s senior sales and commercial roles and (at minimum) delivered the statements Doximity’s counterclaims challenge to mutual customers; Dr. Travis Zack, the Chief Medical Officer, who is the source for what OpenEvidence knew about the accuracy and “hallucination” claims it advertised; and Eric Lehman and Jagath Jai Kumar, who registered on Pathway’s platform with National Provider Identifiers not associated with them, which is the conduct OpenEvidence sues Defendants for. (Dkt. 126 at 7–9; Dkt. 110 ¶¶ 18, 47–52.) The months OpenEvidence would cut, June 2023 through December 2024, include when the challenged statements began and when the Pathway registrations occurred. (Dkt. 126 at 8–9, 12.)

OpenEvidence’s refusal also threatens the Court’s schedule. The Order gave OpenEvidence until October 8 so that Defendants could use the documents in depositions. Defendants must notice depositions by October 27, 2026, and all fact discovery closes on November 10, 2026. (Dkt. 122.) OpenEvidence refuses to collect the documents for the witnesses Defendants intend to depose. The prejudice to Defendants and the Court is precisely

the harm identified in *Red Wolf*: a party that decides for itself which orders to follow "seriously injure[s] the court's ability to manage this case and others on its docket." 626 F. Supp. 3d at 501.

***Lesser sanctions.*** Lesser sanctions are neither warranted nor likely to produce compliance. OpenEvidence considered the "consequences" of refusal and accepted them. (Ex. A.) A party that has priced in a sanction will not change its behavior because of that sanction. The Court need not exhaust lesser sanctions before dismissing. *Damiani*, 704 F.2d at 15. "[A] court may impose a sanction of default without exhausting lesser sanctions if the relevant court orders are clear and the party has been properly warned of the risk of sanctions." *Red Wolf*, 626 F. Supp. 3d at 501 (citing *Torres-Vargas*, 431 F.3d at 393, and *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 918 (1st Cir. 1988)); *see also SEC v. Knox*, No. 18-12058-RGS, 2025 WL 330557, *2 (D. Mass. Jan. 29, 2025) (Stearns, J.), (imposing sanctions "up to and including establishing as admitted jurisdictional facts" on a party who had refused court-authorized jurisdictional discovery).

The sanction should reach both sides of the case. Rule 37(b)(2)(A) authorizes the Court to enter an order "dismissing the action or proceeding in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(v), (vi). The withheld discovery goes to OpenEvidence's claims and Doximity's counterclaims alike: the custodians OpenEvidence refuses to search delivered the statements the counterclaims challenge and engaged in the same conduct OpenEvidence sues Defendants for. (Dkt. 126 at 7–9; Dkt. 110 ¶¶ 18, 47–52.) OpenEvidence cannot prosecute its claims while withholding the evidence that would test them, and it cannot defend the counterclaims while withholding the evidence that would prove them.

Should the Court decline to dismiss, it should at a minimum hold OpenEvidence in civil contempt. Rule 37(b)(2)(A)(vii) authorizes an order "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Each element of civil contempt is established by OpenEvidence's own statements: it had notice of the Order, the Order is clear and unambiguous, OpenEvidence is able to comply, and it has said it will not. *See Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r*, 665 F.3d 25, 31 (1st Cir. 2012). The appropriate civil remedy is a coercive one that OpenEvidence can end by complying, such as "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994).

## III. THE COURT SHOULD AWARD THE DOXIMITY DEFENDANTS THEIR FEES AND EXPENSES FOR THE ENTIRE CASE

### A. Rule 37(b)(2)(C) Makes an Award of Expenses Mandatory

Rule 37(b)(2)(C) provides that the Court "must" award the expenses caused by a failure to obey unless the failure was substantially justified or an award would be unjust. The 1970 amendment to the rule "made the award mandatory, regardless of what other sanctions may be imposed." Wright & Miller § 2289. Courts in this District apply the rule as written. *Ins. Recovery Grp., Inc. v. Connolly*, 95 F. Supp. 3d 73, 78 (D. Mass. 2015) (Young, J.); *Red Wolf*, 626 F. Supp. 3d at 509. OpenEvidence cannot claim substantial justification for a refusal it concedes violates the Order. Rule 37(b)(2)(C) sets the floor, not the ceiling.

