UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OPENEVIDENCE INC., Plaintiff, v. | : | Civil Action No. 25-11802-RGS |
| DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, ERIC YAMGA, KHUDHUR MOHAMMED, and VINCE ROY, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR (1) AN ACCOUNTING AND EXPEDITED DISCOVERY CONCERNING THE DELETION OF OPENEVIDENCE INC.'S SLACK AND MESSAGING APPLICATION DATA AND (2) TO SHORTEN TIME TO RESPOND**

James R. Carroll
William K. Wray Jr.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*

Dated: October 5, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

A. OpenEvidence Demanded That Every Defendant Preserve Slack And Threatened Case-Terminating Sanctions ........ 2

B. OpenEvidence Identified Slack As A Source Of Relevant Evidence, Then Resisted Collecting It ........ 2

C. After the Court Ordered Slack Produced, OpenEvidence Disclosed That Its Slack Data Are Gone ........ 3

D. OpenEvidence Overrode Slack's Default Retention And Left Its Deletion Settings Running After Its Litigation Hold........ 4

ARGUMENT ........ 6

I. THE APPROPRIATE SANCTION DEPENDS ON INFORMATION AVAILABLE TO OPENEVIDENCE ........ 6

II. OPENEVIDENCE'S ADMITTED LOSS WARRANTS TARGETED DISCOVERY INTO ITS CIRCUMSTANCES ........ 8

III. OPENEVIDENCE'S OCTOBER 2 EMAIL CONFIRMS THE LOSS BUT LEAVES THE REMEDIAL QUESTIONS UNANSWERED........ 9

IV. THE DISCOVERY IS TAILORED TO THE RULE 37(E) INQUIRY AND FITS WITHIN THE COURT'S SCHEDULE ........ 11

A. What Was on Slack and the Messaging Application and How Much Was Lost ........ 11

B. How, When, and by Whom the Deletion Occurred ........ 12

C. Whether OpenEvidence Took Reasonable Steps ........ 13

D. Whether Anything Can Be Replaced: Slack's Records and Other Sources ........ 13

E. The Schedule Is Calculated to Fit Within the Court's Deadlines........ 14

V. DEFENDANTS RESERVE THEIR REQUEST FOR SANCTIONS........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Agne v. Papa John's International, Inc.*,
2012 WL 12882903 (W.D. Wash. Feb. 6, 2012) ............ 13

*Al Otro Lado, Inc. v. Wolf*,
2020 WL 4432026 (S.D. Cal. July 31, 2020) ............ 8

*Bloom v. Campbell*,
2026 WL 951334 (D. Mass. Apr. 8, 2026) ............ 8

*Cress v. Nexo Capital Inc.*,
2026 WL 2395238 (N.D. Cal. Aug. 17, 2026) ............ 9, 12

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-01495-JHC, Dkt. 678 (W.D. Wash. Apr. 29, 2026) ............ 7

*Goodman v. Praxair Services, Inc.*,
632 F. Supp. 2d 494 (D. Md. 2009) ............ 8

*Greenberg v. Amazon.com, Inc.*,
2025 WL 2639221 (W.D. Wash. Sept. 12, 2025) ............ 8, 13

*In re New England Compounding Pharmacy, Inc. Products Liability Litigation*,
2016 WL 11212334 (D. Mass. Jan. 26, 2016) ............ 13

*In re TelexFree Securities Litigation*,
2025 WL 2371354 (D. Mass. Aug. 15, 2025) ............ 8

*Maquet Cardiovascular LLC v. Abiomed, Inc.*,
2026 WL 381370 (D. Mass. Feb. 11, 2026) ............ 8, 13

*NuVasive, Inc. v. Day*,
2021 WL 9059745 (D. Mass. Aug. 23, 2021) ............ 2, 9

*OpenEvidence Inc. v. Pathway Medical, Inc.*,
No. 1:25-cv-10471 (D. Mass.) ............ 2

