UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OPENEVIDENCE INC., | : | |
| Plaintiff, | : | Civil Action |
| v. | | No. 25-11802-RGS |
| | : | |
| DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, KHUDHUR MOHAMMED, and VINCE ROY, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, AND PATHWAY MEDICAL, INC.'S RENEWED MOTION TO COMPEL OPENEVIDENCE TO APPLY ADDITIONAL SEARCH TERMS**

James R. Carroll
William K. Wray Jr.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*

Dated: October 7, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 2

ARGUMENT ..... 4

I. RECURRING DEFICIENCIES IN OPENEVIDENCE'S POSITIONS ..... 4

A. OpenEvidence's Limiter Renders Strings Superfluous ..... 4

B. OpenEvidence's Hit Counts Are Nonresponsive ..... 5

C. OpenEvidence's "Hacking" Objection Is Improper ..... 6

II. EACH MODIFIED STRING DEFENDANTS SEEK IS APPROPRIATE ..... 6

String No. 2: "Pathway" ..... 6

String No. 3: Individual Names (Proximity Format) ..... 7

String No. 6: Security / Access Barriers ..... 8

String No. 7: Public vs. Private Platform ..... 9

String No. 8: Authorization / Audit / Investigation of Users ..... 9

String No. 9: Terms of Use ..... 10

String No. 10: Competitive Benchmarking ..... 11

String No. 11: Investor Promotions ..... 11

String No. 12: Promotion Platforms and Aliases ..... 12

Strings No. 13-16: Alias Proximity Terms ..... 12

String No. 18: Verification / Physician Access ..... 13

String No. 19: Hallucination / USMLE / Accuracy ..... 14

String No. 20: Ziegler Hallucination Statements ..... 14

String No. 21: Hallucination / Confidence / Perfection ..... 15

String No. 22: Sequoia Hallucination Claims ..... 15

String No. 23: #1 App for Doctors ..... 16

String No. 24: McDonalds / Stock Prices ........ 16
String No. 25: HIPAA / Privacy / Compliance ........ 17
String No. 26: Data Monetization ........ 18
String No. 27: Sale of NPI-Identified Information ........ 18
String No. 28: Consulting / Advisory Agreements ........ 19
String No. 29: Customer Communications ........ 19
String No. 33: "Loser" / "AI Race" ........ 19
String No. 34: Medical Journals / Content Partnerships ........ 20
CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Bonner v. U.S. Department of State*,
928 F.2d 1148 (D.C. Cir. 1991) ... 17

*Branson v. Alliance Coal, LLC*,
No. 419CV00155JHMHBB, 2022 WL 2717625 (W.D. Ky. July 13, 2022) ... 13

*Burnett v. Ford Motor Co.*,
No. 13-cv-14207, 2015 WL 4137847 (S.D. W. Va. July 8, 2015) ... 17

*Cook v. Lynn & William, Inc.*,
344 F.R.D. 149 (D. Mass. 2023) ... 8

*HealthEdge Software, Inc. v. Sharp Health Plan*,
No. 19-CV-11020-ADB, 2021 WL 1821358 (D. Mass. May 6, 2021) ... 4, 17

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ... 8

*In re Outpatient Medical Center Employee Antitrust Litigation*,
No. 21 C 305, 2023 WL 4181198 (N.D. Ill. June 26, 2023) ... 5, 6

*Katz v. Shell Energy North America (US), LP*,
566 F. Supp. 3d 104 (D. Mass. 2021) ... 4

*MacDonald v. Hasbro Managerial Services, LLC*,
No. 1:25-CV-00096-MSM-AEM, 2026 WL 1759175 (D.R.I. June 18, 2026) ... 6

*Todd Crowder, et al., v. LinkedIn Corporation*,
No. 22-CV-00237-HSG (LB), 2026 WL 2671413 (N.D. Cal. Sept. 10, 2026) ... 5, 10

**RULES** **PAGE(S)**

Fed. R. Civ. P. 26(b)(1) ... 4

Fed. R. Civ. P. 37 ... 4, 8

# INTRODUCTION

The Doximity Defendants respectfully renew their motion to compel OpenEvidence to apply additional search terms to the eight court-ordered custodians' electronically stored information ("ESI") for the period of June 1, 2023 through February 6, 2026. This motion is filed pursuant to the Court's September 17, 2026 Order (ECF No. 129), which denied Defendants' prior search-term request "without prejudice to renewal upon more fulsome briefing" and instructing the parties to confer to "reach a reasonable middle ground" on terms. (*Id.*)

Defendants have conferred extensively. They revised and narrowed their proposed strings on September 22, met and conferred on September 29, further narrowed their proposals in a detailed September 30 letter (Ex. A), and requested OpenEvidence's final positions with hit counts by October 2.[1] OpenEvidence's October 2 response (Ex. B) reveals that, despite the Court's instruction, OpenEvidence has not moved meaningfully toward the "reasonable middle ground" the Court urged the parties to reach (ECF No. 129).

