# EXHIBIT A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 BOYLSTON STREET
BOSTON, MASSACHUSETTS 02116

TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

September 30, 2026

**VIA EMAIL**

Scott Schlafer
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

RE: OpenEvidence Inc. v. Doximity, Inc., et al., No. 1:25-cv-11802-RGS (D. Mass.): September 29, 2026 Meet and Confer

Counsel,

We write to memorialize the parties' September 29, 2026 meet and confer, to respond to the positions OpenEvidence ("OE") took on that call, and to address requests OE has left unanswered.

## I. OE's Compliance with the Court's September 17 Order (Dkt. 129)

Mr. Broome confirmed that OE will comply with the Order and that OE's September 28 letter to the Court (Dkt. 136) should be read as though its September 24 letter (Dkt. 131) had never been sent. In response to a question from counsel for the Pathway Individual Defendants, Mr. Broome confirmed that the email and text messages (which include Telegram, Signal, WhatsApp, and other short-form communication applications) of the eight court-ordered custodians for June 1, 2023 through February 6, 2026 have been preserved, are being searched, and will be produced. Mr. Schlafer added that OE's text messages and email are preserved and that OE is "going forward" with them.

The parties have long agreed that "text messages" is not limited to SMS. It includes iMessage and the other short-form and ephemeral messaging platforms custodians use for work communications, including WhatsApp, Signal, Telegram, and Slack. Mr. O'Connor and I restated that understanding on the call, and OE did not disagree. It is also OE's own definition. OE's Custodian and Search Term Protocol for Defendants defines text messages to include "similar communications, e.g., LINE, WhatsApp, SMS, Signal, Telegram, and/or voicemails," and requires collection from "other messaging applications (e.g., iMessage, WhatsApp, Signal, Slack, Microsoft Teams)." OE's text-message collection for the eight custodians must therefore cover every such platform each custodian used. Consistent with Paragraph 9(b) of the ESI Order, please identify by October 2 (1) the messaging platforms each of the eight custodians used for work communications during the court-ordered period, (2) whether disappearing-message or auto-delete settings were enabled on any of those platforms or accounts, and (3) if so, when those settings were enabled and when, if ever, they were disabled.

Mr. Schlafer asked what the October 8 deadline "means" and suggested that OE cannot be required to produce documents that hit search terms the parties have not yet agreed on. The Order is not ambiguous. It requires OE to "produce all relevant and nonprivileged responsive documents" within twenty-one days, and it provides that the "production should include responsive text messages and slack communications from any of the eight custodians identified by Doximity for the period of June 1, 2023 through February 6, 2026." Dkt. 129. Nothing in the Order conditions that obligation on an agreement about additional search terms. The Court denied without prejudice only Defendants' request that it impose Defendants' proposed terms; it did not suspend OE's production obligation while the parties confer. OE told the Court as much yesterday: OE "will collect and produce responsive documents from all eight Court-ordered custodians and from the full period of June 1, 2023 through February 6, 2026." Dkt. 136.[1]

---

[1] Defendants further note that the Court's order directed the parties to "confer . . . to reach a reasonable middle ground" on terms. (Dkt. 129.) At Defendants' request, the parties met and conferred on search on terms September 22, 2026. During that call, counsel for OpenEvidence represented that it was not authorized to agree to any additional search terms on that call and was not prepared to articulate objections to the individual terms it had previously refused. Counsel further noted it was unlikely that the parties could avoid another impasse without a subsequent Court order. Later that same day, in a show of good faith, Defendants provided a revised search term proposal that unilaterally dropped and/or narrowed certain proposed terms. OpenEvidence promised a response no later than September 24, but did not provide one. Counsel for OpenEvidence then abruptly cancelled a meet and confer scheduled for September 25, citing the need for "additional time to consult with our client." OpenEvidence did not respond to

By October 8, then, OE must produce at least (1) all responsive documents that hit the terms OE has already agreed to run, which OE describes as including "Doximity," "Pathway Medical," "substack," the individual Defendants' names, and "the names of all the outlets Mr. Nadler allegedly used," Dkt. 128 at 15, applied to all eight custodians across the full court-ordered period; (2) responsive text messages and Slack communications from the eight custodians, to the extent any Slack data survive; and (3) responsive documents OE can identify without search terms. The ESI Order is explicit that the negotiation of search terms "will not be grounds for a Party to delay the review, collection, or production of non-custodial or other documents that the producing Party is able to identify and locate without undue burden and without the use of search terms." Dkt. 57 ¶ 9(f); *see also id.* ¶ 9(g). Documents that hit terms still under negotiation should be produced on a rolling basis as the parties reach agreement.

