UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |
| OPENEVIDENCE INC., : | |
| Plaintiff, : | Civil Action No. 25-11802-RGS |
| v. : | |
| DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, KHUDHUR MOHAMMED, and VINCE ROY, : | **ORAL ARGUMENT REQUESTED** |
| Defendants. : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

**DEFENDANTS DOXIMITY, INC. JEY BALACHANDRAN, JAKE KONOSKE, AND PATHWAY MEDICAL, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO OPENEVIDENCE INC.'S MOTION TO COMPEL DISCOVERY**

James R. Carroll
William K. Wray Jr.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*

Dated: October 14, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
PRELIMINARY STATEMENT .......... 1
RELEVANT BACKGROUND .......... 2

A. The Parties Settled ESI Parameters for OpenEvidence's Original Requests Months Ago. .......... 2

B. OpenEvidence Has Resisted Its Own Discovery Obligations. .......... 4

C. OpenEvidence's Supplemental Requests and Its Sweeping ESI Demands. .......... 4

ARGUMENT .......... 6

I. THE MOTION IS PREMATURE BECAUSE OPENEVIDENCE DID NOT CONFER IN GOOD FAITH BEFORE FILING. .......... 6

II. OPENEVIDENCE CANNOT REOPEN THE ESI PARAMETERS FOR ITS ORIGINAL REQUESTS. .......... 7

III. OPENEVIDENCE'S SUPPLEMENTAL REQUESTS DO NOT JUSTIFY MORE THAN DOUBLING DISCOVERY INTO DOXIMITY. .......... 8

A. OpenEvidence Has Not Justified Its Proposed New Custodians. .......... 9

1. The Substack Posts Are a Small Part of Doximity's Counterclaims. .......... 9

2. Doximity's Existing Custodians Possess ESI Relevant to the Truth or Falsity of the Substack Posts. .......... 10

3. OpenEvidence Has Not Justified Its Selections. .......... 11

B. OpenEvidence's Proposed Search Strings Are Disproportionate, and Defendants Have Offered Reasonable Compromises. .......... 13

C. OpenEvidence's Proposed 2021-to-Present Date Range Is Not Proportional. .......... 17

D. Defendants Should Not Be Compelled to Collect Text Messages. .......... 18

CONCLUSION .......... 20
REQUEST FOR ORAL ARGUMENT .......... 20

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Abiomed, Inc. v. Enmodes GmbH*,
No. 23-cv-10087-DJC, 2024 WL 4028295 (D. Mass. Sept. 3, 2024)....................11

*Bay Club Members, LLC v. Selective Insurance Company of America*,
No. 1:21-cv-11791-DPW, 2023 WL 11868238 (D. Mass. Jan. 31, 2023)................ 18

*Bucceri v. Cumberland Farms, Inc.*,
No. 15-cv-13955-IT, 2020 WL 58428 (D. Mass. Jan. 6, 2020)........................ 6

*Controlled Kinematics, Inc. v. Novanta Corp.*,
No. 17-cv-11029-ADB, 2019 WL 3082354 (D. Mass. July 15, 2019).................... 10

*Doelger v. JPMorgan Chase Bank, N.A.*,
No. 21-cv-11042-AK, 2022 WL 22837136 n.2 (D. Mass. Oct. 20, 2022) ................ 6

*Fendi Adele v. Filene's Basement, Inc.*,
No. 06-cv-244-RMB-MHD, 2009 WL 855955 (S.D.N.Y. Mar. 24, 2009).................. 18

*Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013)...................................................11

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*,
No. 17-md-2785-DDC-TJJ, 2018 WL 1440923 (D. Kan. Mar. 15, 2018)....................11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*,
No. MDL 14-2503-DJC, 2016 WL 6897809 (D. Mass. Sept. 19, 2016).................... 7

*Servicios Funerarios GG, S.A. de C.V. v. Advent International Corp.*,
*No. CV* 23-10684-IT, 2023 WL 7332836 (D. Mass. Nov. 7, 2023)....................11, 12

*Sierra v. Covidien LP*,
No. 1:21-cv-12116-NMG, 2025 WL 2463800 (D. Mass. Jan. 27, 2025) ..................10, 11

*Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund*,
329 F.R.D. 102 (D. Mass. 2018) ................................................ 6

**RULES**

Fed. R. Civ. P. 26................................................... 6, 7, 10, 19

**PRELIMINARY STATEMENT**

OpenEvidence's motion to compel (ECF No. 149) asks the Court to resolve disputes that the parties had barely begun to discuss at the time of filing. Doximity, Inc. ("Doximity"), Jey Balachandran, Jake Konoske, and Pathway Medical, Inc. ("Pathway") (collectively, the "Doximity Defendants") served objections to OpenEvidence's Third and Fourth Sets of Requests for Production on October 2, 2026, the agreed date for the parties' mutual exchange of responses to supplemental requests.[1] OpenEvidence did not serve its objections until October 5. In emails sent days before the exchange of objections, OpenEvidence demanded an enormous expansion of Defendants' ESI collections. The parties held their first meet and confer on the parties' objections on October 6. Forty-one minutes before it started, OpenEvidence sent an email that, for the first time, offered (minimal) explanations for some but not all of its ESI proposals—and in the same email threatened a motion to compel. (ECF No. 151-8 ("Oct. 6 Letter") at 1–2.) That evening, Defendants sent a detailed, term-by-term response, agreeing to numerous supplemental search strings, offering targeted counterproposals for others, and inviting further conferral that week. (*Id.* at 8–14.) Rather than respond, OpenEvidence filed this motion the next day.[2]

