**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OPENEVIDENCE INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, KHUDHUR MOHAMMED, and VINCE ROY,<br><br>*Defendants*. | Civil Action No. 1:25-cv-11802-RGS |

**OPENEVIDENCE INC.'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL OPENEVIDENCE TO APPLY ADDITIONAL SEARCH TERMS**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................1

RELEVANT BACKGROUND ....................................................................................2

A. The Court's September 17 Order And OpenEvidence's Production ......................2

B. Defendants' Deficient Productions ..........................................................................3

ARGUMENT ..............................................................................................................4

I. OPENEVIDENCE IS COMPLYING WITH ITS DISCOVERY OBLIGATIONS AND THE COURT'S ORDER ......................................................................................4

II. OPENEVIDENCE'S HIT COUNTS ARE THE BEST AVAILABLE MEASURE. ....................................................................................................................7

III. OPENEVIDENCE'S "LIMITER" IS A REASONABLE TAILORING DEVICE, NOT A REFUSAL TO SEARCH.......................................................................................8

IV. DEFENDANTS HAVE NOT EXPLAINED THE NEED FOR SEARCH STRINGS THAT REACH BEYOND THE PLEADED STATEMENTS ..........................9

A. Strings That Reach OpenEvidence's Investors, Publishers, Customers, And Consultants Are Untethered To Any Pleaded Statement (Nos. 11, 28, 29, 34) ...........10

B. Strings That Sweep In Whole Subject Areas Rather Than Pleaded Statements Would Return Tens Of Thousands Of Documents (Nos. 6, 8-10, 18, 25-27)................12

C. Where Strings Are Tied To Pleaded Statements, OpenEvidence Has Agreed To Run The Statement-Specific Terms.................................................................15

V. THE COMPRESSED SCHEDULE AND RULE 26(b)(1) PROPORTIONALITY WEIGH AGAINST DEFENDANTS' REQUEST .................................................16

VI. OPENEVIDENCE'S OBJECTIONS ARE BASED ON RELEVANCE AND SCOPE, NOT ON ANY ATTEMPT TO AVOID ATTORNEYS' EYES ONLY PROTECTION........................................................................................................17

CONCLUSION.........................................................................................................17

## PRELIMINARY STATEMENT

The Court denied the Doximity Defendants' first request for additional search terms because Doximity failed to "adequately explain the need for each additional proposed search term," and it "encourage[d] the parties to confer on additional terms to reach a reasonable middle ground." Dkt. 129. In the weeks since that September 17 Order, OpenEvidence has collected and searched the eight Court-ordered custodians' available sources for the period of June 1, 2023 through February 6, 2026, and produced 537 documents. OpenEvidence will make another substantial production by October 15. *See* Dkt. 153. To date, OpenEvidence has produced 962 documents, nearly double that of Defendants' 555 documents. OpenEvidence has agreed to run some version of 26 of Defendants' 34 proposed strings, including some of the broadest and most relevant terms: "Doximity," "Dox," "DoxGPT," "Pathway Medical," the name of every individual Defendant, "substack," "Kiani," and "(prompt w/2 (inject* OR attack* or steal*))." Dkt. 147-2. Twelve of Defendants' search strings, (or close analogs to those strings), returned ***more than 10,000 hits apiece***, reflecting the unduly burdensome nature of Defendants' demand. With only four weeks left to go before discovery closes, Defendants nonetheless ask the Court to impose additional search strings and to require OpenEvidence to run them precisely as proposed, despite their patently overbroad and sweeping form.

And they do so even though Defendants' own productions are grossly deficient. On September 1, Defendants told the Court that they "have collected both emails and Slack communications for twelve custodians over a date range spanning more than two years, . . . and reviewed the resulting document population." Dkt. 126 at 1. Those already "reviewed" documents should have been produced ***on or before September 1***. Yet as of October 7—more than a month later, and at which point OpenEvidence moved to compel—Defendants have produced zero documents for certain custodians, and no Slack messages for others. Dkt. 150 at 1, 8. And, after

successfully moving the Court for an order requiring OpenEvidence to produce text messages from all eight of its custodians, Dkt. 129, Defendants now refuse to collect and produce text messages from any of their own. Dkt. 151-8 at 7 ("Defendants therefore do not agree to collect text messages from their custodians"); *see also* Dkt. 150 at 16. Defendants' demand that OpenEvidence run even more search strings, while it completes a collection and production under a compressed schedule, is overbroad and rings hollow given Defendants' discovery conduct to date.

