**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OPENEVIDENCE INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>DOXIMITY, INC., JEY BALACHANDRAN, JAKE KONOSKE, PATHWAY MEDICAL, INC., LOUIS MULLIE, JONATHAN HERSHON ST-JEAN, HOVHANNES KARAPETYAN, KHUDHUR MOHAMMED, and VINCE ROY,<br><br>*Defendants*. | Civil Action No. 1:25-cv-11802-RGS |

**OPENEVIDENCE INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR (1) AN ACCOUNTING AND EXPEDITED DISCOVERY CONCERNING THE DELETION OF OPENEVIDENCE INC.'S SLACK AND MESSAGING APPLICATION DATA AND (2) TO SHORTEN TIME TO RESPOND**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
RELEVANT BACKGROUND .......... 3
LEGAL STANDARD .......... 5
ARGUMENT .......... 7
I. OPENEVIDENCE HAS PROVIDED THE ACCOUNTING THAT RULE 37(E) CONTEMPLATES .......... 7
A. The Nadler Declaration Answers Under Oath Each Outstanding Question Defendants Identify as Necessary .......... 7
B. Defendants' Authorities Do Not Support the Extensive Discovery They Seek .......... 8
II. DEFENDANTS' REQUESTED DISCOVERY IS DISPROPORTIONATE AND REACHES PROTECTED MATERIAL .......... 11
A. The Remaining Discovery Is Directed to Intent, and Defendants Have Not Made the Showing Needed to Obtain It .......... 11
B. The Specific Requests Exceed Any Legitimate Need .......... 12
C. The Collateral Inquiry Defendants Request Does Not Need to Be Completed (If Undertaken at All) Prior to the Looming Close of Fact Discovery .......... 16
III. ANY REMEDY CAN BE DETERMINED ON A DEVELOPED RECORD, AND RULE 37(B) PROVIDES NO SEPARATE BASIS FOR RELIEF .......... 17
A. The Remedy Question Does Not Require the Requested Discovery .......... 17
B. Rule 37(b) Provides No Separate Basis for Relief Based on the Lost Data .......... 18
CONCLUSION .......... 20

## PRELIMINARY STATEMENT

OpenEvidence does not dispute that its Slack messages from the period the Court ordered produced no longer exist. It told Defendants so within days of confirming this fact and explained how the messages were deleted. And with this opposition, OpenEvidence provides a sworn declaration from its Chief Executive Officer, Daniel Nadler, that answers every question Defendants claim remains unanswered. It describes the OpenEvidence Slack workspace's plan and retention settings and how they operated; identifies the person at OpenEvidence who has administered the Slack workspace; describes the steps taken, with the assistance of a forensic consultant, to determine whether any of the data could be recovered, and the results of that investigation; describes the audit-log records that OpenEvidence exported; and identifies the text and messaging applications that certain custodians used for work-related communications, the custodians who used them, and whether those custodians' settings preserved messages from the ordered period. Nadler Decl. ¶¶ 3–14.[1] OpenEvidence has fully disclosed the who, what, when, how, and even the why of the data loss at issue here.

With these questions answered, what remains of the motion's requested relief is not an accounting but a burdensome and distracting onslaught of "discovery-on-discovery" that is directed primarily either at testing OpenEvidence's accounting of the facts (without any basis for questioning it) or at intent. But such discovery is premature where, as here, Defendants have yet to even move for Rule 37 sanctions, there is no basis for disputing OpenEvidence's accounting of the facts, and the discovery is unnecessary for Defendants to pursue sanctions. Indeed, Defendants tacitly disclaim any need for this discovery to pursue Rule 37 sanctions in the first instance,

[1] "Nadler Decl." and "Broome Decl." refer to the concurrently-filed Declarations of Daniel Nadler and Stephen Broome, respectively.

contending that OpenEvidence's disclosures already "establish[] the threshold elements of Rule 37(e)," Dkt. 140 at 9, and asserting that "[t]he existing record already supports sanctions under Rule 37(e)(1)," *id.* at 15. The additional discovery Defendants seek (five interrogatories, eight document requests, and a Rule 30(b)(6) deposition on six topics, on a highly-expedited three-, four-, and seven-day schedule and exempt from the discovery limits this Court set) is directed at evidence of intent that would reach privileged litigation-hold communications, the work of counsel's consulting expert, the custodians' personal devices and cloud backups, and every document any custodian has ever sent, received, or created that mentions "Slack." None of this discovery is needed to decide what remedy, if any, is appropriate for the loss of Slack messages (which OpenEvidence promptly and transparently surfaced and describes in full in the Nadler Declaration), and none of the cases Defendants cite ordered anything like the extensive discovery-on-discovery Defendants seek. Importantly, to the extent Defendants want to test OpenEvidence's intent or the facts relayed in the Nadler Declaration, they may do so in depositions of OpenEvidence witnesses, since no depositions have occurred to date.

