# EXHIBIT 1

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
320 S. CANAL STREET
CHICAGO, ILLINOIS 60606

TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
312-407-0569
DIRECT FAX
312-407-0411
EMAIL ADDRESS
BRIAN.OCONNOR@SKADDEN.COM

October 6, 2026

**VIA EMAIL**

Scott Schlafer
Quinn Emanuel Urquhart & Sullivan, LLC
865 S Figueroa St
Los Angeles, CA 90017
scottschlafer@quinnemanuel.com

RE: OpenEvidence Inc. v. Doximity, Inc. et al., Civil Action No. 25-11802-RGS (D. Mass.)

Counsel,

We write in response to your September 28, September 29, October 1, and October 6, 2026 emails concerning OpenEvidence's recent demands that Defendants (1) collect documents from ***eleven new custodians*** in addition to the twelve custodians from whom Defendants have already collected documents, (2) do so across a date range that extends years earlier than either party has previously agreed, and (3) run more than 20 new search strings in addition to the 50 search strings Defendants agreed to run over their previous custodial collections.

As a threshold matter, Defendants note that OpenEvidence has repeatedly threatened to move to compel on aspects of its proposals that the parties had not yet discussed (and, in many cases, could not yet have discussed), let alone reached an impasse on. For example, on October 2, Defendants served objections to OpenEvidence's Third and Fourth Sets of RFPs. Defendants did so in advance of the

30-day deadline imposed by the rules because the parties had mutually agreed to exchange responses and objections to their supplemental document requests on that date. OpenEvidence, however, did not serve its own responses or objections until October 5. The parties scheduled a meet and confer on both parties' objections for the very next day, October 6. Forty-one minutes before that call, OpenEvidence sent an email that (1) provided, for the first time, basic information explaining its request for custodians, and (2) simultaneously threatened a motion to compel. On the call, counsel for OpenEvidence indicated it was considering moving to compel on all issues that ***same day***—i.e., the first time the parties had discussed objections to the document requests at all, the day after OpenEvidence served its own objections, and the same day OpenEvidence first offered justifications for its custodians. This timeline raises concern that OpenEvidence is attempting to manufacture a premature dispute to bring before the Court while continuing to evade its own discovery obligations.

As we explained during the parties' meet and confer today, Defendants are committed to negotiating in good faith on the issues below as quickly as possible, and we do not believe it is necessary to engage the Court's resources on these issues at this stage. Defendants' initial positions are set forth below.

## I. OpenEvidence Cannot Propose New ESI Parameters for Its Second Set of RFPs.

OpenEvidence propounded its original slate of document requests in December of last year. From January through May of this year, the parties met and conferred repeatedly and exchanged extensive correspondence regarding those requests. Ultimately, Defendants agreed to collect documents spanning multiple years from twelve custodians and to run virtually ***all*** of the search terms OpenEvidence itself proposed, in addition to collecting documents and data from other non-custodial sources. For the next four months, OpenEvidence never once suggested that the parties had not settled on Defendants' search terms. It first took that position in an email on September 29.[1] Likewise, OpenEvidence's recent statement to the Court that Defendants' search terms were "improperly narrow" (Dkt. 143 at 3) has no basis, because OpenEvidence proposed those terms in the first place.

---

[1] OpenEvidence argues that it acquiesced only because the parties "began engaging in settlement discussions and a proposal to stay the case." (Sept. 29 Schlafer email.) But the parties did not move to stay the case until June 29, more than a month after the May 27 letter. Far from pausing litigation to discuss settlement, during that month OpenEvidence moved to amend its own claims to expand its case and assert a sweeping theory of engagement fraud against Doximity—a motion it has since withdrawn. And the stay had been lifted for about a month before OpenEvidence made its belated proposal.