### B. The Court Should Shift All of the Doximity Defendants' Fees Under Its Inherent Authority

Federal courts possess inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process," including an "assessment of attorney's fees" against a party that has acted in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). A fee sanction imposed through civil

procedures must be compensatory: the wronged party recovers the fees it "would not have paid but for" the misconduct. *Goodyear*, 581 U.S. at 108–09 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). That standard does not require line-item accounting. The goal is "to do rough justice, not to achieve auditing perfection." *Id.* at 110 (quoting *Fox*, 563 U.S. at 838). And "[i]n exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* The Supreme Court identified three such cases: where, as in *Chambers*, a party's "entire course of conduct" throughout the litigation was part of a bad-faith scheme; where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior"; and where "a lawsuit, absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position," in which case "the court may grant all fees incurred from that moment on." *Id.* at 110–11 (quoting *Chambers*, 501 U.S. at 51).

This case fits the second category. OpenEvidence did not bring this action to adjudicate its claims; it brought it to publicize them. It alleged the theft of "crown jewel" trade secrets, promoted that accusation to the press and the parties' mutual customers, and abandoned it before any discovery. (Dkt. 1; Dkt. 38.) It proposed fraud claims, promoted them the same way, and withdrew them before the Court could rule. (Dkt. 111-1; Dkt. 123.) It demanded that Defendants preserve their Slack channels on pain of spoliation sanctions while its own Slack data for the entire relevant period, including after that letter was sent and eight months after it sued, was lost. (Dkt. 1-2 at 8–9; Ex. A.) And when the Court ordered it to produce the evidence that would test the remaining claims, it announced that it would not. A plaintiff that intends to litigate its claims does not refuse the discovery that would test them. Because OpenEvidence never intended to

submit this case to adjudication on the merits, all costs of defending it are attributable to OpenEvidence's bad faith.

The case fits the third category as well. The Order legally required OpenEvidence to disclose the communications of the custodians who delivered the statements Doximity's counterclaims challenge and engaged in the conduct OpenEvidence sues over. OpenEvidence chose to accept "consequences" rather than produce them. The Supreme Court has long treated a party's refusal to produce ordered evidence as "an admission of the want of merit in the asserted defense." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) (quoting *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350–51 (1909)). OpenEvidence has resisted this discovery since its responses to Defendants' First Set of Requests for Production came due on November 26, 2025. (Dkt. 126 at 2–4.) At a minimum, the fees Defendants have incurred since that date would not have been incurred had OpenEvidence complied with its obligations.

The Doximity Defendants request leave to submit an itemized statement of their fees and expenses within fourteen days of the Court's order.

## IV. <u>THE COURT SHOULD SHORTEN OPENEVIDENCE'S TIME TO RESPOND</u>

Defendants must notice depositions by October 27, 2026, and fact discovery closes on November 10, 2026. (Dkt. 122.) A fourteen-day response period would push any ruling toward those deadlines. OpenEvidence's position is already in writing; it does not need fourteen days to restate it. The Doximity Defendants therefore ask that its time to respond be shortened to five days.

## <u>CONCLUSION</u>

OpenEvidence filed this case, used it to publicize allegations it would not test, and has now announced that it will not follow the Court's Order compelling the discovery that would test

the claim that remains. For the foregoing reasons, the Doximity Defendants respectfully request that the Court enter an order:

1. Shortening OpenEvidence's time to respond to this motion to within five days (i.e., September 30, 2026);
2. Dismissing OpenEvidence's claims with prejudice under Rule 37(b)(2)(A)(v) and entering default judgment against OpenEvidence on Doximity's counterclaims under Rule 37(b)(2)(A)(vi);
3. In the alternative to paragraph 2, holding OpenEvidence in civil contempt of the Order under Rule 37(b)(2)(A)(vii) and imposing coercive sanctions, including a daily fine, until it complies;
4. Ordering OpenEvidence to pay the reasonable attorneys' fees and expenses the Doximity Defendants have incurred in this action since its inception, pursuant to Rule 37(b)(2)(C) and the Court's inherent authority, in an amount to be determined on the Doximity Defendants' submission within fourteen days;
5. Tolling Defendants' time to take discovery and depositions of OpenEvidence's witnesses to account for the delay caused by noncompliance; and
6. Granting such other and further relief as the Court deems just and proper.

Dated: September 25, 2026
Boston, Massachusetts

Respectfully submitted,

/s/ *James R. Carroll*
James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*