*Pable v. Chicago Transit Authority*,
No. 19-cv-7868, Dkt. 85 (N.D. Ill. Sept. 13, 2021) ............ 13

*United States ex rel. Fischer v. Community Health Network, Inc.*,
No. 1:14-cv-01215, Dkt. 624 (S.D. Ind. July 26, 2023) ............ 13, 14

**RULES** **PAGE(S)**

Fed. R. Civ. P. 37 ............ *passim*

**OTHER AUTHORITIES** **PAGE(S)**

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ........................................... 7

## PRELIMINARY STATEMENT

Before it filed this case, OpenEvidence warned every Defendant in writing to preserve its Slack messages on pain of sanctions. OpenEvidence did not preserve its own. Its Slack data are gone in their entirety: every message, for every custodian, for the full period the Court ordered produced, including more than seven months after OpenEvidence filed suit. OpenEvidence now acknowledges how that happened. Its workspace settings deleted public-channel messages after 75 days and private-channel and direct messages after 30; nothing was collected or backed up; and every message sent after OpenEvidence issued its own litigation hold in June 2025 was deleted after that hold issued. Those settings were not Slack's default, which on paid plans is indefinite retention. Someone at OpenEvidence, at some point replaced Slack's default with 30- and 75-day deletion. OpenEvidence says it cannot tell the Court when the settings were adopted (i.e., before or after its litigation hold) or by whom. (Ex. K) And it recently disclosed a second loss: custodians' work messages on an unidentified messaging application "were not retained." (*Id.*)[1]

The record already supports sanctions, but narrow and expedited discovery will permit the Court to tailor the appropriate remedy. Defendants' requested discovery aims to uncover what the lost data comprised, how and when it was lost, and whether any of it can be replaced. Defendants also seek discovery into the circumstances of the deletion and any underlying intent: a sworn declaration explaining the deletion, five interrogatories, eight document requests, and one four-hour Rule 30(b)(6) deposition, on a schedule that fits within the existing deadlines.

---

[1] Citations in the form "Ex. __" refer to the exhibits to the Declaration of William K. Wray Jr., submitted herewith ("Wray Decl."). The "Doximity Defendants" are Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc. ("Pathway").

## STATEMENT OF FACTS

### A. OpenEvidence Demanded That Every Defendant Preserve Slack And Threatened Case-Terminating Sanctions

On December 19, 2024, OpenEvidence's counsel at Goodwin Procter wrote to Pathway's chief executive that Pathway was "under a duty to preserve all potentially relevant evidence, including all emails, messages (including, but not limited to, all instant messages, messages and channels utilized via Slack . . . )." (Ex. A at 2.) The letter named six Pathway personnel, each of whom OpenEvidence later sued, and warned that a failure to preserve "will constitute sanctionable spoliation under Federal Rule of Civil Procedure 37(e)," entitling OpenEvidence to "an adverse inference, an award of attorneys' fees, and potentially case-termination sanctions." (*Id.* at 2-3 (citing *NuVasive, Inc. v. Day*, 2021 WL 9059745, at *8-9 (D. Mass. Aug. 23, 2021)).) OpenEvidence sued Pathway on February 26, 2025. *OpenEvidence Inc. v. Pathway Med., Inc.*, No. 1:25-cv-10471 (D. Mass.), Dkt. 1.

On June 3, 2025, Stephen A. Broome of Quinn Emanuel, OpenEvidence's counsel here, sent Doximity's General Counsel, with copies to Mr. Balachandran and Mr. Konoske, "a formal legal preservation demand" covering "emails, Slack channels, text messages (both professional and personal accounts)." (Ex. B at 8.) "[F]ailure to comply with this preservation demand will be considered spoliation of evidence and will be met with appropriate legal action." (*Id.*) OpenEvidence filed this action seventeen days later. (Dkt. 1.)