OpenEvidence's principal tactic is to append a limiter—"AND (Doximity OR Dox OR DoxGPT OR 'Pathway Medical')"—to many of Defendants' proposed strings. Because OpenEvidence already agreed to run "Doximity," "Dox," "DoxGPT," and "Pathway Medical" as standalone terms, the limiter renders each disputed string a null set: it returns only documents that ***already*** hit agreed-upon terms. Put simply, OpenEvidence has refused to run those terms. For other terms, OpenEvidence refuses outright, offers no counterproposal, or narrows the terms so drastically as to eliminate entire relevant categories of documents. To claim burden, it relies on hit counts that it admits were run on broader strings than Defendants actually proposed.

---

[1] Citations in the form of "Ex. __" refer to the exhibits described in the Transmittal Declaration of William K. Wray Jr., submitted herewith.

In sum, OpenEvidence refuses to act reasonably. That refusal compounds OpenEvidence's open defiance of the Court's order as to custodians and date ranges and failure to preserve critical evidence. (*See* ECF No. 131.) The need for reasonable search terms is particularly acute given the apparent loss of an entire category of custodial communications. (*See id*.) This brief explains, term by term, why each disputed search string is relevant, proportional, and necessary to Defendants' claims and defenses. Defendants respectfully request that the Court order OpenEvidence to apply Defendants' terms and produce documents promptly.

## RELEVANT BACKGROUND

On September 1, 2026, the Doximity Defendants filed a motion to compel discovery on multiple fronts, including OpenEvidence's refusal to apply Defendants' proposed search terms. (ECF No. 125.) On September 17, 2026, the Court entered an Order (ECF No. 129) granting the motion in part. Among other relief, the Court ordered OpenEvidence to produce documents from eight custodians for June 1, 2023 through February 6, 2026, including responsive text messages and Slack communications. The Court denied the search-term portion of the motion "without prejudice to renewal upon more fulsome briefing" regarding "the need for each additional proposed search term." (ECF No. 129.) The Court observed that with "appropriate tailoring" the terms could "be reasonably calculated to produce discoverable material," and "encourage[d] the parties to confer on additional terms to reach a reasonable middle ground." (*Id.*)

Following the Order, Defendants requested a meet and confer on search terms, which took place on September 22. During that meeting, counsel for OpenEvidence represented that it was not authorized to agree to any additional search terms and was not prepared to articulate objections to the individual terms it had previously refused. Counsel further stated that it was unlikely the parties could avoid another impasse without a subsequent court order. That same day, Defendants sent a revised search-term proposal that unilaterally dropped and narrowed

certain proposed terms as a final attempt at compromise. OpenEvidence promised a response by September 24 but did not provide one. OpenEvidence then cancelled a meet and confer scheduled for September 25, citing the need for "additional time to consult with [its] client."

On September 28, OpenEvidence provided a chart objecting in whole or in part to nearly every one of Defendants' proposed terms. The chart included, among other objections, the recurring assertion that individual terms were "attempts to obtain through discovery what Doximity could not obtain through its hacking, and [are] an improper use of discovery." It also proposed appending a Doximity/Dox/DoxGPT/"Pathway Medical" limiter to many disputed terms, which, as explained, guarantees that the terms return no new documents, i.e., a "null set."

On September 29, the parties met and conferred again on a term-by-term basis. OpenEvidence did not agree to any compromises presented on the call.[2] On September 30, Defendants sent a letter memorializing the September 29 call and setting out Defendants' positions, including offering to further narrow or limit additional terms. (ECF No. 141-5.) The letter requested that OpenEvidence provide its final written position on each disputed string and stated that absent agreement, Defendants would renew their motion as the Court's Order permits.

OpenEvidence served its final response on October 2. (Ex. B.) For the first time in that response, OpenEvidence provided Google Vault hit counts for some (but not all) terms. The fact that OpenEvidence provided hit counts generated from Google Vault searches and not a review platform suggests that it had not even collected the documents when it responded.[3] And

---

[2] On the call, Counsel for OpenEvidence refused to apply the term "Substack" even though OpenEvidence had told the Court weeks earlier that it was one of the few terms OpenEvidence had ***agreed*** to run. (ECF No. 128 at 20.) OpenEvidence has since relented.

[3] Google Vault is Google Workspace's built-in retention and eDiscovery tool, which searches data where it sits. Google Vault reports have significant limitations. In providing hit counts, OpenEvidence acknowledged it often could not run the search syntax correctly without modification and the numbers they provided are not exact.

OpenEvidence's failure to provide hit counts before meeting and conferring made it impossible for Defendants to address any concrete burden objections during the parties' meet and confers.

## ARGUMENT

Parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party may move to compel when the opposing party fails to adequately respond or provides "[a]n evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). A party opposing discovery must demonstrate that the requested discovery is not relevant or overbroad, burdensome, or oppressive. *Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021). Burden objections must be supported by specific facts, not conclusory assertions. *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021). The parties' Stipulated ESI Order reinforces these principles and provides that a party objecting to proposed terms "shall meet and confer in good faith . . . , provide a basis for any objection, and discuss hit counts where applicable." (ECF No. 57 ¶ 9(d).)