Mr. Broome said OE is "inclined" to ask the Court for more time to complete document discovery and asked whether Defendants would join. The Court entered the current schedule on August 31 (Dkt. 122), limited additional discovery the same day (Dkt. 124), and set OE's production on a twenty-one-day clock. If OE intends to file such a motion, please tell us the specific relief it will request so that Defendants' position can be accurately stated.

## II. Text Messages

The Order requires OE to produce responsive text messages from all eight custodians. That obligation is not open to renegotiation, and OE's proposal that each side collect text messages from three custodians does not change it.

OE proposes that Doximity collect text messages from Jeff Tangney, Ben Greenberg, and Chris Keeney. None of those individuals are named Defendants in this case, and neither Mr. Greenberg nor Mr. Keeney are among the twelve individuals for which the parties agreed Defendants would collect custodial ESI. Nonetheless, OpenEvidence proposes that Defendants collect their text messages because, in Mr. Broome's words, they "have the most insight into the alleged fraud relating to user engagement"—a subject of OpenEvidence's withdrawn proposed Second Amended Complaint, but not OpenEvidence's live claims. Moreover, when asked for the basis for that belief, Mr. Broome said only that it came from conversations with OpenEvidence. Defendants will consider the proposal once OE explains it. For each

Defendants' revised proposal until September 28—when it provided a chart objecting in whole or in part to almost every one of Defendants' proposed terms, including on the baseless ground that individual terms were "attempts to obtain through discovery what Doximity could not obtain through its hacking, and is an improper use of discovery." In other words, OpenEvidence is the reason why the parties are still negotiating search terms.

of the three individuals, please identify (1) the claim or defense in the operative pleadings to which that person's text messages are relevant, (2) the facts supporting OE's belief that the person used text messaging for work communications on those subjects.

Mr. Schlafer said that if Defendants do not accept OE's three-custodian proposal, OE will move to compel text messages from all of Doximity's custodians "the same way" Defendants did, because OE will not "agree to the disparity." Two weeks ago, OE asked the Court to "reject Defendants' unjustified bid to force both sides to 'do the same' discovery," Dkt. 128 at 7, and told the Court that "[p]arties to a lawsuit cannot . . . refuse to provide discovery to another party on the basis that the other party has not provided discovery to them," *id.* at 6 (quoting *Mahoney v. Kempton*, 142 F.R.D. 32, 33 (D. Mass. 1992)). Indeed, on a previous meet and confer call in June, OE took that same position with respect to text messages, before changing course and proposing that neither side collect text messages at all. Dkt. 126 at 6. The question for each custodian is whether that custodian's text messages are likely to contain relevant, non-duplicative information.

## III. OE's Demands Concerning the Kiani Counterclaims

Mr. Broome asked whether Defendants will run additional search terms and custodians to address the counterclaims based on Cameron Kiani's Substack posts, and asserted that OE has "never proposed custodians and search terms for . . . the Kiani allegations." That is incorrect. OE's own Custodian and Search Term Protocol for Defendants includes the string "(OE) AND (Kiani OR (Doctor w/3 Kiani))," along with a string directed at OE's advertising and promotion campaign that includes "LinkedIn," "Bubble Watch," "(bubble w/3 watch)," "American Courtroom," "(american w/3 courtroom)," "Tech Law News," and "(tech w/3 law)." Defendants applied almost all of OE's proposed strings across twelve custodians. Dkt. 126 at 1. Those strings included the Kiani terms.