In addition to burdening the Court with an unripe dispute, OpenEvidence's motion is meritless. OpenEvidence seeks to more than double its discovery into Doximity in the final weeks of fact discovery: eleven new custodians, none of whom is a defendant; a five-year date

---

[1] Louis Mullie; Jonathan Hershon St-Jean; Hovhannes Karapetyan; Khudhur Mohammed; and Vince Roy (the "Individual Pathway Defendants") objected that the Requests did not seek documents in their individual possession and therefore did not provide substantive responses.

[2] OpenEvidence has demanded even more sweeping categories of documents on which it does not seek relief, presumably because it knows the requests are indefensible. That includes, among other things, all the data underlying Doximity's advertising business, and document productions from a separate securities lawsuit to which OpenEvidence is not a party.

range reaching back to January 2021, years earlier than either side has ever agreed; more than twenty new search strings that generate extremely high numbers of hits; and text messages that Defendants' investigation confirms are not a meaningful source of relevant ESI. (*Id.* at 1, 4, 7, 13.) OpenEvidence's stated justification for all of it is one defense to one element of one category of Doximity's case: OpenEvidence's dissemination of two Substack posts, authored by a third party, that appear in a handful of paragraphs of a 205-paragraph pleading. (*Id.* at 4.)

OpenEvidence's real objectives are twofold. ***First***, OpenEvidence seeks to resurrect, through discovery, a sweeping "engagement fraud" case that it tried to plead in a proposed Second Amended Complaint and then withdrew. ***Second***, OpenEvidence seeks to distract from its own discovery failures. Indeed, shortly after filing its motion, OpenEvidence sent an email to Defendants' counsel seeking their consent to a proposed motion for extension of fact discovery "given that both sides have filed motions to compel." (Ex. A at 1.)[3] In other words, OpenEvidence filed this motion to create an illusion of parity.

OpenEvidence provides no basis for the relief it seeks. Defendants have agreed to run most of the new search terms OpenEvidence proposes to satisfy its supplemental document requests. That is enough. OpenEvidence's remaining requests seek irrelevant and duplicative information and are disproportionate to the needs of the case. The motion should be denied.

## RELEVANT BACKGROUND

### A. The Parties Settled ESI Parameters for OpenEvidence's Original Requests Months Ago.

OpenEvidence propounded its original document requests in December 2025. From January through May 2026, the parties met and conferred repeatedly and exchanged extensive

---

[3] Citations in the form of "Ex. __" refer to the exhibits described in the Transmittal Declaration of William K. Wray Jr., submitted herewith.

correspondence regarding those requests. (Oct. 6 Letter at 2.) Defendants ultimately agreed to collect documents spanning multiple years from twelve custodians and to run virtually all the search terms OpenEvidence itself proposed, in addition to collecting documents and data from non-custodial sources. Those OpenEvidence-drafted terms included the very "OE" limiter OpenEvidence now attacks, as well as a string directed at the author of the two Substack posts that OpenEvidence invokes to justify its motion: "(OE) AND (Kiani OR (Doctor w/3 Kiani))." (*Id.* at 3; *see* OpenEvidence's Memorandum of Law, ECF No. 150 ("Mem.") at 6–7.)

OpenEvidence was on notice that the Substack posts were at issue throughout the parties' ESI negotiations. In February 2026, Doximity disclosed that it was pursuing false advertising claims based on identified false statements in the Substack posts. Doximity described those statements further in its Second Amended Counterclaims, which it sought leave to file in early May. The Court granted leave, and the pleading became operative on May 26, 2026. The day after that, May 27, Defendants sent a letter finalizing the custodians and search terms for their ESI collection—the culmination of months of negotiations—including the string referencing "Kiani" that OpenEvidence proposed. For the next four months, OpenEvidence never suggested that the parties had not agreed on Defendants' search terms. It first took that position in an email on September 29, 2026.

OpenEvidence attributes its silence to settlement discussions and the stay. (Mem. at 18.) But the parties did not move to stay the case until June 29, more than a month after the May 27 letter. (Oct. 6 Letter at 2 n.1.) During that month, far from pausing the litigation, OpenEvidence moved to amend its own claims to assert a sweeping theory of engagement fraud against Doximity—a motion it has since withdrawn. And the stay had been lifted for an additional month before OpenEvidence made its belated proposal.

### B. OpenEvidence Has Resisted Its Own Discovery Obligations.

Meanwhile, OpenEvidence repeatedly refused to engage with Defendants' long-pending proposals for its own collections, forcing Defendants to obtain a Court order compelling OpenEvidence to collect from a relatively modest eight custodians. (Oct. 6 Letter at 3; ECF No. 129.) OpenEvidence then defied that order, and it ***still*** refuses to apply most of the search terms Defendants have proposed—the subject of a renewed motion to compel that Defendants filed at the invitation of the Court and only after exhausting repeated efforts to confer and narrow the terms in good faith. (*See* ECF No. 145.)[4] These motions are not equivalent. Defendants' motion comes after many months of negotiations ending in an impasse on some important terms. By contrast, OpenEvidence's motion is a manufactured dispute that OpenEvidence brought to the Court almost immediately after making its proposals.