The Court should deny Defendants' motion.

## RELEVANT BACKGROUND

### A. The Court's September 17 Order And OpenEvidence's Production

On September 17, 2026, the Court granted, in part, Doximity's motion to compel and ordered OpenEvidence to produce responsive documents from eight custodians for the period of June 1, 2023 through February 6, 2026 within twenty-one days. *See* Dkt. 129. The Court denied the search term portion of the motion "without prejudice to renewal upon more fulsome briefing," explaining that "Doximity does not adequately explain the need for each additional proposed search term." *Id.* The Court added that "at least some of the terms, although perhaps sweeping too broadly as currently written, would—with appropriate tailoring—be reasonably calculated to produce discoverable material," and "encourage[d] the parties to confer on additional terms to reach a reasonable middle ground." *Id.*

Following the Court's Order, OpenEvidence met and conferred with Defendants regarding their proposed search terms. OpenEvidence agreed to run all or part of 26 of Defendants' 34 search strings; and it explained, string by string, its objections to the rest. *See* Dkt. 147-2.

OpenEvidence's objections included hit counts to substantiate the burden that would be imposed by Defendants' search terms. OpenEvidence generated the counts in Google Vault—its ESI storage provider—across the eight custodians for the Court-ordered period. *See id.* Twelve

of the strings returned more than 10,000 hits each. *See id.* Certain hit counts did not account for Defendants' revised search strings due to technical limitations on Google Vault, which would not accept the complicated proposed syntax of Defendants' revised strings. Where Vault could not run Defendants' revised strings as written, OpenEvidence ran the closest string it would accept and disclosed exactly what it had run. *See id.*

On October 8, OpenEvidence produced responsive documents and communications pursuant to the Court's September 17 Order. These include, among others and by way of example: (i) documents reflecting Jake Konoske, Jey Balachandran, Eric Yamga, Hovhannes Karapetyan, Jonathan Hershon St-Jean, Khudhur Mohammed, Louis Mullie, and Vince Roy's unauthorized registration and use of the OpenEvidence Platform to steal OpenEvidence's confidential, proprietary data (search string no. 3); (ii) OpenEvidence's historical and present terms of use (search string no. 9); (iii) communications concerning OpenEvidence's performance on the United States Medical Licensing Examination ("USMLE") (search string no. 19); (iv) documents concerning OpenEvidence's ranking on the Apple App Store (search string no. 23); (v) documents concerning OpenEvidence's statement comparing Doximity and McDonald's stock (search string no. 24); (vi) communications with pharmaceutical and other advertising customers (search string no. 29); and (vii) documents concerning OpenEvidence's content partnerships with medical journals (search string no. 34). OpenEvidence continues to work diligently to comply with its discovery obligations and intends to make another production by October 15, pursuant to the Court's extension of the compliance deadline. *See* Dkt. 153.

### B. Defendants' Deficient Productions

Defendants told the Court on September 1 that they had already collected and reviewed twelve custodians' emails and Slack communications. *See* Dkt. 126 at 1. On September 30, they told OpenEvidence that they were "producing on a rolling basis" and "expect to substantially

complete production under the existing parameters on a similar timeline, assuming the current schedule holds." Dkt. 147-1 at 9. However, Defendants still have not produced any documents for certain custodians, nor any Slack messages for others, and they have refused to collect text messages from any custodian. *See* Dkt. 150 at 1, 8; Dkt. 151-8 at 7.

Notably, of their twelve designated custodians, Defendants have not produced a single document or communication from two of them: Doximity's CEO Jeff Tangney, who is believed to have overseen and spearheaded Doximity Defendants' misconduct, and Pathway's employee Eric Yamga, who registered for an OpenEvidence account with falsified healthcare professional credentials and sought to extract OpenEvidence's confidential, proprietary information. And it was not until Defendants' last production on September 15 that they finally produced documents from the remaining ten custodians. To date, Defendants have produced a mere 555 documents. Defendants' representation to the Court that they "collected both emails and Slack communications for twelve custodians over a date range spanning more than two years, … and reviewed the resulting document population" is inconsistent with their production to date. Dkt. 126 at 1. Defendants are improperly holding their document production hostage until the last possible minute to prevent OpenEvidence from identifying deficiencies therein and from reviewing those documents with sufficient time to prepare for depositions that are fast approaching.