Indeed, there is no reason this battery of overbroad and invasive discovery must begin (if ever)—much less be completed—within the four weeks that remain in fact discovery. Whether lost information "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e), and whether its loss caused any prejudice, can be assessed after the merits discovery still under way is complete. That discovery includes OpenEvidence's document production due October 15 and the depositions of OpenEvidence's witnesses, which have yet to begin. Compressing a sanctions-related inquiry into the final weeks of fact discovery, while two other discovery motions are pending, would serve only to make the remaining merits discovery harder to manage and complete. The Court should deny the motion in its entirety or, at most, (1) accept

the Nadler Declaration as OpenEvidence's accounting; and (2) deny the remaining discovery or at least defer it until such time as Defendants can show it is necessary in connection with a noticed sanctions motion after document and deposition discovery is otherwise complete.

## RELEVANT BACKGROUND

OpenEvidence's Slack workspace is available under Slack's Enterprise Select plan. Dkt. 141-11 at 1; Nadler Decl. ¶ 3. Under the workspace's retention settings, messages in public channels are deleted automatically after 75 days, and messages in private channels and direct messages are deleted automatically after 30 days. *Id.*; Nadler Decl. ¶ 4. The settings apply across the entire workspace and operate without any action by individual users. Nadler Decl. ¶ 4. To the best of Mr. Nadler's knowledge, the settings were in place before any dispute with Pathway or Doximity arose. *Id.* ¶ 5. The settings remained in effect throughout the period from June 1, 2023, through February 6, 2026, and Slack messages from that period were deleted under them. Dkt. 141-11 at 1–2; Nadler Decl. ¶ 7.

On September 17, 2026, the Court ordered OpenEvidence to produce, among other things, responsive Slack communications from eight custodians for the period from June 1, 2023, through February 6, 2026. Dkt. 129. On September 17 and 18, OpenEvidence, with the assistance of a forensic consultant, investigated whether any Slack data from that period could be recovered. Nadler Decl. ¶ 8. It confirmed that the workspace's data-export records showed no past exports of workspace data; that a channel audit report covering all 671 of the workspace's channels showed a channel-level retention duration of zero for every channel, meaning that no channel-specific setting had been applied and the workspace defaults governed every channel; that OpenEvidence did not use Slack's legal-hold feature; and that the retention option that keeps messages available through corporate exports after removing them from view was not in use. *Id.* ¶ 9. Based on those results, the forensic consulting firm concluded it was not aware of any other means of recovering

the deleted messages. *Id.* ¶ 10. Slack's published materials, upon which Defendants rely, confirm that once data is deleted, Slack retains it in backups for "up to 14 days, but often fewer," after which Slack "cannot retrieve the data for any purpose." Dkt. 140 at 4 (quoting Dkt. 141-6 at 23). After completing its investigation, OpenEvidence informed Defendants on September 23 that the Slack data for the ordered period could not be recovered. Dkt. 141-3.

Defendants responded with a list of requests on September 25, Dkt. 141-4 at 1, and then with a September 30 letter with an appendix that conveyed eleven document requests, eleven interrogatories, and thirteen Rule 30(b)(6) topics and also sought sworn declarations from an OpenEvidence officer, each workspace's Primary Owner, and OpenEvidence's forensic vendor. Dkt. 141-5 at 10–20. On October 2, OpenEvidence provided Defendants with additional information. Dkt. 141-11 at 1–2. It identified the workspace's plan and retention settings; confirmed that there was no collected, imaged, or partially recovered Slack data from the period and that it was not aware of any backup media containing Slack data; stated that it issued a written litigation hold on or around June 9, 2025; and disclosed that some custodians may have used a messaging application for work for which messages from the period were not retained, a matter it was still investigating. *Id.*[2] In the same correspondence, OpenEvidence asked Defendants to identify the dates of their own litigation holds and to confirm that their Slack and messaging data had been preserved. Dkt. 141-11 at 2. Defendants have yet to provide a full response to that request.[3]

---

[2] The Nadler Declaration filed with this Opposition identifies the applications at issue, the custodians who used them, and whether those custodians' settings preserved messages from the period. Nadler Decl. ¶¶ 13–14.

[3] Defendants responded generally that they have "preserved and collected their custodians' Slack messages" but that they "do not agree to collect text messages from their custodians." Broome Decl. Ex. 1 at 7. They did not identify the dates of their litigation holds, the scope of the preserved material, or whether the holds reached text and messaging applications.