To justify its change of heart on search terms, OpenEvidence points to the fact that one of the instances of misconduct underlying Doximity's counterclaims is OpenEvidence's dissemination of two Substack posts authored by a third party. But OpenEvidence was on notice of that issue throughout the parties' ESI negotiations. When OpenEvidence drafted its proposed "Custodian and Search Term Protocol" for Defendants, it knew it was spreading the claims about Doximity contained in those posts. Indeed, OpenEvidence's protocol included terms directly referencing the posts' author, including: "(OE) AND (Kiani OR (Doctor w/3 Kiani))." And in February 2026, Doximity confirmed that the false statements about Doximity in the Substack posts would be at issue by identifying them in its interrogatory responses as statements on which it was pursuing false advertising claims. Doximity then described those statements further in its Second Amended Counterclaims, which it moved for leave to file in early May. The Court granted leave, and the Second Amended Counterclaims became Doximity's operative pleading on May 26, 2026. The very next day, Defendants sent OpenEvidence a letter finalizing the custodians and search terms for their ESI collection—the culmination of several months of negotiations. The terms Defendants agreed to run included the string containing "Kiani." It has been almost eight months since Doximity put the Kiani Substack posts at issue, and more than four months since the Court granted Doximity leave to amend its counterclaims. OpenEvidence could have proposed new terms or custodians related to those posts at any point during that time. It failed to do so. Instead, it waited until just over a month remained in fact discovery.

Meanwhile, OpenEvidence repeatedly refused to engage with Defendants' long-pending proposals for its own collections, forcing Defendants to obtain a Court order compelling OpenEvidence to collect from a relatively modest eight custodians. OpenEvidence then defied that order. And OpenEvidence ***still*** refuses to apply most of the search terms Defendants have proposed. Rather than satisfy its own discovery obligations, OpenEvidence now seeks an eleventh-hour expansion of its discovery into Defendants—an untimely attempt to suggest that Defendants, not OpenEvidence, are the ones improperly withholding documents.

## II. OpenEvidence's Proposal Is Not Reasonably Related or Proportional to Its Third and Fourth Sets of RFPs.

Because the parties settled the parameters for OpenEvidence's earlier requests long ago, any proposal for new ESI parameters must be grounded in the supplemental requests the Court recently granted the parties leave to serve. But OpenEvidence's four recently served RFPs—the three requests in its Third Set of Requests for Production of Documents, served September 18, and the single request in its Fourth Set, served September 30—cannot justify the sweeping discovery OpenEvidence seeks.

Defendants have agreed to produce documents in response to OpenEvidence's recently served document requests, including Request Nos. 31, 32, and 34. As Defendants explained, they will not withhold documents relating to (1) what Doximity promises its advertising customers and whether it delivers on those promises, and (2) whether OpenEvidence's statements about Doximity's metrics are true or false. Your ESI proposal, however, is not appropriately tailored to those issues and makes no reasonable attempt at proportionality. OpenEvidence seeks a new set of twelve custodians, none of whom is a defendant and only one of whom (Doximity CEO Jeff Tangney) overlaps with the existing twelve custodians. It seeks to extend the date range years earlier than either side has previously agreed, to a five-year period bearing no relation to any party's claims. And it asks Defendants to apply numerous, extraordinarily broad search strings directed at all of Doximity's internal data and metrics, bookkeeping, and client relationships, including unlimited standalone terms such as "click," "campaign," "fraud," "impression," and "engagement." OpenEvidence would also have Doximity produce all of its engagement data and the entire production from a separate securities lawsuit. Under OpenEvidence's proposal, discovery would become an open-ended audit of Doximity's entire business.

OpenEvidence has explained that it seeks this discovery to explore whether Doximity is somehow defrauding investors. But no general theory of "fraud" is at issue in this case. OpenEvidence considered pursuing such claims in its proposed Second Amended Complaint but withdrew them. Instead, OpenEvidence's request to more than double its discovery into Doximity rests on a defense to a single element (falsity) of one category of Doximity's counterclaims (OpenEvidence's dissemination of two Substack posts).

The Substack posts are a small sliver of Doximity's counterclaims. Doximity primarily challenges OpenEvidence's own conduct and its statements about its own product, including its claims that its users are "NPI-verified" physicians (Dkt. 110 ¶¶ 34–43), that it is free of "hallucinations" and scored a "perfect 100%" on the USMLE (¶¶ 45–63), and that it is HIPAA-compliant and protects patient confidentiality (¶¶ 142–158). Doximity also challenges OpenEvidence's paid campaign against Doximity: more than $3.6 million spent on at least 93 LinkedIn campaigns (¶¶ 7–9, 75); puppet "news" accounts created by Mr. Nadler and paid for under OpenEvidence's former corporate name (¶¶ 101–112); the "Loser in the AI Race," "#1 App for Doctors," McDonald's, and Coatue advertisements (¶¶ 77–100); false metrics in client pitch decks (¶¶ 119–123); and OpenEvidence's interference with Doximity's advertising customers (¶¶ 193–205). By contrast, the two Substack posts appear in a handful of paragraphs (¶¶ 66–73) of a 205-paragraph pleading. And most of the false statements in those paragraphs have nothing to do with Doximity's advertising practices or any allegation of fraud. Moreover, separate from the truth or falsity of

individual statements, Doximity challenges OpenEvidence's continued promotion of uncorrected versions of the posts after the author added corrections and disclaimers. (¶¶ 13–14, 70–72.)