### B. OpenEvidence Identified Slack As A Source Of Relevant Evidence, Then Resisted Collecting It

On November 14, 2025, the Court entered the parties' Stipulated ESI Order. (Dkt. 57.) It requires each party to take "reasonable and proportionate steps to preserve relevant and discoverable ESI," to give notice within five days of learning of "relevant materials that have been deleted and cannot be recovered," and to "promptly advise" the other side of any

inaccessible data source, "including identifying the reason such data is inaccessible." (*Id.* ¶¶ 6, 6(c)(i), 7.) It also requires each party to identify "the custodial and non-custodial data sources, electronic systems, and storage locations likely to contain documents or ESI responsive to document requests." (*Id.* ¶ 9(b).) On December 19, 2025, OpenEvidence served an ESI proposal for Defendants that recognized that Slack was a relevant data source. (Dkt. 133 at 7; Ex. J.)

The Doximity Defendants collected Slack for each of their twelve custodians. (Dkt. 126 at 1; Dkt. 128 at 2.) OpenEvidence did not. At a June 18, 2026 conference its counsel acknowledged that OpenEvidence uses Slack to communicate, and OpenEvidence then stated that it "does not agree to collect from Slack." (Dkt. 126 at 3-4; Wray Decl. ¶ 3.) On September 15, OpenEvidence opposed the motion to compel on the ground that "the relevant documents here . . . would have been discussed over email, which OpenEvidence has agreed to collect." (Dkt. 128 at 13.) OpenEvidence did not tell the Court that its Slack data for the period no longer existed. On September 17, the Court ordered OpenEvidence to produce "responsive text messages and slack communications from any of the eight custodians identified by Doximity for the period of June 1, 2023 through February 6, 2026." (Dkt. 129.)

### C. After the Court Ordered Slack Produced, <u>OpenEvidence Disclosed That Its Slack Data Are Gone</u>

Six days later, OpenEvidence's counsel wrote: "On Friday, September 18, our forensic vendor informed us that OpenEvidence's Slack data for June 1, 2023 through February 6, 2026 cannot be recovered." (Ex. C.) OpenEvidence "does not possess slack messages from that time period," though it "does not believe it had any relevant conversations on Slack." (*Id.*; *see also* Dkt. 131 at 2.) The deletion covers every Slack message of the eight custodians for about 32 months. More than thirteen months of that period postdate OpenEvidence's December 19, 2024

preservation demand; more than seven months postdate the filing of this action; and every message after November 14, 2025 was created while the ESI Order was in force.

### D. OpenEvidence Overrode Slack's Default Retention And Deleted Documents Dated After the Litigation Hold

Slack does not discard a paying customer's data on its own. On Slack's paid plans, "data is kept for the lifetime of your workspace by default." (Ex. F at 2.) Messages leave a workspace only when an owner selects a shorter retention period, when users or administrators delete messages or channels, or when the Primary Owner deletes the workspace. (*Id.* at 2-3, 11, 16.) Even on the free plan, data "older than one year may be deleted on a rolling basis." (*Id.* at 9.) Once data are deleted, Slack retains them in backups for "up to 14 days, but often fewer," after which it "cannot retrieve the data for any purpose." (*Id.* at 23.) Separately from message content, Slack maintains usage records, including member and channel analytics reaching back thirteen months, and billing records. (*Id.* at 27-34, 37.) Because OpenEvidence's workspace is on a paid plan, its messages would have been retained indefinitely unless someone at OpenEvidence chose a shorter period. Someone did. (Ex. K.)

On September 25, the Doximity Defendants declined consent under Paragraph 6(c)(i) of the ESI Order and asked OpenEvidence to confirm by 5:00 p.m. on September 29 that it was preserving every remnant of the Slack data and every related source. (Ex. D.) They also asked OpenEvidence to identify each workspace, plan, and retention setting; how and when the data became unrecoverable; the name of the vendor and its work on this issue; the parameters of any surviving Slack data; and facts relating to its litigation hold. (*Id.*) OpenEvidence did not respond by the deadline. (Wray Decl. ¶ 3.) At the parties' September 29 conference, its counsel said only that the data "are gone" and that OpenEvidence "fully expect[s] a sanctions motion." (Id. ¶ 4.) The Doximity Defendants renewed their requests in writing on September 30. (Ex. E.)