## I. RECURRING DEFICIENCIES IN OPENEVIDENCE'S POSITIONS

Before addressing each disputed term individually, Defendants identify four recurring problems with OpenEvidence's approach that pervade its final October 2 positions.

### A. OpenEvidence's Limiter Renders Strings Superfluous

OpenEvidence's most common response is to propose adding "AND (Doximity OR Dox OR DoxGPT OR 'Pathway Medical')" to the end of Defendants' proposed strings. It makes that proposal in response to ***twelve*** of Defendants' strings. But because OpenEvidence has already agreed to run "Doximity OR Dox OR DoxGPT" as a standalone term (No. 1) and "Pathway Medical" (No. 2), appending that limiter to any string means the string will return ***only*** documents that are already hit by Nos. 1 or 2. The limiter converts every disputed string into a

null set—it adds nothing to the agreed-upon terms. Whereas Defendants have narrowed their proposal in good faith, OpenEvidence has supplied "counteroffers" that provide only the illusion of movement. This is not the "reasonable middle ground" the Court directed the parties to seek.

OpenEvidence's tactic is especially concerning because many of Doximity's counterclaims concern conduct—including OpenEvidence's claims about hallucinations, USMLE, HIPAA compliance, and user verification—that does not relate to Doximity or Pathway. Using the limiter as OpenEvidence proposes will exclude all or most documents relevant to those claims. Defendants explained why this is inappropriate, and OpenEvidence had no response. Instead, it confirmed it intends to "run" strings on those topics with the limiter even though it knows they will hit zero unique documents and omit relevant ones.

### B. <u>OpenEvidence's Hit Counts Are Nonresponsive</u>

Where OpenEvidence provided hit counts, they are often irrelevant because they were run on broader or different strings than Defendants actually proposed. OpenEvidence concedes that these counts are inaccurate but asserts without support that "[Defendants'] modifications will not reduce the hits sufficiently." That is pure speculation. Moreover, simply citing hit counts to reject strings outright is not enough to substantiate an undue burden objection. *See In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *11 (N.D. Ill. June 26, 2023) (granting motion to compel where objecting party provided an aggregate hit count and "in essence summarily rejected [the] requested search terms and inappropriately failed to provide alternate proposals which the Court can assess"); *Todd Crowder, et al., v. LinkedIn Corporation*, No. 22-CV-00237-HSG (LB), 2026 WL 2671413, at *3 (N.D. Cal. Sept. 10, 2026) (granting motion to compel on search string where the producing party did "not provided any specific reasons why the requested review is unduly burdensome, such as projected costs"). OpenEvidence should have "shared hit counts on more restrictive searches to allow [Defendants]

to modify specific search terms and parameters." *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *11. OpenEvidence's failure to identify "the concrete universe of potentially responsive information" has led to "a needlessly ineffective and prolonged debate over search terms." *MacDonald v. Hasbro Managerial Servs., LLC*, No. 1:25-CV-00096-MSM-AEM, 2026 WL 1759175, at *2 (D.R.I. June 18, 2026) (ordering parties to agree to terms and urging them to use hit reports in doing so).

### C. OpenEvidence's "Hacking" Objection Is Improper

OpenEvidence repeatedly objects that certain terms "attempt[] to obtain through discovery what Doximity could not obtain through its hacking, and [are] an improper use of discovery." (Ex. B, Nos. 18, 19, 21, 26.) This echoes OpenEvidence's previous justification for defying the Court's order, and it is not proper. As Doximity has explained, OpenEvidence cannot baselessly accuse Doximity or its counsel of misconduct, let alone use that accusation to justify its own disregard of the law and this Court's orders. As this Court has made clear: "OpenEvidence's concerns regarding disclosure of its technical and proprietary information can be addressed by designating such material as Attorneys' Eyes Only." (ECF No. 129.)

## II. EACH MODIFIED STRING DEFENDANTS SEEK IS APPROPRIATE

Defendants address each disputed search string below individually, stating Defendants' September 30 proposal, OpenEvidence's October 2 counter, any reported hit count, and the specific basis for each term's relevance and proportionality.[4]

#### String No. 2: "Pathway"

**Doximity 9/30 Proposal:** Pathway

**OE 10/2 Counter:** "Pathway Medical" OR (Pathway w/10 (Doximity OR Dox OR DoxGPT))

---

4 Defendants accept OpenEvidence's October 2 counter-proposals for terms number 4, 5, 31, and 32 and therefore do not address them below.

**OE Hit Count:** ~3,586 (run on standalone "Pathway")

Pathway Medical, Inc. is a named Defendant and a central party to this case. Individuals in the industry commonly refer to it by the word "Pathway." That is confirmed by Defendants' review of its own communications (as well as common sense). OpenEvidence's report of a modest 3,586 hits across eight custodians over a nearly three-year period demonstrates that the term is not unduly burdensome—particularly given OpenEvidence's resources. OpenEvidence's counter would miss any reference to Pathway where Doximity is not mentioned in the same breath, excluding most documents before Doximity acquired Pathway late in the relevant period.