OE made that proposal with full knowledge of the Kiani posts. Defendants identified both posts as misleading statements in their February 16, 2026 First Amended Responses to OE's Second Set of Interrogatories (Response to Interrogatory No. 16). And OE's Request for Production No. 19, served in December 2025, already seeks "[a]ll documents and communications concerning each and every allegedly false or misleading statement that forms the basis for Counterclaim-Plaintiffs' Counterclaims, including (i) any evidence related to the truth or falsity of any such allegedly false or misleading statement." Mr. Broome acknowledged on the call that OE's original requests reach the Second Amended Counterclaims.

As I said on the call, Defendants will consider any additional terms or custodians OE proposes in connection with new categories of documents sought through OpenEvidence's new document requests. We are reviewing and will respond to the proposal you sent last evening.

Mr. Broome demanded "full transparency" into Defendants' targeted collection efforts, including "[w]ho did you speak to" and "what criteria" Defendants are applying, and said OE would put its request in writing. We will respond to the written request when we receive it. In the meantime, our position is that Defendants will comply with Paragraph 9 of the ESI Order, which requires each party to identify the custodial and non-custodial data sources it intends to search and the categories of documents it intends to produce without search terms. Dkt. 57 ¶ 9(b)-(c). We expect the same of OpenEvidence. Please disclose the targeted search it performed in anticipation of the October 8 production deadline and in connection with its efforts to respond to Doximity's more recent discovery requests. OpenEvidence has never provided the written search protocol that Paragraph 9(a) requires or the Paragraph 9(b) disclosure of its data sources, which Defendants requested on March 16, 2026. Please provide both by October 2.

## IV. Search Terms

Mr. O'Connor discussed OE's written objections to Defendants' revised search terms. The Court "encourage[d] the parties to confer on additional terms to reach a reasonable middle ground." Dkt. 129. Defendants have done so. Their positions are as follows.

1. Code names. OE represented that it is not aware of any code name or alternative term its personnel used to refer to Doximity. Mr. Broome further represented that there is "not much communication about doximity" at OE, that the conduct underlying the counterclaims "was largely just Daniel doing his own thing," and that Mr. Nadler was doing that "all out on his own." Defendants reserve the right to propose additional terms as the record develops, and OE agreed that they may.

2. "Pathway." Defendants will not withdraw "Pathway" as a standalone term. Communications about Pathway Medical frequently use the single word. If OE contends the term is unduly burdensome, it must support that contention with hit counts. Dkt. 57 ¶ 9(d).

3. Khudhur Mohammed and Vince Roy. Defendants accept name terms in the form first name w/5 last name for each.

4. “data” w/5 “scrap*.” Defendants maintain this term. OE’s complaints repeatedly described Defendants’ conduct as “scraping,” and OE has placed its own incident response and investigation at issue in its damages claim. OE’s own protocol asked Defendants to run “((scrape OR scraping) w/20 profile)” and “scrap*.” Mr. Schlafer noted Defendants’ position and said OE would confirm its position in writing.

5. Veracity. Defendants propose replacing the “Veracity Health” limiter with two standalone terms, “Veracity” and “Vera Health.” OE said it would consider “Vera Health.” Please state OE’s position on both.

6. The “confidential” w/5 “information” string. The Court granted Defendants’ motion to compel on the requests to which this string is directed. Dkt. 129. Those requests seek documents bearing on whether OE actually treats its platform’s ordinary responses as confidential or protected by access barriers, which OE must prove on its CFAA claim. OE’s own protocol asked Defendants to run “confidential*.” Defendants remain willing to narrow the string, but OE must agree to terms designed to capture this category of documents; rejecting the string outright is not an option. The parties agreed to exchange proposals. Defendants propose revising as follows: ((“confidential*” OR “secur*” OR “encrypt*” OR “private” OR “privacy”) w/5 (information OR data OR platform)) AND (“access” OR “login” OR “log-in” OR “logged in” OR “NPI” OR “credential*” OR (verif* w/5 user) OR “output” OR “query” OR “prompt” OR “Q&A”). Defendants ask that OE respond to that proposal or provide one of its own by October 2.