### C. OpenEvidence's Supplemental Requests and Its Sweeping ESI Demands.

On August 31, 2026, the Court permitted each party four additional written requests. (ECF No. 124.) OpenEvidence served three requests (Nos. 31–33) on September 18 and one (No. 34) on September 30. Between September 28 and October 6, OpenEvidence sent a series of emails demanding that Defendants (1) collect from a new set of custodians in addition to the twelve already collected, (2) do so across a date range extending years earlier than either party had agreed, and (3) run more than twenty new search strings in addition to the fifty strings

[4] Defendants' concerns with OpenEvidence's approach to document collection and production are further compounded by the contents of the "substantial production" it told the Court it was making when seeking an extension of time to produce Court-ordered documents. (ECF No. 152 at 1.) The ***majority*** of that production was a ***single email***, produced once for each of 175 recipients, with the same PDF attachment produced 177 times. There are only around thirty substantive emails in the entire production. Of particular concern, the production includes a large number of redactions that appear to have no legitimate basis, such as redacting the recipients of emails.

Defendants had already agreed to run. OpenEvidence alternated between claiming that these requests were issued pursuant to its previous document requests and claiming that they were issued pursuant to the supplemental requests the Court granted it leave to serve. OpenEvidence's demands also shifted from email to email. Its September 28 email identified proposed custodians; its September 29 email added two more without explanation; and its October 6 email offered justifications for ten of the twelve (but a different ten than the September 28 proposal).

Defendants served objections to Request Nos. 31–34 on October 2, and the parties conferred on October 6. On that call, OpenEvidence's counsel said OpenEvidence was considering moving to compel on all issues that same day—a threat it had made in previous emails as well. That evening, Defendants responded in writing to every component of OpenEvidence's proposal, including those OpenEvidence first explained that day. Defendants confirmed that they will not withhold documents relating to (1) what Doximity promises its advertising customers and whether it delivers on those promises, and (2) whether OpenEvidence's statements about Doximity's metrics are true or false. (Oct. 6 Letter at 4.) Defendants agreed to run several proposed strings outright, agreed to run portions of others, and offered tailored counterproposals for still others. (*Id.* at 8–12.) Defendants also explained that they are collecting documents relevant to the truth or falsity of the Substack statements on a go-get basis. (*Id.* at 8 n.3.) Defendants sought to meet and confer further that week. (*Id.* at 14.) OpenEvidence instead filed this motion on October 7, together with a set of strings that included revisions OpenEvidence never presented to Defendants before filing. (Mem. App. A at n.5.)[5]

[5] Defendants served their own supplemental requests pursuant to the Court's order. Unlike OpenEvidence, Defendants have not sought additional custodians. In light of the fast-approaching end of fact discovery, Defendants are satisfied with the eight custodians the Court previously ordered OpenEvidence to collect from.

## ARGUMENT

Discovery is limited to relevant nonprivileged information that is "proportional to the needs of the case," considering, among other things, "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court must limit discovery that is "unreasonably cumulative or duplicative," or where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii).

### I. THE MOTION IS PREMATURE BECAUSE OPENEVIDENCE DID NOT CONFER IN GOOD FAITH BEFORE FILING.

At the threshold, OpenEvidence's motion should be denied as premature. Rule 37(a)(1) and Local Rule 37.1 require the movant to confer in good faith to narrow or resolve disputes before seeking the Court's intervention. Failure to do so provides "sufficient grounds to deny [their] motion to compel." *Doelger v. JPMorgan Chase Bank, N.A.*, No. 21-cv-11042-AK, 2022 WL 22837136, at *2 n.2 (D. Mass. Oct. 20, 2022) (quoting *Bucceri v. Cumberland Farms, Inc.*, No. 15-cv-13955-IT, 2020 WL 58428, at *3 (D. Mass. Jan. 6, 2020)). Denial is especially appropriate where, as here, "a pre-motion conference between the parties would have changed the parties' fundamental positions." *Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 329 F.R.D. 102, 105 (D. Mass. 2018).

As explained above, OpenEvidence did not satisfy this requirement. OpenEvidence announced it might move to compel on all issues ***before and during*** the parties' ***first*** meet and confer. When Defendants responded comprehensively in writing hours later, with specific agreements and counterproposals, OpenEvidence ignored them and filed the next morning. OpenEvidence's list of search terms it seeks to compel (Mem. App. A) confirms that the parties were not at an impasse. OpenEvidence admits that it "modified" its proposed strings "to account

for Doximity's objections" in the October 6 letter. (Mem. App. A at n.5.) Indeed, many of the strings OpenEvidence purports to move on were ***already*** agreed to by Defendants, and others now include limiters that did not appear in the versions Defendants evaluated. (*Compare id.* App. A, with Oct. 6 Letter at 9–12.) Those revised strings were never presented to Defendants, who had no opportunity to evaluate them or run hit counts before the motion was filed. The Court should deny the motion on this basis alone and direct OpenEvidence to complete the conferral process.