## ARGUMENT

### I. OPENEVIDENCE IS COMPLYING WITH ITS DISCOVERY OBLIGATIONS AND THE COURT'S ORDER

On October 8, OpenEvidence produced 537 documents (1,432 pages) collected from the eight custodians, applying every term the parties agreed would be subject to the Court's deadline—among them "Doximity," "Dox," "DoxGPT," "Pathway Medical," the individual Defendants'

names, "substack," "Kiani," and "Amisana." Broome Decl. ¶ 2. That production follows the 425 documents (1,023 pages) OpenEvidence had produced before the Order.

Doximity's counterclaims, which concern the truth or falsity of specific public statements OpenEvidence made about its own platform and Doximity, do not turn on OpenEvidence's internal communications or require Defendants' onerous proposed search terms. With the exception of Doximity's counterclaims based on statements in the Kiani substack articles that OpenEvidence shared, Doximity's counterclaims target a small set of identified statements, most of which Doximity already has (and thereby attached to or quoted in its pleading). *See generally* Dkt. 110. Defendants do not need to conduct scorched earth discovery of OpenEvidence's internal communications to test these counterclaims. The Court appeared to acknowledge as much in its September 17 Order when it noted that some search terms were "perhaps sweeping too broadly as currently written." Dkt. 129. Doximity's counterclaims based on OpenEvidence re-posting the Kiani substack articles require broader discovery into whether Mr. Kiani's allegations that Doximity is defrauding its advertisers and investors are true—but that discovery turns on ***Doximity's*** internal communications and data, not documents in OpenEvidence's possession. OpenEvidence's claims, likewise, concern defined conduct: Defendants' unauthorized and deceptive access to the non-public portions of OpenEvidence's AI platform, including by misappropriating the National Provider Identifier ("NPI") of physicians, and launching prompt injection attacks to steal proprietary information. *See generally* Dkt. 38.

Defendants' baseless assertion that OpenEvidence is in "open defiance of the Court's order," Dkt. 146 at 2, is not well taken. OpenEvidence confirmed to the Court on September 28 that it "'will collect and produce responsive documents from all eight Court-ordered custodians

and from the full period of June 1, 2023 through February 6, 2026.'" Dkt. 147-1 at 2 (quoting Dkt. 136). OpenEvidence is doing exactly that.

Defendants' authorities do not support the relief they seek. Defendants cite *In re Outpatient Medical Center Employee Antitrust Litigation*, a case where the court granted a motion to compel "where objecting party provided an aggregate hit count and 'in essence summarily rejected [the] requested search terms and inappropriately failed to provide alternate proposals which the Court can assess.'" Dkt. 146 at 5 (quoting 2023 WL 4181198, at *11 (N.D. Ill. June 26, 2023)). OpenEvidence did not "summarily reject" anything; it supplied alternate proposals for most of the strings now in dispute, and provided reasons and hit counts for any others. *See* Dkt. 147-2. OpenEvidence's specific responses and objections to Doximity's search terms are unlike those in *Crowder et al. v. LinkedIn Corp.*, 2026 WL 2671413 (N.D. Cal. Sept. 10, 2026), or *Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104 (D. Mass. 2021). *See* Dkt. 146 at 4-5.

Defendants claim that OpenEvidence's hit counts are "[n]onresponsive" because they were run on analogs of strings, which Defendants had revised just two days earlier. Dkt. 146 at 5; *see also* Dkt. 147-2. Not so. OpenEvidence endeavored to provide the most accurate and up-to-date hit counts, and provided those counts without undue delay. As explained below, the counts reflect what Google Vault—OpenEvidence's ESI storage provider—can generate for search strings. Defendants never asked OpenEvidence to run revised hit reports before filing their motion, underscoring the premature nature of their motion. And Defendants' suggestion that Google Vault counts show OpenEvidence "had not even collected the documents," Dkt. 146 at 3, is a *non sequitur*: OpenEvidence has no obligation to undertake the burdensome collection of documents for search strings that are not relevant or not proportional to the needs of the case.