Defendants filed this motion on October 5, asking the Court to order a response to their motion within two days; a declaration within three days of the Court's order; answers to five interrogatories and production in response to eight document requests within four days of the Court's order; a Rule 30(b)(6) deposition on six topics within seven days of the Court's order; and preservation measures that include suspending any retention setting in OpenEvidence's Slack workspace and any disappearing-message setting on any application that any of the previously-ordered eight custodians uses for work. Dkt. 142 ¶¶ 2–6. The interrogatories, document requests, and deposition topics attached to the motion differ substantially from those appended to Defendants' September 30 letter. *Compare* Dkts. 141-7, 141-8, 141-9, *with* Dkt. 141-5 at 10–20. Defendants filed the motion on the first business day after OpenEvidence's October 2 response, and the parties have never conferred about the requests in Defendants' motion.

Fact discovery closes on November 10, 2026. Dkt. 122. The Court has extended OpenEvidence's deadline to comply with the September 17 order through October 15, 2026. Dkt. 153. In addition to this motion, Defendants' renewed motion to compel OpenEvidence to apply additional search terms and OpenEvidence's motion to compel discovery from Defendants are pending. Dkts. 145, 149. No depositions of OpenEvidence's witnesses have been taken.

## **LEGAL STANDARD**

Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party seeking discovery over objection "has the burden of showing [the information's] relevance." *Cutter v. HealthMarkets, Inc.*, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (alteration in original) (citation omitted). The Court "must limit" discovery that is unreasonably cumulative or duplicative, that can be obtained from a more convenient or less burdensome source, or that falls outside Rule 26(b)(1) scope of relevance. Fed. R. Civ. P. 26(b)(2)(C).

Discovery into a party's preservation and collection efforts "should be the exception, not the rule," and a party seeking it "must overcome the default assumption of good-faith compliance." *EEOC v. Yas Caribe, Inc.*, 2026 WL 2593286, at *6 (D.P.R. Sept. 2, 2026). Before a court permits that kind of inquiry, "particularly where, as here, [the responding] party has undertaken its own search and forensic analysis and has sworn to its accuracy[,] the inquiring party must present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate." *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005). "The inquiring party's skepticism" is "not sufficient." *Coast to Coast Eng'g Servs., Inc. v. Roop*, 2016 WL 6602626, at *1 (D. Me. Nov. 8, 2016).

Rule 37(e) applies when electronically stored information "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). On a finding of prejudice, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The more severe sanctions in Rule 37(e)(2) are available "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The movant bears the burden on the threshold elements and on intent. *Bloom v. Campbell*, 2026 WL 951334, at *6 (D. Mass. Apr. 8, 2026); *Walsh v. Tara Constr., Inc.*, 2021 WL 12094222, at *4 (D. Mass. June 7, 2021). The intent requirement is "stringent" and "must be based on more than just negligence or even gross negligence in producing or preserving ESI." *Walsh*, 2021 WL 12094222, at *4 (citation omitted). Courts in this District require the movant to prove intent by clear and convincing evidence. *In re TelexFree Sec. Litig.*, 2025 WL 2371354, at *4 (D. Mass. Aug. 15, 2025); *Walsh*, 2021 WL

12094222, at *4.[4] The rule does not "place a burden of proving or disproving prejudice on one party or the other." *Bloom*, 2026 WL 951334, at *6 (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).

## ARGUMENT

### I. OPENEVIDENCE HAS PROVIDED THE ACCOUNTING THAT RULE 37(E) CONTEMPLATES

#### A. The Nadler Declaration Answers Under Oath Each Outstanding Question Defendants Identify as Necessary

Defendants' memorandum identifies five questions it claims OpenEvidence's October 2 correspondence left unanswered. Dkt. 140 at 9–11. The Nadler Declaration answers each of them.

First, as to when the retention settings were adopted and by whom, the declaration states that Mr. Nadler has served as the owner or administrator of the workspace since June 1, 2023, states what OpenEvidence knows about when the settings were put in place, and states that the settings remained in effect throughout the ordered period and that Mr. Nadler is responsible for OpenEvidence's Slack configuration. Nadler Decl. ¶¶ 5–7.

Second, as to the availability of audit logs, the Nadler Declaration explains what the workspace's audit logs reflect, how far back the available records extend, and that OpenEvidence exported those records. *Id.* ¶ 12.