OpenEvidence's demands seek to turn a small part of the case into the main event. OpenEvidence cannot use a narrow subset of the challenged statements to reopen, through discovery, claims it chose not to pursue. Any discovery into the truth of the Substack statements must be limited to the specific statements pleaded and proportional to their modest role in this case. Fed. R. Civ. P. 26(b)(1).

Consistent with the foregoing, Defendants' positions on OpenEvidence's specific ESI proposals follow.

**Custodians**

OpenEvidence seeks custodial documents from twelve individuals.[2] Only one (Doximity CEO Jeff Tangney) overlaps with the existing twelve custodians, and none is a defendant in the case.

OpenEvidence has not shown why Doximity's existing custodians are insufficient. They include numerous individuals likely to possess relevant custodial ESI on every topic covered by OpenEvidence's Third and Fourth Sets of RFPs. In addition to Mr. Tangney, they include Jey Balachandran (Chief Technology Officer), Jake Konoske (Director of Products), Louis Mullie (Director of Medical AI), and Jonathan Hershon St-Jean (Vice President, Clinical AI). Those individuals have extensive knowledge of user engagement with Doximity's platforms and services, Doximity's agreements with its advertising customers, audits of Doximity's advertising practices, and OpenEvidence's interference with Doximity's customer relationships. Doximity therefore maintains that its existing custodians, whose files were searched for OpenEvidence's original thirty document requests, are likewise sufficient for OpenEvidence's four new requests.

---

[2] Your September 28 email identified the following ten individuals: Jeff Tangney, Chris Keaney, Ben Greenberg, Shivani Patel, Woody Woodrich, Nate Closser, Andrew Nevins, Paul Jorgensen, Jared Wilkinson, and Jeff Eaton. Your separate email on September 29 restated that list but without explanation added two additional individuals: Nate Gross and Lisa Greenbaum, bringing the total to twelve. Then, your October 6 email providing justifications for those proposals addressed only eight of the ten individuals identified in the September 8 email (everyone ***except*** for Shivani Patel and Jared Wilkinson), plus the additional two identified on September 29 (Nate Gross and Lisa Greenbaum). It is unclear whether the discrepancies are intentional or inadvertent; Defendants assume OpenEvidence is seeking all twelve as custodians.

Even if OpenEvidence's new requests justified adding custodians (they do not), OpenEvidence has done nothing to justify the particular custodians it proposes. On the parties' September 29 meet-and-confer call, counsel described at least some of them as people with "the most insight into the alleged fraud relating to user engagement." When asked for the basis for that belief, Mr. Broome pointed only to conversations with OpenEvidence and declined to explain further. For each new proposed custodian, we asked you to identify (1) the claim or defense in the operative pleadings to which that person's documents are relevant, and (2) the facts supporting OpenEvidence's belief that the person has relevant, non-duplicative documents. Your October 6 email does not do so. It offers only job titles and generic descriptions of responsibilities, followed by the conclusory assertion that each individual is "likely to possess unique information." It does not tie any proposed custodian to any specific statement in the Substack posts that Doximity has challenged, and it does not explain why any proposed custodian's documents would not be duplicative of those of Doximity's existing custodians. Moreover, it provides no explanation or justification whatsoever for two of your proposed custodians (Shivani Patel and Jared Wilkinson).

The descriptions you provided confirm that OpenEvidence's proposal is aimed at its withdrawn generalized fraud theory rather than the live claims. For example, you justify Nate Gross on the ground that he "participated in earnings calls" related to user metrics, but statements Doximity made to investors are not at issue in this case. Similarly, you describe Chris Keaney, Ben Greenberg, Woody Woodrich, Nate Closser, and Andrew Nevins collectively, in a single sentence, as responsible for "measuring, monitoring, managing, or communicating" engagement and advertising metrics, and say they may have information about "ad campaign delivery, advertiser guarantees, engagement calculations, and internal reporting." That description would sweep in a large portion of Doximity's commercial and data organization, and it is untethered to any particular statement in the Substack posts. Nor do you explain why you need five different custodians for the same topic. And while you assert that communications concerning advertiser relationships are relevant to Doximity's allegations that OpenEvidence's conduct caused advertisers to reduce or terminate spending, Doximity's existing custodians already possess documents concerning Doximity's agreements with its advertising customers and OpenEvidence's interference with those relationships. You do not explain what Lisa Greenbaum, Jeff Eaton, or any other proposed custodian would add.