Late on October 2, OpenEvidence responded. (Ex. K.) Its email confirms that the deletion was the product of OpenEvidence's own settings. The workspace is on Slack's Enterprise Select plan, and "[u]nder the workspace's retention settings, messages in public channels are automatically deleted after 75 days, and messages in private channels, as well as direct messages, are automatically deleted after 30 days." (*Id.*) "Slack messages from June 1, 2023, through February 6, 2026 were deleted automatically pursuant to these retention settings." (*Id.*) There is "no collected, imaged, or partially recovered Slack data from the Relevant Period to preserve," and OpenEvidence "is not aware of any backup media containing Slack data." (*Id.*) OpenEvidence "issued a written litigation hold on or around June 9, 2025" (*id.*), eleven days before it filed this action. Because the settings delete each message 30 or 75 days after it is sent, every Slack message the custodians sent in the ensuing eight months was deleted after that hold issued.

OpenEvidence states that it cannot determine when the settings were adopted or by whom "[b]ecause the workspace's audit logs retain only 31 days of history." (*Id.*) It does not say whether it asked its workspace owners, the only users Slack permits to set a retention policy (Ex. F at 2-3), or Slack itself. Nor did it investigate until the Court ordered production: "Following the Court's September 17, 2026 order, counsel investigated that day whether Slack data from the Relevant Period could be collected or recovered, and confirmed on September 18 that it could not." (*Id.*)

OpenEvidence also disclosed a second loss: "In the process of preparing our production pursuant to the Court's Discovery Order, we learned that some implicated custodians may have used a messaging application to communicate regarding their work, and such messages from the Relevant Period were not retained." (*Id.*) OpenEvidence did not name the application (the

"Messaging Application") or the custodians, explain why the messages were not retained, or say when it learned of the loss; its "investigation is ongoing." (*Id.*) Three days earlier, its counsel had confirmed that the eight custodians' text messages, which the parties have long agreed include WhatsApp, Signal, Telegram, and similar applications, had been preserved, were being searched, and would be produced. (Ex. E at 1.) OpenEvidence likewise did not answer Defendants' request that it identify, for each custodian, the messaging platforms used for work and any auto-delete settings. (*Id.* at 2; Ex. K.) It provided the October 2 information "without waiving its objections," asserted that Defendants seek "substantially more information than the ESI Order contemplates," and agreed to none of the requested discovery. (Ex. K.)

## ARGUMENT

### I. THE APPROPRIATE SANCTION DEPENDS ON INFORMATION AVAILABLE TO OPENEVIDENCE

Two independent provisions of Rule 37 govern OpenEvidence's deletion of its Slack data. First, Rule 37(b)(2)(A) authorizes sanctions for failure to obey a discovery order, and OpenEvidence has failed to obey two. The ESI Order required it to take "reasonable and proportionate steps to preserve relevant and discoverable ESI" (Dkt. 57 ¶ 6), yet every Slack message sent after November 14, 2025 was deleted while that order was in force. The September 17 Order requires OpenEvidence to produce the eight custodians' Slack communications for the entire period (Dkt. 129), and OpenEvidence has told the Court it cannot comply. (Dkt. 131 at 2; Ex. C.) Fed. R. Civ. P. 37(b)(2)(A). Second, Rule 37(e) applies when electronically stored information "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). By OpenEvidence's own demand letters, it anticipated this litigation no later than December 2024. (Exs. A, B.)

Rule 37(e) then prescribes a graduated set of remedies. On a finding of prejudice, the Court may order measures "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the party "acted with the intent to deprive another party of the information's use in the litigation," the Court may presume the information was unfavorable, instruct the jury that it may or must so presume, or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

Choosing among those remedies is a fact-bound inquiry. The "initial focus should be on whether the lost information can be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Where intent is shown, "[t]he remedy should fit the wrong," and the severe measures should not be used where "the information lost was relatively unimportant or lesser measures . . . would be sufficient." *Id.* To calibrate the remedy, then, the Court must know what the data were, how much was lost, when and how they were lost, by whose act, and whether any of it survives elsewhere. Those facts lie with OpenEvidence.