**String No. 3: Individual Names (Proximity Format)**

**Doximity 9/30 Proposal:** Balachandran OR Konoske OR Tangney OR Greenberg OR Hershon OR Mullie OR Yamga OR Karapetyan OR (Khudhur w/5 Mohammed) OR (Vince w/5 Roy)

**OE 10/2 Counter:** Balachandran OR Konoske OR Tangney OR "Ben Greenberg" OR Hershon OR Mullie OR Yamga OR Karapetyan OR "Khudur [sic.] Mohammed" OR "Vince Roy"

Defendants propose a first-name-within-five-words-of-last-name format for two of three individuals whose last names OpenEvidence contends are common (OpenEvidence has not shown that "Greenberg" is common). OpenEvidence's exact-name format will miss common variations such as "Roy, Vince" or instances with a middle initial or name. OpenEvidence's current position is a ***regression*** from its previous agreement to run their last names on an unlimited basis. (See ECF No. 126 at 17.) And on the September 29 call, OpenEvidence's counsel conceded that he "can't imagine" hits resulting from separated first and last names—acknowledging that the proximity format would generate minimal, if any, additional documents. If that is so, there is no burden to running the proximity format, and OpenEvidence's objection is baseless. Defendants also note that OpenEvidence misspelled "Khudhur" as "Khudur" in its counter—a fact that underscores the need for proximity rather than exact-match terms to capture relevant documents even where names are rendered imprecisely.

**String No. 6: Security / Access Barriers**

**Doximity 9/30 Proposal:** ((“confidential*” OR “secur*” OR “encrypt*” OR “private” OR “privacy”) w/5 (information OR data OR platform)) AND (“access” OR “login” OR “log-in” OR “logged in” OR “NPI” OR “credential*” OR (verif* w/5 user) OR “output” OR “query” OR “prompt” OR “Q&A”)

**OE 10/2 Counter:** N/A (refuses to run).

**OE Hit Count:** ~46,421 (run on a version using AND instead of w/5 and without second limiter)

This string goes to the heart of OpenEvidence’s CFAA claim, for which it must prove that it imposed effective access barriers and that its platform’s responses are protected. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022). The Court granted Defendants’ motion to compel production of documents concerning whether OpenEvidence treats the information on its platform as confidential and what security measures it employs (RFPs No. 7 and 10), and this term is necessary to capture them.

OpenEvidence’s reported hit count of approximately 46,421 is grossly inflated because it was generated from an earlier, much broader version of the string that used AND connectors rather than the w/5 proximity operator and omitted the second limiter entirely. Defendants’ September 30 revision substantially narrows the string by requiring that (i) the confidentiality-related words must appear within five words of “information,” “data,” or “platform,” and (ii) the document must also contain an access-related term. OpenEvidence dismisses these revisions without running them, asserting only that the “modifications will not reduce the hits sufficiently.” That is the kind of conclusory objection that the ESI Order and Rule 37 do not permit, and the Court need not credit. *See Katz*, 566 F. Supp. 3d at 107 (finding a boilerplate objection that a search would take “seemingly limitless hours, or perhaps days” to conduct was inadequate); *Cook v. Lynn & William, Inc.*, 344 F.R.D. 149, 155 (D. Mass. 2023) (same).

**String No. 7: Public vs. Private Platform**

**Doximity 9/30 Proposal:** ((public w/2 (version OR access)) OR (full* w/2 (version OR access))) AND (OpenEvidence OR platform) AND (patient OR consumer OR ((verif* OR unverif* OR NPI) w/5 (user OR account)))

**OE 10/2 Counter:** ((public w/2 access) OR (full* w/3 (version OR access))) AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

The distinction between OpenEvidence's public and private platforms is central as well. OpenEvidence asserts that Defendants accessed a private version and thereby obtained information that was not publicly available. Defendants contend that the responses they accessed were publicly available or that any access barriers were ineffective. Thus, it is highly relevant how OpenEvidence (i) distinguishes between public and private access, and (ii) treats different categories of users. OpenEvidence's concession in its objection that "anyone can go on OpenEvidence and access the a [sic.] public version" of the platform (Ex. B at 3) underscores the relevance of documents discussing the scope and nature of that public access. OpenEvidence's counter uses the Doximity limiter to render the string superfluous. By contrast, Defendants' proposal (substantially narrowed from the original) includes a limiter that seeks unique responsive documents while resolving any overbreadth concerns. OpenEvidence has not engaged with Defendants' revised proposal or provided hit counts.

**String No. 8: Authorization / Audit / Investigation of Users**

**Doximity 9/30 Proposal:** (authoriz* OR audit OR investigat*) AND (user OR individual OR "healthcare provider" OR HCP OR NPI)

**OE 10/2 Counter:** Same, plus AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

**OE Hit Count:** ~14,886

How (if at all) OpenEvidence verifies its users' identities, including any investigation of users whose NPI credentials do not match their names, goes to both Defendants' CFAA defenses and Doximity's NPI-verification counterclaim. Doximity intends to prove that OpenEvidence

collects NPIs so it can sell NPI-targeted advertising, not to verify its users' identities. And Defendants seek documents showing that entering numbers in an NPI field to register for accounts is a widespread industry practice, not a sophisticated hacking attempt.