7. CFAA-defense strings. Defendants reject OE’s proposal to add “Doximity,” “Dox,” or “Pathway Medical” as a limiter on the strings directed at the nature of OE’s platform (for example, public w/2 access, full w/3 version or access, OpenEvidence or platform). OE already runs those terms standalone, so the limiter makes these strings superfluous. Defendants’ defenses reach how OE treats its platform generally, including how OE has investigated other users whose NPIs did not match the names they provided, and are not confined to documents that mention Defendants. In response to OpenEvidence’s objections, Defendants are willing to narrow the above-mentioned string as follows: ((public w/2 (version OR access)) OR (full* w/2 (version OR access))) AND (OpenEvidence OR platform) AND (patient OR consumer OR ((verif* OR unverif* OR NPI) w/5 (user OR account)). Mr. Schlafer said OE would confirm whether its proposals on these strings are final.

8. False-advertising strings. Defendants likewise reject the Doximity and Pathway limiter on the strings directed at OE's false and misleading statements, including the string combining LinkedIn, New York Times, Substack, and promote with OpenEvidence, Scalable Magic, alias, fake, and alter ego. Many of the statements at issue do not mention Doximity or Pathway, including OE's claims about its USMLE score, its rate of hallucination, and its HIPAA compliance, and puppet-account posts that target Doximity personnel by name. Discovery also extends beyond the text of each advertisement to OE's campaigns, including return-on-investment and marketing analyses relevant to disgorgement under the Lanham Act. Mr. Broome offered to add the names of Doximity personnel to the limiter. Please send that proposal. Defendants will consider it, but it will not reach OE's statements about its own product.

9. "Substack." Mr. Broome said that running "Substack" is "obviously over broad." Two weeks ago, OE told the Court that it "has already agreed to run multiple broad search terms, including 'Doximity,' 'Pathway Medical,' and 'substack.'" Dkt. 128 at 15. Please confirm that OE is running "substack" as a standalone term, as it represented to the Court.

10. "bubble w/3 watch" and similar. For each of the terms aimed at the various known aliases OpenEvidence used to run disparaging posts about Doximity, OE continues to refuse to run, for example, "bubble w/3 watch," agreeing only to run "Bubble Watch" OR BubbleWatch. But OE's own protocol asked Defendants to run "(bubble w/3 watch)," "(american w/3 courtroom)," and "(tech w/3 law)." Defendants agreed, and ran those terms. OE cannot demand that Defendants run proximity terms it refuses to run itself.

11. Hit counts. OE has not run any of the disputed strings against its collection, and Mr. Broome said he does not think OE should have to. The ESI Order requires a party that objects to proposed terms to "provide a basis for any objection, and discuss hit counts where applicable." Dkt. 57 ¶ 9(d). A burden objection unsupported by hit counts is not a basis.

12. "verif*"/"unlimited" string. Defendants maintain this string. OE's time-period objection is moot because the Order fixes the period, and OE offered nothing further on the call.

13. "hallucinat*" string. Defendants will drop "NEJM" as a standalone term from this string. Defendants otherwise maintain the string. In other words,

Defendants propose: hallucinat* OR USMLE OR "United States Medical Licensing Examination" OR NEJM OR (license* w/3 exam*) OR (incorrect w/3 answer*) OR (wrong w/3 answer*) OR accura* OR inaccura* OR "perfect 100%" OR perfect OR (perfect w/3 100%).

14. "Ziegler" string. Defendants maintain this string.

15. String containing "hit w/3 rate." Defendants will drop "hit w/3 rate." Defendants otherwise maintain the string. In other words, Defendants propose: hallucinat* OR (false w/3 confidence) OR "life and death" OR perfect* OR (error w/3 rate).

16. "Apple"/"App Store" string. Defendants accept OE's revised string, except for the limiter of Defendants' names that OE added at the end. In other words, Defendants propose: "#1 App for Doctors" OR ((Apple OR AppStore OR (App w/3 Store)) AND (rank* OR "#1" OR "number 1")

Defendants maintain their proposals on all other strings. Please provide OE's final written position on each disputed string, with hit counts for any string OE contends is unduly burdensome, by 5:00 p.m. ET on Friday, October 2. Absent agreement, Defendants will renew their motion as the Order permits.