## II. OPENEVIDENCE CANNOT REOPEN THE ESI PARAMETERS FOR ITS ORIGINAL REQUESTS.

Because the parties settled the ESI parameters for OpenEvidence's original thirty requests months ago, any new parameters must be grounded in the four supplemental requests the Court recently permitted. OpenEvidence's attack on the "OE" limiter (Mem. at 9–10) is an attack on its own proposal. OpenEvidence drafted the "Custodian and Search Term Protocol" that included those terms, and Defendants agreed to run virtually all of them. OpenEvidence's claim to the Court that Defendants' search terms were "improperly narrow" (ECF No. 143 at 3) has no basis, because ***OpenEvidence proposed those terms*** in the first place.

OpenEvidence's contention that it proposed the terms before the Substack posts were at issue (Mem. at 2–3) is incorrect. When OpenEvidence drafted its protocol, it knew it was spreading the claims contained in those posts. Indeed, its protocol included a string directed at the posts' author by name. Doximity also then identified the false statements in the posts in its February 2026 interrogatory responses, and the Second Amended Counterclaims became operative on May 26, 2026. It has been almost eight months since Doximity put the posts at issue, and more than four months since the Court granted leave to amend. OpenEvidence could have proposed new terms or custodians at any point during that time. It waited until just over a month remained in fact discovery. Having had "ample opportunity" to seek this discovery, OpenEvidence may not now

reopen negotiated parameters. Fed. R. Civ. P. 26(b)(2)(C)(ii); *see In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. MDL 14-2503-DJC, 2016 WL 6897809, at *3 (D. Mass. Sept. 19, 2016) (declining to compel the application of "additional search terms" where "the search terms already applied . . . [were] appropriate and sufficient to capture many of the relevant documents" and the moving party "waited to bring this issue to the Court's attention until after the Plaintiffs had run searches and produced documents").

The stay does not excuse the delay. The parties did not move to stay until June 29—more than a month after the May 27 letter—and OpenEvidence spent that month seeking to amend its own complaint to add an engagement-fraud theory it later withdrew. The stay then had been lifted for about a month before OpenEvidence made its proposal. OpenEvidence's actions have delayed discovery, and OpenEvidence now seeks further delay with an eleventh-hour re-do.

## III. OPENEVIDENCE'S SUPPLEMENTAL REQUESTS DO NOT JUSTIFY MORE THAN DOUBLING DISCOVERY INTO DOXIMITY.

Pursuant to the Court's order permitting parties to serve a small number of additional document requests, OpenEvidence issued its Request Nos. 31–34. Among other things, OpenEvidence's scattershot motion seeks an order compelling production in response to those requests. (Mem. at 17.) That is relief Defendants have already agreed to provide. As requested, Defendants are collecting and producing documents relating to Doximity's promises to advertising customers and whether OpenEvidence's statements about Doximity's metrics are true or false. (Oct. 6 Letter at 4.) OpenEvidence acknowledges that its motion is properly directed at the ESI parameters. (*See* Mem. at 17 (acknowledging that Defendants "will not withhold" responsive documents but arguing "that commitment is worthless without agreeing to search parameters").) Accordingly, those parameters are addressed one by one below.

### A. OpenEvidence Has Not Justified Its Proposed New Custodians.

Defendants agreed to collect and produce documents for twelve custodians many months ago. OpenEvidence, by contrast, insisted on limiting its collections to just three custodians. After the Court ordered it to collect from eight custodians—still fewer than Defendants—OpenEvidence now demands that Defendants add eleven more. That request is baseless for many reasons.

#### 1. The Substack Posts Are a Small Part of Doximity's Counterclaims.

First, OpenEvidence's request is not proportional to the claims and defenses at issue. OpenEvidence states that it seeks this new discovery to explore whether Doximity is somehow defrauding investors. (Ex. B at 1.) But no general theory of "fraud" is at issue in this case. OpenEvidence considered pursuing that theory in its proposed Second Amended Complaint but withdrew it. Instead, OpenEvidence's request relates solely to one of Doximity's counterclaims: that OpenEvidence disseminated two Substack posts containing identified false or misleading statements about Doximity.

The claims in the Substack posts are a small sliver of the case. Doximity challenges OpenEvidence's statements about its own product, including its claims that its users are "NPI-verified" physicians (ECF No. 110 ¶¶ 34–43), that it is free of "hallucinations" and scored a "perfect 100%" on the USMLE (*id.* ¶¶ 45–63), and that it is HIPAA-compliant and protects patient confidentiality (*id.* ¶¶ 142–158). Doximity also challenges OpenEvidence's paid campaign against Doximity using puppet "news" accounts (*id.* ¶¶ 101–112), its paid advertisements under its own name asserting false statements about Doximity (*id.* ¶¶ 77–100), the false metrics about Doximity in OpenEvidence's client pitch decks (*id.* ¶¶ 119–123), and OpenEvidence's interference with Doximity's advertising customers (*id.* ¶¶ 193–205). By contrast, the two Substack posts appear in a handful of paragraphs (*id.* ¶¶ 66–73) of a 205-paragraph pleading, and most of the false statements in those paragraphs have nothing to do with Doximity's advertising practices or any

allegation of fraud. Moreover, Doximity challenges OpenEvidence's continued promotion of uncorrected versions of the posts after the author added corrections and disclaimers—a theory that stands independent of the truth or falsity of the statements in the posts.