## II. OPENEVIDENCE'S HIT COUNTS ARE THE BEST AVAILABLE MEASURE.

Defendants' primary criticism of OpenEvidence's hit counts is that they were "run on broader or different strings than Defendants actually proposed." Dkt. 146 at 5. That is a problem of Doximity's own making. In addition to running several of Defendants' search strings exactly as or largely mirroring what Defendants wrote, OpenEvidence ran the closest string Google Vault would accept for the others, and it told Defendants exactly what it had run. *See* Dkt. 147-2.

Defendants' strings rely on a "w/N" connector (*e.g.*, "w/5" or "w/20"), which they apply both between single words and between lists of terms grouped by parentheticals. Vault does not use that connector. Google's webpage identifies one proximity operator for Vault, "AROUND," but places significant limitations on how that operator can be used.[1] Vault's constraints make it impossible to run many of the disputed strings as Defendants wrote them. For example, Strings 6, 18, and 27 connect two lists of terms with "w/5," and the lists contain wildcard terms (*e.g.*, "confidential*," "secur*," "verif*," "physician*," and "HCP*"). Vault does not allow for Defendants' proposed proximity connectors; moreover, Defendants' excessive use of wildcards results in failed searches. Google's webpage is clear that "AROUND can't be combined with a wildcard (*) search."[2]

Although OpenEvidence cannot run many of Defendants' exact proximity strings due to Vault's technical constraints, the terms OpenEvidence could run shed light on the burden imposed by Defendants' expansive and untethered terms. Four strings with no proximity connector—Strings 8, 9, 10, and 26—were run exactly as Defendants wrote them (subject to the limiter) and returned approximately 14,886, 12,218, 12,047, and 23,986 hits, respectively. *See* Dkt. 147-2.

---

[1] *See* Google, *Use operators to refine a search in Vault*, https://support.google.com/vault/answer/2474474 (last visited Oct. 14, 2026).

[2] *Id.* (explaining constraints for the "AROUND" search operator).

Strings 8, 10, and 26 draw on the same everyday vocabulary (*e.g.*, "user," "platform," "data," "query," "prompt") as the strings with proximity connectors, and Defendants offer no reason to think a proximity connector would cut hit counts enough to sufficiently reduce the burden, particularly with less than a month left for discovery.

## III. OPENEVIDENCE'S "LIMITER" IS A REASONABLE TAILORING DEVICE, NOT A REFUSAL TO SEARCH

Defendants' lead argument is that OpenEvidence's limiter makes every disputed string "a null set" and that the conduct underlying many of Doximity's counterclaims "does not relate to Doximity or Pathway." Dkt. 146 at 4-5. But for the pleaded statements that do not name Doximity, OpenEvidence has agreed to run terms keyed to the statements themselves, with no limiter: "USMLE" and "United States Medical Licensing Examination" (Dkt. 110 ¶ 59), "#1 App for Doctors" (*id.* ¶¶ 84-88), "McDonald*" (*id.* ¶¶ 89-92), "Australia Doctor Group," "AusDoc," and "Australian Doctor" (*id.* ¶ 49), "(known w/2 hallucinat*)" (*id.* ¶¶ 45-52), and the names of the four LinkedIn accounts (*id.* ¶¶ 102-111). Dkt. 147-2, Nos. 13-16, 19-21, 23-24.[3] And where the pleaded statement is itself about Doximity—"Doximity is a Loser in the AI Race" (*id.* ¶ 77), the Coatue-branded comparisons (*id.* ¶¶ 95-97), the McDonald's stock comparison (*id.* ¶¶ 89-92), the promotion of the Substack articles (*id.* ¶¶ 66-76)—a document discussing it will mention Doximity, and the standalone terms will find it. The limiter excludes only the generic remainder.

Defendants invoke the same principles when their own documents are at stake. Defendants ran almost all of OpenEvidence's proposed strings over their custodians, Dkt. 126 at 1, and those strings were keyed to the other side's name: "(OE) AND (. . .)." Dkt. 141-10, § III. Defendants

[3] The chart's response to String 24 states that OpenEvidence "will run 'McDonald*,'" Dkt. 147-2 at 8, and Defendants correctly note OpenEvidence represented it would run that term without a limiter, Dkt. 146 at 16–17 (citing Dkt. 128 at 15 n.10). OpenEvidence confirms it is running "McDonald*" on its own.

also objected to OpenEvidence's strings as "composed of generic words that describe Doximity's day-to-day operations" and "unrelated to any false or misleading statement alleged in Doximity's SAC," invoking hit counts between 42,326 and 115,127, Dkt. 151-8 at 9, and insisted that discovery "must be tailored to the statements themselves," *id.* at 8. Whatever the merits of those positions as applied to OpenEvidence's strings—which OpenEvidence addresses in its own motion to compel—Defendants cannot maintain that the same principles do not constrain strings aimed at OpenEvidence.