Third, as to backups, prior exports, and tools that may have stored Slack content, the Nadler Declaration describes the review of the workspace's export history, the channel audit report, the

[4] The First Circuit has not addressed the standard of proof under Rule 37(e)(2). *See Hoffer v. Tellone*, 128 F.4th 433, 440 (2d Cir. 2025) (holding that a party seeking sanctions under Rule 37(e)(2) must establish the requisite intent by a preponderance of the evidence). The arguments in this opposition do not depend on which standard applies.

legal-hold feature, and the export-retention setting, together with the consultant's conclusion that it was not aware of any other means of recovery. *Id.* ¶¶ 9–11.

Fourth, as to whether any step was taken to suspend the settings, the Nadler Declaration confirms they remained in effect. *Id.* ¶ 7.

Finally, as to the other messaging application referenced in OpenEvidence's October 2 correspondence, the Nadler Declaration identifies the applications at issue (SMS text messaging and Signal), the custodians who used them for work, and which of those custodians employed retention settings that preserved messages from the period, and it explains that OpenEvidence's investigation is continuing. *Id.* ¶¶ 13–14.

The Nadler Declaration mirrors the relief courts in this District have found appropriate when a party reports a loss of data. In *Bloom*, for example, Judge Boal ordered the party that had lost data to file "a declaration, under the penalties of perjury, providing specifics regarding the loss," and in the same order required the movant to file a statement "specifying what documents he believes have been lost and whether any such documents may be available from other sources." 2026 WL 951334, at *6. Similarly, in *Town of Westport v. Monsanto Co.*, 2015 WL 13685105, at *3–4 (D. Mass. Nov. 5, 2015), the court held that a party had "sufficiently responded" to an interrogatory and document request seeking a detailed account of its preservation efforts by providing a narrative description of those efforts together with its retention policies. Once a party has investigated and "sworn to [the] accuracy" of its account, further discovery requires "at least some reliable information that the opposing party's representations are misleading or substantively inaccurate." *Williams*, 226 F.R.D. at 146. Defendants offer no such reliable information.

**B. <u>Defendants' Authorities Do Not Support the Extensive Discovery They Seek</u>**

Defendants agree their authorities show that courts in this District "regularly require a party that has lost data to account for the loss under oath before sanctions are decided." Dkt. 140 at 8.

OpenEvidence has done that. What Defendants' cited cases do *not* show is any court ordering, even before any spoliation motion has been filed, responses to an extensive combination of discovery requests including interrogatories, document requests, and a multi-topic corporate deposition notice, as well as a declaration on a highly-expedited seven-day schedule.

For example, the court-ordered relief in *Bloom* was limited to a declaration and a description of the responding party's searches, ordered while a sanctions motion was pending. 2026 WL 951334, at *6. In *TelexFree*, the court ordered a Rule 30(b)(6) deposition on "the circumstances of the missing information" only after a hearing, directed the parties to confer about its scope, and then set the topics itself after a further hearing. 2025 WL 2371354, at *3. The court ultimately found no intent to deprive, crediting the fact that the party "promptly notified Plaintiff when it discovered that it had lost evidence." *Id.* at *8. In *Maquet Cardiovascular LLC v. Abiomed, Inc.*, 2026 WL 381370, at *6, *11 (D. Mass. Feb. 11, 2026), the court set aside a request for a litigation-hold notice because it was "apparently relevant only to the spoliation issue, and no spoliation motion had yet been filed," and ordered production only once a sanctions motion was pending. And in *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, 2016 WL 11212334, at *2 (D. Mass. Jan. 26, 2016), on which *Maquet* relied, the court denied the request for the hold letter.

Defendants' out-of-circuit authorities fare no better: in each, the court either acted on a fully developed sanctions record or granted far narrower relief than Defendants seek here. In *Greenberg v. Amazon.com, Inc.*, 2025 WL 2639221, at *2–4 (W.D. Wash. Sept. 12, 2025), the company had issued no hold to most of its key custodians for more than two years, and the plaintiffs sought hold information to identify replacement custodians. In *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, at *3 (S.D. Cal. July 31, 2020), a litigation hold notice was submitted for *in*

*camera* review so that counsel's work product could be redacted. In *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC, slip op. at 16–17 (W.D. Wash. Apr. 29, 2026) (Broome Decl. Ex. 2), the court granted leave for further discovery only in denying without prejudice a fully briefed sanctions motion.[5] In *Pable v. Chicago Transit Authority*, 2021 WL 4789028, at *2–5 (N.D. Ill. Sept. 13, 2021), the court allowed discovery from a party's imaging vendor under Rule 26(b)(4)(D)(ii)'s limited "exceptional circumstances" provision allowing for discovery to experts retained for trial preparation because discrepancies between two forensic images of a party's phone rendered the imaging process itself relevant and the party in question could not fully testify to that process. The court expressly declined to decide whether that discovery was relevant to spoliation, allowed it because it bore on a merits counterclaim, and barred any inquiry into counsel's mental impressions. *Id.* at *2. And in *United States ex rel. Fischer v. Community Health Network, Inc.*, 2023 WL 4761664, at *10–11 (S.D. Ind. July 26, 2023), which Defendants cite for the proposition that the basic facts of a litigation hold are not privileged, the court held that the content of litigation hold notices remained privileged, declined to compel their production even after finding that relevant data had been lost after the duty to preserve arose because the notices "will not sufficiently advance the ball," and barred testimony about their content and about the rationale for the holds. Finally, *Cress v. Nexo Capital Inc.*, 2026 WL 2395238, at *4–6 (N.D. Cal. Aug. 17, 2026) was decided on a sanctions motion after ordinary discovery, including depositions of the employees who implemented the retention changes and of the company's corporate designees, along with