OpenEvidence's proposal to add Paul Jorgensen is especially improper. Your October 6 email describes Mr. Jorgensen blandly as one of two "senior sales personnel involved in customer-facing activities." But OpenEvidence's own withdrawn proposed Second Amended Complaint reveals why OpenEvidence actually wants him. That pleading devoted an entire paragraph to Mr. Jorgensen's unrelated criminal

sentencing. (Dkt. 111-1 ¶ 99.) According to OpenEvidence's own allegations, Mr. Jorgensen's conduct concerned trading ahead of Doximity's August 2022 and August 2023 earnings calls and their disclosures regarding customer "upsells" and guidance. (*Id.*) None of that has anything to do with the truth or falsity of any statement in the Substack posts, the only portion of Doximity's counterclaims on which OpenEvidence has attempted to justify its proposal. OpenEvidence cannot use discovery to inject an unrelated criminal matter into this case for its prejudicial value or to generate material for its public campaign against Doximity. Defendants will not add Mr. Jorgensen as a custodian.

Finally, Doximity notes that "anyone Doximity intends to call at trial" is not an appropriate custodian proposal. Defendants will disclose witnesses as the Federal Rules and the Court's schedule require.

**ESI Sources**

As Defendants have consistently and transparently disclosed throughout the parties' lengthy ESI negotiations, email and Slack are the primary sources of relevant custodial ESI that Defendants possess in this case. Our investigation has confirmed that Defendants' custodians used Slack as their principal tool for short-form messaging about work matters, including any topics at issue this case, and generally did not use text messages for internal work communications. Defendants therefore do not agree to collect text messages from their custodians. Defendants further reject OpenEvidence's contention that because it is collecting text messages, Defendants are required to do the same. As Defendants have explained, the decision of which ESI sources to collect must be made on a party-by-party and custodian-by-custodian basis—which was OpenEvidence's position too until recently, including with respect to texts. OpenEvidence, unlike Defendants, has determined that its employees used a text-based messaging platform for work communications. (Dkt. 114-11 at 3.) Moreover, Defendants, unlike OpenEvidence, have preserved and collected their custodians' Slack messages. The destruction of OpenEvidence's Slack communications makes collection of any preserved texts from OpenEvidence's custodians critically important—a circumstance not present for Defendants.

**Search Terms**

Taken as a whole, OpenEvidence's search term proposal is plainly disproportionate to the needs of the case. Among other things, OpenEvidence asks Defendants to run standalone terms such as "click," "campaign," "fraud," "impression," and "engagement." In addition, as explained below, most of the proposed terms are not tied to any particular statement in the Substack posts on which

Doximity is pursuing claims. Instead, they again appear built around a broad theory that Doximity committed "fraudulent user engagement" against "Doximity's clients." (Sept. 29 Schlafer email.) That theory is the subject of OpenEvidence's withdrawn proposed Second Amended Complaint, not its live claims. In fact, OpenEvidence's proposal goes even further than its withdrawn claims did. To take just one example, OpenEvidence asks Defendants to run a search string about "bots"—a topic that appears nowhere in either the counterclaims or OpenEvidence's withdrawn complaint—that would return more than a ***million*** document hits. Nothing about Doximity's counterclaims regarding the Substack posts puts an unbounded investigation into Doximity's business practices at issue. Discovery into the truth or falsity of the statements alleged in the counterclaims must be tailored to the statements themselves.[3]

Subject to the foregoing, Doximity's positions on OpenEvidence's supplemental terms are below. Doximity agrees to run any agreed supplemental search terms over its existing custodians only, not over any new custodians.

| | |
|---|---|
| Kiani OR substack | **Agreed in part.** Defendants agree to run the term "Kiani" without any limiter. Defendants do not agree to run the term "Substack," which is not reasonably likely to identify relevant documents in Defendants' custodial ESI, as opposed to that of OpenEvidence, the party that disseminated the Substack posts. |
| QAU OR (quarter* /3 user) OR MAU OR (monthly /3 user) OR WAU OR (weekly /3 user) OR DAU OR (daily /3 user) OR Active /3 user | **Objection.** This term relates to OpenEvidence's Second Set of RFPs, not its Third or Fourth Sets of RFPs. Defendants already ran this term with an "OE" limiter that OpenEvidence itself proposed. In addition, Doximity previously agreed to produce documents sufficient to show monthly and quarterly user totals for Doximity GPT during the time period implicated by the Amended Counterclaims. That category of documents is more susceptible to targeted collection than the application of search terms to custodial ESI. |