*FTC v. Amazon.com, Inc.* provides a model. There, the court found the threshold elements of Rule 37(e) satisfied, but because "it is unclear what comprises the universe of spoliated evidence," it could not yet determine what measures would cure the prejudice or whether the destruction was willful. No. 2:23-cv-01495-JHC, Dkt. 678 at 16-18 (W.D. Wash. Apr. 29, 2026). It therefore deferred sanctions and granted "leave to conduct additional discovery into the extent of Amazon's spoliation [and] to renew its request for sanctions." *Id.* at 16-17. The Doximity Defendants seek the same relief here.

## II. OPENEVIDENCE'S ADMITTED LOSS WARRANTS TARGETED DISCOVERY INTO ITS CIRCUMSTANCES

Where relevant ESI that should have been preserved has been lost, the appropriate sanction turns on the prejudice to the moving party and the intent of the party that lot it. Fed. R. Civ. P. 37(e)(1)-(2). Every fact bearing on those questions is under OpenEvidence's control: how its personnel used Slack and the Messaging Application, what the workspace contained, who controlled its retention settings, when and by whose act the data were deleted, and what OpenEvidence did to preserve its own data after demanding that every Defendant preserve theirs.

Courts in this District regularly require a party that has lost data to account for the loss under oath before sanctions are decided. *Bloom v. Campbell*, 2026 WL 951334, at *6 (D. Mass. Apr. 8, 2026) (Boal, M.J.) (ordering the party to file a declaration "under the penalties of perjury, providing specifics regarding the loss"); *In re TelexFree Sec. Litig.*, 2025 WL 2371354, at *3 (D. Mass. Aug. 15, 2025) (Rule 30(b)(6) deposition on "the circumstances of the missing information"); *Maquet Cardiovascular LLC v. Abiomed, Inc.*, 2026 WL 381370, at *9 (D. Mass. Feb. 11, 2026) (ordering production of the litigation hold notice on a "preliminary showing that spoliation has likely occurred"); *see also Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 498-99 (D. Md. 2009) (requiring additions submissions before ruling on a spoliation motion). And where "[t]here is no dispute that evidence has been lost," the requesting may take "the 'initial step' of discovering the content of the litigation hold notice" in order to "investigate and possibly prove spoliation." *Greenberg v. Amazon.com, Inc.,* 2025 WL 2639221, at *4 (W.D. Wash. Sept. 12, 2025) (quoting *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, at *2 (S.D. Cal. July 31, 2020)). Here, the loss is not disputed; OpenEvidence has admitted it.

## III. OPENEVIDENCE'S OCTOBER 2 EMAIL CONFIRMS THE LOSS BUT LEAVES THE REMEDIAL QUESTIONS UNANSWERED

OpenEvidence's email establishes the threshold elements of Rule 37(e). The Slack data should have been preserved; they were lost because OpenEvidence's own settings deleted them; and because nothing was collected, imaged, or backed up, they "cannot be restored or replaced" from OpenEvidence. Fed. R. Civ. P. 37(e). What the email does not supply are the facts on which the choice of remedy depends. It leaves at least five questions open.

First, OpenEvidence does not say when the retention settings were adopted, or by whom. Short retention is not Slack's default: on paid plans, Slack keeps messages "for the lifetime of your workspace by default," and only a workspace owner can elect to delete them sooner. (Ex. F at 2-3.) Someone with authority over OpenEvidence's workspace made that election. If it was made after December 19, 2024, when OpenEvidence demanded that Pathway preserve its Slack channels (Ex. A at 2), or after OpenEvidence issued its own hold in June 2025, the timing bears directly on intent. See *Cress*, 2026 WL 2395238, at *16. If it was made earlier, OpenEvidence was still obliged to suspend the settings once its duty to preserve arose. *See NuVasive*, 2021 WL 9059745, at *7 (the "obligation to preserve evidence was not somehow wiped out because he routinely had been destroying text messages prior to litigation"). Either way, the answer lies with OpenEvidence's owners, administrators, and records, which is why the proposed order requires OpenEvidence to identify them and to describe what it did to find out. (Proposed Order ¶ 2; Interrogatory No. 42.)