Again, OpenEvidence insists on a limiter that would render this string superfluous and unlikely to capture relevant documents; Doximity's counterclaims challenge statements about NPI verification that do not mention or concern Doximity. Doximity's proposal is appropriately tailored to capture documents relevant to several disputed issues, so the reported hit count of approximately 14,886 is proportional. *See Todd Crowder, et al.*, 2026 WL 2671413, at *3 (granting motion to compel on search string that hit on 25,872 documents before deduplication).

**String No. 9: Terms of Use**

**Doximity 9/30 Proposal:** "Terms of Use" OR "Terms of Service"
**OE 10/2 Counter:** Same, plus AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")
**OE Hit Count:** ~12,218

OpenEvidence's breach of contract claim makes its Terms of Use central to this litigation. Communications concerning the meaning, scope, and enforcement of those terms are clearly relevant. Defendants seek documents that show what OpenEvidence's account sign-up flow looked like over time (including when each defendant signed up). Those documents are directly relevant to each defendant's notice of the operative terms when signing up and whether their placement amounted to browsewrap or clickwrap. OpenEvidence's operative complaint includes mock-up diagrams purporting to show the individual defendants' "agreements" to its terms. Defendants must be allowed to discover whether those diagrams are accurate.

OpenEvidence's limiter would again capture only documents already hit by Nos. 1 and 2 and exclude the documents Defendants seek. And OpenEvidence's offer to "produce the relevant Terms of Service" is insufficient as well: Defendants are not seeking only the terms themselves;

they are seeking communications about the terms. The reported hit count of 12,218 is proportional and OpenEvidence has proposed no viable alternative to Defendants' search string.

**String No. 10: Competitive Benchmarking**

**Doximity 9/30 Proposal:** (competit* OR market OR platform OR chatbot) AND (benchmark OR intel* OR compar* OR analy* OR research)

**OE 10/2 Counter:** Same, plus AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

**OE Hit Count:** ~12,047

This term targets OpenEvidence's competitive intelligence and benchmarking, which are relevant to Defendants' unclean hands defense and whether Defendants' conduct reflects standard industry practice. OpenEvidence's limiter would capture only documents already returned by Nos. 1 and 2. Defendants acknowledge that the Court limited RFP No. 14 to documents concerning OpenEvidence's benchmarking of the Doximity and Pathway platforms and agrees OpenEvidence may exclude documents related solely to benchmarking of other third parties during its review. But it is reasonably likely that there are documents related to benchmarking of Doximity and Pathway that may not mention Doximity or Pathway by name, and the hit count of approximately 12,047 is proportional. Alternatively, Defendants are willing to remove the word "platform" from the string to further reduce hits.

**String No. 11: Investor Promotions**

**Doximity 9/30 Proposal:** (Sequoia OR Coatue OR Google) w/20 (raise* OR invest* OR dollar* OR paid OR promot* OR press OR advert* OR post OR blog OR article* OR campaign OR "backed by")

**OE 10/2 Counter:** (Sequoia OR Coatue OR Google) AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

Doximity's counterclaims specifically identify and challenge Coatue-branded advertisements, a Sequoia Capital article, and a statement by OpenEvidence CEO Daniel Nadler that Google Ventures disseminated. The proximity format is designed to capture documents

about paid promotions, investor-backed advertising campaigns, and the use of investor names in marketing—all directly relevant to the false advertising and unfair competition counterclaims. The w/20 proximity operator narrows the term to documents where investor names appear near promotion-related language. OpenEvidence provided no hit counts and its limiter would again return only documents already captured by Nos. 1 and 2. Many of the investor-backed statements Doximity is challenging did not mention Doximity or Pathway; OpenEvidence's proposal would exclude all documents relating to those statements.

**String No. 12: Promotion Platforms and Aliases**

**Doximity 9/30 Proposal:** (LinkedIn OR "New York Times" OR NYT OR Substack OR promot* OR press OR advert* OR campaign) AND (OpenEvidence OR Scalable Magic OR Xyla OR Monocle OR "alias" OR "fake" OR "alter ego")

**OE 10/2 Counter:** (LinkedIn OR "New York Times" OR NYT OR Substack OR promot* OR press OR advert* OR campaign) AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical" OR "Vera Health")

**OE Hit Count:** ~61,372

Defendants acknowledge that OpenEvidence's hit report suggests this string is not proportional as drafted and therefore agree to remove "OpenEvidence" from the second set of terms, which should dramatically reduce the volume. The string is otherwise appropriate, as it targets documents about OpenEvidence's creation and use of aliases via other corporate entities such as Scalable Magic and Xyla. Doximity needs those documents to prove multiple elements of its claims including disgorgement damages. Again, allowing OpenEvidence to use a Doximity/Pathway limiter would bless a refusal to produce most or all of the important documents for entire aspects of the case. Its addition of "Vera Health" to the string makes no sense and does nothing to solve the problem, as this issue has nothing to do with Vera Health.