## V. OE Has Not Responded to Defendants' September 25 Slack Inquiry

On September 25, we responded to your September 23 email reporting that OE's Slack data for June 1, 2023 through February 6, 2026 "cannot be recovered." We declined consent under Paragraph 6(c)(i) of the Stipulated ESI Order (Dkt. 57), asked OE to preserve the Slack data in every form (including anything its forensic vendor collected, imaged, or partially recovered), requested the Paragraph 7 information explaining how and when the data were lost, and asked for the facts of OE's litigation hold. We requested a response by 5:00 p.m. ET yesterday; OE did not respond. Instead, OE's position was that the Slack data "are gone" and that OE "fully expect[s] a sanctions motion." That is not a response. It does not confirm that OE is preserving what its vendor collected, the Slack data outside the lost period, the Slack exports and administrative, retention, and audit logs, or the backup media, and it supplies none of the Paragraph 7 information.

Please confirm whether OpenEvidence will agree to respond to the discovery requests and take other actions identified in Appendix A on an expedited basis. If it not agree, Defendants intend to seek relief from the Court to that end. We ask that OpenEvidence confirm which requests it will undertake to perform by 12:00 p.m. ET

on Friday, October 2 and provide the information requested in our prior correspondence on this topic. We are available to meet and confer again if you would find it productive.

**VI. Objections to the Supplemental Requests for Production**

The parties agreed to accelerate their objections to each side's most recent requests for production. Each side will serve its objections to the other side's most recent set of requests for production by noon Eastern on Friday, October 2, 2026.

**VII. Defendants' Production**

Mr. Schlafer asked whether Defendants treat October 8 as their own substantial-completion date. The Order imposes that deadline on OE alone. Defendants have already collected ESI from twelve custodians, applied OE's proposed search terms, and reviewed the results, and they are producing on a rolling basis. Defendants expect to substantially complete production under the existing parameters on a similar timeline, assuming the current schedule holds. If OE moves to extend document discovery, Defendants reserve the right to adjust accordingly. As I noted on the call, the parties' supplemental requests are on a separate track, and the timing of any production in response to them will depend on the objections to be exchanged on October 2.

Defendants reserve all rights, including with respect to their pending motion for sanctions (Dkt. 132).

Sincerely,

/s/ William K. Wray Jr.

William K. Wray Jr.

**APPENDIX A:**

**DOCUMENT REQUESTS**

**Document Request No. 42**

All handbooks, policies, guidelines, training materials, onboarding materials, instructions, announcements, and other Documents in effect or circulated at any time since June 1, 2023 Concerning the use of Slack, including the purposes for which Slack was used, the kinds of information communicated on it, which matters were to be discussed on Slack rather than by email or other means, and the retention, deletion, or preservation of Slack messages or files.

**Document Request No. 43**

Documents sufficient to show the organization of each Slack Workspace since June 1, 2023, including the name, purpose, topic, description, creation date, creator, public or private status, archive status, and membership of each channel; each user group and workflow; each Slack Connect channel and direct message shared with another organization, each organization in it, and the dates on which each organization joined and left; each app, integration, and bot installed in or connected to the Slack Workspace (including any archive, backup, eDiscovery, search, or AI tool that read or stored Slack content), its permission scopes, the person who installed it, and the dates of installation and removal; and any channel directory, channel list, naming convention, org chart, or map of its channels or teams.

**Document Request No. 44**

All Documents and Communications since June 1, 2023 that describe, summarize, quote, forward, or depict the content of any Slack message, channel, or conversation Concerning Doximity, Pathway, any other Defendant, or the subject matter of this Action, and Documents sufficient to identify each Slack channel or conversation in which any Custodian communicated Concerning any of them from June 1, 2023 through February 6, 2026.

**Document Request No. 45**

For each Slack Workspace, the Analytics, exported in native form for the longest date range Slack permits (including any "all time" or entire-history range) and for each calendar month from June 2023 to the present that Slack permits, including the Overview, Members, and Channels tabs of Slack's analytics dashboard,

a dated screenshot of the Overview tab as displayed for the longest range, and, to the extent any Slack Workspace is or was part of an Enterprise plan, each analytics file available through Slack's Analytics API (admin.analytics.getFile) for every date available.