Defendants do not dispute that OpenEvidence may take discovery into the truth of the specific statements pleaded, and Defendants have committed to produce such documents. (*See* Oct. 6 Letter at 4.) But OpenEvidence cannot use a narrow subset of the challenged statements to launch a comprehensive investigation into Doximity's business model and all its advertising practices. Discovery must be limited to those statements and proportional to their modest role in this case. *See* Fed. R. Civ. P. 26(b)(1); *Controlled Kinematics, Inc. v. Novanta Corp.*, No. 17-cv-11029-ADB, 2019 WL 3082354, at *6 (D. Mass. July 15, 2019) (finding a document request overbroad even though it sought relevant documents and explaining that discovery must be "tempered by the proportionality and practical considerations outlined in Rule 26(b)"); *see also Sierra v. Covidien LP*, No. 1:21-cv-12116-NMG, 2025 WL 2463800, at *3 (D. Mass. Jan. 27, 2025) (limiting requests "in the interest of proportionality" although they were relevant to claims, and finding other requests disproportional because "the burden and expense of the requested discovery would outweigh its likely benefit"). OpenEvidence's request for new custodians falls far short of meeting that standard as it would turn discovery into an open-ended audit of Doximity's entire business.

### 2. Doximity's Existing Custodians Possess ESI Relevant to the Truth or Falsity of the Substack Posts.

In any event, Doximity's existing custodians are sufficient to collect ESI relevant to OpenEvidence's defenses on the Substack posts. They include numerous individuals likely to possess relevant custodial ESI on every topic covered by OpenEvidence's Third and Fourth Sets of RFPs: CEO Jeff Tangney, Chief Technology Officer Jey Balachandran, Director of Products Jake Konoske, Director of Medical AI Louis Mullie, and Vice President of Clinical AI Jonathan

Hershon St-Jean. (Oct. 6 Letter at 5.) Collectively, those individuals have extensive knowledge of user engagement with Doximity's platforms and services, Doximity's agreements with its advertising customers, audits of Doximity's advertising practices, and OpenEvidence's interference with Doximity's customer relationships. (*Id.*) Their files were searched for OpenEvidence's original thirty requests and are likewise sufficient for OpenEvidence's new ones.

As the producing parties, Defendants are "in the best position to know and identify those individuals within [their] organization likely to have information relevant to the case." *Abiomed, Inc. v. Enmodes GmbH*, No. 23-cv-10087-DJC, 2024 WL 4028295, at *4 (D. Mass. Sept. 3, 2024) (quoting *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018)). To overcome Defendants' determination, OpenEvidence "bears the burden of demonstrating that the additional requested custodian 'would provide *unique* relevant information not already obtained.'" *Id.* (emphasis in original) (quoting *Fort Worth Emps.' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013)) (denying addition of three custodians even where movant had described their roles in the dispute because movant had not "met its burden to show that they possess unique relevant information not already obtainable" from the producing party's custodians); *see also Servicios Funerarios GG, S.A. de C.V. v. Advent Int'l Corp.*, No. CV 23-10684-IT, 2023 WL 7332836, at *2 (D. Mass. Nov. 7, 2023) (denying motion to compel for same reason). Nothing in OpenEvidence's motion justifies second-guessing Doximity's assessment that its existing twelve custodians possess the information OpenEvidence seeks, and that the additional individuals OpenEvidence demands are duplicative at best.

### 3. <u>OpenEvidence Has Not Justified Its Selections.</u>

Even if the new requests justified additional custodians (and they do not), OpenEvidence has not justified the particular individuals it seeks. Of OpenEvidence's twelve proposed

custodians, only Mr. Tangney overlaps with the existing custodians, and none is a defendant. On the September 29 call, OpenEvidence's counsel described some of them as the people with "the most insight into the alleged fraud relating to user engagement," and, when asked for the basis for that belief, pointed only to unknown conversations with OpenEvidence. (Oct. 6 Letter at 6.) Defendants asked OpenEvidence to identify, for each proposed custodian, (1) the claim or defense in the operative pleadings to which that person's documents are relevant, and (2) the facts supporting OpenEvidence's belief that the person has relevant, non-duplicative documents. (*Id.*) But OpenEvidence's October 6 email (and its motion) offers only job titles, generic descriptions of responsibilities, and the conclusory assertion that each individual is "likely to possess unique information." (*Id.*; *see* Mem. at 12–14.) Many of those descriptions rest solely on "information and belief." (Mem. at 13–14.) None ties a proposed custodian to any specific challenged statement in the posts, and none explains why the person's documents would not duplicate those of the existing custodians. (Oct. 6 Letter at 6.) OpenEvidence provided no justification at all for Shivani Patel or Jared Wilkinson before filing. (*Id.*)

The justifications OpenEvidence does offer confirm that its proposal is untethered to the live claims or possess marginal or no unique information:

- Nate Gross. OpenEvidence justifies Dr. Gross on the ground that he "participated in earnings calls" concerning user metrics (Mem. at 12), but statements Doximity made to investors are not at issue. This is not a securities fraud case.
- Chris Keaney, Ben Greenberg, Woody Woodrich, Nate Closser, and Andrew Nevins. OpenEvidence previously described these five individuals collectively, in a single sentence, as responsible for "measuring, monitoring, managing, or communicating" engagement and advertising metrics. (Oct. 6 Letter at 6.) That description would sweep in a large portion of Doximity's commercial and data organization, is unrelated to any particular statement in the posts, and does not explain why OpenEvidence needs five custodians for the same topic. Indeed, OpenEvidence contends that Mr. Nevins holds "the same role and the same information" as Mr. Closser—the definition of duplicative. (Mem. at 14.)