Defendants say OpenEvidence "cannot demand of Defendants what it refuses to do itself" because OpenEvidence previously asked Defendants to run certain terms that it will not agree to run itself, such as "(bubble w/3 watch)," "(american w/3 courtroom)," and "(tech w/3 law)." Dkt. 146 at 13. But Defendants do not explain why the search terms "tech w/3 law" or "curated w/3 research" would yield documents about the pleaded accounts rather than ordinary usage of those terms in the files of a technology company that publishes medical research tools. Moreover, it is unclear why these terms are necessary. There is no dispute that Mr. Nadler created these accounts, created the posts, and disseminated them publicly and broadly in response to Defendants' now admitted hacking of OpenEvidence's systems and theft of its proprietary information to develop Doximity's competing product.

## IV. DEFENDANTS HAVE NOT EXPLAINED THE NEED FOR SEARCH STRINGS THAT REACH BEYOND THE PLEADED STATEMENTS

The Court denied Doximity Defendants' first request because it "does not adequately explain the need for each additional proposed search term." Dkt. 129. The renewed motion does not cure that failure for the strings still in dispute. For most, Defendants point not to a pleaded statement but to a broad subject area—security, confidentiality, verification, privacy, investors,

publishers, pharmaceutical customers—and then ask for every document that uses basic vocabulary of that subject. The pleadings do not support the Doximity Defendants' overreach.

Nor is there any need for Doximity's expansive search terms, because any OpenEvidence documents relevant to this case are discrete and identifiable. OpenEvidence's claims turn on Defendants' registrations for, and queries on, the OpenEvidence Platform. Dkt. 38 ¶¶ 44, 74-86. OpenEvidence has already produced documents reflecting Defendants' hacking. Broome Decl. ¶ 3. Doximity's counterclaims relate to specific documents or statements that OpenEvidence shared: particular LinkedIn campaigns and advertisements, four LinkedIn accounts, statements about NPI verification, hallucinations, the USMLE, and HIPAA compliance, pitch decks sent to clients, and the Kiani substack articles. Dkt. 151-8 at 4. Each is an identifiable statement, advertisement, or document, and OpenEvidence has agreed to run terms that name each one. Defendants have themselves insisted that discovery into pleaded statements "must be tailored to the statements themselves," and that targeted categories of documents are "more susceptible to targeted collection than the application of search terms to custodial ESI." *Id.* at 8. The same is true of OpenEvidence's documents.

### A. Strings That Reach OpenEvidence's Investors, Publishers, Customers, And Consultants Are Untethered To Any Pleaded Statement (Nos. 11, 28, 29, 34)

String 28 asks OpenEvidence to search for any document that pairs "agree*" or "contract*" with "consult*," "advis*," "no obligation," or the names "Bhandar," "Dorfman," or "Demir." Defendants assert that the string "includes individuals Defendants understand are involved in such arrangements." Dkt. 146 at 19. However, none of the three names appears in the Second Amended Counterclaims. The only allegation is that OpenEvidence offered "undisclosed consulting contracts to individuals at potential advertisers, or intermediaries of advertisers." Dkt. 110 ¶ 182. This is an allegation, but not a claim. And Defendants have not provided any support for their

alleged "understanding" or why a search for every consulting or advisory agreement a company has signed would find evidence relevant to Doximity's claims rather than the ordinary business of a company with scientific, medical, and business advisors. This overbroad string can only be directed to an improper fishing expedition to see if other claims exist. *See McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("[P]laintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have.").