[5] Further, the court ordered the discovery by interpreting Rule 37(e) to "shift[] [the burden] to the spoliating party to prove [that] the lost information is not prejudicial." *Amazon*, slip op. at 15 (citation omitted) (Broome Decl. Ex. 2). That interpretation, however, contradicts the rule committee's statement that Rule 37(e) places the burden of proving prejudice on neither party. *Bloom*, 2026 WL 951334, at *6.

competing expert reports. None of these cases supports permitting the extensive discovery Defendants propose prior to any sanctions motion being filed or a single deposition being taken.

## II. DEFENDANTS' REQUESTED DISCOVERY IS DISPROPORTIONATE AND REACHES PROTECTED MATERIAL

### A. The Remaining Discovery Is Directed to Intent, and Defendants Have Not Made the Showing Needed to Obtain It

Defendants contend that the threshold elements of Rule 37(e) are established, Dkt. 140 at 9, and that the existing record already supports relief under Rule 37(e)(1), *id.* at 15. Thus, by Defendants' own account, the additional discovery is not needed to establish that information was lost or to permit the Court to consider measures under Rule 37(e)(1). The purpose of Defendants' discovery is therefore evidently to challenge (without basis to do so) OpenEvidence's account of the data loss. But Defendants already have a full opportunity to do that. The depositions of OpenEvidence's employees—which have yet to commence—are the best means of testing intent or challenging the facts as related in the Nadler Declaration; Defendants may ask those witnesses precisely what they knew, decided, and did about preserving the Slack data and why. There is no basis to permit an additional, expedited, and unbounded round of discovery on these issues. A movant's wish to test a sworn account does not justify standalone discovery into the responding party's preservation efforts without "some reliable information" that the account is inaccurate, *Williams*, 226 F.R.D. at 146; *see Yas Caribe*, 2026 WL 2593286, at *7, particularly where, as here, the existing schedule already permits them to do just that. Defendants identify no such information to justify their request. They point instead to the absence of facts that the Nadler Declaration now supplies. Indeed, OpenEvidence provided Defendants with much of that information within days of learning that the Slack data could not be recovered. Dkt. 141-11 at 1–2. Yet, rather than confer with OpenEvidence about any questions that remained open, Defendants filed this motion one

business day later. Any remaining questions are answered by the Nadler Declaration submitted with this opposition, which moots any legitimate request for relief.

**B. The Specific Requests Exceed Any Legitimate Need**

Even setting aside that the Nadler Declaration addresses the questions Defendants contend are unanswered and that Defendants can test the key facts underlying any sanctions motion at upcoming depositions, the discovery Defendants request is problematic because it is overbroad, disproportionate to the needs of the case in violation of Rule 26(b)(1), and/or designed to invade privileged domains. Specifically:

*The litigation hold.* Document Request No. 47 seeks each litigation hold OpenEvidence issued, Interrogatory No. 43 seeks a dated chronology of the measures taken to preserve the custodians' Slack and messaging-application messages and the person who implemented each, and Rule 30(b)(6) Deposition Topic 5 would examine a corporate designee on the same subjects. Dkts. 141-7, 141-8, 141-9. OpenEvidence has already disclosed the date of its written hold, Dkt. 141-11 at 3, and the Nadler Declaration states that the Slack retention settings were not suspended, Nadler Decl. ¶ 7. The contents of a legal hold notice "are not typically discoverable." The Sedona Conference, *Commentary on Legal Holds, Second Edition: The Trigger & The Process*, 20 Sedona Conf. J. 341, 405 (2019); *see also Fischer*, 2023 WL 4761664, at *4. The parties' Stipulated ESI Order reflects the same understanding: it treats "[d]ocuments concerning activities undertaken to comply with the duty to preserve information (including, but not limited to, litigation hold letters)" as potentially "protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B)" and exempts them from logging. Dkt. 57 ¶ 11(a)(iii). Compelling the hold itself would add nothing to what Defendants already know about the loss based on OpenEvidence's own admissions. *See Fischer,* 2023 WL 4761664, at *10–11.