[3] As we have explained, Defendants are also making reasonable efforts to collect documents relevant to the issues in the case, including the truth or falsity of the statements you have focused on contained in the Substack posts, on a go-get basis.

| | |
|---|---|
| Engagement* or Impression* | **Objection.** These terms are extremely overbroad and disproportionate to the needs of this litigation, as both are used daily throughout Defendants' advertising business. Run over Defendants' existing twelve custodians, they return a hit count of **42,326 documents.** |
| Email* /5 (news OR origin* OR market OR ad*) | **Objection.** This string is unrelated to any false or misleading statement alleged in Doximity's SAC. It is also composed of generic words that describe Doximity's day-to-day operations and will capture a large volume of irrelevant material. Run over Defendants' existing twelve custodians, these terms return a hit count of **47,650 documents**. |
| "force open" OR Unfurl* OR Click; | **Objection.** This string is unrelated to any false or misleading statement alleged in Doximity's SAC. It also includes the unlimited standalone word "click," which is not tailored to any issue in the case. Run over Defendants' existing twelve custodians, these terms return a hit count of **115,127 documents**. |
| Dashboard or Campaign; | **Objection.** This string is composed of generic words that describe Doximity's day-to-day operations and would capture a large volume of irrelevant material. Run over Defendants' existing twelve custodians, it returns a hit count of **50,723 documents**. |
| PLD OR (physician /5 level /5 data) | **Agreed in part.** This string is unrelated to any false or misleading statement alleged in Doximity's SAC. Nonetheless, Defendants agree to run the term (physician /5 level /5 data). |

| | |
|---|---|
| Inflat* OR Fraud OR Fake OR Mislead* OR Deceiv* OR Decept* | **Objection.** These are unlimited lists of common words that appear throughout ordinary business, legal, compliance, and security communications. They are not tied to any statement at issue**.**<br><br>**Counterproposal:** Defendants will run these strings within 5 words of (engagement OR “active user*” OR MAU OR QAU). |
| Hide OR hiding OR hidden OR Conceal* OR Suppress* OR Coverup OR “cover /2 up” OR False OR falsify | **Objection.** These are unlimited lists of common words that appear throughout ordinary business, legal, compliance, and security communications. They are not tied to any statement at issue. Run over Defendants’ existing twelve custodians, these terms return a hit count of **78,852 documents**.<br><br>**Counterproposal:** Defendants will run these strings within 5 words of (engagement OR “active user*” OR MAU OR QAU). |
| Doxxing OR doxing | **Agreed.** Defendants will run these terms over their existing twelve custodians’ documents. |
| “Reserved share program” | **Agreed.** Defendants will run this term over their existing twelve custodians’ documents. |
| (Greenberg AND WeWork) OR (Greenberg AND “We Work”) | **Agreed in part.** This string appears unrelated to any false or misleading statement alleged in Doximity’s SAC and is not designed to identify documents responsive to OpenEvidence’s RFPs. Nonetheless, Defendants will run (Greenberg AND WeWork). |
| (80% OR “80 percent” OR “85%” OR “85 percent”) /3 active. | **Objection.** This string appears unrelated to any false or misleading statement alleged in Doximity’s SAC |

| | |
|---|---|
| | and is not designed to identify documents responsive to OpenEvidence's RFPs. |
| Throttl* | **Objection.** This string appears unrelated to any false or misleading statement alleged in Doximity's SAC and is not designed to identify documents responsive to OpenEvidence's RFPs. It is also a common technical term that would return engineering material unrelated to any statement at issue. Run over Defendants' existing twelve custodians, it returns a hit count of **2,682 documents**. |
| (Stub /3 profile) OR (prepopulat*) OR ("unclaimed profile") OR "ghost profile" OR ("never logged in") | **Agreed.** Defendants will run these terms over their existing twelve custodians' documents. |
| "Negative ROI" OR ("no /2 lift"). | **Objection.** This string appears unrelated to any false or misleading statement alleged in Doximity's SAC and is not designed to identify documents responsive to OpenEvidence's RFPs.<br><br>**Counterproposal:** Defendants will run these terms within 5 words of (engagement OR "active user*" OR Kiani OR substack). |
| "Do not share" OR "don't share" OR "do not disclose" OR "not for customers." | **Objection.** These phrases appear in routine confidentiality designations, legal advice, and internal handling instructions. This string would return a large volume of irrelevant and privileged material: run over Defendants' existing twelve custodians, it returns a hit count of **110,658 documents**. |
| Backfill* OR overwrite* OR override* OR "manual adjustment" OR | **Agreed in part.** Defendants will run "manual adjustment," "synthetic event," and "billable event." Defendants object to "backfill*," "overwrite*," and |