Second, OpenEvidence attributes its lack of knowledge to audit logs that retain only 31 days of history. (Ex. K.) Slack's published documentation, however, states that, "[a]s of April 30, 2026, audit logs are retained for a maximum of two years for all Enterprise customers." (Ex. F at 38.) OpenEvidence does not reconcile its statement with Slack's. Whatever the logs' retention

period, those that remain expire daily, so the proposed order requires OpenEvidence to export and preserve them now. (Proposed Order ¶ 6.) Nor does OpenEvidence say whether it asked Slack, which maintains billing, plan, and account records separately from message content (Ex. F at 27-34, 37), when the settings changed.

Third, OpenEvidence states only that it "is not aware of any backup media containing Slack data." (Ex. K.) It does not describe the steps it took to reach that conclusion, whether any export was ever run, or whether any external tool connected to its Slack channels may have stored Slack content. Document Request No. 46 is directed to precisely those questions.

Fourth, OpenEvidence's counsel appears not to have looked for its Slack data until the Court ordered it produced. Counsel "investigated" on September 17 and "confirmed" the loss the next day. (Ex. K.) By then, OpenEvidence had stipulated to an ESI Order requiring it to identify its data sources and to report lost data within five days (Dkt. 57 ¶¶ 6(c)(i), 9(b)), had acknowledged that it uses Slack (Wray Decl. ¶ 3), had declined to collect it (Dkt. 126 at 3-4), and had told the Court that relevant communications would be found in email (Dkt. 128 at 13), all without confirming whether any Slack data from the period existed. A party that issues a hold but leaves its own auto-deletion in place, and never verifies that the data survive, has not taken "reasonable steps to preserve" them. Fed. R. Civ. P. 37(e). Whether the June 2025 hold covered Slack and whether anyone acted to suspend the settings are therefore squarely at issue. (Interrogatory Nos. 43-44; Document Request No. 47.)

Fifth, the Messaging Application disclosure enlarges the scope of the lost ESI. OpenEvidence now admits that work messages of "some implicated custodians" on an unnamed application "were not retained," three days after its counsel confirmed that the custodians' text messages had been preserved. (Ex. K; Ex. E at 1.) It has not identified the application, the

custodians, the settings, or when it learned of the loss. The sworn declaration, the written discovery, and the deposition therefore cover that loss as well. (Proposed Order ¶ 2; Exs. G-I.)

In short, OpenEvidence's email confirms that its Slack data were destroyed while it was under a duty to preserve them, but leaves unanswered each question that bears on the remedy. OpenEvidence provided even that information "without waiving its objections," and it has not agreed to any of the requested discovery. (Ex. K; Wray Decl. ¶ 9.). Court-ordered discovery is therefore necessary.

## IV. THE DISCOVERY IS TAILORED TO THE RULE 37(E) INQUIRY AND FITS WITHIN THE COURT'S SCHEDULE

Each element of the requested discovery maps onto a question the Court must answer under Rule 37: what was on Slack and the Messaging Application and how much was lost; how, when, and by whom the messages were deleted; whether OpenEvidence took reasonable steps to preserve them; and whether anything can be replaced. Each request reaches both platforms because the Messaging Application may prove as significant as Slack, and OpenEvidence has yet to identify it.