**Strings No. 13-16: Alias Proximity Terms**

**Doximity 9/30 Proposals:**

No. 13: "Curated Market Research" OR CMR OR (curated w/3 research)

No. 14: "Bubble Watch" OR (bubble w/3 watch)

No. 15: "American Courtroom" OR (american w/3 courtroom)

No. 16: "Tech Law News" OR (tech w/3 law)

**OE 10/2 Counters:** Exact phrases plus concatenations only (e.g., "Bubble Watch" OR BubbleWatch).

These terms narrowly target known aliases that OpenEvidence used to publish and promote disparaging content about Doximity. The proximity format captures minor variations that exact-phrase matching would miss. OpenEvidence provided no hit counts to substantiate any burden. And OpenEvidence's own protocol demanded that ***Defendants*** run a string including the very proximity terms that OpenEvidence refuses to run. Defendants ran those terms. OpenEvidence cannot demand of Defendants what it refuses to do itself, especially for terms related to OpenEvidence's own misconduct which are far more likely to render responsive documents from OpenEvidence than Defendants. *See Branson v. All. Coal, LLC*, No. 419CV00155JHMHBB, 2022 WL 2717625, at *9 (W.D. Ky. July 13, 2022) ("[I]t is inequitable for one party to be limited in size when seeking discovery while the other party is allowed full reign . . . '[W]hat is good for the goose is good for the gander.'" (citation omitted)).

**<u>String No. 18: Verification / Physician Access</u>**

**Doximity 9/30 Proposal:** (verif* OR unlimited OR "logged-in" OR "true-identity" OR "unique" OR "field") w/5 ("health care professional*" OR HCP* OR physician* OR provider* OR NPI)

**OE 10/2 Counter:** N/A (refuses to run)

**OE Hit Count:** ~11,995 (run on a broader string using AND instead of w/5)

This term is directed at the mechanisms OpenEvidence claims to employ to restrict platform access to verified healthcare professionals. As explained above, the Court has sustained Doximity's false advertising claims based on OpenEvidence's statements that its platform is used by "verified" physicians and the issue is also central to Defendants' CFAA defenses.

On September 28, OpenEvidence indicated it was "willing to meet and confer" on this term, but on October 2 it refused outright with no counterproposal. The hit count OpenEvidence reports (~11,995) was run on a broader string using AND rather than the w/5 operator and with fewer first-group terms; the actual count would therefore be materially lower.

**String No. 19: Hallucination / USMLE / Accuracy**

**Doximity 9/30 Proposal:** hallucinat* OR USMLE OR "United States Medical Licensing Examination" OR (license* w/3 exam*) OR (incorrect w/3 answer*) OR (wrong w/3 answer*) OR accura* OR inaccura* OR "perfect 100%" OR perfect OR (perfect w/3 100%)

**OE 10/2 Counter:** (known w/2 hallucinat*) OR USMLE OR "United States Medical Licensing Examination"

**OE Hit Count:** ~27,309 (run on a different string)

Doximity's counterclaims challenge OpenEvidence's statements that it scored a "perfect 100%" on the USMLE, that its platform produces no hallucinations, and that its answers are accurate. (ECF No. 110 ¶ 59.) OpenEvidence objects that hallucination avoidance is a "core subject" of its work, but that ***confirms*** the materiality of the statements and the relevance of documents going to their falsity. OpenEvidence's counter would miss most discussions about hallucination rates and accuracy concerns. The reported hit count of ~27,309 is not unduly burdensome compared to the relevance of the information. In the alternative, Defendants are willing to remove the standalone terms "accura*," "inaccura*," and "perfect" from the string.

**String No. 20: Ziegler Hallucination Statements**

**Doximity 9/30 Proposal:** (Ziegler OR (Zachary w/3 Ziegler)) AND ("Australia Doctor Group" OR AusDoc OR hallucinat* OR (no w/3 risk*))

**OE 10/2 Counter:** "Australia Doctor Group" OR AusDoc OR "Australian Doctor"

This string targets a specific false statement at issue in the counterclaims: OpenEvidence co-founder Zachary Ziegler was reported by the Australian Doctor Group as stating that OpenEvidence's platform "was not at risk of hallucinations." (ECF No. 110 ¶ 49.) The AND

connector ensures that the term captures only documents where Ziegler's name appears alongside the publication or hallucination-related language. OpenEvidence's counter drops Ziegler's name entirely and replaces it with the publication names alone. OpenEvidence's proposal would (i) capture unrelated references to the Australian Doctor Group while (ii) omitting documents about Ziegler's statement itself and his views on hallucination (which are relevant to proving intent to deceive). No hit counts were provided.

**String No. 21: Hallucination / Confidence / Perfection**

**Doximity 9/30 Proposal:** hallucinat* OR (false w/3 confidence) OR "life and death" OR perfect* OR (error w/3 rate)

**OE 10/2 Counter:** (known w/2 hallucinat*)

**OE Hit Count:** ~12,600 (run on pre-revision string)

This string too is directed at OpenEvidence's public claims about reliability. "Known hallucination" alone is too narrow to capture the full scope of relevant communications and adds nothing to what OpenEvidence already agreed to run as for string No. 19. Internal discussions about false confidence in results, whether the platform's outputs are a matter of "life and death" (as OpenEvidence CEO Daniel Nadler publicly stated, *see* ECF No. 110 ¶ 51), error rates, and OpenEvidence's characterization of its product as "perfect" or not all bear directly on the truthfulness of OpenEvidence's public statements. The hit count was run on a pre-revision string that does not reflect Defendants' narrowing (Defendants agreed to drop "hit w/3 rate" on September 30). The resulting hit counts are likely to be lower, and regardless, these terms are proportional given the importance of these issues to Doximity's claims.