**Document Request No. 46**

All billing statements, invoices, receipts, order forms, records of credits (including credits under Slack's Fair Billing Policy), and previously exported Billable Members Reports for each Slack Workspace from June 1, 2023 to the present, and the Billable Members Report for the 28-day period ending on the last day of each month from June 2023 to the present, to the extent Slack permits the report to be run for that period.

**Document Request No. 47**

For each Slack Workspace, the Access Logs for the longest period available, showing each sign-in by each Custodian and by each person who has served as a Primary Owner, Owner, or Admin; to the extent the Slack Workspace is or was part of an Enterprise plan, the complete Audit Logs for the longest period available, exported in JSON and CSV form; and the files named channels.json, users.json, and integration_logs.json and, to the extent the export includes them, groups.json, dms.json, and mpims.json, from a complete export of the Slack Workspace made after the date of the Court's Order permitting these Requests, together with a listing of every folder and file in that export showing its name, size, and date.

**Document Request No. 48**

Documents sufficient to show each Retention Setting and each setting governing who may edit or delete messages in effect for each Slack Workspace since June 1, 2023, and each change to any of them with its date and the person who made it, including each message Slack posted to a conversation announcing a change and a dated screenshot of each current settings page, and All Documents and Communications since June 1, 2023 Concerning any Retention Setting or any deletion, loss, export, restoration, or attempted recovery of Slack data, including all Communications with Slack Technologies, LLC or Salesforce, Inc. Concerning those matters or Your Slack plan, and any application for an export of all conversations and Slack's response.

**Document Request No. 49**

For each Forensic Vendor, its engagement letter, the instructions it received from You or Your counsel regarding how to preserve, collect, export, or recover Slack data, and the notes, logs, reports, export manifests, error messages, and other records it generated during or relating to that work. This Request does not seek the mental impressions of Your counsel.

**Document Request No. 50**

Each Litigation Hold You issued Concerning Pathway, Doximity, or this Action, and Documents sufficient to show each recipient and the date on which each received it.

**Document Request No. 51**

All emails that Slack sent since June 1, 2023 to any Custodian or to any Primary Owner, Owner, Admin, or billing contact of a Slack Workspace, regardless of the sending address, including message notification emails, digest emails, export notices, billing and plan-change notices, and notices of changes to settings or policies, and All Documents in the email accounts and files of the Custodians dated June 1, 2023 through February 6, 2026 that contain a link to a Slack message or channel (including any link containing "slack.com/archives/" or any other "slack.com" address) or an image of a Slack message or channel.

**Document Request No. 52**

For each Custodian and the period from February 7, 2026 to the present, Documents sufficient to show the number of Slack messages the Custodian sent in each month in public channels, private channels, and direct messages, including any report of Slack message volume by custodian that You or any Forensic Vendor has generated, and all Slack messages the Custodian sent or received that are responsive to any Request for Production that any Defendant has served in this Action, produced in the form the ESI Order provides.

## INTERROGATORIES

**INTERROGATORY NO. 41**

Describe the purposes for which You used Slack from June 1, 2023 through February 6, 2026, including the categories of business conducted on it, the kinds of

information communicated on it, the departments, teams, and functions that used it, and whether Slack was the principal means by which Your employees communicated with one another in writing (and, if not, which means was).

**INTERROGATORY NO. 42**

Identify each Slack channel that existed in any Slack Workspace at any time from June 1, 2023 through February 6, 2026, stating its name, its purpose or topic as recorded in Slack, its creation date, whether it was public or private, which Custodians were members of it, and each other organization with which it was shared through Slack Connect.

**INTERROGATORY NO. 43**

State whether any Custodian used Slack from June 1, 2023 through February 6, 2026 to communicate Concerning Doximity, Pathway, any other Defendant, or the subject matter of this Action, and, if so, identify each such Custodian and each channel or conversation in which that Custodian did so.

**INTERROGATORY NO. 44**

Identify each handbook, policy, guideline, training material, onboarding material, or instruction Concerning the use of Slack that was in effect at any time since June 1, 2023, including any instruction as to which matters were to be discussed on Slack rather than by email or other means, and the persons to whom each was distributed.