- Lisa Greenbaum, Jeff Eaton, and Shivani Patel. Doximity's existing custodians already possess documents concerning Doximity's agreements with its advertising customers and OpenEvidence's interference with those relationships, and OpenEvidence has not explained what their new custodians would add. In fact, OpenEvidence did not even try to justify Mr. Patel to Defendants before filing. Its motion now offers that Mr. Patel is in a client-facing role. That is not enough.

- Paul Jorgensen and Jared Wilkinson. The proposal to add Mr. Jorgensen is especially improper. OpenEvidence previously justified him to Defendants in benign terms, but its own withdrawn proposed Second Amended Complaint devoted an entire paragraph to Mr. Jorgensen's unrelated criminal sentencing, which by OpenEvidence's own allegations concerned trading ahead of Doximity's August 2022 and August 2023 earnings calls years before the events giving rise to this case. (Oct. 6 Letter at 6–7 (citing ECF No. 111-1 ¶ 99).) OpenEvidence now admits in its motion that those issues are why OpenEvidence seeks to add him as a custodian. (Mem. at 14.) But it does not even try to connect those issues to the truth or falsity of any statement in the posts. OpenEvidence cannot use discovery to inject an unrelated criminal matter into this case for its prejudicial value or to generate material for its public campaign against Doximity. And OpenEvidence's only basis for proposing Mr. Wilkinson is that he "reported to" Mr. Jorgensen.

Finally, OpenEvidence's reliance on Doximity's earlier motion to compel (Mem. at 11) is misplaced. Doximity sought a modest ***eight total OpenEvidence custodians*** after OpenEvidence refused for months to engage with Defendants' long-pending proposals, and the Court granted that motion. (*See* ECF No. 129.) Defendants, by contrast, ***already agreed to twelve custodians.*** OpenEvidence now seeks ***eleven more***, on the eve of the close of fact discovery, to support a defense to a narrow slice of the counterclaims of which it has long been on notice. Defendants have not sought additional custodians for their own supplemental requests; they are satisfied with the eight total the Court has ordered. The Court should reject OpenEvidence's request.

### B. OpenEvidence's Proposed Search Strings Are <u>Disproportionate, and Defendants Have Offered Reasonable Compromises.</u>

Of the twenty strings in OpenEvidence's appendix, Defendants agree to run eleven (more than half) over their existing custodians: Strings 6, 8, 12, 13, 15, 16, 18, 19, 20, 21, and 22.[6] The

[6] OpenEvidence's numbering runs from 1 to 22 but skips numbers 3 and 11.

remaining nine strings, which broadly seek any and all internal data, metrics, bookkeeping, and documents concerning client relationships, are both disproportionate and unduly burdensome. Indeed, all the disputed strings hit on thousands or tens of thousands of documents. OpenEvidence dismisses these hit counts as "irrelevant" because they do not include its proposed new custodians. (Mem. at 10; *id.* App. A n.5.) That is illogical: if these strings hit on unreasonably high numbers of documents across the existing twelve custodians, running them across eleven more would only multiply the burden.

OpenEvidence justifies the relevance of its proposed terms by grouping them into six categories. There is no dispute as to the "revenue timing" category, as Defendants have agreed to run all strings OpenEvidence has proposed in that category. Moreover, Defendants have agreed to run one or more terms or strings in every remaining category, underscoring that the remaining disputed terms are unnecessary to identify responsive ESI relating to any issue—especially because all six "categories" relate to the same issue: the Substack posts.

**Category 1.** OpenEvidence argues it needs Strings 2, 12, 13, and 15 to capture "user and membership metrics." Defendants agree to run Strings 12, 13, and 15, so the only string in dispute is String 2. As to that string, Defendants have already run a version of it that OpenEvidence itself proposed containing an "OE" limiter it now wishes to remove. (Mem. at 10.) Doximity also previously agreed to produce documents sufficient to show monthly and quarterly user totals for Doximity GPT during the relevant period via targeted collection. (*Id.* at 8–9.) In any event, this string is not even responsive to OpenEvidence's supplemental RFPs. To the extent Doximity's "active users" are relevant to this case at all, they relate to OpenEvidence's false claims about Doximity's active users in its pitch decks (ECF No. 110 ¶¶ 120–123), not the

Substack posts that are the subject of OpenEvidence's new requests. For all those reasons, there is no basis to retroactively modify the string.