String 29 is similar. It pairs twelve terms—eleven pharmaceutical companies (one of them the bare surname "Johnson") and "Dupixent," a drug name that does not appear in the counterclaims—with "LinkedIn," "engage!," "partner*," "exclusiv*," and "equity." Dkt. 146 at 19. The relevant allegation, however, is that OpenEvidence promoted the Substack articles and certain advertisements to pharmaceutical advertising clients. Dkt. 110 ¶¶ 72, 97, 100. OpenEvidence will stipulate that it shared the already public Substack articles publicly and broadly, and in any event, it has agreed to run "substack," "Kiani," and "Amisana," which will find the documents concerning that promotion. Dkt. 147-2, No. 17. What String 29 adds is OpenEvidence's ordinary commercial dealings with its pharmaceutical customers about partnership, exclusivity, and equity—nothing Doximity has pleaded as false and, to the extent it overlaps with the Substack promotion, "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

Strings 11 and 34 fare no better. String 11 asks for any document in which "Sequoia," "Coatue," or "Google" appears within twenty words of "raise*," "invest*," "dollar*," "paid," "promot*," "advert*," "post," "press," "blog," "article*," "campaign," or "backed by." Dkt. 146 at 11. These terms seek communications between OpenEvidence and its investors—not for any legitimate reason, but to create pressure (Doximity has also separately subpoenaed Sequoia and

Coatue). Doximity challenges specific Coatue-branded advertisements that compare OpenEvidence to Doximity (Dkt. 110 ¶¶ 95-97) and a Sequoia article (¶ 52); it does not put OpenEvidence's financing or investor relations wholesale at issue. Documents about the advertisements that name Doximity will be found by the standalone terms. String 34 seeks every document mentioning "JAMA," "New" within three words of "England," "New England Journal of Medicine," "NEJM," "medical journal," "medical journals," "American Medical Association," or "AMA," a string that returned approximately 24,207 hits. Dkt. 147-2, No. 34. Defendants seek to compel OpenEvidence to run string 34 so that they may learn about OpenEvidence's "content partnerships with medical journals," Dkt. 146 at 20, a subject that is not relevant to a single claim. OpenEvidence has offered to produce documents sufficient to show the differences between the public and private versions of its platform, which is the only purpose Defendants articulate. Dkt. 147-2, No. 34. String 34 would result in communications about OpenEvidence's relationships and content partnerships with medical journals more broadly, rather than documents reflecting the technical differences between the logged-in and logged-out versions of OpenEvidence's platform. Such communications with medical journals and the terms of those content partnerships are not only confidential, competitively sensitive information, but also have no relation to any of the claims or counterclaims at issue in this case.

### B. Strings That Sweep In Whole Subject Areas Rather Than Pleaded Statements Would Return Tens Of Thousands Of Documents (Nos. 6, 8-10, 18, 25-27)

Defendants' strings on access barriers, public versus private access, authorization and audit, Terms of Use, competitive benchmarking, verification, privacy, and data monetization are built from the ordinary vocabulary of a technology company: "confidential*," "secur*," "privacy," "access," "data," "query," "prompt," "user," "authoriz*," "investigat*," "market," "platform," "analy*," "research," "unique," "field," "sell*," "search*." Dkt. 147-2, Nos. 6, 8, 10, 18, 25-27.

On the analogs OpenEvidence was able to run, twelve of the strings reported more than 10,000 hits each: String 6 (approx. 46,421), String 8 (approx. 14,886), String 9 (approx. 12,218), String 10 (approx. 12,047), String 12 (approx. 61,372), String 18 (approx. 11,995), String 19 (approx. 27,309), String 21 (approx. 12,600), String 23 (approx. 23,872), String 25 (approx. 115,577), String 26 (approx. 23,986), and String 34 (approx. 24,207). Dkt. 147-2. OpenEvidence explained why. "Confidential" within five words of "information" appears in the standard confidentiality notice on routine email; "privacy" appears in privacy-policy references in automated messages; "secur*" reaches "securities." *Id.*, No. 6. Running "authoriz*" with "HCP" would capture countless irrelevant documents because such search terms would capture documents that do not concern OpenEvidence's NPI verification methods and alleged NPI-targeted advertising. *Id.*, No. 8.

"Terms of Use" or "Terms of Service" alone returned approximately 12,218 hits, even though OpenEvidence has offered to produce the relevant Terms of Service and did, in fact, produce historical and present Terms of Service as part of OpenEvidence's most recent production on October 8. *Id.*, No. 9. Defendants have the relevant documents (*i.e.*, the past and present versions of OpenEvidence's Terms of Service); there is no reason why Defendants need all of OpenEvidence's communications surrounding its Terms of Service, especially in light of the significant hit count. The Terms of Service in effect at the time Defendants agreed to them are not in dispute. And whether Defendants' now admitted conduct—misappropriating doctors' NPIs to access OpenEvidence's platform and steal information that Doximity then used to develop a competing product—constitutes a breach of those terms turns on a straightforward application of that conduct to the plain language of the terms. OpenEvidence's internal communications about the terms are irrelevant.