*OpenEvidence's forensic consultant.* Document Request No. 46 reaches "[a]ll Documents" concerning any "attempted recovery" of Slack data, including the forensic vendor's "engagement letter, instructions, reports, and logs," and Rule 30(b)(6) Deposition Topic 5 would examine a designee about the vendor's work. Dkt. 141-8 at 3 & n.5; Dkt. 141-9 at 2. The forensic vendor assisted counsel, after the Court's September 17 order, in determining whether the data could be recovered. *See* Dkt. 141-3; Dkt. 141-11 at 2. Facts known and opinions held by such a consultant are not discoverable absent "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii); *see Maquet*, 2026 WL 381370, at *8 (finding outside counsel's emails seeking assistance with pending or anticipated litigation remained protected work product when shared with a consultant). The exceptional circumstances found in *Pable*—an out-of-circuit case—arose from an unexplained discrepancy between two forensic images. *Pable*, 2021 WL 4789028, at *2–4. There is no discrepancy here. Defendants themselves say the data "cannot be restored or replaced" through OpenEvidence, Dkt. 140 at 9, and the Nadler Declaration confirms the same.

*Usage and relevance discovery.* Several requests seek to measure OpenEvidence's use of Slack generally rather than to illuminate the data loss. Document Request No. 48 seeks "[a]ll Documents that any Custodian sent, received, or created at any time that mention Slack or the Messaging Application, by name, abbreviation, or nickname." Dkt. 141-8 at 2. That request is "not limited in any way, whether by search term, date, or identity of the sender or receiver." *Hardy v. UPS Ground Freight, Inc.*, 2019 WL 3290346, at *3 (D. Mass. July 22, 2019) (citation omitted) (denying motion to compel forensic imaging of a party's cell phone where the overbroad request would sweep in private information unrelated to the case). Document Request No. 45 seeks daily message counts for every channel and custodian "from June 1, 2023 to the present," Dkt. 141-8 at

2, n.4, although Defendants acknowledge that Slack's usage records "reach back only thirteen months," Dkt. 140 at 11, and the period after February 6, 2026 lies outside the period the Court ordered.[6] In any event, counts of messages sent show only how often OpenEvidence used Slack—which, as the Nadler Declaration explains, would reflect code—and would not shed further light on what was lost. Interrogatory No. 45 would require OpenEvidence to "[s]tate all nonprivileged facts that support any contention that the Lost Messages . . . contained no information relevant to any claim or defense," Dkt. 141-7 at 3, which seeks to put the burden on OpenEvidence to *disprove* any prejudice even though Rule 37 "does not place a burden of proving or disproving prejudice on one party or the other." *Bloom*, 2026 WL 951334, at *6 (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). If Defendants contend that particular lost information was relevant and that its loss prejudiced them, Defendants can build that showing on a full record through the merits discovery already under way. *See id.* (requiring sanctions movant to specify what it believed had been lost).

*Personal devices and backups.* Document Request No. 49 seeks all documents concerning any backup, export, or copy of any custodian's messaging-application messages, "including device, iCloud, and Google account backups," and Defendants' proposed interrogatories define the covered platforms to include "personal accounts or devices." Dkt. 141-8 at 3; Dkt. 141-7 at 3 (definition of "Covered Platform"). Courts are wary of requests that reach the contents of personal phones without a showing that they are "likely to yield the results sought" and without a protocol to protect unrelated private information. *Hardy*, 2019 WL 3290346, at *3–4; *see also John B. v.*

[6] OpenEvidence does not object to preserving, to the extent available, the workspace's surviving administrative and usage records.

*Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008). Defendants make no such showing and propose no protocol.

*The corporate deposition.* The six proposed topics overlap with the written discovery and with the information provided in the Nadler Declaration, and two of them reach protected matter: Topic 2 seeks "the basis for Your counsel's statement" about Slack, and Topic 5 seeks testimony about litigation holds and the forensic vendor's work. Dkt. 141-9 at 1. A deposition on those subjects, taken immediately after the written discovery Defendants also seek and within the same seven-day window, would be cumulative and would invite disputes over privilege that the declaration avoids. *See State St. Corp. v. Stati*, 2020 WL 8839775, at *21–22 (D. Mass. Nov. 16, 2020) (recommending that a non-party's second Rule 30(b)(6) deposition be quashed as "unreasonably cumulative or duplicative of the information supplied" in a related proceeding, and noting that "educating a knowledgeable Rule 30(b)(6) deponent will be time consuming given the lack of knowledge on the part of potential deponents"), *report and recommendation adopted*, 2021 WL 1010697 (D. Mass. Feb. 25, 2021); *Fischer*, 2023 WL 4761664, at *10–11 (limiting testimony to factual matters and barring inquiry into the content of hold notices and the rationale for holds).