| | |
|---|---|
| "synthetic event" OR "billable event." | "override*." Those terms are everyday engineering and data-management terms that would return large volumes of irrelevant technical material. |
| Bot OR bots OR "invalid traffic" OR nonhuman OR "non-human" OR prefetch* OR "safe links" OR "link detonation." | **Objection.** This string appears unrelated to any false or misleading statement alleged in Doximity's SAC and is not designed to identify documents responsive to OpenEvidence's RFPs. It is also composed of common technical terms that would return engineering material unrelated to any statement at issue: run over Defendants' existing twelve custodians, it returns a hit count of **1,183,667 documents.** |
| boost* OR "triggered messaging" OR pacing OR underdeliver* OR makegood* | **Objection.** This string appears unrelated to any false or misleading statement alleged in Doximity's SAC and is not designed to identify documents responsive to OpenEvidence's RFPs. Run over Defendants' existing twelve custodians, it returns a hit count of **18,891 documents.** |
| repaper* OR "pull forward" OR "pulled forward" OR "revenue acceleration" OR "milestone recognition" OR "side agreement" | **Agreed.** Defendants will run these terms over their existing twelve custodians' documents. |

**<u>Time Period</u>**

OpenEvidence's proposed period of January 1, 2021 through the present is not proportional; it reaches years before any statement at issue. When asked to justify this time period on the parties' October 6 meet and confer, counsel for OpenEvidence pointed a paragraph in Doximity's counterclaims citing a statement in Doximity's S-1 about the number of telehealth users in 2021 that OpenEvidence had incorrectly relied on to spread falsehoods about Doximity in pitch decks to clients. (Dkt. 110 at 41.) That is not responsive to any of the requests in OpenEvidence's Third and Fourth Sets of Requests for Documents. Counsel also cited a "reserve share program"—an apparent reference to a statement in the Substack posts that Doximity's leaders "have

been fighting to liquidate their positions at peak valuations while buying back hundreds of millions of dollars of stock on the company's dollar." (*Id.* ¶ 69.) OpenEvidence has not explained how that statement even implicates 2021, let alone how it justifies doubling the relevant period of this case.

Defendants propose instead that any additional terms run in response to OpenEvidence's recently served document requests remain limited to December 1, 2023 through November 30, 2025, the period the parties previously agreed on for the Doximity custodians.

**"Go-Get" Requests**

Finally, OpenEvidence has proposed a series of far-reaching "go-get" requests that read more like additional RFPs that were never served. Defendants' positions are below.

| | |
|---|---|
| "All internal dashboards or data relating to user engagement." | **Objection.** Producing all engagement data across all of Doximity's platforms and services is neither proportional nor tied to the challenged statements. Defendants will consider a narrowed request tied to specific challenged statements. |
| "All data from third-parties . . . (e.g., Google Analytics or equivalents)." | **Objection** for the same reasons. Moreover, OpenEvidence's document requests do not seek this category of documents. |
| "All documents produced in In re Doximity, Inc. Securities Litigation, No. 24-cv-02281 (N.D. Cal.)." | **Objection.** A wholesale request for another case's production is not tailored to the claims and defenses in this action. OpenEvidence's document requests do not seek this entire category of documents. |

**III. Next Steps**

Defendants have responded in good faith to each component of your proposal. Unfortunately, you have repeatedly announced an intent to move to compel before the parties were even able to confer. That is inconsistent with the parties' obligation to

confer in good faith before seeking the Court's intervention. Any motion to compel would also be premature because OpenEvidence has not yet responded to the counterproposals above. We are available to meet and confer further on these issues this week. Please let us know what times work for you.

Defendants reserve all rights.

Sincerely,

*/s/ Brian O'Connor*

Brian O'Connor