### A. What Was on Slack and the Messaging Application and How Much Was Lost

Slack maintains billing, member, and analytics records separately from message content. (Ex. F at 27-34.) The records that Slack will export to OpenEvidence on those topics will show how many people used Slack in each month of the deleted period and, to the extent they survive, how many messages were sent, by whom, and in which channels. Document Request No. 45 seeks those records, including daily message counts for the deleted period and the months since; and Document Request No. 43 seeks a list of every Slack channel and every Messaging Application group. Because some records reach back only thirteen months, the proposed order also requires OpenEvidence to export and preserve them now. Message counts since February

2026 supply a baseline: if the custodians who remained employed after that date use Slack heavily today, it is reasonable to infer that they used it heavily during the deleted period. Comparable records for the Messaging Application, together with the custodians' devices and backups (Document Request No. 49), will show the extent of the lost there.

The same discovery will test OpenEvidence's counsel's assertion that OpenEvidence "does not believe it had any relevant conversations on Slack." (Ex. C.) OpenEvidence's channel directory shows what its workspace was organized to discuss. Its handbooks, training materials, and Slack policies show what employees were told to put on Slack and what to reserve for email. Its witnesses can establish whether the custodians used Slack or the Messaging Application to discuss Doximity, Pathway, this case, or matters relevant to the parties' allegations. Interrogatory No. 41, Document Request Nos. 42-44 and 48, and the first two deposition topics address those questions. Document Request No. 48 seeks every document in which a custodian mentioned Slack or the Messaging Application, which will show how the custodians used each, and Interrogatory No. 45 requires OpenEvidence to state the facts, if any, supporting its assertion that the lost messages were irrelevant. That is how the court in *Cress v. Nexo Capital Inc.* measured a Slack loss without the messages themselves: from the workspace's channel list, from emails reporting new messages in named channels, and from testimony that Slack was "an important part of the internal communication system." 2026 WL 2395238, at *3, *5 (N.D. Cal. Aug. 17, 2026). The court then found intent from retention settings whose timing "parallels important case events." *Id.* at *16.

### B. <u>How, When, and by Whom the Deletion Occurred</u>

The Doximity Defendants request a sworn declaration from an OpenEvidence officer, served within three days of the Court's order, stating how, when, and by whose action or setting the Slack data were deleted, and how and when the Messaging Application messages were lost.

The discovery is designed to show who set the retention settings and when. Interrogatory No. 42 and Document Request No. 46 cover the retention settings and each attempt to collect or recover the data, and a four-hour Rule 30(b)(6) deposition on the topics at Exhibit I will follow the written discovery. Document Request No. 46 also reaches the forensic vendor's instructions and records. Vendor discovery is appropriate where the vendor is "in a unique position to describe" what happened, provided it is limited to the instructions the vendor received and the records it generated. *Pable v. Chi. Transit Auth.*, No. 19-cv-7868, Dkt. 85 at 5-6 (N.D. Ill. Sept. 13, 2021).

### C. Whether OpenEvidence Took Reasonable Steps

Whether OpenEvidence issued a hold, when, to whom, and whether it covered Slack and the Messaging Application bears directly on intent and on whether OpenEvidence "failed to take reasonable steps to preserve" the data. Fed. R. Civ. P. 37(e). The basic facts of a hold are not privileged, and Interrogatory No. 43 asks what OpenEvidence did, and who did it, to implement its hold. *See United States ex rel. Fischer v. Cmty. Health Network, Inc.*, No. 1:14-cv-01215, Dkt. 624 at 9 (S.D. Ind. July 26, 2023) (the "who, what, and when" of litigation holds is not privileged, and a party "likely could not" claim otherwise). The notices themselves are discoverable "where there is reason for concern that evidence has been lost." *Greenberg*, 2025 WL 2639221, at *4 (quoting *Agne v. Papa John's Int'l, Inc.*, 2012 WL 12882903, at *3 (W.D. Wash. Feb. 6, 2012)); *see Maquet*, 2026 WL 381370, at *9 ("the prevailing view . . . is that when spoliation occurs the letters are discoverable" (quoting *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 2016 WL 11212334, at *1 (D. Mass. Jan. 26, 2016))). Here, there is more than reason for concern; the loss is admitted.