**String No. 22: Sequoia Hallucination Claims**

**Doximity 9/30 Proposal:** (Sequoia OR (Sequoia w/3 Capital)) AND (hallucinat* OR (does* w/3 respond) OR inconclusive)

**OE 10/2 Counter:** Sequoia AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

The counterclaims cite a Sequoia Capital article promoting ***OpenEvidence's*** purported advantages, including claims about hallucination rates. (ECF No. 110 ¶ 52.) Defendants' narrowly targeted string uses an AND connector to capture only documents where Sequoia appears alongside hallucination-related language. OpenEvidence's Doximity limiter would again return only documents already captured by Nos. 1 and 2, which is illogical considering the challenged statements did not involve Doximity. No hit counts were provided.

**<u>String No. 23: #1 App for Doctors</u>**

**Doximity 9/30 Proposal:** "#1 App for Doctors" OR ((Apple OR AppStore OR (App w/3 Store)) AND (rank* OR "#1" OR "number 1"))

**OE 10/2 Counter:** Same, but adding AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical") to the second half.

**OE Hit Count:** ~23,872 (run on a much broader all-OR string)

Doximity's counterclaims challenge OpenEvidence's claim to be the "#1 App for Doctors." (ECF No. 110 ¶¶ 84–88.) This term is narrowly tailored to capture documents about that advertisement and underlying App Store rankings. The reported hit count was run on a far broader all-OR string that does not reflect Defendants' proposal to use AND connectors to narrow the second component. The Doximity limiter again makes the string superfluous.

**<u>String No. 24: McDonalds / Stock Prices</u>**

**Doximity 9/30 Proposal:** McDonald* OR stock* OR underperform* OR earnings OR (earnings w/3 call)

**OE 10/2 Counter:** McDonald* AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

The terms in this string also relate to a specific alleged false statement. (ECF No. 110 ¶¶ 89-92.) Indeed, OpenEvidence demanded that ***Defendants*** run "(OE) AND (McDonald* OR stock* OR underperform* OR earnings OR (earnings w/3 call))." OpenEvidence holds itself to a different standard and declines all terms other than "McDonald*"—eliminating documents relating to the underlying assertions about stock prices. And OpenEvidence again adds its

specious limiter even though "McDonald*" ***without*** the limiter was one of the only five terms OpenEvidence agreed to run before Doximity moved to compel. (ECF No. 128 at 20.) No hit counts were provided, and OpenEvidence cannot contend these terms are burdensome when it demanded Defendants run the identical terms.

**<u>String No. 25: HIPAA / Privacy / Compliance</u>**

**Doximity 9/30 Proposal:** HIPAA OR HIPPA OR PHI OR complian* OR (protected w/3 health) OR privacy OR confidential* OR safeguard* OR (search w/3 data) OR (disclos* w/10 data) OR wayback OR web.archive.org OR "Business Associate Agreement" OR BAA

**OE 10/2 Counter:** OpenEvidence will produce documents sufficient to show its HIPAA compliance.

**OE Hit Count:** ~115,577

Doximity's sustained counterclaims allege that OpenEvidence's claims of HIPAA compliance and patient confidentiality are false. (ECF No. 110 ¶¶ 142-51.) OpenEvidence's offer to "produce documents sufficient to show its HIPAA compliance" is classic self-selection that this Court should reject. Defendants seek documents regarding instances where OpenEvidence failed to protect patient confidentiality or comply with HIPAA's requirements. OpenEvidence's selection of examples showing they ***succeeded*** in complying cannot be the end of the inquiry. *Cf. Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991) (documents used as a "representative sample . . . [must] count not simply for themselves, but for presumably similar non-sample documents still withheld"). The need for adversarial testing is particularly acute given the reported loss of OpenEvidence's Slack data (*see* ECF No. 131), which likely contained relevant discussions about compliance gaps. *See HealthEdge*, 2021 WL 1821358, at *2 (*quoting Burnett v. Ford Motor Co.*, No. 13-cv-14207, 2015 WL 4137847, at *8 (S.D. W. Va. July 8, 2015)) ("[C]ommon sense dictates that the party conducting [a] search must share information

regarding . . . the search terms used in collecting relevant documents and the identities of the custodians from whom the documents were retrieved.”).