**INTERROGATORY NO. 45**

Identify each Slack Workspace by name, URL, workspace ID, and creation date, each person who has served as its Primary Owner, an Owner, or an Admin since June 1, 2023, and the Slack plan (for example, Free, Pro, Business+, or an Enterprise plan) in effect for it in each month from June 2023 to the present.

**INTERROGATORY NO. 46**

For each Slack Workspace and each month from June 2023 to the present, state the number of messages sent, the percentage of those messages sent in public channels, private channels, and direct messages, the number of messages each Custodian sent, and the number of active members for which Slack billed You.

**INTERROGATORY NO. 47**

Identify each Retention Setting in effect for any Slack Workspace, channel, or conversation since June 1, 2023, the date on which it was set or changed, and the person who set or changed it.

**INTERROGATORY NO. 48**

Describe how, when, and by whose action or setting the Slack Data were deleted or otherwise became unrecoverable, and state the date on which You first learned that they had.

**INTERROGATORY NO. 49**

State the date of the earliest message that exists today in each Slack channel and direct message conversation of which any Custodian is or was a member.

**INTERROGATORY NO. 50**

Describe each effort since June 1, 2023 to preserve, collect, export, or recover Slack data, including its date, method, and result and the Person (including any Forensic Vendor) who made it, and state whether You have ever applied to Slack for an export of all conversations or asked Slack to restore any data and, if so, the date of each application or request and Slack's response.

**INTERROGATORY NO. 51**

Identify each person who received a Litigation Hold from You Concerning Pathway, Doximity, or this Action, the date on which each received it, and whether it instructed the recipient to preserve Slack data.

**30(b)(6) DEPONENT**

**TOPIC NO. 1**

When and to whom You gave each Litigation Hold Concerning Pathway, Doximity, or this Action.

**TOPIC NO. 2**

What kinds and categories of information and data, including Slack data, Your employees were instructed to preserve and collect.

**TOPIC NO. 3**

What specific actions Your employees, including the Primary Owner, Owners, and Admins of each Slack Workspace, were instructed to take to preserve Slack data.

**TOPIC NO. 4**

The purposes for which You used Slack from June 1, 2023 to the present, the categories of business conducted and kinds of information communicated on it, the departments, teams, and persons, including the Custodians, that used it, and Your handbooks, policies, guidelines, training materials, onboarding materials, and instructions Concerning the use of Slack, including which matters were to be discussed on Slack rather than by email or other means.

**TOPIC NO. 5**

The organization of each Slack Workspace since June 1, 2023, including its channels (their names, purposes, creation dates, membership, and whether public or private), user groups, workflows, and Slack Connect channels, and any naming conventions or directories for them.

**TOPIC NO. 6**

The use of Slack by any Custodian from June 1, 2023 through February 6, 2026 to communicate Concerning Doximity, Pathway, any other Defendant, or the subject matter of this Action, including the channels and conversations used, and the basis for Your counsel's statement that OpenEvidence "does not believe it had any relevant conversations on Slack" (ECF No. 134-1).

**TOPIC NO. 7**

The creation, ownership, and administration of each Slack Workspace since June 1, 2023, including the identity of each Primary Owner, Owner, and Admin, any deletion, renaming, merger, or migration of a Slack Workspace, the Slack plan in effect for each Slack Workspace in each month since June 1, 2023, each change of plan and the reason for it, and Your payments to Slack.

**TOPIC NO. 8**

Each Retention Setting and each setting governing who may edit or delete messages in effect for any Slack Workspace, channel, or conversation since June 1, 2023, and each change to any of them, including who made it, when, and why.

**TOPIC NO. 9**

The dates and extent of Your use of Slack since June 1, 2023, including the number of messages sent, active and billed members, and channels in each Slack Workspace, the number of messages each Custodian sent, and the Analytics, billing records, and other records that show them.

**TOPIC NO. 10**

How, when, and by whose action or setting the Slack Data were deleted or otherwise became unrecoverable, when You first learned it, and the basis for Your counsel's statements that the Slack Data "cannot be recovered" (ECF Nos. 131, 134-1).