**Category 2.** OpenEvidence next argues that Strings 4–8 and 20 are necessary to capture documents concerning Doximity's "engagement, impressions, clicks, and measurement"—in other words, everything about how Doximity runs its advertising business. Defendants agree to run Strings 6, 8, and 20, leaving only Strings 4, 5, and 7 disputed:

- String 4: (Ad* or User) /3 (Engagement* or Impression*)
- String 5: Email* /3 (news OR origin* OR market OR ad*)
- String 7: (Ad* or engage*) /3 (Dashboard or Campaign)

Run over Doximity's existing custodians, those strings yield **5,154**, **37,158**, and **5,920** hits, respectively. Each of those strings is overbroad and directed at Doximity's overall business practices, rather than the specific statements at issue in the Counterclaims. By contrast, the strings Defendants agree to run in this category are directed at specific issues and facts going to the truth of specific statements in the Substack posts:

- String 6: "force open" OR Unfurl*
- String 8: (physician /5 level /5 data)
- String 20: (bot OR bots OR "invalid traffic" OR nonhuman OR "non-human" OR prefetch* OR "safe links" OR "link detonation") /5 engagement*

Those appropriately tailored strings are enough; Defendants should not be required to collect or produce tens of thousands more documents of marginal if any relevance.

**Category 3.** OpenEvidence argues it needs Strings 14, 16, and 21 to identify documents relating to "advertising delivery and advertiser decisions." Defendants agree to run Strings 16 and 21, leaving only String 14 in dispute, which is the term "Throttl*". OpenEvidence argues that the Substack posts "recount advertiser descriptions of impression 'throttling'." (Mem. at 14.)

But Doximity's counterclaims do not allege that any such statement is false, nor do they mention "throttling" at all. That term has nothing to do with this case.

**Category 4.** OpenEvidence seeks Strings 9, 10, 17, and 18 to obtain documents about the "accuracy of [Doximity's] reported data." Defendants agree to run String 18, but the remainder are overbroad and unduly burdensome:

- String 9: Inflat* OR Fraud OR Fake OR Mislead* OR Deceiv* OR Decept*
- String 10: Hide OR hiding OR hidden OR Conceal* OR Suppress* OR Coverup OR "cover /2 up" OR False OR falsify
- String 17: ("do not share" OR "don't share" OR "do not disclose" OR "not for customers") /10 engagement*

Strings 9 and 10 consist of a series of generic standalone words such as "fake," "fraud," "hide," and "false," making the nature of OpenEvidence's fishing expedition clear. Neither is even directed at the "advertising fraud" case OpenEvidence now seeks to resurrect—both seek documents related to any type of misconduct whatsoever. Before filing, Defendants told OpenEvidence that, run over Defendants' existing custodians, String 10 hit on **78,852 documents**. OpenEvidence nonetheless seeks to compel Defendants to run it without modification. String 9 is no better, hitting on **12,147 documents.** Finally, while OpenEvidence added an "engagement" limiter to String 17 before filing, that is not enough to render the remainder of the string's generic confidentiality language relevant. Indeed, OpenEvidence itself defied a Court order because it was "gravely concerned" about running "exceedingly broad search terms" such as "('confidential*' OR 'secur*' OR 'encrypt*' OR 'private' OR 'privacy') w/5 (information OR data OR platform))." (ECF No. 136 at 1.)[7]

---

[7] As detailed in the Doximity Defendants' renewed motion to compel, before doing so, OpenEvidence refused to negotiate a middle ground on that string and others. The Doximity

**Category 5.** Finally, OpenEvidence argues Defendants must run both "kiani" and "substack" to capture documents about the Substack posts. Defendants have agreed to run "kiani," which captures all references to the author of the posts. They decline to run the unlimited term "Substack," which is not reasonably likely to identify relevant documents in Defendants' custodial ESI, as opposed to that of OpenEvidence, the party that disseminated the Substack posts. Run over Doximity's existing custodians, this term hits on more than two thousand documents, most of which are not likely to be relevant.

* * *

In May 2026, Defendants agreed to run almost all the fifty complex search strings OpenEvidence proposed. OpenEvidence now seeks twenty more, most of which are not proportional. Nonetheless, Defendants have agreed to run eleven of the twenty strings. That is more than enough. The Court should deny OpenEvidence's motion as to the remainder.

### C. <u>OpenEvidence's Proposed 2021-to-Present Date Range Is Not Proportional.</u>

OpenEvidence's proposed period of January 1, 2021, through the present reaches years before any statement at issue. (Oct. 6 Letter at 12.) When asked to justify it, OpenEvidence pointed to one paragraph in the counterclaims citing a statement in Doximity's S-1 about the number of telehealth users in 2021 that OpenEvidence ***incorrectly*** relied on to spread falsehoods about Doximity in pitch decks to clients. (*Id.* (citing ECF No. 110 at 41); *see* Mem. at 15.) That allegation concerns OpenEvidence's misuse of a public figure and is not responsive to any of the requests in OpenEvidence's Third and Fourth Sets.[8] And as for OpenEvidence's request to extend the date

Defendants have since agreed to narrow that term in good faith, but OpenEvidence still refuses to produce documents.

[8] Showing that OpenEvidence's date range is a proposal in search of a justification, before filing, OpenEvidence cited a "reserve share program," an apparent reference to the posts' statement that Doximity's leaders "have been fighting to liquidate their positions at peak

range forward all the way to the "present," any relevant documents Defendants have relate to the truth or falsity of the challenged statements—historical statements about Doximity—not OpenEvidence's later dissemination of those statements.

Defendants' proposal that any additional terms run in response to OpenEvidence's recent requests remain limited to December 1, 2023, through November 30, 2025, the period the parties previously agreed on for the Doximity custodians, is reasonable. The Court should deny OpenEvidence's request to go beyond it.