OpenEvidence does not dispute that the Court compelled the narrowed versions of Request Nos. 7 and 8 and Request No. 10 as propounded, or that it must produce responsive documents. Dkt. 129. The Court's Order, however, is not an instruction to run every string that could be said to relate to the subject of those Requests; it directs the parties to "appropriate tailoring." *Id.* OpenEvidence objects to Strings 6, 8, 9, 10, and 18 because they are not reasonably tailored to the subjects the Requests identify, as evidenced by the large hit counts.

Strings 8 and 10 raise a further problem: Defendants attempt to justify them by reference to OpenEvidence's dealings with third parties. String 8, they say, will show that entering numbers in an NPI field "is a widespread industry practice," Dkt. 146 at 10, and will reach how OpenEvidence "has investigated other users whose NPIs did not match the names they provided," Dkt. 147-1 at 6. String 10 is directed to whether Defendants' conduct "reflects standard industry practice." Dkt. 146 at 11. But the Court has already denied Request No. 14 "to the extent it seeks documents related to third party offerings," allowing it only as to "any platform or online service offered by Doximity or Pathway." Dkt. 129. Defendants acknowledge that limit and agree that OpenEvidence "may exclude documents related solely to benchmarking of other third parties during its review." Dkt. 146 at 11. A string that, by Defendants' own account, is aimed at third parties—and that returned approximately 12,047 hits on the analog OpenEvidence was able to run, Dkt. 147-2, No. 10—is not the "appropriate tailoring" the Court called for. Dkt. 129. Nor can Defendants' unclean hands defense, Dkt. 146 at 11, bridge the gap. The unclean hands doctrine applies only where the misconduct has an "immediate and necessary relation to the equity that [a party] seeks in respect of the matter in litigation," that is, where it "affect[s] the equitable relations between the parties in respect of something brought before the court." *Egenera, Inc. v. Cisco Sys., Inc.*, 547 F. Supp. 3d 112, 118 (D. Mass. 2021) (quoting *Gilead Scis., Inc. v. Merck & Co.*, 888

F.3d 1231, 1239 (Fed. Cir. 2018)), *aff'd*, 141 F.4th 1350 (Fed. Cir. 2025). As proposed, Defendants' string 10 is not narrowly tailored to obtain documents that have some relation to a comparative analysis of OpenEvidence and Doximity's products. Strings 26 and 27 present the same issue. The pleaded allegations concern identifiable documents—pitch materials, a privacy-policy revision, and a Business Associate Agreement (Dkt. 110 ¶¶ 153-156)—not every use of the words "data," "query," "prompt," "search," or "sell*." String 10, as proposed, would sweep in documents that have nothing to do with OpenEvidence's conduct or alleged competitive benchmarking in relation to Doximity; such documents would have no bearing on the Doximity Defendants' unclean hands defense. Similarly, Strings 26 and 27 would sweep in documents unrelated to those identified in the counterclaims.

String 25 is another example of the problems with Defendants overbroad strings. Defendants concede that, as drafted, it "may warrant further narrowing" and, for the first time in their brief, propose removing "complian*," "privacy," and "confidential*." Dkt. 146 at 18. Proposing narrowing for the first time in a motion seeking to compel admittedly overbroad terms is not good faith, and is particularly problematic here where fact discovery closes in less than a month.

### C. Where Strings Are Tied To Pleaded Statements, OpenEvidence Has Agreed To Run The Statement-Specific Terms

For the strings that are tied to pleaded statements, OpenEvidence has agreed to run the statement-specific terms. Defendants' disagreement is over the generic words they insist on wrapping around them. For example, to find documents about the "perfect 100%" USMLE claim Dkt. 110 ¶ 59, OpenEvidence has run "USMLE" and "United States Medical Licensing Examination"; Defendants additionally want "accura*," "inaccura*," "perfect," and more, Dkt. 146 at 14. As OpenEvidence explained, "hallucinat*" and accuracy describe a "core subject of