*The suspension demand.* Paragraph 6 of the proposed order would require OpenEvidence to "immediately suspend any retention setting that automatically deletes messages in any of its Slack workspaces and any disappearing-message or auto-delete setting on any messaging application that any of the eight custodians uses for work communications." Dkt. 142 ¶ 6. That demand is not limited to any custodian's communications about this case or to any time period, and it would reconfigure OpenEvidence's systems for every employee. Defendants cite no authority for such an order. In *Pable*, the court declined to direct a party to disable a disappearing-message function, noting the absence of any case law supporting such an order and its

"overbreadth," because it "would cause [the party] to save all Signal messages he receives from any sender." *Pable*, 2021 WL 4789028, at *4. Preserving present-day communications—from after the relevant discovery period—indiscriminately and without regard to substance is not warranted.

### C. <u>The Collateral Inquiry Defendants Request Does Not Need to Be Completed (If Undertaken at All) Prior to the Looming Close of Fact Discovery</u>

Defendants' schedule would require OpenEvidence to serve a declaration within three days, answer written discovery within four, and produce a corporate designee within seven, all keyed to an order date that has already passed, Dkt. 140 at 14–15, and all while OpenEvidence completes its production due October 15, litigates two other discovery motions, and prepares its witnesses for deposition. *See* Dkts. 145, 149, 153. Defendants also ask that the discovery not count against the limits the Court set, Dkt. 142 ¶ 5, because they have already served every interrogatory and document request those limits allow, Dkt. 140 at 14. But "every interrogatory which is served and causes a responding party to undertake the burden of preparing and serving objections to the interrogatory" counts against the applicable limit. *Greenspan v. MasMarques*, 2025 WL 5276123, at *3 (D. Mass. Oct. 31, 2025) (internal quotation marks omitted). The sole authority Defendants offer for an exemption rests on a case-management order specific to the cited case. *Fischer*, 2023 WL 4761664, at *2 (cited in Dkt. 140 at 14).

There is no need for the compressed schedule Defendants request. Rule 37 "does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions," and courts assess timeliness by reference to, among other things, how long after the close of discovery the motion is made. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506–07 (D. Md. 2009). The questions the Rule 37(e) inquiry presents are better answered after merits discovery is complete. Whether any lost information "cannot be restored or replaced through additional discovery," depends on what that discovery yields, and the depositions of

knowledgeable witnesses can bear directly on whether any loss caused prejudice. *See TelexFree*, 2025 WL 2371354, at *7 (quoting Fed. R. Civ. P. 37(e)) (finding that the movant's depositions of key employees mitigated the claimed prejudice). For that reason, courts regularly decline to resolve these questions while merits discovery is ongoing. *See Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 237 (D. Minn. 2019) (deferring Rule 37(e)(2) relief "given the fact that discovery is still on-going, the record is not yet closed, and the case is still some time from trial"); *Maquet*, 2026 WL 381370, at *11 (intent "must await further factual development, including, potentially, testimony at the trial"). Any discovery the Court considers warranted after reviewing the Nadler Declaration can be sequenced accordingly, including after November 10, when the parties can concretely assess what more, if anything, is necessary in view of the depositions and document productions in merits discovery.

Nor is there any basis for compelling the requests Defendants attach to the motion. These specific requests were first presented with the motion, and the parties have never conferred about them. *See* L.R. 37.1(a). The meet-and-confer process—which the Court should require and enforce—may serve to narrow the requests to a manageable and appropriate scope.

## III. ANY REMEDY CAN BE DETERMINED ON A DEVELOPED RECORD, AND RULE 37(B) PROVIDES NO SEPARATE BASIS FOR RELIEF

### A. The Remedy Question Does Not Require the Requested Discovery

Defendants state that they "intend to move for sanctions promptly following the deposition." Dkt. 140 at 15. OpenEvidence will respond to any such motion on its merits and concedes nothing about the appropriate outcome. For present purposes, it is enough that the remedy question can be decided without the additional discovery Defendants seek. Rule 37(e)(1) limits any measures to those "no greater than necessary to cure the prejudice," and Defendants contend that the existing record already speaks to that question. Dkt. 140 at 15. Questions of intent

under Rule 37(e)(2), in turn, are routinely deferred until the record is otherwise complete. *See, e.g.*, *Maquet*, 2026 WL 381370, at *11; *Paisley Park*, 330 F.R.D. at 237; *Nixon v. United States*, 2026 WL 1895877, at *13 (D.N.H. Mar. 16, 2026) (denying spoliation findings "without prejudice to renewal, if appropriate, at a later point in the proceedings"). OpenEvidence expects that merits discovery will supply whatever further information is needed to resolve the remedy question; if anything more proves necessary, that question can be evaluated on a full record after fact discovery closes, rather than through collateral litigation now that would distract from the work the Court and the parties are trying to complete.