### D. Whether Anything Can Be Replaced: Slack's Records and Other Sources

Some Slack content may survive outside Slack. Document Request No. 44 seeks Slack notification emails, links, screenshots, and messages in Slack Connect channels shared with

other companies, and the Rule 30(b)(6) deposition will cover any other source. The proposed order also requires OpenEvidence to continue preserving the custodians' devices. Messaging Application messages may likewise survive on those devices, in device and cloud backups, and in the accounts of the people the custodians messaged. Document Request No. 49 and the deposition reach those sources.

Doximity has already served the 34 interrogatories and 34 requests for production permitted by Dkts. 37 and 124. The discovery in the proposed order should not count against those limits. It concerns OpenEvidence's compliance with its own preservation obligations, and the Doximity Defendants learned of the deletion only after propounding their discovery. *See Fischer*, Dkt. 624 at 4 (quoting the court's earlier order that "any depositions conducted to explore a party's compliance with their discovery obligations do not count toward the number of depositions a party may conduct as established by Rule or Court order").

### E. <u>The Schedule Is Calculated to Fit Within the Court's Deadlines</u>

The proposed schedule ensures that this discovery, and the sanctions motion that follows it, fit within the Court's existing deadlines. Fact discovery closes on November 10, 2026, and the Court has stated that, "[g]iven the age of the case and the parties' previous requests for extensions, the court is not inclined to any further delay of these deadlines." (Dkt. 122.) The schedule below (which assumes, for purposes of illustration, the date that the Court will resolve this Motion) respects that directive.

| **Event** | **Time** | **Date** |
|---|---|---|
| Motion filed | - | Mon., Oct. 5, 2026 |
| OpenEvidence's response to this motion | Two business days after filing (¶ 1) | Wed., Oct. 7 |
| Court's order [presumed] | - | Thu., Oct. 8 |
| Sworn declaration | 3 days (¶ 2) | Tue., Oct. 13 |
| Interrogatory answers and documents | 4 days (¶ 3) | Tue., Oct. 13 |

| Event | Time | Date |
|---|---|---|
| Rule 30(b)(6) deposition | 7 days (¶ 4) | Thu., Oct. 15 |
| Motion for sanctions | 7 days after deposition | Thu., Oct. 22 |
| OpenEvidence's opposition | 7 days after the motion | Thu., Oct. 29 |
| Close of fact discovery (Dkt. 122) | - | Tue., Nov. 10, 2026 |

## V. DEFENDANTS RESERVE THEIR REQUEST FOR SANCTIONS

Defendants intend to move for sanctions promptly following the deposition, likely within seven days after the deposition. The existing record already supports sanctions under Rule 37(e)(1) and an award of fees; the requested discovery will allow the Court to determine the full and appropriate measure of relief. The Defendants reserve all requests for sanctions, fees, and expenses, including the fees incurred in bringing this motion.

## CONCLUSION

The Court should shorten OpenEvidence's time to respond to two business days, grant the motion, and enter the proposed order.

Dated: October 5, 2026
Boston, Massachusetts

Respectfully submitted,

/s/ *James R. Carroll*
James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*

MORRISON & FOERSTER LLP

*/s/ Carolyn M. Homer*
MORRISON & FOERSTER LLP
Nathaniel R. Mendell (BBO No. 645283)
Michael A. Fine (BBO No. 713088)
200 Clarendon Street
Boston, MA 02116
Tel: (617) 648-4700
Email: nmendell@mofo.com
mfine@mofo.com

Daniel P. Muino (pro hac vice)
Carolyn M. Homer (pro hac vice)
Kathryn C. Thornton (pro hac vice)
2100 L St., NW, Suite 900
Washington, D.C. 20037
Tel: (202) 887-1500
Fax: (202) 637-2201
Email: dmuino@mofo.com
cmhomer@mofo.com
kthornton@mofo.com

*Counsel for Defendants Louis Mullie; Jonathan Hershon St-Jean; Hovhannes Karapetyan; Khudhur Mohammed; and Vince Roy*