Defendants acknowledge that OpenEvidence’s hit report suggests this string may warrant further narrowing to achieve proportionality. But OpenEvidence’s outright refusal to run any version of a HIPAA-related string, or provide a counterproposal, defies its obligations under the ESI Order. Defendants propose removing the standalone terms “complian*,” “privacy,” and “confidential*” from the string to reduce volume while retaining the core HIPAA-specific terms.[5]

**String No. 26: Data Monetization**

**Doximity 9/30 Proposal:** (Data OR quer* OR prompt*) AND (Sell* OR monetize* OR search* OR equity)

**OE 10/2 Counter:** N/A (refuses to run)

**OE Hit Count:** ~23,986

Whether and how OpenEvidence monetizes user queries and data is relevant to Doximity’s counterclaims concerning privacy and HIPAA statements. (*See* ECF No. 110 ¶¶ 152-58.) OpenEvidence’s blanket refusal, with no counterproposal, does not satisfy its obligations under the ESI Order. Moreover, once again the hit count provided is not unduly burdensome for a string likely necessary to render responsive documents central to Defendants’ counterclaims.

**String No. 27: Sale of NPI-Identified Information**

**Doximity 9/30 Proposal:** (target OR level OR quer* OR prompt) w/5 (“health care professional*” OR HCP* OR physician* OR provider* OR NPI)

**OE 10/2 Counter:** N/A (refuses to run)

This term targets documents concerning OpenEvidence’s sale of NPI-level query information to advertisers, which is relevant to Doximity’s HIPAA-compliance, patient

---

[5] Defendants propose running both “HIPAA” and “HIPPA” because, as shown in Doximity’s Second Amended Counterclaims, OpenEvidence misspelled the term in its public promotional materials. (ECF No. 110 ¶ 163.)

confidentiality, and verified-physician counterclaims. As explained above, these terms are additionally relevant to Defendants' CFAA access-barrier defense. OpenEvidence's blanket refusal, without a counterproposal or hit counts, falls short.

**String No. 28: Consulting / Advisory Agreements**

**Doximity 9/30 Proposal:** ((consult* OR advis* OR "no obligation" OR Bhandar OR Dorfman OR Demir) AND (agree* OR contract*))

**OE 10/2 Counter:** N/A (refuses to run)

This string is directed at OpenEvidence's financial or consulting arrangements with individuals at potential advertisers, agencies, and advisory firms to influence them against Doximity, which Doximity alleges is a form of unfair competition. (ECF No. 110 ¶ 182.) The string includes individuals Defendants understand are involved in such arrangements. The AND connector narrows the term to documents where consulting/advisory language appears alongside contractual language. OpenEvidence provided no hit counts or counterproposal.

**String No. 29: Customer Communications**

**Doximity 9/30 Proposal:** (Dupixent OR Sanofi OR Pfizer OR Johnson OR Merck OR Genentech OR Roche OR AbbVie OR Novartis OR AstraZeneca OR "Eli Lilly" OR Takeda) AND (LinkedIn OR engage! OR partner* OR exclusiv* OR equity)

**OE 10/2 Counter:** N/A (refuses to run)

Doximity's counterclaims allege that OpenEvidence directed false statements to Doximity's customers to divert business. (ECF No. 110 ¶¶ 8, 72, 97, 100.) Defendants added an AND connector to capture only documents where major pharmaceutical company names appear alongside engagement, partnership, or exclusivity language. Nonetheless, OpenEvidence refuses to provide hit counts or counterproposal. OpenEvidence's characterization of it as a "phishing expedition" is unsupported.

**String No. 33: "Loser" / "AI Race"**

**Doximity 9/30 Proposal:** Loser OR (AI w/3 race)

**OE 10/2 Counter:** (Loser w/3 "AI race") AND (Doximity OR Dox OR DoxGPT OR "Pathway Medical")

This term is tied to a specific disparaging statement alleged in Doximity's counterclaims. (*See* ECF No. 110 ¶¶ 77, 127, 187.) OpenEvidence again seeks to apply the Doximity limiter and provided no hit counts. While Doximity was mentioned in the disparaging statement at issue, it is reasonably likely that there are relevant documents concerning that statement that do not include the word Doximity, and it is unlikely that these terms will yield a burdensome number of hits.

**String No. 34: Medical Journals / Content Partnerships**

**Doximity 9/30 Proposal:** JAMA OR (New w/3 England) OR "New England Journal of Medicine" OR NEJM OR (medical w/3 journal*) OR "American Medical Association" OR AMA OR "content partner*"

**OE 10/2 Counter:** OpenEvidence will produce documents sufficient to show the differences between the public and private versions of the platform.

**OE Hit Count:** ~24,207

This term targets OpenEvidence's content partnerships with medical journals, which are relevant to the claims, counterclaims, and defenses concerning the nature of OpenEvidence's platform responses and whether the logged-in version provides information from content partners that the logged out version does not provide. As with other requests, OpenEvidence's offer to "produce documents sufficient to show the differences between the public and private versions of the platform" is self-selected and inadequate. The reported hit count is manageable, and OpenEvidence fails to propose any counterstring.

## CONCLUSION

For the foregoing reasons, the Doximity Defendants respectfully request that the Court enter an order compelling OpenEvidence to apply Defendants' proposed search terms described above to the eight court-ordered custodians' ESI for the period June 1, 2023 through February 6, 2026, and to produce responsive, non-privileged documents promptly.

Dated: October 7, 2026
Boston, Massachusetts

Respectfully submitted,

/s/ *James R. Carroll*

James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*