**TOPIC NO. 11**

Each effort by You, Your counsel, or any Forensic Vendor since June 1, 2023 to preserve, collect, export, or recover Slack data, including each export of Slack data, each application to Slack for an export of all conversations or for the restoration of data, and, as to each Forensic Vendor, the instructions it received and the records it generated.

**TOPIC NO. 12**

The Slack data that exist today, including, for each Slack Workspace and each conversation of which any Custodian is or was a member, the date ranges of preserved messages and of deleted messages and the date of the earliest surviving message, and the sources other than Slack from which messages sent or received through Slack from June 1, 2023 through February 6, 2026 may be recovered, including emails Slack sent, the Custodians' computers and mobile devices, Slack Connect channels and the organizations in them, apps and integrations, files, and prior exports or backups.

**TOPIC NO. 13**

Your answers to Doximity's [Fourth] Set of Interrogatories and Your production in response to Doximity's [Third] Request for Production concerning Your Slack data, including how You located, generated, and exported the records You produced.

**OTHER ACTIONS**

1. serve sworn declarations from an officer of OpenEvidence with knowledge, from the Primary Owner of each OpenEvidence Slack workspace, and from OpenEvidence's forensic vendor, stating the following facts:
   a. the purposes for which OpenEvidence used Slack from June 1, 2023 through February 6, 2026, the categories of business conducted and kinds of information communicated on it, and whether any of the eight custodians identified in Dkt. 129 used it to communicate concerning Doximity, Pathway, any other Defendant, or the subject matter of this action;
   b. each channel that existed in any OpenEvidence Slack workspace at any time from June 1, 2023 through February 6, 2026, with its name, its purpose or topic as recorded in Slack, its creation date, whether it was public or private, and which of the eight custodians were members, which may be set out in a list attached to the declaration;

c. each Slack workspace OpenEvidence has used since June 1, 2023, with its name, URL, workspace ID, and creation date, and each Primary Owner, Owner, and Admin, with the dates of each person's role;

d. the Slack plan in effect for each workspace in each month since June 1, 2023;

e. each message and file retention setting in effect since June 1, 2023 at the workspace, channel, and conversation level, each change to any such setting, the date of the change, and the person who made it;

f. how and when the Slack data for June 1, 2023 through February 6, 2026 were deleted, and by whom;

g. each attempt to collect, export, or recover Slack data, by date, method, and result, including the forensic vendor's identity and the basis for its conclusion that the data cannot be recovered;

h. whether OpenEvidence has applied to Slack for an export of all conversations or asked Slack to restore data, with the dates and results;

i. the Slack data that exist today, by workspace and by conversation, with the date of the earliest surviving message in each;

j. the date of each litigation hold, its recipients, and whether it covered Slack; and

k. every other source of electronically stored information subject to the Court's September 17, 2026 Order (Dkt. 129) that has been lost;

2. request from Slack Technologies, LLC all records of its account, apply to Slack for an export of all conversations, provide said exports to Defendants, and give written consent to Slack's disclosure of OpenEvidence's account records to the Doximity Defendants; and

3. identify each litigation hold notice it issued concerning Pathway Medical, Inc., Doximity, Inc., or this action, with its date, its recipients, and whether it covered Slack;

4. export and produce the following Slack records, in native CSV or JSON format, to the extent such records exist:

    a. Analytics Overview exports for every available date range, including all time;

    b. Members and Channels analytics exports for the longest available date range;

    c. any Analytics API daily files;

    d. billing statements, invoices, order forms, Fair Billing credits, and Billable Members Reports for June 1, 2023 to the present;

e. access logs for every Owner and Admin and for the eight custodians identified in Dkt. 129;

f. audit logs, if any workspace is or was on an Enterprise plan;

g. a current export of each workspace, including the channels.json, users.json, groups.json, dms.json, mpims.json, and integration_logs.json files;

h. documents sufficient to show the number of Slack messages each of the eight custodians sent in each month from June 2023 to the present;

**i.** a list of every app and integration installed since June 1, 2023, with its scopes; and

**j.** a list of every channel in each workspace, current or archived, with its name, ID, purpose and topic fields, creation date, creator, public or private status, archive status, member count, and which of the eight custodians are or were members;