**D. <u>Defendants Should Not Be Compelled to Collect Text Messages.</u>**

Finally, the Court should not compel Defendants to indiscriminately collect or produce text messages. As Defendants have consistently disclosed throughout the parties' ESI negotiations, email and Slack are the primary sources of relevant custodial ESI that Defendants possess. (Oct. 6 Letter at 7.) OpenEvidence's reliance on Doximity's prior statement that "[v]irtually all companies in this industry use messaging platforms" (Mem. at 16) is unavailing, as Defendants' investigation confirmed that their custodians used ***Slack***, not text messages, as the principal tool for short-form messaging about work, including topics at issue in this case.[9] And Defendants' previous proposal that both sides collect both texts and Slack messages was an offer for a negotiated agreement that OpenEvidence rejected (and could not have accepted as it failed to preserve its Slack messages).

valuations while buying back hundreds of millions of dollars of stock on the company's dollar." (ECF No. 110 ¶ 69.) OpenEvidence did not explain how that statement even implicates 2021, let alone how it justifies doubling the relevant period of this case.

[9] OpenEvidence objects that Defendants have not ruled out that an employee ever sent a text about work. That misapprehends the standard for discovery. A responding party's obligation is to make "reasonable efforts" to search for discoverable documents, *Bay Club Members, LLC v. Selective Insurance Company of America*, No. 1:21-cv-11791-DPW, 2023 WL 11868238, at *3 (D. Mass. Jan. 31, 2023) (quoting *Fendi Adele v. Filene's Basement, Inc.*, No. 06-cv-244-RMB-MHD, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009)), "insofar as the documents are relevant and proportional to the needs of the case," *id.*

OpenEvidence's argument that Defendants must collect texts because OpenEvidence is doing so (Mem. at 16) is the exact opposite of what it just argued to oppose Defendants' motion to compel. (*See* ECF No. 128 at 12 ("The Court should reject Defendants' unjustified bid to force both sides to 'do the same' discovery.").) As OpenEvidence argued repeatedly, the decision of which ESI sources to collect must be made on a party-by-party and custodian-by-custodian basis, including with respect to texts. Here, the parties are not similarly situated. OpenEvidence, unlike Defendants, has determined that its employees used a text-based messaging platform for work communications. (*See* ECF No. 114-11 at 3.) And Defendants, unlike OpenEvidence, have preserved and collected their custodians' Slack messages. The destruction of OpenEvidence's Slack communications makes collection of any preserved texts from OpenEvidence's custodians critically important—a circumstance not present for Defendants. Ordering duplicative collection of a source Defendants' investigation shows is not meaningfully used for work communications would impose burden without corresponding benefit. *See* Fed. R. Civ. P. 26(b)(1).

## IX. THE REQUESTED OCTOBER 12 DEADLINE AND ALTERNATIVE TWO-MONTH EXTENSION SHOULD BE DENIED.

OpenEvidence asks the Court to order Defendants to somehow collect, review, and produce the fruits of eleven new custodians, a five-year date range, and more than twenty new strings by five days after the motion was filed (a date that has already passed)—or, alternatively, to extend all case deadlines by two months. (Mem. at 19.) But the compressed schedule is a problem of OpenEvidence's own making: it waited until just over a month remained in fact discovery to propose new parameters it could have proposed months earlier. (Oct. 6 Letter at 3.) A party that has had "ample opportunity" to obtain discovery is not entitled to expanded discovery, Fed. R. Civ. P. 26(b)(2)(C)(ii), much less to a schedule extension premised on its own delay.

As to OpenEvidence's request that Defendants immediately produce all documents from their existing collections (Mem. at 8–9), Defendants are producing on a rolling basis and expect to substantially complete production under the existing parameters on a timeline consistent with the schedule. (ECF No. 141-5 at 9.) To the extent the Court is inclined to enter a new deadline for the substantial completion of document production in advance of depositions, that deadline should be mutual. OpenEvidence has already sought and received an additional week to produce documents. So far, OpenEvidence has not produced any documents at all from most custodians—or any text messages. As Defendants' parallel motion makes clear, OpenEvidence also has not yet agreed to apply terms that would identify a meaningful number of documents. If compelled to do so, it will likely require more time still to comply. Defendants should not be required to complete productions while OpenEvidence continues to refuse to do the same.

## CONCLUSION

Doximity respectfully requests that the Court deny OpenEvidence's Motion to Compel Discovery in its entirety or, in the alternative, direct the parties to complete their meet-and-confer process regarding Defendants' October 6, 2026 counterproposals, limit any additional search strings to Defendants' existing twelve custodians and the previously agreed date range, and deny OpenEvidence's requests for an October 12, 2026 production deadline and a two-month extension of all case deadlines.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.2(d), the Doximity Defendants respectfully request oral argument on OpenEvidence's motion.

Dated: October 14, 2026
Boston, Massachusetts

Respectfully submitted,

/s/ *James R. Carroll*

James R. Carroll (BBO #554426)
William K. Wray Jr. (BBO #689037)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
william.wray@skadden.com

*Counsel for Defendants Doximity, Inc., Jey Balachandran, Jake Konoske, and Pathway Medical, Inc.*