OpenEvidence's engineering and content work as a medical AI platform," and the string returned approximately 27,309 hits. Dkt. 147-2, No. 19. Here again, Defendants offer to drop "accura*," "inaccura*," and "perfect" (Dkt. 146 at 14) for the first time in their brief. That is too late for the reasons discussed above. The same is true of Strings 20 through 22, which pair Mr. Ziegler's name—he is OpenEvidence's co-founder and a custodian, Dkt. 147-2, No. 20, so his name does little to narrow a search of his own files—or Sequoia's with "hallucinat*," and of String 24, where the advertisement alleged (Dkt. 110 ¶¶ 89-92) is captured by "McDonald*" and the remaining words ("stock*," "underperform*," "earnings") describe the ordinary files of any company with equity compensation and investors.

## V. THE COMPRESSED SCHEDULE AND RULE 26(b)(1) PROPORTIONALITY WEIGH AGAINST DEFENDANTS' REQUEST

Fact discovery closes on November 10, and the Court has stated it is "not inclined to any further delay." Dkt. 122. Defendants know the stakes of the schedule; they asked the Court to compel substantial completion of document production by September 29 to leave "a six-week period for depositions and remediation of any document discovery gaps or disputes." Dkt. 126 at 19-20; *see* Dkt. 125 at 1. Defendants now ask the Court to compel OpenEvidence to apply 27 further strings—twelve of which reported more than 10,000 hits as run—to eight custodians' files for nearly three years, with the review that necessarily follows, in the 27 days left before the close of fact discovery. Dkt. 122. Proportionality under Rule 26(b)(1) is not a matter of whether OpenEvidence is a well-capitalized company; it asks whether the burden outweighs the likely benefit. Here the likely benefit of the additional strings is small, because every document that mentions Doximity, Pathway, the individual Defendants, the Substack articles, or the pleaded statements themselves is already being produced. The burden, on the other hand, is significant

and not proportional to the needs of the case, particularly given the limited time left in discovery. Broome Decl. ¶¶ 4-5.

If the Court is inclined to order any additional terms, OpenEvidence respectfully requests that it (i) order those terms only where Defendants have tied them to a specific pleaded statement, as the Court's September 17 Order requires; (ii) direct the parties to run and exchange hit counts on any narrowed strings before OpenEvidence is required to review; and (iii) afford OpenEvidence a reasonable period for review and production of any newly ordered terms and adjust the November 10 deadline accordingly, consistent with the relief OpenEvidence has requested in its pending motion. Dkt. 150 at 19. Several additional months would be required to complete collection, review and production of what Defendants' demand.

## VI. OPENEVIDENCE'S OBJECTIONS ARE BASED ON RELEVANCE AND SCOPE, NOT ON ANY ATTEMPT TO AVOID ATTORNEYS' EYES ONLY PROTECTION

Defendants devote a section to what they call OpenEvidence's "hacking" objection. Dkt. 146 at 6. OpenEvidence does not ask the Court to revisit that ruling. Its position is that strings at issue here, such as Nos. 18, 19, 21, and 26, are not tailored to any pleaded statement, and to the extent the shorthand in OpenEvidence's chart suggested otherwise, it does not reflect the basis on which OpenEvidence has refused to agree to the at issue search strings.

## CONCLUSION

For the foregoing reasons, OpenEvidence respectfully requests that the Court deny Defendants' Renewed Motion to Compel OpenEvidence to Apply Additional Search Terms.

Dated: October 14, 2026

Respectfully submitted,

/s/ Stephen Broome
Stephen Broome (*pro hac vice*)
stephenbroome@quinnemanuel.com
Scott E. Schlafer (*pro hac vice forthcoming*)
scottschlafer@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Stacylyn M. Doore (BBO# 678449)
Ryan P. Gorman (BBO# 707239)
Vanessa Rodriguez (BBO# 713607)
Zi Chun Wang (BBO# 709803)
stacylyndoore@quinnemanuel.com
ryangorman@quinnemanuel.com
vanessarodriguez@quinnemanuel.com
michellewang@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

Nathan Hamstra (*pro hac vice*)
nathanhamstra@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Sascha N. Rand (*pro hac vice forthcoming*)
sascharand@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000

*Attorneys for OpenEvidence Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*<u>/s/ Stephen Broome</u>*

Stephen Broome (*admitted pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000