Defendants' discovery requests are also substantially overbroad in temporal scope. Defendants date OpenEvidence's anticipation of litigation to December 2024, relying on a preservation letter dated December 19, 2024. *See* Dkt. 140 at 2, 6. Although OpenEvidence disputes that a preservation obligation arose at that time, because the 30- and 75-day settings were in effect prior to December 2024, Nadler Decl. ¶¶ 5, 7, Slack messages sent between the Court-ordered relevant time period of June 1, 2023 and early October 2024 (more than sixteen of the roughly thirty-two months in the ordered period) were deleted in the ordinary course. Thus, by Defendants' own admission, more than half of the loss at issue occurred before OpenEvidence had any preservation obligation, and Rule 37(e) does not reach it. Defendants' requests, which seek probing discovery reaching the entire period and beyond, are overbroad for the same reason.

### B. <u>Rule 37(b) Provides No Separate Basis for Relief Based on the Lost Data</u>

Defendants invoke Rule 37(b)(2)(A) in a single paragraph, asserting that OpenEvidence "has failed to obey two" orders: (i) the Court's September 17, 2026 Order directing production of Slack messages by October 8, and (ii) the ESI Order in this case. Dkt. 140 at 6. They cite no authority applying Rule 37(b) to such orders, and they purport to justify the discovery they seek throughout by reference to Rule 37(e), not Rule 37(b).

In any event, Defendants' premise fails as to both orders. The September 17 order directed production by October 8, and the Court has since extended that deadline through October 15. *See* Dkts. 129, 153. As to Slack, the data for the ordered period no longer existed when the order issued, and the Supreme Court has held that Rule 37 is limited where a party's failure to comply with a production order "has been due to inability, and not to willfulness, bad faith, or any fault" of that party. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958). The ESI Order, for its part, requires each party to take "reasonable and proportionate steps to preserve relevant and discoverable ESI," consistent with the principle that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." Dkt. 57 ¶ 6 (internal quotation marks omitted). That standard restates the inquiry Rule 37(e) already governs, and courts recognize that Rule 37(e) "provides the exclusive authority for the imposition of sanctions for the spoliation of ESI." *Praecipio Consulting, LLC v. Howser*, 2026 WL 2280769, at *4 (N.D. Cal. July 30, 2026) (internal quotation marks omitted); *see also AGI Suretrack LLC v. Opisystems Inc.*, 2026 WL 1556308, at *11 (D. Kan. May 22, 2026); *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 502 (C.D. Cal. 2022).[7] Even where Rule 37(b) applies, the First Circuit directs courts to weigh "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015). Defendants

[7] Some courts have treated a failure to comply with an ESI order's preservation provisions as independently sanctionable under Rule 37(b). *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 504, 527–29 (S.D.N.Y. 2022) (declining, however, to find intent or impose an adverse inference). But Defendants do not rely on that line of authority or explain how it would apply here.

address none of those factors. Rule 37(b) provides no basis for the discovery Defendants seek in their motion.

**CONCLUSION**

The Court should deny the motion in its entirety or, at most, (1) accept the Nadler Declaration as OpenEvidence's accounting; and (2) deny the remaining discovery or at least defer it until such time as Defendants can show it is necessary in connection with a noticed sanctions motion after document and deposition discovery is otherwise complete.

Dated: October 14, 2026

Respectfully submitted,

*/s/ Stephen Broome*
Stephen Broome (*pro hac vice*)
stephenbroome@quinnemanuel.com
Scott E. Schlafer (*pro hac vice forthcoming*)
scottschlafer@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Stacylyn M. Doore (BBO# 678449)
Ryan P. Gorman (BBO# 707239)
Vanessa Rodriguez (BBO# 713607)
Zi Chun Wang (BBO# 709803)
stacylyndoore@quinnemanuel.com
ryangorman@quinnemanuel.com
vanessarodriguez@quinnemanuel.com
michellewang@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100

Nathan Hamstra (*pro hac vice*)
nathanhamstra@quinnemanuel.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400

Sascha N. Rand (*pro hac vice forthcoming*)
sascharand@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000

*Attorneys for OpenEvidence, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Stephen Broome*

Stephen Broome (*admitted pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000